# EXHIBIT A

1  Robert N. Pafundi (SBN 102847)
2  PAFUNDI LAW FIRM, APC
   11693 San Vicente Blvd., Ste. 824
3  Los Angeles, CA 90049
   Telephone: 424-832-3502
4  Email: robert@pafundilawfirm.com

5  Lizelle S. Brandt (SBN 228250)                    ***UNREDACTED***
   Andrew J. Kubik (SBN 246902)
6  SINGIAN LAW
   1055 E. Colorado Blvd., Ste. 500
7  Pasadena, CA 91106
   Telephone: 626-844-5050
8  Email: lizelle@singianlaw.com
   Email: andrew@singianlaw.com
9  *(Plaintiffs' Counsel continued on next page)*

10

11 Attorneys for Plaintiffs CONTESTANT 1,
   CONTESTANT 2, CONTESTANT 3, CONTESTANT 4,
12 CONTESTANT 5, and the Proposed Class

13            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14            **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

15 CONTESTANT 1, a California resident,          **Class Action Complaint For:**
   CONTESTANT 2, a California resident,          1.  **Failure to Pay Minimum Wages;**
16 CONTESTANT 3, a California resident,          2.  **Liquidated Damages for Failure to Pay**
   CONTESTANT 4, a California resident,              **Minimum Wages;**
17 CONTESTANT 5, a United States resident,       3.  **Failure to Pay Overtime;**
   each individually and on behalf of all others 4.  **Sexual Harassment;**
18 similarly situated,                           5.  **Failure to Prevent Harassment;**
                                                 6.  **Negligent Infliction of Emotional Distress;**
19             Plaintiffs,                        7.  **Failure to Provide Uninterrupted Meal**
                                                     **Breaks;**
20      v.                                       8.  **Failure to Provide Uninterrupted Rest**
                                                     **Breaks;**
21                                               9.  **Failure to Pay Wages Promptly Upon**
   MRB2024, LLC, a North Carolina Limited            **Termination;**
22 Liability Company;  OFF ONE'S BASE, LLC, a    10. **Failure to Provide Accurate and Itemized**
   North Carolina Limited Liability Company;         **Wage Statements;**
23 AMAZON ALTERNATIVE LLC, a California          11. **Failure to Indemnify for Employee**
   Limited Liability Company;  and DOES 1-100,       **Expenses and Losses in Discharging Duties;**
24 inclusive,                                    12. **Unfair Business Practices;**
                                                 13. **False Advertising; and**
25             Defendants.                        14. **Declaratory Relief**

26

27                                               **Jury Trial Demanded**

28

                                          i
   CLASS ACTION COMPLAINT

*(Plaintiffs' Counsel continued from prior page)*

Courtney Stuart-Alban (SBN 225513)
STUART ALBAN LAW
87 N Raymond Ave, Ste 200
Pasadena, CA 91103
Telephone: 323-405-9898
Email: courtney@stuartalbanlaw.com

Arthur Y. Whang (SBN 203916)
WHANG LAW FIRM, P.C.
5850 Canoga Ave., Ste 400
Woodland Hills, CA 91367
Telephone: 310-479-7300
Email: arthur@whanglaw.com

CLASS ACTION COMPLAINT

<u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................................................1

II.    JURISDICTION AND VENUE ........................................................................4

III.   PARTIES ............................................................................................................5

IV.   FACTS ................................................................................................................6

      A.     The Contestants Engaged in What Appeared To Be a Thorough Application and Vetting Process for Beast Games. ...................................6

      B.     The Contestant Agreements that the Contestants Entered Into with Production Defendants Included a California Choice-of-Law Provision....................................7

      C.     The Contestants Were "Employees" Under California Law, but Defendants Intentionally Misclassified Them to Defendants' Economic Advantage. ..........................7

           1.     The Contestants were not volunteers.  The Contestants were promised and received compensation in exchange for their services.............................................7

           2.     The Contestants had no autonomy. Defendants exercised complete control..........9

           3.     The Contestants performed work that was in the usual course and scope of Defendants' businesses. ........................................................14

           4.     The Contestants are not customarily engaged in an independently established business of the same nature as the work performed for Defendants. ....................................14

      D.     Defendants Misclassified the Contestants as "Volunteers" to Avoid their Employment Obligations under California Law and to Wrongfully Receive Unearned Tax Credits From Nevada. ....................................15

      E.     Defendants Required the Contestants to Sign an Unconscionable Agreement with Illegal and Unenforceable Terms....................................16

      F.     Defendants Failed to Provide a Safe and Healthful Place of Employment, to the Particular and Collective Detriment of the Female Contestants, Who Suffered Sexual Harassment....................................17

           1.     Purported "How to Succeed in MrBeast Production" handbook states that, "It's okay for the boys to be childish," and "If talent wants to draw a dick on the white board in the video or do something stupid, let them… Really do everything you can to empower the boys when filming and help them make content.  Help them be idiots."....................................18

           2.     Helping "the boys" "make content" apparently translated to allowing men to tackle women while "MrBeast [was] standing on his podium, looking down watching all of [the Contestants] fight for a chance at $5 million." ............19

           3.     Beast Games created hostile conditions where women were forced to endure the severe embarrassment and unfair disadvantage of being denied access to menstruation products and clean underwear by Beast Games staff who reportedly laughed at their predicament. ................................21

      G.     Defendants Made Multiple False Statements to the Contestants In Connection with Beast Games Prior to the Start of the Competition....................................22

           1.     Defendants falsely advertised that the Competition would have 1,000 contestants, when it was actually 2,000, and this cut the odds of winning down by half of what was originally advertised. ....................................22

           2.     Defendants misrepresented that reasonable meal needs would be met. ..............23

      H.     The Beast Games Production Was So Void of Standards of Reasonable Care that MrBeast® Allegedly Offered to Cover the Contestants' Therapy. ...................................25

      I.     Plaintiffs' Individual Experiences....................................................26

iii

V.    CLASS ACTION: GENERAL ALLEGATIONS ........................................................30
      A.    Numerosity. ..............................................................................................31
      B.    Ascertainability. .......................................................................................31
      C.    Typicality. .................................................................................................31
      D.    Superiority. ...............................................................................................32
      E.    Existence and Predominance of Common Law Questions of Fact and Law. ....................32
      F.    Adequacy. ..................................................................................................34
VI.   CAUSES OF ACTION ...........................................................................................34
      A.    Count 1: Failure to Pay Minimum Wage (Lab. Code §§ 204, 1194, 1197, and 1197.1, and Wage Order No. 12-2001) ..........................................................34
      B.    Count 2: Liquidated Damages for Failure to Pay Minimum Wages (Lab. Code § 1194.2) ...................................................................................36
      C.    Count 3: Failure to Pay Overtime Wages (Lab. Code §§ 204, 510, and 1194, and Wage Order No. 12-2001, § 3) ......................................................36
      D.    Count 4: Sexual Harassment (Gov't. Code §§ 12940(a) et seq., 12923 and 12965) .........37
      E.    Count 5: Failure to Prevent Harassment (Gov't. Code §§ 12940(a) et seq. and 12965) ............................................................................................38
      F.    Count 6: Negligent Infliction of Emotional Distress ...............................39
      G.    Count 7: Failure to Provide Uninterrupted Meal Breaks (Lab. Code §§ 512 and 226.7, and Wage Order No. 12-2001 § 11) ...............................40
      H.    Count 8: Failure to Provide Uninterrupted Rest Breaks (Lab. Code § 226.7, and Wage Order No. 12-2001) .....................................................41
      I.    Count 9: Failure to Provide Wages Promptly Upon Termination (Lab. Code §§ 201, 202, and 203) ..................................................................41
      J.    Count 10: Failure to Provide Accurate and Itemized Wage Statements (Lab. Code §§ 226 and 226.3, and Wage Order No. 12-2001) ...................42
      K.    Count 11: Failure to Indemnify for Employee Expenses and Losses in Discharging Duties (Lab. Code § 2802) ...................................................43
      L.    Count 11: Unfair Business Practices (Bus. & Prof. Code § 17200) ........43
      M.    Count 12: False Advertising Unfair Business Practices (Bus. & Prof. Code § 17500) .......................................................................................44
      N.    Count 13: Declaratory Relief ...................................................................46
VII.  PRAYER FOR RELIEF ..........................................................................................46
VIII. JURY DEMAND .....................................................................................................50

CLASS ACTION COMPLAINT

CONTESTANT 1, CONTESTANT 2, CONTESTANT 3, CONTESTANT 4, and
CONTESTANT 5 (collectively, "**Plaintiffs**"), individually, and on behalf of the Proposed Class, allege:

## I.    INTRODUCTION

1.    Plaintiffs bring this action on behalf of themselves and a proposed class consisting of "all individuals who were engaged as purported contestants in the Beast Games content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024."  Defendant production companies and Amazon shamelessly exploited the labor of approximately two thousand people who served as contestants ("**Contestants**") on the forthcoming $100-million-dollar MrBeast®-Amazon production Beast Games ("**Beast Games**" or "**Production**"), which Amazon promotes as "the world's largest live gameshow" with the "biggest single prize in the history of television and streaming."[1]  The Beast Games' entertainment value arises directly from the physical and emotional labor of the Contestants who compete under pressure-cooker conditions for life-changing prize money, with one person purportedly to win five million dollars ($5,000,000) in the end.

2.    Defendant MRB2024, LLC ("**MrB2024**") is a production company believed to be owned in whole or part, directly or indirectly, by James ("Jimmy") Donaldson, the creator and face of the YouTube-originated MrBeast® brand.  Mr. Donaldson (aka "**MrBeast**") is a 26-year-old content creator who, on information and belief, has the most YouTube® subscribers in the world and is the first YouTube billionaire.[2] [3]  The MrBeast® entertainment empire produces "stunt philanthropy," which typically features MrBeast performing corporate-sponsored, attention-getting philanthropy for publicity. The business model essentially is that MrBeast performs giving away *some* corporate money – whether pallets of cash, cars, or even houses to strangers or followers – and his corporate sponsors compensate him with even *more* corporate money.

---

[1] Mekeisha Madden Toby, *MrBeast and Amazon MGM Studios announce the new reality competition series 'Beast Games,'* Amazon (Mar. 18, 2024), https://www.aboutamazon.com/news/entertainment/beast-games-mrbeast-prime-video, last accessed September 16, 2024;  Gen Salinas, *MrBeast strikes $100 million deal with Amazon for Beast Games*, Creator Handbook (Mar. 20, 2024), https://www.creatorhandbook.net/mrbeast-strikes-100-million-deal-with-amazon-for-beast-games/, last accessed September 16, 2024.
[2] MrBeast® YouTube channel, https://www.youtube.com/mrbeast, last accessed September 16, 2024.
[3] Brian Warner, MrBeast is Now Officially A Billionaire (Jun. 12, 2024), https://www.celebritynetworth.com/articles/billionaire-news/mrbeast-is-now-officially-a-billionaire/, last accessed September 16, 2024.

CLASS ACTION COMPLAINT

3.      Defendant Amazon Alternative, LLC ("**Amazon Alternative**" or "**Amazon**") is, on information and belief, the unscripted television division of Amazon Studios, which reportedly was previously run by Mark Burnett at MGM Worldwide Television Group ("**MGM**") before Amazon Studios acquired the division in the Amazon MGM merger.  Amazon Alternative creates content for Amazon's "Prime" streaming service, which boasts over 200 million paid subscribers.[4]

4.      These two commercial giants – MrBeast® and Amazon® – partnered with production company defendant Off One's Base, LLC ("**Off One's Base**") (collectively "**Defendants**") to produce Beast Games, which would be filmed in Las Vegas, Nevada, USA, and Toronto, Ontario, Canada from approximately mid-July 2024 through mid-September 2024.

5.      Mr. Donaldson, who has publicly represented that all MrBeast® contestants get paid if they compete for just five minutes, gushed to his fans online about the bigger-than-ever scale of the Amazon-sponsored Beast Games, stating that money was "not a constraint," and that Amazon had given Mr. Donaldson "all creative control" and the ability to do "whatever [he] wanted."[5] [6]

6.      Unfortunately, the supposedly magnanimous MrBeast® did not want to use the alleged unconstrained resources to provide fair wages, or even bare-minimum-legal working conditions, to the 2,000+ Contestants whose labor comprised the core commercial value of Beast Games.  Instead, Defendants employed superior bargaining power to coerce the Contestants to sign unconscionable contracts with illegal terms and illusory obligations and also knowingly mischaracterized the Contestants as "volunteers" to avoid Defendants' employment obligations under California law, despite specifically choosing California law to govern disputes related to Beast Games.

7.      Defendants knowingly misclassified the Contestants as "volunteers," in part, to obtain a tax credit for two million, two hundred fifty-two thousand, five hundred twenty-three dollars

---

[4] Todd Spangler, *Prime Video Now Reaches More than 200 Million Monthly Viers, TV Ads 'Off to a Strong Start,' Amazon CEO Says*, Variety (Apr. 11, 2024), https://variety.com/2024/digital/news/amazon-prime-video-200-million-monthly-viewers-tv-advertising-ceo-1235967913/, last accessed September 16, 2024.
[5] Colin and Samir, *MrBeast reveals his plans for Beast Games*, YouTube (Mar. 18, 2024), https://www.youtube.com/watch?v=4FRYox-sPP8, last accessed September 16, 2024.
[6] Jon Youshaei, *Why every MrBeast video gests 200M views (interview)*, YouTube (May 28, 2024), https://www.youtube.com/watch?v=IXEewFEDieU, at 1:17:00, last accessed September 16, 2024. It is also worth noting that earlier in this same video, Mr. Donaldson discusses his plans for Beast Games and the Contestants, and added that, "money is not a constraint" (at 44:41).

CLASS ACTION COMPLAINT

($2,252,523) from the State of Nevada, which Defendants, on information and belief, would not have received if they had disclosed the Production's actual labor costs, including the significant labor of the 2,000+ Contestants, in the budget they presented to the Nevada Film Commission with their tax-credit application.[7]

8. Defendants then induced 2,000+ people to travel to Las Vegas in July to serve as Contestants on their $100-million-dollar production based on a false representation that one-thousand (1,000) people would be competing to win a five-million-dollar ($5,000,000) prize, announcing only upon the Contestants' arrival that two-thousand (2,000) people were actually competing, reducing the Contestants' odds of winning by half right before the competition began.

9. Defendants further relied on the misclassification as a false justification to avoid paying employment taxes and to spare the Production the costs of implementing various employment protections required under California law, including, minimum wages, overtime, mandatory meal and rest breaks, workers compensation benefits, itemized wage statements and timely payment of wages and reimbursements, among other things.

10. Defendants then subjected the Contestants to unreasonable, unsafe, and unlawful employment conditions. On or about July 18, 2024, Defendants began the Beast Games by shepherding the 2,000+ Contestants to the Allegiant Stadium in Las Vegas, where the Contestants were held under strict control and surveillance for days on end without access to their personal belongings – *e.g.*, telephones, medications, watches, even their underwear. As an example of the level of control, Contestants were ordered to put five days of "undergarments" in a plastic bag that was turned in to Beast Games production staff ("**Production Staff**"), which they could only retrieve with permission from the Production Staff— a permission that was not always not granted.

11. During the Beast Games engagement, the on-set Production Staff maintained the strictest control over the Contestants, confining them to indoor areas for days at a time, allowing them to sleep, if they could manage to do so despite the constant interruptions, under bright lights on the floor, denying them all privacy and access to the outside world. The Contestants were fed sporadically and sparsely.

---

[7] Nevada offers tax credits to production companies who film in Nevada under various conditions. One of the conditions is that the Applicant will spend a certain percentage of the total production budget employing local Nevada citizens.

CLASS ACTION COMPLAINT

They were not given adequate access to hygienic products or medical care.  The New York Times reported that, "over a dozen people who participated in the first installment of 'Beast Games' said they had not received adequate food or medical care and that some competitors had suffered injuries from the physical challenges."[8]

12.      The female contestants particularly and collectively suffered as a result of Defendants' actions.  The Beast Games work environment systematically fostered a culture of misogyny and sexism where Production Staff did nothing while some men violently tackled women, in at least one case, reportedly, to the point of unconsciousness, without disqualification from the competition or any other consequence.  Female contestants also were denied access to menstruation products and clean underwear for days during the competition.  Defendants callously dismissed menstruation as "not a medical emergency."

13.      Defendants' violations of California law have caused common injuries-in-fact that are redressable and conducive to resolution as a class action, where all of the following material facts are common to all Contestants:  Defendants offered the Contestants equivalent compensation for equivalent labor.  Defendants misclassified the Contestants in a uniform manner.  Defendants subjected all of the Contestants to the same material working conditions, including a hostile work environment for the female Contestants.  Defendants have improperly denied or delayed the Contestants overdue wages, penalties, and/or reimbursements.

14.      The Plaintiffs have filed this action using pseudonyms and applying conservative redactions that limit public viewing in a good faith effort to comply with Defendants' overbroad confidentiality provisions (which Plaintiffs allege are unenforceable), as well as to preserve the confidentiality and privacy interests of the Plaintiffs who wish to avoid opprobrium.

## II.    <u>JURISDICTION AND VENUE</u>

15.      Jurisdiction is proper in the Superior Court for the County of Los Angeles pursuant to Cal. Code Civ. Proc. § 410.10, because it has general subject matter jurisdiction and no statutory

---

[8] Madison Malone Kircher, *Willing to Die for MrBeast (and $5 Million)*, The New York Times (Aug. 2, 2024), https://www.nytimes.com/2024/08/02/style/mrbeast-beast-games-competition-show.html, last accessed September 16, 2024.

CLASS ACTION COMPLAINT

exceptions to jurisdiction exist.  The amount in controversy exceeds the jurisdictional minimum of this Court.

16.     Venue is proper in the County of Los Angeles and this Court because this is a putative Class Action Complaint; because this is the County in which the damages arise;  because this is the county in which at least two of the lead Plaintiffs reside; and this is the County where one of the Defendants has its principal place of business. Additionally, on information and belief, Defendants, and each of them, do business throughout the State of California, including prominently in Los Angeles, California.

## III.    PARTIES

17.     CONTESTANT 1 ("**Contestant 1**") an individual and a resident of the County of Los Angeles, California.  Contestant 1 was employed by Defendants as a contestant in the Production.

18.     CONTESTANT 2 ("**Contestant 2**") is an individual and a resident of the State of California.  Contestant 2 was employed by Defendants as a contestant in the Production.

19.     CONTESTANT 3 ("**Contestant 3**") is an individual and a resident of the State of California.  Contestant 3 was employed by Defendants as a contestant in the Production.

20.     CONTESTANT 4 ("**Contestant 4**") is an individual and a resident of the County of Los Angeles, California.  Contestant 4 was employed by Defendants as a contestant in the Production.

21.     CONTESTANT 5 ("**Contestant 5**") is an individual and a resident of the United States.  Contestant 5 was employed by Defendants as a contestant in the Production.

22.     On information and belief, Defendant MRB2024, LLC, is a for-profit North Carolina Limited Liability Company, with its principal place of business in Raleigh, North Carolina.  MRB2024, LLC also lists its address in documentation provided to Plaintiffs as: "c/o Weinstein Senior, LLP" in Los Angeles, CA 90067.  On information and belief, MRB2024, LLC is an entertainment production company.  At all relevant times, MRB2024, LLC was and is doing business in Los Angeles, California.

23.     On information and belief, Defendant OFF ONE'S BASE, LLC, is a for-profit North Carolina Limited Liability Company, with its principal place of business in Raleigh, North Carolina.  OFF ONE'S BASE, LLC also lists its address in documentation provided to Plaintiffs as: "c/o Weinstein Senior, LLP" in Los Angeles, CA 90067.  On information and belief, Defendant OFF ONE'S BASE,

CLASS ACTION COMPLAINT

1  LLC is an entertainment production company.  At all relevant times, Defendant OFF ONE'S BASE,

2  LLC was and is doing business in Los Angeles, California.

3      24.    On information and belief, Defendant AMAZON ALTERNATIVE LLC, is a for-profit

4  California Limited Liability Company, with its principal place of business in Los Angeles County,

5  California.  At all relevant times, Defendant AMAZON ALTERNATIVE LLC was and is doing

6  business in Los Angeles, California.

7      25.    Plaintiffs are ignorant of the names and capacities of DOES 1 through 100 and sue them

8  as DOES 1 through 100, inclusive. Plaintiffs will amend this action to allege DOE defendants' true

9  names and capacities when they are ascertained.

10     26.    At all times relevant to this Complaint, the defendants were agents, principals,

11 representatives, employees, joint venturers, partners, predecessors and/or successors in interest, and/or

12 alter egos of each other and were acting within and furtherance of the purposes and scope of such

13 agency, representation, employment, joint venture, partnership, corporate structure, and/or association,

14 either actually, apparently, or ostensibly.

15 **IV.   FACTS**

16     **A.    The Contestants Engaged in What Appeared To Be a Thorough Application and**

17          **Vetting Process for Beast Games.**

18     27.    The Contestants who were selected and agreed to serve as contestants on the Beast

19 Games 2024 Production participated in what at the time appeared to be a thorough application and

20 contestant vetting process.

21     28.    The first step in the application process was to submit a written application answering

22 some general questions and consenting to a release of medical records and a background check.  The

23 prospective contestants were also asked to send in photographs and a video submission.

24     29.    Once accepted after an application and interview process, the Contestants were required

25 to put their lives on hold for ninety-four (94) days to provide labor exclusively for Defendants in

26 exchange for compensation and a chance to win a $5 million dollar prize on Beast Games.  The

27 Contestants incurred (supposedly-reimbursable) business-related travel expenses, including flights to

28

6

CLASS ACTION COMPLAINT

and from Las Vegas and Toronto, car transportation, and hotel accommodations, for which many (including Contestant 2 and Contestant 3) have not yet been reimbursed.

**B.    The Contestant Agreements that the Contestants Entered Into with Production Defendants Included a California Choice-of-Law Provision.**

30.    The Contestants each entered into a "Contestant Agreement and Release" ("**Contestant Agreement(s)**") with Defendants MrB2024 and Off One's Base (jointly "**Production Defendants**") in which the Contestants agreed that if they were selected and agreed to participate as contestants in Defendants' "Untitled YouTube Competition," they would be compensated by Defendants, including by being allowed "to compete for and potentially win a prize specified by Producer (which may be in the form of cash…) and/or, among other things, goods and services, including but not limited to merchandise, travel, lodging, tickets and/or access to events or other consideration."

31.    The parties to the Contestant Agreement, including Production Defendants, also agreed that the Contestant Agreement would be "controlled by California Law, and all controversies and questions with respect to this Agreement and/or [the Contestant's] appearance on the Program shall be determined by the internal, substantive laws of the State of California."

**C.    The Contestants Were "Employees" Under California Law, but Defendants Intentionally Misclassified Them to Defendants' Economic Advantage.**

32.    Defendants wrongfully and willfully misclassified, and on information and belief, continue to wrongfully misclassify the Contestants as either volunteers or independent contractors although they should legally be classified as employees.

33.    The Contestant Agreement states on its face that the Contestants were "volunteers," but the arrangement was in fact an employment arrangement whereby Defendants Amazon, Off One's Base, and MrBeast were the actual employers of the Contestant-employees.

**1.    The Contestants were not volunteers.  The Contestants were promised and received compensation in exchange for their services.**

34.    On information and belief, each of the Defendants is a for-profit company in the business of making audiovisual programming, including for distribution on the video platform YouTube® and Amazon Prime Video®, among other video platforms.

CLASS ACTION COMPLAINT

35.    The Contestants were promised and received compensation in exchange for their around-the-clock presence and on-demand physical labor on the Beast Games Production.

36.    Additionally, Mr. Donaldson made public statements online that he had unconstrained control over Beast Games, and Donaldson had established a pattern and practice of compensating everyone who competes in the MrBeast® competitions, win or lose, even if they competed for only five minutes.[9]

37.    The Contestants were not working for free for the Beast Games for any humanitarian or any other public service or charitable objective.

38.    Defendants hired the Contestants to work as contestants on a reality competition show. The Contestants, in reality, were the essential labor component to the entire production. Their work on the show was the entertainment product that Defendants were marketing and selling for public consumption and profit.

39.    The Contestants were told that if they accepted the opportunity to work for Defendants, they would have to be available for a ninety-four (94) day period from June 29, 2024 – September 30, 2024, and while they were working for Defendants, they would not be able to accept any other employment.

40.    Defendants compensated the Contestants throughout the course of the Beast Games Production with both "in-kind" compensation as well as cash compensation, with Defendants promising a total of at least $2,000 to every Contestant that competed, even if they were eliminated in the Competition.

41.    Throughout the Beast Games engagement, the Contestants were induced to remain competing as Defendants made clear to all Contestants that they would receive additional cash compensation if they continued their services through elimination.

42.    Defendants have since requested, and Plaintiffs have provided, W9 information from the Contestants to pay them and to also reimburse them for their expenses. *See* Figure 1 below. The form that Defendants had the Contestants fill out specified: "[Off Ones Base, LLC] will use the W-9 to issue a

---

[9] Youshaei, *Why every MrBeast, supra* note 6.

CLASS ACTION COMPLAINT

1099" to the Contestants for any payments from Defendants.  Contestants 2 and 3 have, to date, still not been reimbursed for out-of-pocket expenses they incurred for their flights and transportation back from Las Vegas to their homes, despite having submitted reimbursement requests week ago.  *See* Section IV.I "Plaintiffs' Individual Experiences," *infra*.



*Figure 1*

43.    As a result of the combination of foregoing, the Contestants cannot properly be characterized as mere "volunteers."  Rather, they were at all relevant times, employees who worked at the direction and control of each of the Defendants, and for these Defendants' ultimate profit.

**2.    The Contestants had no autonomy. Defendants exercised complete control.**

44.    Defendants exercised total control over the manner, means and timing of the work performed by the Contestants, by controlling essentially every aspect of their lives during the production of the show.  This included, but is not limited to: (1) requiring them to work 24-hour-and-beyond shifts, (2) controlling and restricting their sleep, (3) controlling and restricting their food intake, (4) controlling and restricting their access and intake of medicine, (5) preventing them leaving the premises without terminating their employment and incurring a debt to the Production for their reimbursable expenses, (6) controlling and restricting their ability to communicate with others, and (7) directing every task to be performed as a member of the show.

45.    **When and where.**  Defendants required the Contestants to be physically present on specific dates and times, around-the-clock, at locations dictated, controlled, and supervised by Defendants, and which dates and locations Defendants were entitled to change, "in their sole discretion." Defendants further required Plaintiffs dedicate *all* of their time to the Production during the production

CLASS ACTION COMPLAINT

period, including by setting aside a 94-day period from June 29, 2024 through September 30, 2024, requiring them to miss other work if they had other jobs. Defendants also purport to control when and whether the Contestants will appear in additional seasons of the Beast Games, "for a period to be determined by Producer at a location to be determined at a later date by Producer in its sole discretion," and also require the Contestants to appear at any time in any season for any later production within three years from the initial exhibition of Beast Games.

46. **Access to personal belongings.** Upon the Contestants' arrival at the Beast Games in Las Vegas, Defendants separated them from their personal belongings – including their telephones and all electronic devices of any kind, medication, toiletries, including feminine hygiene products, and undergarments.

47. **Restricted movement.** Defendants corralled the Contestants into tightly controlled indoor spaces where they were actively supervised by Production Staff around-the-clock without any privacy. Contestants were required to consent to Production Defendants recording their actions and statements, including possibly via concealed or hidden cameras and audio devices throughout the filming locations, including in areas where Contestants might have a reasonable expectation of privacy (e.g., a bathroom).

48. **No contact.** Defendants exercised total control over the Contestants' access to the outside world, including their friends and family. Prospective contestants were told to "expect to have no communication with loved ones" during their engagement with the Beast Games. Contestants were separated from their telephones and prohibited from making any contact with the outside world, online or otherwise. *See* Figure 2 below, taken from the Beast Games Application and Official Rules Packet ("**Beast Games Rules Packet**").

> ❖ Will I be able to communicate with friends and family during filming?
> If you're selected for the show expect to have no communication with loved ones.
> Unless it's an urgent matter that comes up.

*Figure 2*

49. **Control Over Meals.** The Defendants controlled when, where, and what the Contestants ate and drank, which on information and belief, amounted to approximately 250-400 calories per day, including MrBeast®-branded chocolate bars, Feastables®, in place of a nutritious meal, which the

CLASS ACTION COMPLAINT

Contestants were instructed to "enjoy" while the cameras were filming, so the Production Staff could capture the Contestants' reaction and presumptively use it as promotional content for Mr. Donaldson and/or Beast Games.   The limited sustenance that Defendants provided afforded an unreasonable and insufficient caloric intake which collectively and in a uniform manner endangered the health and welfare of the Contestants. During their time in Allegiant Stadium, Las Vegas, Nevada, the Contestants had to suffer through at least one time period where there was no food provided for between 8-12 hours and some contestants got light-headed.  When Defendants allowed the Contestants to have food, it ranged from small portions of cold porridge, salad, cold boiled chicken (which some Contestants report observing was pink to the point it seemed dangerous to consume and so some did not), and oatmeal, and at times multiple Contestants had to share portions (for example, five Contestants would share three servings of food).

   50.   **Control Over Clothing**.  Defendants controlled the clothing that the Contestants wore, requiring them to wear a specific uniform provided by the Production.  One day, Defendants corralled the Contestants and then made them wait for hours in a hotel lobby wearing garbage bags over their clothing in Las Vegas in July.  *See* Figure 3 below, altered only by the blurring of faces[10].



*Figure 3*

---

[10] Scott Roeben, *MrBeast Shoots "Beast Games" in Las Vegas, Controversy Abounds*, Vital Vegas (Jul. 18-22, 2024), https://www.casino.org/vitalvegas/mrbeast-shoots-beast-games-in-las-vegas/, last accessed September 16, 2024.

CLASS ACTION COMPLAINT

51.    **Control Over Sleeping Arrangements**.  Defendants controlled where, how, and whether the Contestants slept.  Contestants were filed into Allegiant Stadium, Las Vegas, Nevada, where they slept overnight in sleeping bags on the stadium floor (although Contestant 4 had their sleeping bag stolen), which included the field and concrete areas, with approximately 1,600 fellow contestants. Defendants did not allow Contestants to bring their own toiletries, but instead provided each with a toiletry bag with toothbrush, toothpaste, a mini comb, deodorant wipes, and eye covers for sleeping. The eye covers became a necessity because Defendants kept the stadium lights on the whole time and Contestants were awakened frequently for various reasons by Production Staff when they were trying to sleep.  Contestant 1 observed that when some Contestants tried to move their sleeping bags to areas that were quieter to sleep, they were herded back to the group, leaving them sleep deprived before they were called to compete in the Beast Games Competitions.  At times the Contestants had to seek permission from Defendants to go to the bathroom.

52.    **Control Over Medications and Recreational Substances**.  Upon their arrival, Defendants separated the Contestants from their medication, including things like inhalers and insulin, and there were long lines to retrieve medication from an apparent shortage of medical staff.  Defendants also did not allow Contestants to smoke, vape, or drink alcohol during their Beast Games engagement.

53.    **Exposed to Dangerous Conditions.**  The Contestants were exposed to dangerous circumstances and conditions as a condition of their employment.  Even without considering whatever confidential conditions existed behind closed doors while the Beast Games was being filmed, the Contestants were subjected to dangerous conditions within the course of their employment.  As local news reported, "many contestants, … found it was the poor set conditions, rather than the challenges themselves, that proved to be the main difficulty."[11] The Contestants were penned into enclosed spaces with thousands of strangers for days on end, under conditions where they were underfed, overtired, unclean, and competing in stressful and exhausting challenges for a cash prize that could change their lives. The danger, moreover, was exacerbated by Defendants' seeming failure to conduct background

---

[11] Chase Martin, *Accusations of unprofessional handling and mistreatment of contestants on 'Beast Games' come to light*, DeseretNews, https://www.deseret.com/entertainment/2024/08/05/mr-beast-beast-games-accusations/ (Aug. 5, 2024), last accessed September 16, 2024.

CLASS ACTION COMPLAINT

checks, despite requiring applicants to consent to a background check as a condition of their employment[12].

 

*Figure 4*

54.    On information and belief, there was insufficient medical staff to attend to potential and actual injuries during the Production.  There were several reports of injuries.  For example, in an online article, Scott Roeben of Vital Vegas reported on July 19, 2024 that: "In a concerning twist to this story, a source claims Desert Springs Hospital 'has seen countless patients today coming from 'Beast Games' due to lack of food and water'"[13], that Contestants were reporting that diabetics were denied food, that Contestants were denied water, and that two people had suffered seizures.

55.    **Contractual control.**  Defendants required the Contestants to sign an unenforceable adhesion contestant agreement purporting to give Defendants complete control over every aspect of the Contestant's lives during production, including their time, access to food and drinks, sleeping arrangements, and contact with family and friends and other persons outside of production. Defendants did not allow the Contestants to move or act of their own free will while the production took place. The Contestant Agreement also purports to give Defendants "sole discretion" to change the rules and terms-and-conditions for the Contestants' engagement and explains that decisions on all matters related to the Contestants' participation … shall be within [the Producer Defendants'] sole control and shall be final

---

[12] Rosanna Pansino (@RosannaPansino), Twitter (Aug. 17, 2024 6:35 PM), https://x.com/RosannaPansino/status/1824983360487440687, last accessed September 16, 2024, and Figure 4.

[13] Roeben, *MrBeast Shoots "Beast Games," supra* note 10.

CLASS ACTION COMPLAINT

1  and binding on [Plaintiffs and Class Members] in all respects and shall not be subject to challenge or

2  appeal."   The same unconscionable agreement purports to require the Contestants to release all control

3  over their name and likeness granting Defendants copyright ownership as a work-for-hire, which is

4  characteristic of an employment agreement, not a purported "volunteer" or independent contractor

5  relationship.  It also unlawfully prohibits the Contestants from competing in similar employment for a

6  year after the initial commercial exhibition of the last episode of the Production, among other things.

7         **3.    The Contestants performed work that was in the usual course and scope of**

8              **Defendants' businesses.**

9         56.    The work that the Contestants performed for Defendants is not work outside the scope of

10  Defendants' core live-entertainment-content business, as would be the case, for instance, for a service

11  provider providing ancillary production services, such as a food caterer.  The usual course-and-scope of

12  Defendants' production business has nothing to do with cooking or serving food.

13         57.    Here, on information and belief, the usual course-and-scope of the MrBeast® as well as

14  defendant MrB2024's business enterprises is the production of live, non-scripted or semi-scripted,

15  entertainment content whose primary focus is on the contestants' reactions to extreme stress as they

16  compete in intense and exhausting challenges to win life-changing money.  On information and belief,

17  defendants Off One's Base and Amazon Alternative are also in the business of producing live, non-

18  scripted or semi-scripted entertainment content.

19         58.    The Contestants (and their reactions to extreme emotional conditions) are the *sin quo non*

20  of the Beast Games Production. Their work is squarely within the usual scope of Defendants' customary

21  business.

22         **4.    The Contestants are not customarily engaged in an independently established**

23              **business of the same nature as the work performed for Defendants.**

24         59.    The contestant-work that the Contestants performed for Defendants is not work or

25  services they provide to others.  Unlike the catering example, the Contestants do not make their living

26  providing "contestant services" to various customers.  Rather, this was labor that Contestants provided

27  particularly for Defendants.

28

CLASS ACTION COMPLAINT

60.     The Contestants are, on information and belief, people from all over the world who engage in various professions, are unemployed, or are students.  They are not engaged in an independent business of the same nature as the work performed for Defendants.

61.     The contestant-work that the Contestants performed was for Defendants and pursuant to Defendants' customary business model.

62.     The contestant-work that the Contestants performed was necessary to the Defendants' Beast Games Production, and the work the Contestants performed was for Defendants' benefit, as the Contestants provided the core entertainment value of the Production.

**D.      Defendants Misclassified the Contestants as "Volunteers" to Avoid their Employment Obligations under California Law and to Wrongfully Receive Unearned Tax Credits From Nevada.**

63.     From on or about July 18, 2024 until the Contestants were eliminated, or the Contestants completed all challenges on July 21, 2024, the Contestants worked a non-stop continuous stretch of employment for Defendants during the Production in Nevada.

64.     From between July 18, 2024 to July 21, 2024, during the Production in Nevada, the Contestants were reduced from approximately 2,000-plus individuals to about 1,000 people, with individuals working non-stop periods of employment, around the clock, starting on July 18, 2024, until they were eliminated, including alternates.  Reasonably assuming a significant number of the Contestants were non-Nevada residents, Defendants would likely not meet the requirement that the percentage of Nevada to Total Qualified Expenditures exceed 60%.[14]

65.     Moreover, Defendants later required the Contestants to complete W9 forms, suggesting they intend to write off the Contestants' wages as expenses in an attempt to have their cake and eat it too.  *I.e.*, i) fudging the true labor costs by labeling the Contestants as "volunteers" to obtain the State of Nevada tax credit; ii) saving money on employment wages, benefits, and employment taxes by misclassifying the Contestants, and iii) deducting the Contestant labor as expenses after-the-fact.

---

[14] Nevada Governor's Office of Economic Development and Nevada Film Office, July 22, 2024 Hearing Agenda at Page 18, https://goed.nv.gov/wp-content/uploads/2024/07/Hearing-Agenda-and-Materials-July-22-2024.pdf, last accessed September 16, 2024, and Figure 5.

CLASS ACTION COMPLAINT



*Figure 5*

E.     **Defendants Required the Contestants to Sign an Unconscionable Agreement with Illegal and Unenforceable Terms.**

66.     As a condition of their employment, Defendants required each Contestant to enter into a contract-of-adhesion that was drafted by Defendants, which Plaintiffs and the Proposed Class were given to sign under expedient circumstances.  On or about June 6, 2024, on information and belief, the application period for Beast Games opened; by July 18, 2024, Defendants had entered into contracts with and transported 2,000 people to the Allegiant Stadium in Las Vegas to compete in the unprecedented Beast Games.  Defendants enjoyed superior bargaining power and used it to impose terms and conditions that are unlawful under California law, including Labor Code Section 432.5. Defendants demanded, for instance, that Plaintiffs assume the risk in connection with the Production, including serious physical injury and non-consensual physical contact, in violation of FEHA, in particular, Gov't Code § 12964.5(a)(1)(A)(i).  They also required the Plaintiffs to release liability for their rights to workers' compensation, their rights under FEHA, and any rights to wages, in violation of Labor Code Section 206.5, and their right to bring representative actions under the Private Attorneys

CLASS ACTION COMPLAINT

General Act ("**PAGA**"). The Contestant Agreement also purports to require the contestant-employees to waive their rights to certain remedies, including public and private injunctive relief, in violation of California law; while allowing Defendants to seek injunctive relief without posting a bond, showing a lack of material mutuality.  It also includes overbroad unenforceable confidentiality provisions.

67.    Defendants unlawfully required the Contestants to affirm whether they had any past convictions before being hired, including convictions protected from inquiry by employers, and to unlawfully submit to a medical examination, psychological examination, and background check as a condition for possible employment.

68.    Other unlawful provisions required the Contestants to authorize Defendants to conduct background checks including checks of consumer credit reports. The Agreement also contains an unlawful penalty clause with an unreasonably large estimate of so-called liquidated damages of $500,000.00 that is, in reality, an unconscionable penalty that is not enforceable under California law.

F.    **Defendants Failed to Provide a Safe and Healthful Place of Employment, to the Particular and Collective Detriment of the Female Contestants, Who Suffered Sexual Harassment.**

69.    Production Defendants also failed to provide a safe and healthful place to work in violation of Labor Code Section 6300 *et. seq.,* including, but not limited to Sections 6400, 6401, 6401.7, 6402 and 6403, as well as Government Code Sections 12940(a), 12923 and 12965.

70.    Production Defendants created working conditions that jeopardized the safety of workers, including by not providing sufficient food or drink, taking away their access to medicine, not having adequate medical staff on site and not providing reasonable medical care, forcing them not to sleep, and forcing them to participate in games that unreasonably risked physical and mental injury.

71.    Production Defendants additionally created a toxic and hostile work environment for, in particular, the female contestants, who suffered male-on-female assault, as well as sexual harassment throughout the Production, as more fully detailed below, which was not only noticed but allowed and even encouraged by the Production Defendants, and laughed at by Production Staff.  And apparently, this was allowed because of marching orders from the top.

CLASS ACTION COMPLAINT

1      **1.    <u>Purported "How to Succeed in MrBeast Production" handbook states that,</u>**

2      **<u>"It's okay for the boys to be childish," and "If talent wants to draw a dick on</u>**

3      **<u>the white board in the video or do something stupid, let them… Really do</u>**

4      **<u>everything you can to empower the boys when filming and help them make</u>**

5      **<u>content.  Help them be idiots."</u>**

6      72.    A document that appears to be a MrBeast® employee handbook written in the first

7  person from what appears to be Mr. Donaldson's perspective, titled "HOW TO SUCCEED IN

8  MRBEAST PRODUCTION" (the "**MrBeast Handbook**"), was published on the internet on August 13,

9  2024, by YouTube creator Rosanna Pansino, who alleges that she received it and confirmed its

10  authenticity with two MrBeast® employees[15].  This alleged MrBeast Handbook provides insight into the

11  boys-will-be-boys working conditions that are seemingly promoted by Mr. Donaldson, which, if such

12  MrBeast Handbook is indeed distributed to MrBeast® production staff, advises employees: "Really do

13  **<u>everything you can to empower the boys</u>** when filming and help them make content.  **<u>Help them be</u>**

14  **<u>idiots</u>**."[16] (Emphasis added.)  And "**If talent wants to <u>draw a dick on the white board in the video</u>** or

15  do something stupid, **<u>let them</u>**."[17]   (Emphasis added.)

16



24      *Figure 6*

25

[15] Authenticity of the MrBeast Handbook has not been confirmed by Mr. Donaldson himself as of the filing of the Complaint.
[16] Rosanna Pansino, *The REAL MrBeast… (Leaked Document)*, YouTube (Aug. 13, 2024),
https://www.youtube.com/watch?v=U2aYO4c3AKw, with the link to "HOW TO SUCCEED IN MREAST PRODUCTION"
document in the video notes: https://drive.google.com/drive/folders/1UZX55bhi6TK6QOf0dT9bzeac5ATf9SaH, last
accessed September 16, 2024, at p. 34.  See also Figure 6, emphasis added.
[17] *Id.*

CLASS ACTION COMPLAINT

2.  **Helping "the boys" "make content" apparently translated to allowing men to tackle women while "MrBeast [was] standing on his podium, looking down watching all of [the Contestants] fight for a chance at $5 million."**

73.    The apparent MrBeast® ethos of helping "the boys" "be idiots" seemed to pave the way for Production Staff to allow some of the male contestants to tackle female contestants and knock them unconscious during the competitions without disqualification or other consequences.  On information and belief, Contestants complained that "**men started realizing that they could take out the women without being eliminated.  Guys started tackling and hitting women**.  Two girls were tackled and passed out on the field and dragged off to continue filming."[18]  (Emphasis added.)  Contestant 4's and Contestant 5's experiences, as further detailed below, corroborate these reports.

74.    While the Production Staff initially stated, "there would be no tolerance of pushing, shoving, or tackling," allegedly "none of that was enforced.  The contestants that committed said acts were not even eliminated or even disciplined," as reported by Scott Roeben of Vital Vegas.[19]  Contestant 4's and Contestant 5's experiences, as further detailed below, corroborate these reports.

75.    Roeben also reported that, "Each challenge catered to young strong men, who bullied female and elderly contestants and ultimately took away any chance of a fair competition."[20]

76.    Upon information and belief, Production Defendants knew or should have known about this behavior, as it allegedly occurred, "**While MrBeast [was] standing on his podium, looking down watching all of us peasants** fight for a chance at $5 million."  See Figure 7 below (emphasis added, and redacted to preserve possible confidential aspects of the Production).

77.    Additionally, Defendants knew or should have known about this violent behavior because its own employment handbook, as detailed above, laid the groundwork for this collective sexual harassment and sexual harassment against female employees.

---

[18] Rosanna Pansino, *The news about MrBeast 'Beast Games' is disturbing.*, YouTube (Jul. 26, 2024), https://www.youtube.com/watch?v=VApF6na4m-4 (last accessed September 16, 2024).  See also Figure 7, emphasis and redactions added.
[19] Scott Roeben, *MrBeast Shoots "Beast Games," supra* note 10.
[20] *Id.*

19

78.    Contestants 4 and 5 witnessed some of the male contestants hoarding team clothing to impact the composition of the teams, refusing to let women have certain clothing.  They also observed that when contestants complained about the treatment to the Production Staff who were less than five feet away, the Production Staff did nothing.



*Figure 7*

79.    By refusing to intervene or implement any repercussions when some of the men physically assaulted women to the point that they passed out or blocked them from obtaining certain team clothing, Production Defendants created, permitted to exist, and fostered a culture and pattern and practice of sexual harassment including in the form of a hostile work environment where, *inter alia*, men were encouraged to use their innate physical superiority to tackle and hit women– against whom they were competing for five million dollars – and block them from getting on to certain teams without fear of elimination or employee discipline.

//

//

//

//

CLASS ACTION COMPLAINT

**3.    Beast Games created hostile conditions where women were forced to endure the severe embarrassment and unfair disadvantage of being denied access to menstruation products and clean underwear by Beast Games staff who reportedly laughed at their predicament.**

80.    In addition to allowing male contestants to assault female contestants – e.g., punching and tackling them until they were rendered unconscious – without fear of elimination, the Production Defendants also created and condoned a hostile work environment for women by failing to provide feminine hygiene products to women who were menstruating, after taking away women's personal belongings, including their underwear and personal toiletries.

81.    When menstruating women attempted to retrieve their personal belongings more quickly, they were allegedly treated with derision and denied on the grounds that the request was "not a medical emergency."   The New York Times reporter Madison Malone Kircher reported that: "One woman said that when she and a group of contestants who were menstruating during the event had asked the production staff about getting their underwear more quickly… the production staff had laughed at the women's pleading."[21]  See Figure 8 below (emphasis added).

> One woman said that when she and a group of contestants who were menstruating during the event had asked the production staff about getting their underwear more quickly, she had been told that it was "not a medical emergency," and she recalled that a nearby member of the production staff had laughed at the women's pleading.

*Figure 8*

82.    Defendants appeared to take no steps during the course of the Production to address the unequal, lopsided, and inequitable, treatment of the women, including the physical assault by the some of the men against the female contestants, as well as the harassment and bullying committed by some of the men and the Production Staff against the female contestants.

83.    At all relevant times, on information and belief, Defendants' management, up to and including senior management and ownership, had actual and/or constructive notice that the violence and sexual harassment detailed herein was occurring within the workplace.

---

[21] Kircher, *Willing to Die for MrBeast*, *supra* note 8.

CLASS ACTION COMPLAINT

84.    At all relevant times, on information and belief, Defendants' management, up to and including senior management and ownership, had actual and/or constructive notice that its production staff was aware of, but failed to remedy the violence and sexual harassment detailed herein.

G.    **Defendants Made Multiple False Statements to the Contestants In Connection with Beast Games Prior to the Start of the Competition.**

1.    **Defendants falsely advertised that the Competition would have 1,000 contestants, when it was actually 2,000, and this cut the odds of winning down by half of what was originally advertised.**

85.    On March 18, 2024, Amazon shared the news that "MrBeast and Amazon MGM Studios announce the new reality competition series 'Beast Games.'"[22]  In large print text just under a graphic showing Mr. Donaldson amidst a backdrop including the Amazon Prime Video® and MrBeast® logos, Amazon continued that, "The new show will premiere on Prime Video and is set to become the biggest reality competition series, where 1000 contestants will compete for a $5 million prize."[23]  See also Figure 9 below.



The new show will premiere on Prime Video and is set to become the biggest reality competition series, where 1000 contestants will compete for a $5 million prize.

*Figure 9*

---

[22] Toby, *MrBeast and Amazon MGM Studios, supra* note 1, and Figure 9.
[23] *Id.*

CLASS ACTION COMPLAINT

86.     Mr. Donaldson himself also announced that same day on his MrBeast® Twitter account about the Beast Games competition that, "I'm going to be filming the **largest game show in history** and releasing it on Prime Video! Over 1,000 contestants, $5,000,000 prize, and many other world records."[24] (Emphasis added.)

87.     Accordingly, at all relevant times, Defendants Amazon, Off One's Base, and MrBeast held themselves out collectively as the creators, promoters, and producers of the Beast Games, and all did so in order to profit from the endeavor.

88.     Defendants widely promoted, right through the first day of the Beast Games competitions on July 18, 2024, that there would be 1,000 people competing.

89.     However, the Contestants, who had traveled, and in many cases flown, to Las Vegas after having blocked off the 94-day period from June 29, 2024 through September 30, 2024 that was required by Defendants to compete in Beast Games, only first found out when the competition started that they would actually have to compete against double that amount, 2,000 contestants.

90.     This did not sit well with the Contestants, who made their feelings known to The New York Times reporter Kircher, who reported that, "Right from the start, things seemed off.  Some contestants said they had originally been told that the competition would have 1,000 participants.  (This was also the figure advertised by Prime Video earlier this year.). But upon arrival, contestants received a video message from Mr. Donaldson [in which they were informed that] 'Obviously, there's 2,000 contestants.'"[25]  Kircher went on to add that, "After learning [the Contestants] would be competing against twice as many people, some said they felt they had been misled about their odds of winning."[26]

**2.     Defendants misrepresented that reasonable meal needs would be met.**

91.     The Beast Games Production represented in the Beast Games Rules Packet that the "meals during production" would be provided by Defendants.

---

[24] MrBeast (@MrBeast), Twitter (Mar. 18, 2024 8:02 AM), https://x.com/mrbeast/status/1769741243339141413?s=46&t=5Ked1Q0pjP_C7Iej78Ug0Q, last accessed September 16, 2024.
[25] Kircher, *Willing to Die for MrBeast, supra* note 8.
[26] *Id.*

CLASS ACTION COMPLAINT

92.     Defendants failed to mention, however, that these "meals," if they could be called that, would be infrequently provided and insufficient in the number of calories in each meal, where Plaintiffs allege, by way of example, that they were fed unreasonably small portions of "cold porridge" for multiple meals in a row and dangerously-undercooked "pink" boiled chicken.  Indeed, according to local news reports, multiple ("countless")  Beast Games Contestants were taken to the hospital, including for dehydration.  Scott Roeben of Vital Vegas reported that local Desert Springs Hospital "ha[d] seen countless patients . . .  coming from 'Beast Games' due to lack of food and water'"; and that the Production had allegedly "denied food to diabetics, denied water to contestants, and at least two individuals had seizures as a result."[27]

93.     In addition to promising Contestants that Defendants would handle all travel and accommodations, Defendants also promised in the Beast Games Rules Packet that Contestants would "head home right away" after they were eliminated.

94.     The reality, however, was that although Beast Games would theoretically handle travel arrangements for Contestants upon being eliminated or after the Games concluded, the Beast Games Production was so understaffed, and the production was so chaotic, that contestants were stranded without flights home for days after the Las Vegas Production concluded.

95.     For example, Contestant 4 concluded their assignment on July 21, 2024, but the Production did not arrange a departure flight for them until days after.

96.     Some Contestants opted to book and pay for their own flights home rather than wait for the Production to do it, but many are still awaiting their promised reimbursement.  For example, Contestant 2 and Contestant 3 have submitted documentation to be reimbursed for their out-of-pocket business travel expenses, including airfare and hotel, but Defendants have not yet reimbursed them.

//

//

//

//

---

[27] Roeben, *MrBeast Shoots "Beast Games," supra* note 10.

CLASS ACTION COMPLAINT

**H.**  **The Beast Games Production Was So Void of Standards of Reasonable Care that
MrBeast® Allegedly Offered to Cover the Contestants' Therapy.**

97.    The foregoing acts by Defendants created an environment during Beast Games that was
so void of humane standards that Defendants ended up volunteering to cover the cost of the Contestants'
therapy, it was that bad.

98.    The combination of all of the foregoing created an environment in which the Contestants
suffered severe emotional distress.

99.    Defendants, apparently aware of the severe distress they caused the Contestants by their
lack of reasonable care in conducting the Production, allegedly offered to cover the Contestants'
therapy.  Pansino has reported on alleged contestants informing her that, "[Defendants] knew it was bad
because they also offered to provide therapy sessions using their own insurance."[28]



*Figure 10*

---

[28] Pansino, *The news about MrBeast 'Beast Games,'* *supra* note 18.  See also Figure 10.

CLASS ACTION COMPLAINT

I.     **Plaintiffs' Individual Experiences.**

100.     Contestant 1 was employed by Defendants in July 2024 in Las Vegas, Nevada.
Defendants arranged and paid for Contestant 1's lodging at a local hotel in Las Vegas during their
services for Defendants.  Defendants also arranged for their travel to and from Las Vegas.  Contestant 1
turned in their cell phone, as well as all electronics, and Contestant 1's bag of undergarments that they
brought with them upon their check-in to the hotel, as required by Defendants.  Contestant 1 did not
have access to their bag of undergarments during the entire time working for Defendants.  During the
time at Allegiant Stadium, Contestant 1 at times had to ask permission to go to the restroom.  Contestant
1 also observed that when some of the Contestants tried to move their sleeping bags to areas that were
quieter to sleep, they were herded back to the group.  Contestant 1 was eliminated during the
competitions in Las Vegas.  Contestant 1 was also promised $1,000 in compensation for competing in
the Beast Games in Las Vegas.  After Contestant 1's elimination they were promised an additional
$1,000 in compensation for competing in the Beast Games in Las Vegas.  Contestant 1 understood that
they would be compensated by Defendants for their services.  Defendants took more than 30 days after
Contestant 1's conclusion of services to pay Contestant 1 the promised payment.

101.     Contestant 2 was employed by Defendants in July 2024 in Las Vegas, Nevada, and in
August 2024 in Toronto, Canada.  Defendants arranged and paid for Contestant 2's lodging at local
hotels in both Las Vegas, Nevada, and Toronto Canada during their services for Defendants.
Defendants also arranged for their travel to Las Vegas, Nevada.  Contestant 2 turned in their cell phone
and smart watch, as well as all electronics, and Contestant 2's bag of undergarments that they brought
with them upon their check-in to the hotel, as required by Defendants.  Contestant 2 observed that other
contestants who tried to sneak in electronic devices were immediately terminated.  Contestant 2 did not
have access to their bag of undergarments until at least 1 ½ days into the filming of the competition.
During the time at Allegiant Stadium, Contestant 2 had to ask permission each time to go to the
restroom.  Contestant 2 made it through all of the challenges in Las Vegas.  Upon Contestant 2's
successful completion of the last challenge in Las Vegas, they were handed $50 in $1 bills.  Contestant 2
subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August
2024.  Defendants arranged for Contestant 2's lodging and travel to and from Toronto during the time

CLASS ACTION COMPLAINT

they performed their services.  Contestant 2 again had to turn in their cell phone, as well as all electronics, prior to filming, until their services had concluded.  Contestant 2 was eliminated during the competition in Toronto.  Contestant 2 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  They were also promised an additional $1,000 in compensation for competing in the Beast Games in Toronto, Canada.   Contestant 2 understood that they would be compensated by Defendants for their services.  While Defendants promised the contestants that they would reimburse them for travel and lodging during the Beast Games competition, to date they have not reimbursed Contestant 2 for the flights and ground transportation back from Las Vegas, Nevada to California.  As of the date of the filing of this Complaint, Contestant 2 still has not received the compensation promised by Defendants for their services.

102.     Contestant 3 was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada.  Defendants arranged and paid for Contestant 3's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during their services for Defendants.  Defendants also arranged for their travel to Las Vegas, Nevada.  Contestant 3 turned in their cell phone and smart watch, as well as all electronics, and Contestant 3's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants.  Contestant 3 observed that other contestants who tried to sneak in electronic devices past check in were immediately terminated from the competition.  Contestant 3 did not have access to their bag of undergarments until at least 1 and ½ days into the filming of the competition.  During the time at Allegiant Stadium, Contestant 3 at times had to ask permission to go to the restroom.  Contestant 3 made it through all of the challenges in Las Vegas.  Upon Contestant 3's successful completion of the last challenge in Las Vegas, they were handed $50 in $1 bills.  Contestant 3 subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for Contestant 3's lodging and travel to and from Toronto during the time they performed their services.  Contestant 3 again had to turn in their cell phone, as well as all electronics, prior to filming, until their services had concluded.  Contestant 3 was eliminated during the competition in Toronto.  Contestant 3 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  They were also promised an additional $1,000 in compensation for competing in the Beast Games in Toronto, Canada.  Contestant 3 understood that they

CLASS ACTION COMPLAINT

would be compensated by Defendants for their services.  While Defendants promised the contestants that they would reimburse them for travel and lodging during the Beast Games competition, to date they have not reimbursed Contestant 3 for the flights and ground transportation back from Las Vegas, Nevada to California.

103.    Contestant 4, a female, was employed by Defendants in 2024 in Las Vegas.  Defendants arranged and paid for Contestant 4's lodging at a local hotel in Las Vegas, Nevada during their services for Defendants.  Defendants also arranged for their travel to and from Las Vegas, Nevada.  Contestant 4 turned in their cell phone and smart watch, as well as all electronics, and Contestant 4's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants. Contestant 4 observed that other contestants who tried to sneak in electronic devices past check in were immediately terminated from the competition.  Contestant 4 did not have access to their bag of undergarments during the entire time working for Defendants.  During the time at Allegiant Stadium, Contestant 4 at times had to ask permission to go to the restroom.  Contestant 4 understood that they would be compensated for their services.  During their time in Las Vegas, Contestant 4 saw some male contestants hoarding team clothing and refusing to let women have access, which impacted the team compositions. Contestant 5 also witnessed male contestants physically assaulting other female contestants, and on one occasion, observed that after a male contestant had tackled a female contestant so violently that the female contestant passed out.  Contestant 4 observed that Production Staff did nothing.  Contestant 4 was eliminated during the competitions in Las Vegas.  After they were eliminated from the competition, and despite Defendants representing that they would arrange for their travel home right away, Contestant 4 remained stuck in Las Vegas for multiple days after their elimination as Defendants were somehow unable to arrange for an earlier flight for Contestant 4 back to California.  Contestant 4 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  After they were eliminated, they were promised an additional $1,000 in compensation for competing in the Beast Games in Las Vegas.  Contestant 4 understood that they would be compensated by Defendants for their services.  As of the date of the filing of this Complaint, Contestant 4 still has not received the compensation promised by Defendants for their services.

CLASS ACTION COMPLAINT

104.    CONTESTANT 5, a female, was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada.  Defendants arranged and paid for Contestant 5's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during their services for Defendants.  Contestant 5 turned in their cell phone, and Contestant 5's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants.  During the competition, on or about July 19, 2024, Contestant 5's menstrual period started.  Contestant 5 did not have access to the feminine products that they brought with them as part of their personal belongings when they checked in, and Defendants refused to allow the contestants, including Contestant 5, access to these belongings which included feminine products.  At the same time, for the first two days of the competition, and despite repeated complaints from other female contestants requesting that feminine products be provided to the female contestants, Defendants did not make feminine products available to them, including to Contestant 5.  Contestant 5 as a result started menstruating through their clothes and also had to sleep the morning of Friday, July 19, 2024, on the floor of Allegiant Stadium while bleeding through their clothes.  Contestant 5 did not have access to their bag of undergarments until the morning on July 20, 2024, and felt this put them at a disadvantage compared to other contestants who were not having to deal with menstruating through their clothes during the competition.  During their time in Las Vegas, Contestant 5 saw some male contestants hoarding team clothing and refusing to let women have access, while at the same time only allowing men access to the team clothing.  When the female contestants complained to the Beast Games staff members who were less than five feet away, they did nothing.  Contestant 5 also witnessed some of the male contestants physically assaulting other female contestants, and on one occasion, observed that after a male contestant had tackled a female contestant so violently that the female contestant passed out, that male contestant advanced while the passed out female contestant was eliminated, when the female contestant had obtained the item she was tackled for first.  Contestant 5 made it through all of the challenges in Las Vegas.  Upon Contestant 5's successful completion of the last challenge in Las Vegas, they were handed $50 in $1 bills.  Contestant 5 subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for Contestant 5's lodging and travel to and from Toronto.  Contestant 5 again had to turn in their cell phone and all electronics prior to filming, until their services had

concluded.  Contestant 5 was eliminated during the challenges in Toronto.  During their time at Allegiant Stadium, Contestant 5 at times had to ask permission to go to the restroom.  Contestant 5 expected that they would be compensated for their services.  Contestant 5 was eliminated during the competition in Toronto, Canada.  Contestant 5 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  They were also promised an additional $1,000 in compensation for competing in the Beast Games in Toronto, Canada.  Contestant 4 understood that they would be compensated by Defendants for their services.  As of the date of the filing of this Complaint, Contestant 5 still has not received the $1,000 in compensation promised by Defendants for their services in Toronto Canada, despite turning in the completed W-9 forms that were requested by Defendants.

## V.     CLASS ACTION: GENERAL ALLEGATIONS

105.     Plaintiffs bring this action pursuant to Cal. Civ. Proc. Code § 382 on behalf of themselves and the following proposed class: "All individuals who were engaged as purported contestants in the Beast Games content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024," ("**Proposed Class**" or "**Class**") for violations of the California Labor Code ("**Lab. Code**") and the Business and Professions Code ("**Bus. & Prof. Code**") §§ 17200, et seq., and 17500, and Wage Order 12-2001, for unpaid minimum wages, unpaid overtime wages, penalties failure to provide accurate wage statements or any statements, meal break penalties, rest break penalties, waiting time penalties, statutory penalties, liquidated damages, declaratory and injunctive relief, attorneys' fees and costs, interest including pre-judgment interest, and any other relief as the Court may deem fair.

106.     Contestants 4 and 5 also bring this action pursuant to Cal. Code Civ. Proc. § 382 on behalf of themselves and the following proposed subclass: "All women who were engaged as purported contestants in the Beast Games video content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024," ("**Proposed Subclass**" or "**Subclass**") for violations of California Government Code ("**Gov't Code**") §§ 12940(a) et seq., and 12923, for statutory penalties, declaratory relief and injunctive relief in the form of ordering Defendants to institute workplace reforms and training programs for employees and supervisors to prevent further harassment, including sexual harassment, as well as for punitive damages, attorneys' fees and costs, interest including pre-judgment interest, and any other relief as the Court may deem fair.

CLASS ACTION COMPLAINT

107.     As discovery progresses in this matter, Plaintiffs may find it appropriate to amend the definition of the Proposed Class and Subclass and will do so as appropriate.  Plaintiffs will provide more formal definitions of the Proposed Class and Subclass when Plaintiffs seek to certify the Class and Subclass.  Excluded from the Proposed Class and Subclass are Defendants, any entities in which any of Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Proposed Class and Subclass are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

**A.     Numerosity.**

108.     On information and belief, the Proposed Class consists of over two-thousand individuals, making joinder impracticable.

109.     On information and belief, the Proposed Subclass consists of over forty individuals, making joinder impracticable.

**B.     Ascertainability.**

110.     The Proposed Class and Subclass are ascertainable in that their members are composed of contestants who competed in the Beast Games competitions in Las Vegas, Nevada and Toronto, Canada, between July – September 2024.  The exact names of such members are identifiable using information contained in Defendants' personnel and cast records for the Production, including the Contestant Agreement application documents, which all participants in the Production were required to fill out and sign, as well as records kept by Defendants pertaining to which contestants actually did show up to participate in the Production.  This should provide the exact number of the Proposed Class and Subclass members.

**C.     Typicality.**

111.     The claims of Plaintiffs are typical of the Proposed Class and Subclass.  The claims of the Plaintiffs and the Proposed Class are based on the same legal theories, and arise from the same unlawful pattern and practices and violations of law.  Plaintiffs each participated as contestants in the Beast Games competitions in Las Vegas, Nevada and Toronto, Canada, between July – September 2024.  They

CLASS ACTION COMPLAINT

1    each sustained damages of all members of the Proposed Class and Subclass that were caused by

2    Defendants' conduct in violation of the law.

3        **D.**    **Superiority.**

4        112.    The nature of this action and the laws that apply make the class action format efficient

5    and appropriate to provide relief to the Plaintiffs and the Proposed Class and Subclass, for the following

6    reasons:

7            a.    This case involves big corporate Defendants as well as over 2,000 individual class

8                members with claims that have common issues of law and fact pertaining to their

9                engagement by Defendants;

10           b.    If each individual member of the class was required by the Court to file an individual

11               lawsuit, Defendants would be able to use their vastly larger financial resources

12               against the limited resources of these individual Plaintiffs giving them a grossly

13               unfair advantage.  Additionally, those who do not have the resources to even bring

14               individual actions would be unfairly compromised.  Additionally, the cost to the court

15               system to individually hear each of these matters would be substantial;

16           c.    The establishment of common business practices or factual occurrences would

17               establish the rights for all of the Proposed Class and Subclass to recover on the claims

18               asserted herein;

19           d.    Filing a claim with the California Labor Commission is a weaker method to address

20               the wrongs in this action due to the limitations of such avenue, including the lack of

21               discovery, as well as fewer remedies available.  Additionally, the losing party could

22               still further continue with a trial de novo in the Superior Court.

23       **E.**    **Existence and Predominance of Common Law Questions of Fact and Law.**

24       113.    Common questions of fact and law that affect the members of the Proposed Class,

25    include, but are not limited to, the following:

26           a.    Whether Defendants committed worker misclassification under California law with

27               respect to the Proposed Class;

28

32

CLASS ACTION COMPLAINT

1        b.   Whether Defendants intentionally committed worker misclassification with respect

2            to the Proposed Class;

3        c.   Whether Defendants failed to pay the Proposed Class minimum wage in violation of

4            California wage and hour laws;

5        d.   Whether Defendants failed to pay the Proposed Class overtime wages in violation of

6            California wage and hour laws;

7        e.   Whether Defendants failed to provide the Proposed Class with accurate itemized

8            statements in violation of California wage and hour laws;

9        f.   Whether Defendants failed to provide the Proposed Class with meal breaks in

10           violation of California wage and hour laws;

11        g.   Whether Defendants failed to provide the Proposed Class with rest breaks in

12           violation of California wage and hour laws;

13        h.   Whether Defendants failed to provide the Proposed Class with all wages that were

14           due upon separation in violation of California wage and hour laws;

15        i.   Whether Defendants conduct constitutes false advertising under the California Bus.

16           & Prof. Code 17500;

17        j.   Whether Defendants conduct constitutes unfair competition under the California

18           Bus. & Prof. Code;

19        k.   Whether the Proposed Class is entitled to injunctive relief;

20        l.   Whether the Proposed Class is entitled to restitution;

21        m. Whether the Proposed Class is entitled to attorneys' fees and costs;

22     114.   Common questions of fact and law that affect the members of the Proposed Subclass,

23 include, but are not limited to, the following:

24        a.   Whether Defendants' staff committed sexual harassment in violation California law

25           with respect to the Proposed Subclass;

26        b.   Whether Defendants failed to prevent sexual harassment in violation California law

27           with respect to the Proposed Subclass;

28

CLASS ACTION COMPLAINT

c.  Whether Defendants committed negligence in violation California law with respect to the Proposed Subclass;

d.  Whether the Proposed Subclass is entitled to injunctive relief;

e.  Whether the Proposed Subclass is entitled to punitive damages;  and

f.  Whether the Proposed Class is entitled to attorneys' fees and costs.

115.  Absent a class action, most of the members of the Proposed Class and Subclass would find the cost of litigating their claims to be prohibitive, leaving them without an effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation, particularly as to the Defendants' legal responsibility for its violations of the Labor Code, Government Code, and Business and Professions Code, in that it conserves the resources of the courts and the litigants and promotes consistency and efficacy of adjudication.

**F.  Adequacy.**

116.  Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Class and Subclass.  Plaintiffs have retained four law firms with experience in prosecuting complex litigation, California employment law, and class action cases.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Proposed Class and Subclass, and have the financial resources to adequately do so.  Neither the Plaintiffs, nor Plaintiff's counsel, has interests adverse to those of the other members of the Proposed Class or Subclass.

**VI.  CAUSES OF ACTION**

**A.  Count 1: Failure to Pay Minimum Wage (Lab. Code §§ 204, 1194, 1197, and 1197.1, and Wage Order No. 12-2001)**

**(Against All Defendants)**

117.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

118.  While the Contestant Agreements stated that Plaintiffs and the Proposed Class were "Volunteers," they were not truly volunteers;  in reality they were employees.  The Division of Labor Standards Enforcement Opinion Letter 1988-10-27 states that: "If the person performing the service is an employee, that person must be paid pursuant to the [Industrial Welfare Commission "IWC"] Orders.

34

CLASS ACTION COMPLAINT

If the person is truly a volunteer, with no expectation of any pay, and is not performing services of a commercial nature, the person is not covered by the IWC Orders."

119.    Plaintiffs and the Proposed Class all had an expectation of compensation.

120.    On information and belief, Defendants' classification of Plaintiffs and the Proposed Class as such was not proper, and in violation of the California Labor Code, because, on information and belief, none of the Defendants are either a religious, charitable, or nonprofit organization;  and the services that Plaintiffs and the Proposed Class were hired by Defendants' for were for Defendants' own commercial endeavors and pursuant to Defendants' customary business.

121.    Under California law, which the parties agreed would be the controlling substantive law, employers are required to pay all employees a minimum wage.  As of January 1, 2024, this wage was $16 per hour for all industries.

122.    As a pattern and practice, Defendants knowingly failed and refused to pay Plaintiffs and the Proposed Class minimum wages owed to them.  Instead, Defendants required Plaintiffs and the Proposed Class to work 24-hour shifts for days, without any wages.  Defendants, after controversy arose related to the show, claimed they would pay workers some money, but the purpose of those payments is unclear and, even if they were considered wages, would not result in Plaintiffs and the Proposed Class earning a minimum wage.

123.    Defendants therefore violated California's minimum wage laws, as set forth in Lab. Code §§ 204, 1194, 1197, and 1197.1, and Industrial Welfare Commission Wage Order ("**Wage Order**") No. 12-2001.  Defendants failed and refused to pay Plaintiffs and the Proposed Class wages for any of the hours worked, during the 24-hours a day schedule that Defendants required Plaintiffs and the Proposed Class to abide by.

124.    As a result of Defendants' failures to abide by the law, including California wage and hour laws, Plaintiffs and the Proposed Class are entitled to recover damages from Defendants in an amount equal to the minimum wages unlawfully not paid, and the interest thereon, plus applicable penalties and attorneys' fees and costs, in an amount to be proven at trial.

125.    Plaintiffs and the Proposed Class also request additional relief as further described below.

CLASS ACTION COMPLAINT

**B.**    **Count 2: Liquidated Damages for Failure to Pay Minimum Wages (Lab. Code § 1194.2)**

**(Against All Defendants)**

126.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

127.    Pursuant to Lab. Code §1194.2, in any action under Section 1194 to recover wages as a result of payment less than minimum wage, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

128.    Plaintiffs and the Proposed Class were not paid at least the minimum wage for all hours worked.

129.    Plaintiffs and the Proposed Class are entitled to recover liquidated damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon, plus attorneys' fees and costs, in an amount to be established according to proof at trial.

**C.**    **Count 3: Failure to Pay Overtime Wages (Lab. Code §§ 204, 510, and 1194, and Wage Order No. 12-2001, § 3)**

**(Against All Defendants)**

130.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

131.    California Lab. Code §§ 204, 510, and 1194 and Wage Order No. 12-2001, § 3 provides that employees are entitled to overtime pay.  This includes pay equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of 8 hours in one workday and any work in excess of 40 hours in any one workweek, and the first 8 hours worked on the 7th day of work in any one workweek, and twice the regular rate of pay for any work in excess of 12 hours in one day.  "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered and permitted to work, whether or not required to do so, and whether or not actually performing services during the entire shift.

132.    Plaintiffs and the Proposed Class worked more than 8 hours per day and 40 hours per week, but were not paid overtime wages for that work.

36

CLASS ACTION COMPLAINT

133.    As a result, pursuant to Labor Code Section 1194, Plaintiffs and the Proposed Class are entitled to recover unpaid overtime wages and interest thereon, plus attorneys' fees and costs, in an amount to be established at trial.

**D.    Count 4: Sexual Harassment (Gov't. Code §§ 12940(a) et seq., 12923 and 12965)**
**(By the Proposed Subclass Against All Defendants)**

134.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

135.    At all relevant times hereto, the California Fair Employment and Housing Act ("**FEHA**"), including in particular Gov't Code §§ 12940(a) *et seq.*, and 12923 were in full force and effect and were binding upon Defendants. This subsection imposes an ongoing duty on Defendants to refrain from harassing an employee on the basis of gender or sex, from creating a hostile work environment and to prevent discrimination and harassment on the basis of gender and sex.

136.    At all relevant times, the Proposed Subclass members were members of multiple protected classes within the meaning of Government Code §12940 which refers to harassment on the bases of one or more of the protected characteristics under FEHA, and here based upon Plaintiff's sex and/or gender.

137.    FEHA requires Defendants to refrain from harassing, or creating, or maintaining a hostile work environment against an employee based upon the employee's sex or gender as set forth hereinabove.

138.    Defendants' harassing conduct was severe or pervasive, was unwelcome by the Proposed Subclass members, and a reasonable person in their circumstances would have considered the work environment to be hostile or abusive.

139.    The Proposed Subclass members in fact did find the unwelcome, sexually harassing conduct by Defendants to be hostile or abusive to themselves.

140.    Defendants violated the FEHA and the public policy of the State of California, which is embodied in the FEHA by creating a hostile work environment and harassing the Proposed Subclass members because of their gender and/or sex as set forth hereinabove.

CLASS ACTION COMPLAINT

141.    The above said acts were perpetrated collectively and systematically upon the Proposed Subclass members by the Defendants' staff members who supervised the Proposed Subclass members, and also the male co-workers of the Proposed Subclass members, and Defendants knew or should have known of the conduct but failed to take immediate and appropriate corrective action.

142.    The above said acts of Defendants constitute violations of the FEHA and violations of the public policy of the State of California. As a proximate result of the wrongful conduct of the Defendants, and each of them, the Proposed Subclass members suffered and continue to suffer from serious bodily injury, financial and pecuniary losses including pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

143.    The foregoing conduct of Defendants individually, and/or by and through their officers, directors, and/or managing agents, was intended by the Defendants to cause injury to the Proposed Subclass members or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of the Proposed Subclass members, or subjected the Proposed Subclass members to cruel and unjust hardship in conscious disregard of their rights such as to constitute malice, oppression, or fraud under Civil Code §3294(b), thereby entitling the Proposed Subclass to punitive damages in an amount appropriate to punish or make an example of Defendants.

144.    Plaintiffs additionally request a reasonable award of attorneys' fees and costs, including expert witness fees, under Gov't Code § 12965, and injunctive relief as set forth in the Prayer below.

E.    **Count 5: Failure to Prevent Harassment (Gov't. Code §§ 12940(a) et seq. and 12965) (By the Proposed Subclass Against All Defendants)**

145.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

146.    At all times hereto, the FEHA, including in particular Gov't Code § 12940(k) et seq., was in full force and effect and was binding upon Defendants. This subsection imposes a duty on Defendants to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring. As alleged above, Defendants violated this subsection and breached their duty by failing to take all reasonable steps (or any at all) necessary to prevent harassment from occurring.

CLASS ACTION COMPLAINT

147.    The above said acts of Defendants constitute violations of the FEHA. As a proximate result of the wrongful conduct of the Defendants, and each of them, the Proposed Subclass members suffered and continue to suffer from serious bodily injury, financial and pecuniary losses including pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

148.    The foregoing conduct of Defendants individually, and/or by and through their officers, directors, and/or managing agents, was intended by the Defendants to cause injury to the Proposed Subclass members or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of the Proposed Subclass members or subjected them to cruel and unjust hardship in conscious disregard of the Proposed Subclass' rights such as to constitute malice, oppression, or fraud under Civil Code §3294(b), thereby entitling the Proposed Subclass to punitive damages in an amount appropriate to punish or make an example of Defendants.

149.    Plaintiffs request a reasonable award of attorneys' fees and costs, including expert witness fees under Gov't Code § 12965, and injunctive relief as set forth in the Prayer below.

**F.    Count 6: Negligent Infliction of Emotional Distress**

**(By the Proposed Subclass Against All Defendants)**

150.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

151.    Defendants owed a duty of care to provide Plaintiffs with a safe and healthful place to work pursuant to California law, including, but not limited to, Labor Code Section 6300 *et. seq.,* including, but not limited to Sections 6400, 6401, 6401.7 , 6401.9, 6402 and 6403.  Defendants breached that duty by negligently engaging in conduct that caused, and that conveyed an intent, or that reasonably was perceived to convey an intent, to cause physical harm or to place women in fear of physical harm, and that serves no legitimate purpose.  It was foreseeable that such conduct would result in, or had a high likelihood of resulting in, injury, psychological trauma, or stress, to female employees.  Such conduct includes, but is not limited, allowing male contestants to physically assault female contestants without any accountability (which essentially encouraged male contestants to hit and tackle women and sent a message to female contestants that such aggression against them was fair game), refusing to

CLASS ACTION COMPLAINT

1 provide feminine products to female employees and then mocking them when suffering or experiencing

2 related difficulties.

3       152.    Defendants' conduct as alleged herein caused Plaintiffs and the Proposed Subclass to

4 suffer serious emotional distress, including suffering, anguish, fright, horror, nervousness, anxiety,

5 worry, fright, horror, nervousness, anxiety, worry, shock, humiliation, and/or shame, such that an

6 ordinary, reasonable person would be unable to cope with it.

7       153.    This is further demonstrated by Defendants allegedly offering to cover the Contestants'

8 therapy sessions using their own insurance.

9       154.    Defendants' conduct was a substantial factor in causing the Plaintiffs and the Proposed

10 Subclass's serious emotional distress.

11       155.    As a proximate result of the wrongful conduct of the Defendants, Plaintiffs and Subclass

12 members suffered and continue to suffer from serious emotional distress, including suffering, anguish,

13 fright, horror, nervousness, anxiety, worry, fright, horror, nervousness, anxiety, worry, shock,

14 humiliation, and/or shame, such that an ordinary, reasonable person would be unable to cope with it, all

15 of which injuries continue to persist and will persist into the future.

16     **G.**     **Count 7: Failure to Provide Uninterrupted Meal Breaks (Lab. Code §§ 512 and**

17                **226.7, and Wage Order No. 12-2001 § 11)**

18                **(Against All Defendants)**

19       156.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs

20 as though set out at length herein.

21       157.    Pursuant to Labor Code §512 and Wage Order No. 12-2001, no employer shall employ

22 any person for a work period of more than 5 hours without a meal period of not less than 30 minutes.

23       158.    Pursuant to Labor Code §226.7, an employer shall pay its employee an additional hour of

24 pay at the regular rate of pay for each workday in which the meal period was not provided.

25       159.    Defendants did not provide Plaintiffs and the Proposed Class with a meal period on any

26 workdays and failed to compensate Plaintiffs and the Proposed Class for one hour of pay for each time a

27 meal was not provided during a workday.

28

CLASS ACTION COMPLAINT

160.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California law.

**H.    Count 8: Failure to Provide Uninterrupted Rest Breaks (Lab. Code § 226.7, and Wage Order No. 12-2001)**

**(Against All Defendants)**

161.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

162.    Pursuant to Labor Code §226.7 and the applicable wage order, an employer may not require an employee to work during any rest period mandated by law.  Pursuant to Wage Order 12-2001, employees are provided with 10-minute rest breaks per 4 hours of work, or major portion thereof.  If an employer fails to comply with this law, the employee is entitled to one hour of pay at the employee's regular rate of pay for each workday that the rest period was not provided.

163.    Defendants did not provide Plaintiffs and the Proposed Class with rest breaks on any workdays and failed to compensate Plaintiffs and the Proposed Class for one hour of pay for each time a rest break was not provided during a workday.

164.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California law.

**I.    Count 9: Failure to Provide Wages Promptly Upon Termination (Lab. Code §§ 201, 202, and 203)**

**(Against All Defendants)**

165.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

166.    Pursuant to Labor Code §201, employees are entitled to all compensation due immediately upon discharge.  Pursuant to Labor Code §202, employees are entitled to all compensation due within 72 hours after the time of quitting.

41

CLASS ACTION COMPLAINT

167.    Pursuant to §203 and the applicable wage order, if an employer fails to timely pay an employee upon discharge or resignation, the employee is entitled to waiting time penalties, constituting their regular rate of pay for up to 30 days.

168.    Defendants did not provide Plaintiffs and the Proposed Class, any Defendants willfully failed to provide, compensation promptly upon discharge or resignation;  as such, the Defendants are liable for waiting time penalties, in the amount of compensation at the employee's regular rate of pay for each day the wages remain unpaid, up to 30 days.

169.    Defendants willfully failed and continued to fail to pay Plaintiffs and the Proposed Class wages pursuant to Labor Code §§201 and 202.  Accordingly, Plaintiffs and the Proposed Class are entitled to waiting time penalties, plus attorneys' fees and costs, in an amount to be proven at trial.

170.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California law.

J.    **Count 10: Failure to Provide Accurate and Itemized Wage Statements (Lab. Code §§ 226 and 226.3, and Wage Order No. 12-2001)**

**(Against All Defendants)**

171.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

172.    California Lab. Code §§ 226 and Wage Order 12-2001(2) provides that, "At the time of payment of wages or compensation, the employer shall furnish the employee with an itemized list showing the respective deductions made from the total amount of wages or compensation."

173.    Plaintiffs and the Proposed Class are employees of Defendants.

174.    Plaintiffs and the Proposed Class, as employees of the Defendants, were entitled to receive accurate itemized wage statements.

175.    Defendants failed and refused to provide Plaintiffs and the Proposed Class with the required itemized statements in writing showing the respective deductions made from the total amount of wages or compensation, or any statements at all, or keep proper records, as required by Lab. Code §§ 226, 226.3 and Wage Order 12-2001(2).

42

CLASS ACTION COMPLAINT

176.    Defendants have knowingly and intentionally failed and continue to fail to comply with Labor Code Section 226.  As a result, Plaintiffs and the Proposed Class are entitled to penalties pursuant to Section 226 and 226.3, plus attorneys' fees and costs.

K.    **Count 11: Failure to Indemnify for Employee Expenses and Losses in Discharging Duties (Lab. Code § 2802)**

**(Against All Defendants)**

177.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

178.    California Lab. Code § 2802 requires an employer to indemnify their employee for all necessary expenditures or losses that are incurred by the employee in direct consequence of the discharge of their duties. Defendants violated this provision by failing to reimburse Plaintiffs and the Class Members for their expenditures on business expenses incurred for the Defendants.

179.    As a direct result of Defendants' conduct, Plaintiffs and the Class have suffered monetary damages in amounts to be determined at trial.

180.    California Labor Code provides for an award of reasonable attorney's fees and costs incurred by a prevailing plaintiff in an action brought under its provisions. Plaintiffs and the Proposed Class have incurred and will continue to incur attorneys' fees and costs herein.

L.    **Count 11: Unfair Business Practices (Bus. & Prof. Code § 17200)**

**(Against All Defendants)**

181.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

182.    Bus. & Prof. Code § 17200 prohibits unfair competition by way of any unlawful, unfair or fraudulent business act or practice.

183.    As set forth above, Defendants engaged in unlawful and unfair business practices, including, but not limited to violating the above referenced wage-and-hour laws, intentionally misclassifying employees, requiring Plaintiffs and the Proposed Class to enter into illegal contracts, and providing false information to the State of Nevada to obtain unearned tax credits.

CLASS ACTION COMPLAINT

184.    In addition, Plaintiffs and the Proposed Class also allege an unfair competition claim derived from Defendants' violation of California Business & Professions Code § 17539.1, which prohibits "any person in the operation of any contest or sweepstakes" from (3) ("Misrepresenting in any manner the odds of winning any prize") and (4) ("Misrepresenting in any manner, the rules, terms, or conditions of participation in a contest."). Here, as described above, Defendants misrepresented to prospective contestants that if they were selected and agreed to serve as Contestants they would, among other things, be competing against one thousand (1000) people for a five-million-dollar ($5,000,00) prize. However, Plaintiffs and the Proposed Class discovered only after they arrived that the Contestant pool was actually 2000 people, not 1000, which materially reduced Plaintiffs and Proposed Class's chance of winning the competition.

185.    Plaintiffs and the Proposed Class lost money and/or property as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of Plaintiffs and the Proposed Class, each of whom incurred costs to serve as Contestants in the Beast Games and did so under false pretenses.

186.    Public injunctive relief is necessary here to prohibit conduct that is injurious to the general public. MrBeast® has over 300 million followers online and will likely garner more fans after the release of the Beast Games Production with Amazon. Millions of people could apply to participate in the next Beast Games, and MrB2024 and Amazon should be required to represent truthfully the conditions of the Beast Games and to adhere to the employment protections required by California law.

187.    Accordingly, Plaintiffs and the Proposed Class are entitled to injunctive relief requiring Defendants to truthfully represent the conditions of the Beast Games , including the number of contestants, before potential contestants apply to participate; to equitably conduct the Beast Games so that women are not unfairly disadvantaged; and to accurately classify future contestants as employees, rather than "volunteers" or "independent contractors."

## M.    Count 12: False Advertising Unfair Business Practices (Bus. & Prof. Code § 17500) (Against Defendants MrB2024 and Amazon)

188.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

CLASS ACTION COMPLAINT

189.    California Business and Professions Code § 17500 prohibits any person, corporation, or employee thereof to induce the public to enter into any obligation relating thereto, to make or disseminate . . . in any [] manner or means whatever . . . any statement, concerning … those services . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

190.    Plaintiffs and the Proposed Class allege that Defendants made statements to induce potential contestants to enter into the Contestant Agreement that were untrue or misleading, and that Defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.

191.    As described above, Defendants misrepresented to prospective contestants that if they were selected and agreed to serve as Contestants they would, among other things, be competing against one thousand (1000) people for a five-million-dollar ($5,000,00) prize.  However, after Plaintiffs and the Proposed Class put their lives on hold and arrived in Las Vegas, typically via air travel, to compete in the Beast Games, they discovered that the Contestant pool was actually two thousand (2000) people, not one thousand (1000), which materially reduced Plaintiffs and Proposed Class's chance of winning the competition, cutting them in half.

192.    Any reasonable consumer would be deceived by the blanket false material statement concerning the number of competitors in the Beast Games.

193.    Moreover, Defendants' false statement about the number of contestants is unlawful as a matter of law under California Business & Professions Code § 17539.1, which prohibits "any person in the operation of any contest or sweepstakes" from (3) ("Misrepresenting in any manner the odds of winning any prize") and (4) ("Misrepresenting in any manner, the rules, terms, or conditions of participation in a contest.").

194.    Accordingly, Plaintiffs and the Proposed Class are entitled to public injunctive relief requiring Defendants to truthfully represent the conditions of the Beast Games , including the number of contestants, before potential contestants apply to participate; along with any other penalties or remedies deemed appropriate as determined after trial.

CLASS ACTION COMPLAINT

N.    **Count 13: Declaratory Relief**

**(Against All Defendants)**

195.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

196.    Plaintiffs and the Proposed Class assert claims for declaratory relief under California Code of Civil Procedure Section 1060.

197.    Plaintiffs and the Proposed Class have interests under the written Contestant Agreements as well as the statutes governing California employment law.

198.    An actual controversy exists relating to the legal rights and duties of the parties.

199.    Plaintiffs and the Proposed Class and Subclass are seeking declaratory relief to define their rights to avoid prospective harm.  Namely, Plaintiffs and the Proposed Class are asking the Court to declare that the Contestants were not properly classified as Volunteers under the Contestant Agreement and instead the economic realities of the Beast Games contestant arrangement support an employment designation.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Proposed Classes, request that the Court:

1)  Certify this case as a class action on behalf of the Class defined above;  or in the alternative, certify a class for liability only, or for other limited issues pursuant to Cal. Rule of Court 3.765(b);

2)  Appoint Plaintiffs Contestant 1, Contestant 2, Contestant 3, Contestant 4, and Contestant 5 as Class representatives;

3)  Certify the subclass action on behalf of the Subclass defined above;  or in the alternative, certify a subclass for liability only, or for other limited issues pursuant to Cal. Rule of Court 3.765(b);

4)  Appoint Contestants 4 and 5 as the subclass representatives for the Subclass defined above.

5)  Appoint the law firms of Pafundi Law Firm, APC, Singian Law, Stuart Alban Law, and Whang Law Firm, P.C., as Class Counsel;

6)  Order Class Notice to all Class Members defined above;

CLASS ACTION COMPLAINT

7) Order Declaratory Relief as follows:

    a.  That the Court declare that Plaintiffs and the Proposed Class were willfully misclassified in violation of Lab. Code §§ 226.8 and 3351, and award any penalties for each violation as to each member of them;

    b.  That the Court declare that Defendants' failure to pay wages to Plaintiffs and the Proposed Class for all hours worked violates Lab. Code §§ 204, 510, 558, 1194, and 1197;

    c.  That the Court declare that Defendants' failure to provide uninterrupted meal breaks to Plaintiffs and the Proposed Class violates Lab. Code §§ 226.7, 512, and Wage Order No. 12-2001, to the extent they failed to provide at least one-half hour of time in which Plaintiffs and the Proposed Class were relieved of all duties for every five hours of work;

    d.  That the Court declare that Defendants' failure to provide uninterrupted rest breaks to Plaintiffs and the Proposed Class violates Lab. Code §§ 226.7, 512, 558 and Wage Order No. 12-2001, to the extent they failed to provide at least 10 minutes of an uninterrupted rest period to Plaintiffs and the Proposed Class Members were relieved of all duties for every four hours of work;

    e.  That the Court declare that, as to Plaintiffs and the Proposed Class whose employment with Defendants have terminated, that Defendants have violated Lab. Code §§ 201-203 by willfully failing to pay such Class Members compensation due at the time of termination of employment or within 72 hours thereafter;

    f.  That the Court declare that Defendants' failure to furnish accurate and itemized wage statements, or any statements at all to Plaintiffs and the Proposed Class violates Lab. Code § 226;

    g.  That the Court declare that Defendants' conduct violates Gov't Code §§ 12940(a) et seq. and 12923;

    h.  That the Court declare that Defendants' violated Bus. & Prof. Code §§ 17200, et seq. as to Plaintiffs and the Proposed Class;

8) Preliminarily and permanently enjoin Defendants from engaging in the practices alleged herein;

CLASS ACTION COMPLAINT

9)  Award injunctive relief in the form of ordering Defendants to institute workplace reforms and training programs for employees and supervisors to prevent further harassment;

10) Award all wages owed by Defendants to Plaintiffs and the Proposed Class, including unpaid minimum wages, overtime wages, and liquidated damages;

11) Order that Defendants reimburse Plaintiffs and the Proposed Class for all unreimbursed business expenses incurred in relation to their employment;

12) Award Plaintiffs and the Proposed Class one hour of additional pay for each required uninterrupted meal break that was not provided pursuant to pursuant to Lab. Code § 226.7 and Wage Order No. 12-2001;

13) Award Plaintiffs and the Proposed Class one hour of additional pay for each required uninterrupted rest break that was not provided pursuant to pursuant to Lab. Code § 226.7 and Wage Order No. 12-2001;

14) Award Plaintiffs and the Proposed Class penalties for Defendants' failure to provide accurate and itemized wage statements, pursuant to Lab. Code §§ 226 and 226.3;

15) Award waiting time penalties due to Plaintiffs and the Proposed Class, pursuant to Lab. Code § 203;

16) Order restitution to Plaintiffs and the Proposed Class for Defendants' unlawful business practices, as described herein, pursuant to Bus. & Prof. Code §§ 17200, et seq.;

17) Award punitive damages to the Proposed Subclass, pursuant to Civ. Code § 3294;

18) Award attorneys' fees and costs pursuant to Code Civ. Proc. § 1021.5, Lab. Code §§ 218.5, 226, 1194, and 2698, et. seq., Gov't Code § 12965, and any other applicable law;

19) Award interest to the maximum extent allowed by law; and

//
//
//
//
//
//

CLASS ACTION COMPLAINT

1    20) For such other and further relief as the Court deems just and proper.

2    Date: September 16, 2024               PAFUNDI LAW FIRM, APC

3

4                                          By: _Robert Pafundi_
                                               Robert N. Pafundi
5                                          Attorneys for Plaintiffs and all others similarly situated.

6

    Date: September 16, 2024               SINGIAN LAW
7

8                                          By: _Lizelle Brandt_
9                                              Lizelle S. Brandt
                                               Andrew J. Kubik
10                                         Attorneys for Plaintiffs and all others similarly situated.

11   Date: September 16, 2024              STUART ALBAN LAW

12
                                           By: _Courtney Stuart-Alban_
13
                                               Courtney Stuart-Alban
14                                         Attorneys for Plaintiffs and all others similarly situated.

15

    Date: September 16, 2024               WHANG LAW FIRM, P.C.
16

17                                         By: _____
18                                             Arthur Y. Whang
                                           Attorneys for Plaintiffs and all others similarly situated.
19

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28

                                      49
CLASS ACTION COMPLAINT

1

## VIII.  <u>JURY DEMAND</u>

2

Plaintiffs hereby demands a trial by jury on all issues so triable.

3  Date: September 16, 2024                    PAFUNDI LAW FIRM, APC

4

5                                              By: _Robert Pafundi_____

6                                                  Robert N. Pafundi
                                                Attorneys for Plaintiffs and all others similarly situated.

7

8  Date: September 16, 2024                    SINGIAN LAW

9                                              By: _Lizelle Brandt_____

10                                                 Lizelle S. Brandt
                                                   Andrew J Kubik

11                                              Attorneys for Plaintiffs and all others similarly situated.

12

13  Date: September 16, 2024                   STUART ALBAN LAW

14                                             By: _Courtney Stuart-Alban_____

15                                                 Courtney Stuart-Alban
                                               Attorneys for Plaintiffs and all others similarly situated.

16

17  Date: September 16, 2024                   WHANG LAW FIRM, P.C.

18                                             By: _____

19                                                 Arthur Y. Whang
                                               Attorneys for Plaintiffs and all others similarly situated.

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT B

1 | Robert N. Pafundi (SBN 102847)
   | PAFUNDI LAW FIRM, APC
2 | 11693 San Vicente Blvd., Ste. 824
   | Los Angeles, CA 90049
3 | Telephone: 424-832-3502
   | Email: robert@pafundilawfirm.com
4 |

5 | Lizelle S. Brandt (SBN 228250)                    ***UNREDACTED***
   | Andrew J. Kubik (SBN 246902)
6 | SINGIAN LAW
   | 1055 E. Colorado Blvd., Ste. 500
7 | Pasadena, CA 91106
   | Telephone: 626-844-5050
8 | Email: lizelle@singianlaw.com
   | Email: andrew@singianlaw.com
9 | (Plaintiffs' Counsel continued on next page)

Attorneys for Plaintiffs CONTESTANT 1,
CONTESTANT 2, CONTESTANT 3, CONTESTANT 4,
CONTESTANT 5, CONTESTANT 6, and the Proposed Class

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| CONTESTANT 1, a California resident, CONTESTANT 2, a California resident, CONTESTANT 3, a California resident, CONTESTANT 4, a California resident, CONTESTANT 5, a United States resident, CONTESTANT 6, a United States resident, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MRB2024, LLC, a North Carolina Limited Liability Company;  OFF ONE'S BASE, LLC, a North Carolina Limited Liability Company; AMAZON ALTERNATIVE LLC, a California Limited Liability Company; MYSTICART PICTURES, LLC and DOES 1-100, inclusive, <br><br> Defendants. | **CASE NO. 24STCV24042** <br><br> **First Amended Class Action Complaint For:** <br> 1. **Failure to Pay Minimum Wages;** <br> 2. **Liquidated Damages for Failure to Pay Minimum Wages;** <br> 3. **Failure to Pay Overtime;** <br> 4. **Sexual Harassment;** <br> 5. **Failure to Prevent Harassment;** <br> 6. **Negligent Infliction of Emotional Distress;** <br> 7. **Failure to Provide Uninterrupted Meal Breaks;** <br> 8. **Failure to Provide Uninterrupted Rest Breaks;** <br> 9. **Failure to Pay Wages Promptly Upon Termination;** <br> 10. **Failure to Provide Accurate and Itemized Wage Statements;** <br> 11. **Failure to Indemnify for Employee Expenses and Losses in Discharging Duties;** <br> 12. **Unfair Business Practices;** <br> 13. **Unfair Business Practices;** <br> 14. **False Advertising; and** <br> 15. **Declaratory Relief** <br> **Jury Trial Demanded** |

FIRST AMENDED CLASS ACTION COMPLAINT

*(Plaintiffs' Counsel continued from prior page)*

Courtney Stuart-Alban (SBN 225513)
STUART ALBAN LAW
87 N Raymond Ave, Ste 200
Pasadena, CA 91103
Telephone: 323-405-9898
Email: courtney@stuartalbanlaw.com

Arthur Y. Whang (SBN 203916)
WHANG LAW FIRM, P.C.
5850 Canoga Ave., Ste 400
Woodland Hills, CA 91367
Telephone: 310-479-7300
Email: arthur@whanglaw.com

FIRST AMENDED CLASS ACTION COMPLAINT

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   JURISDICTION AND VENUE ...........................................................................5

III.  PARTIES .................................................................................................................5

IV.   FACTS ....................................................................................................................6

A.   The Contestants Engaged in What Appeared To Be a Thorough Application and Vetting Process for Beast Games. ...........................................................6

B.   The Contestant Agreements that the Contestants Entered Into with Production Defendants Included a California Choice-of-Law Provision. ..............................7

C.   The Contestants Were "Employees" Under California law (and alternatively Nevada law), but Defendants Intentionally Misclassified Them to Their Economic Advantage. .......................................................................................................8

1.   The Contestants were not volunteers.  The Contestants were promised and received compensation in exchange for their services. ...........................8

2.   The Contestants had no autonomy. Defendants exercised complete control. ......10

3.   The Contestants performed work that was in the usual course and scope of Defendants' businesses. ..........................................................................15

4.   The Contestants are not customarily engaged in an independently established business of the same nature as the work performed for Defendants. ...............................................................................................15

D.   Defendants Misclassified the Contestants as "Volunteers" to Avoid their Employment Obligations under California law (and alternatively Nevada law) and to Wrongfully Receive Unearned Tax Credits From Nevada. .............................16

E.   Defendants Required the Contestants to Sign an Unconscionable Agreement with Illegal and Unenforceable Terms. .........................................................................17

F.   Defendants Failed to Provide a Safe and Healthful Place of Employment, to the Particular and Collective Detriment of the Female Contestants, Who Suffered Sexual Harassment. ...........................................................................................18

1.   Purported "How to Succeed in MrBeast Production" handbook states that, "It's okay for the boys to be childish," and "If talent wants to draw a dick on the white board in the video or do something stupid, let them... Really do everything you can to empower the boys when filming and help them make content.  Help them be idiots." ........................................................19

2.   Helping "the boys" "make content" apparently translated to allowing men to tackle women while "MrBeast [was] standing on his podium, looking down watching all of [the Contestants] fight for a chance at $5 million." ...........20

3.   Beast Games created hostile conditions where women were forced to endure the severe embarrassment and unfair disadvantage of being denied access to menstruation products and clean underwear by Beast Games staff who reportedly laughed at their predicament. ...................................21

4.   Defendants failed to prevent sexual harassment and violence from occurring despite having actual notice that these problems had occurred at the Production's initial "testing" location in Las Vegas. ...................................23

G.   Production Staff Influenced the Outcome of the First Competition in Toronto, Resulting in Many of the Contestants Being Unfairly Eliminated. ...................23

H.   Defendants Made Multiple False Statements to the Contestants In Connection with Beast Games Prior to the Start of the Competition. ....................................24

iii

1.      Defendants falsely advertised that the Competition would have 1,000
        contestants, when it was actually 2,000, and this cut the odds of winning
        down by half of what was originally advertised. ................................................24
2.      Defendants misrepresented that reasonable meal needs would be met. ...............26

I.      The Beast Games Production Was So Void of Standards of Reasonable Care that
        MrBeast® Allegedly Offered to Cover the Contestants' Therapy. ...........................27
J.      Plaintiffs' Individual Experiences. ..............................................................................28

V.      CLASS ACTION: GENERAL ALLEGATIONS ....................................................34
        A.      Numerosity. ..........................................................................................................35
        B.      Ascertainability. ..................................................................................................36
        C.      Typicality. ............................................................................................................36
        D.      Superiority. ..........................................................................................................36
        E.      Existence and Predominance of Common Law Questions of Fact and Law. ......37
        F.      Adequacy. .............................................................................................................39

VI.     CAUSES OF ACTION .....................................................................................................39
        A.      Count 1: Failure to Pay Minimum Wage (Lab. Code §§ 204, 1194, 1197, and
                1197.1, and Wage Order No. 12-2001) (NRS 608.250 et seq.)................................39
        B.      Count 2: Liquidated Damages for Failure to Pay Minimum Wages (Lab. Code §
                1194.2) ..................................................................................................................40
        C.      Count 3: Failure to Pay Overtime Wages (Lab. Code §§ 204, 510, and 1194, and
                Wage Order No. 12-2001, § 3) (NRS 608.018 et seq.)........................................41
        D.      Count 4: Sexual Harassment (Gov't. Code §§ 12940(a) et seq., 12923 and 12965)
                (NRS 200.571) .....................................................................................................42
        E.      Count 5: Failure to Prevent Harassment (Gov't. Code §§ 12940(a) et seq. and
                12965) ...................................................................................................................43
        F.      Count 6: Negligent Infliction of Emotional Distress ...........................................44
        G.      Count 7: Failure to Provide Uninterrupted Meal Breaks (Lab. Code §§ 512 and
                226.7, and Wage Order No. 12-2001 § 11) (NRS 608.019 et seq.).......................45
        H.      Count 8: Failure to Provide Uninterrupted Rest Breaks (Lab. Code § 226.7, and
                Wage Order No. 12-2001) (NRS 608.019 et seq.)...............................................46
        I.      Count 9: Failure to Provide Wages Promptly Upon Termination (Lab. Code §§
                201, 202, and 203) (NRS 608.020)......................................................................47
        J.      Count 10: Failure to Provide Accurate and Itemized Wage Statements (Lab. Code
                §§ 226 and 226.3, and Wage Order No. 12-2001) (NRS 608.110 et seq.) ...........47
        K.      Count 11: Failure to Indemnify for Employee Expenses and Losses in
                Discharging Duties (Lab. Code § 2802) ...............................................................48
        L.      Count 12: Unfair Business Practices (Bus. & Prof. Code § 17200) – Unfair
                Influence of Competition Outcome .......................................................................49
        M.      Count 13: Unfair Business Practices (Bus. & Prof. Code § 17200) – False
                Advertising............................................................................................................50
        N.      Count 14: False Advertising Unfair Business Practices (Bus. & Prof. Code §
                17500) ...................................................................................................................51
        O.      Count 15: Declaratory Relief.................................................................................52

VII.    PRAYER FOR RELIEF ....................................................................................................53

VIII.   JURY DEMAND ...............................................................................................................56

FIRST AMENDED CLASS ACTION COMPLAINT

CONTESTANT 1, CONTESTANT 2, CONTESTANT 3, CONTESTANT 4, CONTESTANT 5, and CONTESTANT 6 ("**Plaintiffs**"), individually, and on behalf of the Proposed Class, allege:

## I.    INTRODUCTION

1.    Plaintiffs bring this action on behalf of themselves and a proposed nationwide and worldwide class consisting of "all individuals who were engaged as purported contestants in the Beast Games content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024."  Defendant production companies and Amazon shamelessly exploited the labor of approximately two thousand people who served as contestants ("**Contestants**") on the forthcoming $100-million-dollar MrBeast®-Amazon production Beast Games ("**Beast Games**" or "**Production**"), which Amazon promotes as "the world's largest live gameshow" with the "biggest single prize in the history of television and streaming."[1]  The Beast Games' entertainment value arises directly from the physical and emotional labor of the Contestants who compete under pressure-cooker conditions for life-changing prize money, with one person purportedly to win five million dollars ($5,000,000) in the end.

2.    Defendant MRB2024, LLC ("**MrB2024**") is a production company believed to be owned in whole or part, directly or indirectly, by James ("Jimmy") Donaldson, the creator and face of the YouTube-originated MrBeast® brand.  Mr. Donaldson (aka "**MrBeast**") is a 26-year-old content creator who, on information and belief, has the most YouTube® subscribers in the world and is the first YouTube billionaire.[2] [3]  The MrBeast® entertainment empire produces "stunt philanthropy," which typically features MrBeast performing corporate-sponsored, attention-getting philanthropy for publicity. The business model essentially is that MrBeast performs giving away *some* corporate money – whether pallets of cash, cars, or even houses to strangers or followers – and his corporate sponsors compensate him with even *more* corporate money.

---

[1] Mekeisha Madden Toby, *MrBeast and Amazon MGM Studios announce the new reality competition series 'Beast Games,'* Amazon (Mar. 18, 2024), https://www.aboutamazon.com/news/entertainment/beast-games-mrbeast-prime-video, last accessed September 16, 2024;  Gen Salinas, *MrBeast strikes $100 million deal with Amazon for Beast Games*, Creator Handbook (Mar. 20, 2024), https://www.creatorhandbook.net/mrbeast-strikes-100-million-deal-with-amazon-for-beast-games/, last accessed September 16, 2024.
[2] MrBeast® YouTube channel, https://www.youtube.com/mrbeast, last accessed September 16, 2024.
[3] Brian Warner, MrBeast is Now Officially A Billionaire (Jun. 12, 2024), https://www.celebritynetworth.com/articles/billionaire-news/mrbeast-is-now-officially-a-billionaire/, last accessed September 16, 2024.

FIRST AMENDED CLASS ACTION COMPLAINT

3.      Defendant Amazon Alternative, LLC ("**Amazon Alternative**" or "**Amazon**") is, on information and belief, the unscripted television division of Amazon Studios, which reportedly was previously run by Mark Burnett at MGM Worldwide Television Group ("**MGM**") before Amazon Studios acquired the division in the Amazon MGM merger.  Amazon Alternative creates content for Amazon's "Prime" streaming service, which boasts over 200 million paid subscribers.[4]

4.      These two commercial giants – MrBeast® and Amazon® – partnered with production company defendant Off One's Base, LLC ("**Off One's Base**") (collectively "**Defendants**") to produce Beast Games, which would be filmed in Las Vegas, Nevada, USA, and Toronto, Ontario, Canada from approximately mid-July 2024 through mid-September 2024.  Defendant MysticArt Pictures, LLC ("**MysticArt**") was responsible for staffing the Production with contestants, including publicly promoting the application process and screening all applications.

5.      Mr. Donaldson, who has publicly represented that all MrBeast® contestants get paid if they compete for just five minutes, gushed to his fans online about the bigger-than-ever scale of the Amazon-sponsored Beast Games, stating that money was "not a constraint," and that Amazon had given Mr. Donaldson "all creative control" and the ability to do "whatever [he] wanted."[5] [6]

6.      Unfortunately, the supposedly magnanimous MrBeast® did not want to use the alleged unconstrained resources to provide fair wages, or even bare-minimum-legal working conditions, to the 2,000+ Contestants whose labor comprised the core commercial value of Beast Games.  Instead, Defendants employed superior bargaining power to coerce the Contestants to sign unconscionable contracts with illegal terms and illusory obligations and also knowingly mischaracterized the Contestants as "volunteers" to avoid Defendants' employment obligations under California law, despite specifically choosing California law to govern disputes related to Beast Games.

---

[4] Todd Spangler, *Prime Video Now Reaches More than 200 Million Monthly Viers, TV Ads 'Off to a Strong Start,' Amazon CEO Says*, Variety (Apr. 11, 2024), https://variety.com/2024/digital/news/amazon-prime-video-200-million-monthly-viewers-tv-advertising-ceo-1235967913/, last accessed September 16, 2024.
[5] Colin and Samir, *MrBeast reveals his plans for Beast Games*, YouTube (Mar. 18, 2024), https://www.youtube.com/watch?v=4FRYox-sPP8, last accessed September 16, 2024.
[6] Jon Youshaei, *Why every MrBeast video gests 200M views (interview)*, YouTube (May 28, 2024), https://www.youtube.com/watch?v=IXEewFEDieU, at 1:17:00, last accessed September 16, 2024. It is also worth noting that earlier in this same video, Mr. Donaldson discusses his plans for Beast Games and the Contestants, and added that, "money is not a constraint" (at 44:41).

FIRST AMENDED CLASS ACTION COMPLAINT

7.     Defendants knowingly misclassified the Contestants as "volunteers," in part, to obtain a tax credit for two million, two hundred fifty-two thousand, five hundred twenty-three dollars ($2,252,523) from the State of Nevada, which Defendants, on information and belief, would not have received if they had disclosed the Production's actual labor costs, including the significant labor of the 2,000+ Contestants, in the budget they presented to the Nevada Film Commission with their tax-credit application.[7]

8.     Defendants then induced 2,000+ people to travel to Las Vegas in July to serve as Contestants on their $100-million-dollar production based on a false representation that one-thousand (1,000) people would be competing to win a five-million-dollar ($5,000,000) prize, announcing only upon the Contestants' arrival that two-thousand (2,000) people were actually competing, reducing the Contestants' odds of winning by half right before the competition began.

9.     Defendants further relied on the misclassification as a false justification to avoid paying employment taxes and to spare the Production the costs of implementing various employment protections required under California law, including, minimum wages, overtime, mandatory meal and rest breaks, workers compensation benefits, itemized wage statements and timely payment of wages and reimbursements, among other things.

10.    Defendants then subjected the Contestants to unreasonable, unsafe, and unlawful employment conditions.  On or about July 18, 2024, Defendants began the Beast Games by shepherding the 2,000+ Contestants to the Allegiant Stadium in Las Vegas, where the Contestants were held under strict control and surveillance for days on end without access to their personal belongings – *e.g.*, telephones, medications, watches, even their underwear.   As an example of the level of control, Contestants were ordered to put five days of "undergarments" in a plastic bag that was turned in to Beast Games production staff ("**Production Staff**"), which they could only retrieve with permission from the Production Staff— a permission that was not always not granted.

11.    During the Beast Games engagement, the on-set Production Staff maintained the strictest control over the Contestants, confining them to indoor areas for days at a time, allowing them to sleep, if

---

[7] Nevada offers tax credits to production companies who film in Nevada under various conditions. One of the conditions is that the Applicant will spend a certain percentage of the total production budget employing local Nevada citizens.

FIRST AMENDED CLASS ACTION COMPLAINT

they could manage to do so despite the constant interruptions, under bright lights on the floor, denying them all privacy and access to the outside world.  The Contestants were fed sporadically and sparsely. They were not given adequate access to hygienic products or medical care.  The New York Times reported that, "over a dozen people who participated in the first installment of 'Beast Games' said they had not received adequate food or medical care and that some competitors had suffered injuries from the physical challenges."[8]

12.     The female contestants particularly and collectively suffered as a result of Defendants' actions.  The Beast Games work environment systematically fostered a culture of misogyny and sexism where Production Staff did nothing while some men violently tackled women, in at least one case, reportedly, to the point of unconsciousness, without disqualification from the competition or any other consequence.  Female contestants also were denied access to menstruation products and clean underwear for days during the competition.  Defendants callously dismissed menstruation as "not a medical emergency."

13.     When Production moved to Toronto, Production Staff influenced the first competition to the disadvantage of many Contestants who were unfairly eliminated.

14.     Defendants' violations of California law, as well as, in the alternative, Nevada law, have caused common injuries-in-fact that are redressable and conducive to resolution as a class action, where all of the following material facts are common to all Contestants:  Defendants offered the Contestants equivalent compensation for equivalent labor.  Defendants misclassified the Contestants in a uniform manner.  Defendants subjected all of the Contestants to the same material working conditions, including a hostile work environment for the female Contestants.  Defendants have improperly denied or delayed the Contestants overdue wages, penalties, and/or reimbursements.

15.     The Plaintiffs have filed this action using pseudonyms and applying conservative redactions that limit public viewing in a good faith effort to comply with Defendants' overbroad confidentiality provisions (which Plaintiffs allege are unenforceable), as well as to preserve the confidentiality and privacy interests of the Plaintiffs who wish to avoid opprobrium.

---

[8] Madison Malone Kircher, *Willing to Die for MrBeast (and $5 Million)*, The New York Times (Aug. 2, 2024), https://www.nytimes.com/2024/08/02/style/mrbeast-beast-games-competition-show.html, last accessed September 16, 2024.

FIRST AMENDED CLASS ACTION COMPLAINT

## II.    JURISDICTION AND VENUE

16.    Jurisdiction is proper in the Superior Court for the County of Los Angeles pursuant to Cal. Code Civ. Proc. § 410.10, because it has general subject matter jurisdiction and no statutory exceptions to jurisdiction exist.  The amount in controversy exceeds the jurisdictional minimum of this Court.

17.    Venue is proper in the County of Los Angeles and this Court because this is a putative Class Action Complaint; because this is the County in which the damages arise;  because this is the county in which at least two of the lead Plaintiffs reside; and this is the County where one of the Defendants has its principal place of business. Additionally, on information and belief, Defendants, and each of them, do business throughout the State of California, including prominently in Los Angeles, California.

## III.    PARTIES

18.    CONTESTANT 1 ("**Contestant 1**") an individual and a resident of the County of Los Angeles, California.  Contestant 1 was employed by Defendants as a contestant in the Production.

19.    CONTESTANT 2 ("**Contestant 2**") is an individual and a resident of the State of California.  Contestant 2 was employed by Defendants as a contestant in the Production.

20.    CONTESTANT 3 ("**Contestant 3**") is an individual and a resident of the State of California.  Contestant 3 was employed by Defendants as a contestant in the Production.

21.    CONTESTANT 4 ("**Contestant 4**") is an individual and a resident of the County of Los Angeles, California.  Contestant 4 was employed by Defendants as a contestant in the Production.

22.    CONTESTANT 5 ("**Contestant 5**") is an individual and a resident of the United States. Contestant 5 was employed by Defendants as a contestant in the Production.

23.    CONTESTANT 6 ("**Contestant 6**") is an individual and a resident of the United States. Contestant 6 was employed by Defendants as a contestant in the Production.

24.    On information and belief, Defendant MRB2024, LLC, is a for-profit North Carolina Limited Liability Company, with its principal place of business in Raleigh, North Carolina.  MRB2024, LLC also lists its address in documentation provided to Plaintiffs as: "c/o Weinstein Senior, LLP" in Los

FIRST AMENDED CLASS ACTION COMPLAINT

Angeles, CA 90067.  On information and belief, MRB2024, LLC is an entertainment production company.  At all relevant times, MRB2024, LLC was and is doing business in Los Angeles, California.

25.    On information and belief, Defendant OFF ONE'S BASE, LLC, is a for-profit North Carolina Limited Liability Company, with its principal place of business in Raleigh, North Carolina. OFF ONE'S BASE, LLC also lists its address in documentation provided to Plaintiffs as: "c/o Weinstein Senior, LLP" in Los Angeles, CA 90067.  On information and belief, Defendant OFF ONE'S BASE, LLC is an entertainment production company.  At all relevant times, Defendant OFF ONE'S BASE, LLC was and is doing business in Los Angeles, California.

26.    On information and belief, Defendant AMAZON ALTERNATIVE LLC, is a for-profit California Limited Liability Company, with its principal place of business in Los Angeles County, California.  At all relevant times, Defendant AMAZON ALTERNATIVE LLC was and is doing business in Los Angeles, California.

27.    Defendant MYSTICART PICTURES, LLC is a California Limited Liability Company with its principal place of business at 3450 Cahuenga Blvd. West Loft 101, Los Angeles, CA 90068.

28.    Plaintiffs are ignorant of the names and capacities of DOES 1 through 100 and sue them as DOES 1 through 100, inclusive. Plaintiffs will amend this action to allege DOE defendants' true names and capacities when they are ascertained.

29.    At all times relevant to this Complaint, the defendants were agents, principals, representatives, employees, joint venturers, partners, predecessors and/or successors in interest, and/or alter egos of each other and were acting within and furtherance of the purposes and scope of such agency, representation, employment, joint venture, partnership, corporate structure, and/or association, either actually, apparently, or ostensibly.

IV.    **FACTS**

A.    **The Contestants Engaged in What Appeared To Be a Thorough Application and Vetting Process for Beast Games.**

30.    Upon information and belief, Defendant MysticArt solicited, received, and reviewed the Contestants' applications, selecting who would participate in the Beast Games.   The Contestants who

FIRST AMENDED CLASS ACTION COMPLAINT

were selected and agreed to serve as contestants on the Beast Games 2024 Production participated in what at the time appeared to be a thorough application and contestant vetting process.

31.    The first step in the application process was to submit a written application answering some general questions and consenting to a release of medical records and a background check. The prospective contestants were also asked to send in photographs and a video submission. Once accepted after an application and interview process, the Contestants were required to put their lives on hold for ninety-four (94) days to provide labor exclusively for Defendants in exchange for compensation and a chance to win a $5 million dollar prize on Beast Games. The Contestants incurred (supposedly-reimbursable) business-related travel expenses, including flights to and from Las Vegas and Toronto, car transportation, and hotel accommodations, for which many (including Contestant 2 and Contestant 3) have not yet been reimbursed.

**B.    The Contestant Agreements that the Contestants Entered Into with Production Defendants Included a California Choice-of-Law Provision.**

32.    The Contestants each entered into a "Contestant Agreement and Release" ("**Contestant Agreement(s)**") with Defendants MrB2024 and Off One's Base (jointly "**Production Defendants**") in which the Contestants agreed that if they were selected and agreed to participate as contestants in Defendants' "Untitled YouTube Competition," they would be compensated by Defendants, including by being allowed "to compete for and potentially win a prize specified by Producer (which may be in the form of cash…) and/or, among other things, goods and services, including but not limited to merchandise, travel, lodging, tickets and/or access to events or other consideration."

33.    The parties to the Contestant Agreement, including Production Defendants, also agreed that the Contestant Agreement would be "controlled by California Law, and all controversies and questions with respect to this Agreement and/or [the Contestant's] appearance on the Program shall be determined by the internal, substantive laws of the State of California."

FIRST AMENDED CLASS ACTION COMPLAINT

C.    **The Contestants Were "Employees" Under California law (and alternatively**
**Nevada law), but Defendants Intentionally Misclassified Them to Their Economic**
**Advantage.**

34.    Defendants wrongfully and willfully misclassified, and on information and belief, continue to wrongfully misclassify the Contestants as either volunteers or independent contractors although they should legally be classified as employees.

35.    The Contestant Agreement states on its face that the Contestants were "volunteers," but the arrangement was in fact an employment arrangement whereby Defendants Amazon, Off One's Base, and MrBeast were the actual employers of the Contestant-employees.

1.    **The Contestants were not volunteers.  The Contestants were promised and**
**received compensation in exchange for their services.**

36.    On information and belief, each of the Defendants is a for-profit company in the business of making audiovisual programming, including for distribution on the video platform YouTube® and Amazon Prime Video®, among other video platforms.

37.    The Contestants were promised and received compensation in exchange for their around-the-clock presence and on-demand physical labor on the Beast Games Production.

38.    Additionally, Mr. Donaldson made public statements online that he had unconstrained control over Beast Games, and Donaldson had established a pattern and practice of compensating everyone who competes in the MrBeast® competitions, win or lose, even if they competed for only five minutes.[9]

39.    The Contestants were not working for free for the Beast Games for any humanitarian or any other public service or charitable objective.

40.    Defendants hired the Contestants to work as contestants on a reality competition show. The Contestants, in reality, were the essential labor component to the entire production.  Their work on the show was the entertainment product that Defendants were marketing and selling for public consumption and profit.

---

[9] Youshaei, *Why every MrBeast, supra* note 6.

8

FIRST AMENDED CLASS ACTION COMPLAINT

41.     The Contestants were told that if they accepted the opportunity to work for Defendants, they would have to be available for a ninety-four (94) day period from June 29, 2024 – September 30, 2024, and while they were working for Defendants, they would not be able to accept any other employment.

42.     Defendants compensated the Contestants throughout the course of the Beast Games Production with both "in-kind" compensation as well as cash compensation, with Defendants promising a total of at least $2,000 to every Contestant that competed, even if they were eliminated in the Competition.

43.     Throughout the Beast Games  engagement, the Contestants were induced to remain competing as Defendants made clear to all Contestants that they would receive additional cash compensation if they continued their services through elimination.

44.     Defendants have since requested, and Plaintiffs have provided, W9 information from the Contestants to pay them and to also reimburse them for their expenses.  *See* Figure 1 below.  The form that Defendants had the Contestants fill out specified: "[Off Ones Base, LLC] will use the W-9 to issue a 1099" to the Contestants for any payments from Defendants.  Contestants 2 and 3 have, to date, still not been reimbursed for out-of-pocket expenses they incurred for their flights and transportation back from Las Vegas to their homes, despite having submitted reimbursement requests week ago.  *See* Section IV.J "Plaintiffs' Individual Experiences," *infra*.



*Figure 1*

9

FIRST AMENDED CLASS ACTION COMPLAINT

45.     As a result of the combination of foregoing, the Contestants cannot properly be characterized as mere "volunteers." Rather, they were at all relevant times, employees who worked at the direction and control of each of the Defendants, and for these Defendants' ultimate profit.

## 2.     The Contestants had no autonomy. Defendants exercised complete control.

46.     Defendants exercised total control over the manner, means and timing of the work performed by the Contestants, by controlling essentially every aspect of their lives during the production of the show. This included, but is not limited to: (1) requiring them to work 24-hour-and-beyond shifts, (2) controlling and restricting their sleep, (3) controlling and restricting their food intake, (4) controlling and restricting their access and intake of medicine, (5) preventing them leaving the premises without terminating their employment and incurring a debt to the Production for their reimbursable expenses, (6) controlling and restricting their ability to communicate with others, and (7) directing every task to be performed as a member of the show.

47.     **When and where.** Defendants required the Contestants to be physically present on specific dates and times, around-the-clock, at locations dictated, controlled, and supervised by Defendants, and which dates and locations Defendants were entitled to change, "in their sole discretion." Defendants further required Plaintiffs dedicate *all* of their time to the Production during the production period, including by setting aside a 94-day period from June 29, 2024 through September 30, 2024, requiring them to miss other work if they had other jobs. Defendants also purport to control when and whether the Contestants will appear in additional seasons of the Beast Games, "for a period to be determined by Producer at a location to be determined at a later date by Producer in its sole discretion," and also require the Contestants to appear at any time in any season for any later production within three years from the initial exhibition of Beast Games.

48.     **Access to personal belongings.** Upon the Contestants' arrival at the Beast Games in Las Vegas, Defendants separated them from their personal belongings – including their telephones and all electronic devices of any kind, medication, toiletries, including feminine hygiene products, and undergarments.

49.     **Restricted movement.** Defendants corralled the Contestants into tightly controlled indoor spaces where they were actively supervised by Production Staff around-the-clock without any

FIRST AMENDED CLASS ACTION COMPLAINT

privacy.  Contestants were required to consent to Production Defendants recording their actions and statements, including possibly via concealed or hidden cameras and audio devices throughout the filming locations, including in areas where Contestants might have a reasonable expectation of privacy (e.g., a bathroom).

50.    **No contact.**  Defendants exercised total control over the Contestants' access to the outside world, including their friends and family.  Prospective contestants were told to "expect to have no communication with loved ones" during their engagement with the Beast Games.  Contestants were separated from their telephones and prohibited from making any contact with the outside world, online or otherwise.  *See* Figure 2 below, taken from the Beast Games Application and Official Rules Packet ("**Beast Games Rules Packet**").

> ❖ Will I be able to communicate with friends and family during filming?
> If you're selected for the show expect to have no communication with loved ones.
> Unless it's an urgent matter that comes up.

*Figure 2*

51.    **Control Over Meals**.  The Defendants controlled when, where, and what the Contestants ate and drank, which on information and belief, amounted to approximately 250-400 calories per day, including MrBeast®-branded chocolate bars, Feastables®, in place of a nutritious meal, which the Contestants were instructed to "enjoy" while the cameras were filming, so the Production Staff could capture the Contestants' reaction and presumptively use it as promotional content for Mr. Donaldson and/or Beast Games.   The limited sustenance that Defendants provided afforded an unreasonable and insufficient caloric intake which collectively and in a uniform manner endangered the health and welfare of the Contestants. During their time in Allegiant Stadium, Las Vegas, Nevada, the Contestants had to suffer through at least one time period where there was no food provided for between 8-12 hours and some contestants got light-headed.  When Defendants allowed the Contestants to have food, it ranged from small portions of cold porridge, salad, cold boiled chicken (which some Contestants report observing was pink to the point it seemed dangerous to consume and so some did not), and oatmeal, and at times multiple Contestants had to share portions (for example, five Contestants would share three servings of food).

FIRST AMENDED CLASS ACTION COMPLAINT

52.    **Control Over Clothing**.  Defendants controlled the clothing that the Contestants wore, requiring them to wear a specific uniform provided by the Production.  One day, Defendants corralled the Contestants and then made them wait for hours in a hotel lobby wearing garbage bags over their clothing in Las Vegas in July.  *See* Figure 3 below, altered only by the blurring of faces[10].



*Figure 3*

53.    **Control Over Sleeping Arrangements**.  Defendants controlled where, how, and whether the Contestants slept.  Contestants were filed into Allegiant Stadium, Las Vegas, Nevada, where they slept overnight in sleeping bags on the stadium floor (although Contestant 4 had their sleeping bag stolen), which included the field and concrete areas, with approximately 1,600 fellow contestants. Defendants did not allow Contestants to bring their own toiletries, but instead provided each with a toiletry bag with toothbrush, toothpaste, a mini comb, deodorant wipes, and eye covers for sleeping. The eye covers became a necessity because Defendants kept the stadium lights on the whole time and Contestants were awakened frequently for various reasons by Production Staff when they were trying to sleep.  Contestant 1 observed that when some Contestants tried to move their sleeping bags to areas that were quieter to sleep, they were herded back to the group, leaving them sleep deprived before they were

---

[10] Scott Roeben, *MrBeast Shoots "Beast Games" in Las Vegas, Controversy Abounds*, Vital Vegas (Jul. 18-22, 2024), https://www.casino.org/vitalvegas/mrbeast-shoots-beast-games-in-las-vegas/, last accessed September 16, 2024.

FIRST AMENDED CLASS ACTION COMPLAINT

called to compete in the Beast Games Competitions.  At times the Contestants had to seek permission from Defendants to go to the bathroom.

54.     **Control Over Medications and Recreational Substances**.  Upon their arrival, Defendants separated the Contestants from their medication, including things like inhalers and insulin, and there were long lines to retrieve medication from an apparent shortage of medical staff.  Defendants also did not allow Contestants to smoke, vape, or drink alcohol during their Beast Games engagement.

55.     **Exposed to Dangerous Conditions.**   The Contestants were exposed to dangerous circumstances and conditions as a condition of their employment.  Even without considering whatever confidential conditions existed behind closed doors while the Beast Games was being filmed, the Contestants were subjected to dangerous conditions within the course of their employment.  As local news reported, "many contestants, … found it was the poor set conditions, rather than the challenges themselves, that proved to be the main difficulty."[11] The Contestants were penned into enclosed spaces with thousands of strangers for days on end, under conditions where they were underfed, overtired, unclean, and competing in stressful and exhausting challenges for a cash prize that could change their lives. The danger, moreover, was exacerbated by Defendants' seeming failure to conduct background checks, despite requiring applicants to consent to a background check as a condition of their employment[12].

---

[11] Chase Martin, *Accusations of unprofessional handling and mistreatment of contestants on 'Beast Games' come to light*, DeseretNews, https://www.deseret.com/entertainment/2024/08/05/mr-beast-beast-games-accusations/ (Aug. 5, 2024), last accessed September 16, 2024.
[12] Rosanna Pansino (@RosannaPansino), Twitter (Aug. 17, 2024 6:35 PM), https://x.com/RosannaPansino/status/1824983360487440687, last accessed September 16, 2024, and Figure 4.

FIRST AMENDED CLASS ACTION COMPLAINT



*Figure 4*

56. On information and belief, there was insufficient medical staff to attend to potential and actual injuries during the Production. There were several reports of injuries. For example, in an online article, Scott Roeben of Vital Vegas reported on July 19, 2024 that: "In a concerning twist to this story, a source claims Desert Springs Hospital 'has seen countless patients today coming from 'Beast Games' due to lack of food and water'"[13], that Contestants were reporting that diabetics were denied food, that Contestants were denied water, and that two people had suffered seizures.

57. **Contractual control.** Defendants required the Contestants to sign an unenforceable adhesion contestant agreement purporting to give Defendants complete control over every aspect of the Contestant's lives during production, including their time, access to food and drinks, sleeping arrangements, and contact with family and friends and other persons outside of production. Defendants did not allow the Contestants to move or act of their own free will while the production took place. The Contestant Agreement also purports to give Defendants "sole discretion" to change the rules and terms-and-conditions for the Contestants' engagement and explains that decisions on all matters related to the Contestants' participation … shall be within [the Producer Defendants'] sole control and shall be final and binding on [Plaintiffs and Class Members] in all respects and shall not be subject to challenge or appeal." The same unconscionable agreement purports to require the Contestants to release all control

---

[13] Roeben, *MrBeast Shoots "Beast Games," supra* note 10.

14

FIRST AMENDED CLASS ACTION COMPLAINT

1    over their name and likeness granting Defendants copyright ownership as a work-for-hire, which is

2    characteristic of an employment agreement, not a purported "volunteer" or independent contractor

3    relationship.  It also unlawfully prohibits the Contestants from competing in similar employment for a

4    year after the initial commercial exhibition of the last episode of the Production, among other things.

5              **3.    The Contestants performed work that was in the usual course and scope of**

6                   **Defendants' businesses.**

7              58.    The work that the Contestants performed for Defendants is not work outside the scope of

8    Defendants' core live-entertainment-content business, as would be the case, for instance, for a service

9    provider providing ancillary production services, such as a food caterer.  The usual course-and-scope of

10   Defendants' production business has nothing to do with cooking or serving food.

11             59.    Here, on information and belief, the usual course-and-scope of the MrBeast® as well as

12   defendant MrB2024's business enterprises is the production of live, non-scripted or semi-scripted,

13   entertainment content whose primary focus is on the contestants' reactions to extreme stress as they

14   compete in intense and exhausting challenges to win life-changing money.  On information and belief,

15   defendants Off One's Base and Amazon Alternative are also in the business of producing live, non-

16   scripted or semi-scripted entertainment content.

17             60.    The Contestants (and their reactions to extreme emotional conditions) are the *sin quo non*

18   of the Beast Games Production. Their work is squarely within the usual scope of Defendants' customary

19   business.

20             **4.    The Contestants are not customarily engaged in an independently established**

21                 **business of the same nature as the work performed for Defendants.**

22             61.    The contestant-work that the Contestants performed for Defendants is not work or

23   services they provide to others.  Unlike the catering example, the Contestants do not make their living

24   providing "contestant services" to various customers.  Rather, this was labor that Contestants provided

25   particularly for Defendants.

26             62.    The Contestants are, on information and belief, people from all over the world who

27   engage in various professions, are unemployed, or are students.  They are not engaged in an independent

28   business of the same nature as the work performed for Defendants.

FIRST AMENDED CLASS ACTION COMPLAINT

63.     The contestant-work that the Contestants performed was for Defendants and pursuant to Defendants' customary business model.

64.     The contestant-work that the Contestants performed was necessary to the Defendants' Beast Games Production, and the work the Contestants performed was for Defendants' benefit, as the Contestants provided the core entertainment value of the Production.

**D.    Defendants Misclassified the Contestants as "Volunteers" to Avoid their Employment Obligations under California law (and alternatively Nevada law) and to Wrongfully Receive Unearned Tax Credits From Nevada.**

65.     From on or about July 18, 2024 until the Contestants were eliminated, or the Contestants completed all challenges on July 21, 2024, the Contestants worked a non-stop continuous stretch of employment for Defendants during the Production in Nevada.

66.     From between July 18, 2024 to July 21, 2024, during the Production in Nevada, the Contestants were reduced from approximately 2,000-plus individuals to about 1,000 people, with individuals working non-stop periods of employment, around the clock, starting on July 18, 2024, until they were eliminated, including alternates.  Reasonably assuming a significant number of the Contestants were non-Nevada residents, Defendants would likely not meet the requirement that the percentage of Nevada to Total Qualified Expenditures exceed 60%.[14]

67.     Moreover, Defendants later required the Contestants to complete W9 forms, suggesting they intend to write off the Contestants' wages as expenses in an attempt to have their cake and eat it too.  *I.e.*, i) fudging the true labor costs by labeling the Contestants as "volunteers" to obtain the State of Nevada tax credit; ii) saving money on employment wages, benefits, and employment taxes by misclassifying the Contestants, and iii) deducting the Contestant labor as expenses after-the-fact.

---

[14] Nevada Governor's Office of Economic Development and Nevada Film Office, July 22, 2024 Hearing Agenda at Page 18, https://goed.nv.gov/wp-content/uploads/2024/07/Hearing-Agenda-and-Materials-July-22-2024.pdf, last accessed September 16, 2024, and Figure 5.

16

FIRST AMENDED CLASS ACTION COMPLAINT



*Figure 5*

## E.    Defendants Required the Contestants to Sign an Unconscionable Agreement with Illegal and Unenforceable Terms.

68.    As a condition of their employment, Defendants required each Contestant to enter into a contract-of-adhesion that was drafted by Defendants, which Plaintiffs and the Proposed Class were given to sign under expedient circumstances.  On or about June 6, 2024, on information and belief, the application period for Beast Games opened; by July 18, 2024, Defendants had entered into contracts with and transported 2,000 people to the Allegiant Stadium in Las Vegas to compete in the unprecedented Beast Games.  Defendants enjoyed superior bargaining power and used it to impose terms and conditions that are unlawful under California law, including Labor Code Section 432.5. Defendants demanded, for instance, that Plaintiffs assume the risk in connection with the Production, including serious physical injury and non-consensual physical contact, in violation of FEHA, in particular, Gov't Code § 12964.5(a)(1)(A)(i).  They also required the Plaintiffs to release liability for their rights to workers' compensation, their rights under FEHA, and any rights to wages, in violation of Labor Code Section 206.5, and their right to bring representative actions under the Private Attorneys

FIRST AMENDED CLASS ACTION COMPLAINT

General Act ("**PAGA**"). The Contestant Agreement also purports to require the contestant-employees to waive their rights to certain remedies, including public and private injunctive relief, in violation of California law; while allowing Defendants to seek injunctive relief without posting a bond, showing a lack of material mutuality.  It also includes overbroad unenforceable confidentiality provisions.

69.    Defendants unlawfully required the Contestants to affirm whether they had any past convictions before being hired, including convictions protected from inquiry by employers, and to unlawfully submit to a medical examination, psychological examination, and background check as a condition for possible employment.

70.    Other unlawful provisions required the Contestants to authorize Defendants to conduct background checks including checks of consumer credit reports. The Agreement also contains an unlawful penalty clause with an unreasonably large estimate of so-called liquidated damages of $500,000.00 that is, in reality, an unconscionable penalty that is not enforceable under California law.

### F.    <u>**Defendants Failed to Provide a Safe and Healthful Place of Employment, to the Particular and Collective Detriment of the Female Contestants, Who Suffered Sexual Harassment.**</u>

71.    Production Defendants also failed to provide a safe and healthful place to work in violation of Labor Code Section 6300 *et. seq.,* including, but not limited to Sections 6400, 6401, 6401.7, 6402 and 6403, as well as Government Code Sections 12940(a), 12923 and 12965.

72.    Production Defendants created working conditions that jeopardized the safety of workers, including by not providing sufficient food or drink, taking away their access to medicine, not having adequate medical staff on site and not providing reasonable medical care, forcing them not to sleep, and forcing them to participate in games that unreasonably risked physical and mental injury.

73.    Production Defendants additionally created a toxic and hostile work environment for, in particular, the female contestants, who suffered male-on-female assault, as well as sexual harassment throughout the Production, as more fully detailed below, which was not only noticed but allowed and even encouraged by the Production Defendants, and laughed at by Production Staff.  And apparently, this was allowed because of marching orders from the top.

FIRST AMENDED CLASS ACTION COMPLAINT

1. **Purported "How to Succeed in MrBeast Production" handbook states that, "It's okay for the boys to be childish," and "If talent wants to draw a dick on the white board in the video or do something stupid, let them… Really do everything you can to empower the boys when filming and help them make content. Help them be idiots."**

74. A document that appears to be a MrBeast® employee handbook written in the first person from what appears to be Mr. Donaldson's perspective, titled "HOW TO SUCCEED IN MRBEAST PRODUCTION" (the "**MrBeast Handbook**"), was published on the internet on August 13, 2024, by YouTube creator Rosanna Pansino, who alleges that she received it and confirmed its authenticity with two MrBeast® employees[15]. This alleged MrBeast Handbook provides insight into the boys-will-be-boys working conditions that are seemingly promoted by Mr. Donaldson, which, if such MrBeast Handbook is indeed distributed to MrBeast® production staff, advises employees: "Really do **everything you can to empower the boys** when filming and help them make content. **Help them be idiots**."[16] (Emphasis added.) And "**If talent wants to draw a dick on the white board in the video** or do something stupid, **let them**."[17] (Emphasis added.)



*Figure 6*

[15] Authenticity of the MrBeast Handbook has not been confirmed by Mr. Donaldson himself as of the filing of the Complaint.
[16] Rosanna Pansino, *The REAL MrBeast… (Leaked Document)*, YouTube (Aug. 13, 2024), https://www.youtube.com/watch?v=U2aYO4c3AKw, with the link to "HOW TO SUCCEED IN MREAST PRODUCTION" document in the video notes: https://drive.google.com/drive/folders/1UZX55bhi6TK6QOf0dT9bzeac5ATf9SaH, last accessed September 16, 2024, at p. 34. See also Figure 6, emphasis added.
[17] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

**2.    Helping "the boys" "make content" apparently translated to allowing men to tackle women while "MrBeast [was] standing on his podium, looking down watching all of [the Contestants] fight for a chance at $5 million."**

75.     The apparent MrBeast® ethos of helping "the boys" "be idiots" seemed to pave the way for Production Staff to allow some of the male contestants to tackle female contestants and knock them unconscious during the competitions without disqualification or other consequences.  On information and belief, Contestants complained that "**men started realizing that they could take out the women without being eliminated.  Guys started tackling and hitting women**.  Two girls were tackled and passed out on the field and dragged off to continue filming."[18]  (Emphasis added.)  Contestant 4's and Contestant 5's experiences, as further detailed below, corroborate these reports.

76.     While the Production Staff initially stated, "there would be no tolerance of pushing, shoving, or tackling," allegedly "none of that was enforced.  The contestants that committed said acts were not even eliminated or even disciplined," as reported by Scott Roeben of Vital Vegas.[19]  Contestant 4's and Contestant 5's experiences, as further detailed below, corroborate these reports.

77.     Roeben also reported that, "Each challenge catered to young strong men, who bullied female and elderly contestants and ultimately took away any chance of a fair competition."[20]

78.     Upon information and belief, Production Defendants knew or should have known about this behavior, as it allegedly occurred, "**While MrBeast [was] standing on his podium, looking down watching all of us peasants** fight for a chance at $5 million."  See Figure 7 below (emphasis added, and redacted to preserve possible confidential aspects of the Production).

79.     Additionally, Defendants knew or should have known about this violent behavior because its own employment handbook, as detailed above, laid the groundwork for this collective sexual harassment and sexual harassment against female employees.

---

[18] Rosanna Pansino, *The news about MrBeast 'Beast Games' is disturbing.*, YouTube (Jul. 26, 2024), https://www.youtube.com/watch?v=VApF6na4m-4 (last accessed September 16, 2024).  See also Figure 7, emphasis and redactions added.
[19] Scott Roeben, *MrBeast Shoots "Beast Games," supra* note 10.
[20] *Id.*

80.    Contestants 4 and 5 witnessed some of the male contestants hoarding team clothing to impact the composition of the teams, refusing to let women have certain clothing.  They also observed that when contestants complained about the treatment to the Production Staff who were less than five feet away, the Production Staff did nothing.



*Figure 7*

81.    By refusing to intervene or implement any repercussions when some of the men physically assaulted women to the point that they passed out or blocked them from obtaining certain team clothing, Production Defendants created, permitted to exist, and fostered a culture and pattern and practice of sexual harassment including in the form of a hostile work environment where, *inter alia*, men were encouraged to use their innate physical superiority to tackle and hit women– against whom they were competing for five million dollars – and block them from getting on to certain teams without fear of elimination or employee discipline.

3.    **Beast Games created hostile conditions where women were forced to endure the severe embarrassment and unfair disadvantage of being denied access to**

FIRST AMENDED CLASS ACTION COMPLAINT

**menstruation products and clean underwear by Beast Games staff who reportedly laughed at their predicament.**

82.    In addition to allowing male contestants to assault female contestants – e.g., punching and tackling them until they were rendered unconscious – without fear of elimination, the Production Defendants also created and condoned a hostile work environment for women by failing to provide feminine hygiene products to women who were menstruating, after taking away women's personal belongings, including their underwear and personal toiletries.

83.    When menstruating women attempted to retrieve their personal belongings more quickly, they were allegedly treated with derision and denied on the grounds that the request was "not a medical emergency."  The New York Times reporter Madison Malone Kircher reported that: "One woman said that when she and a group of contestants who were menstruating during the event had asked the production staff about getting their underwear more quickly… the production staff had laughed at the women's pleading."[21]  See Figure 8 below (emphasis added).

> One woman said that when she and a group of contestants who were menstruating during the event had asked the production staff about getting their underwear more quickly, she had been told that it was "not a medical emergency," and she recalled that a nearby member of the production staff had laughed at the women's pleading.

*Figure 8*

84.    Defendants appeared to take no steps during the course of the Production to address the unequal, lopsided, and inequitable, treatment of the women, including the physical assault by the some of the men against the female contestants, as well as the harassment and bullying committed by some of the men and the Production Staff against the female contestants.

85.    At all relevant times, on information and belief, Defendants' management, up to and including senior management and ownership, had actual and/or constructive notice that the violence and sexual harassment detailed herein was occurring within the workplace.

86.    At all relevant times, on information and belief, Defendants' management, up to and including senior management and ownership, had actual and/or constructive notice that its production staff was aware of, but failed to remedy the violence and sexual harassment detailed herein.

---

[21] Kircher, *Willing to Die for MrBeast*, *supra* note 8.

22

FIRST AMENDED CLASS ACTION COMPLAINT

    **4.**     <u>Defendants failed to prevent sexual harassment and violence from occurring</u>

                <u>despite having actual notice that these problems had occurred at the</u>

                <u>Production's initial "testing" location in Las Vegas.</u>

87.    During the first part of the Production designed to serve as a dry run test rehearsal for the final product, some of the issues complained of herein surfaced for the first time. These included sexual harassment, assault, and the singling out and targeting of female contestants on a female-wide basis. These problems carried into the actual Las Vegas Production competition as noted throughout this complaint. The problem was so pronounced that when Production subsequently moved to Toronto, a female staff attorney for Defendants had to arrange a meeting and attempt to reassure contestants that sexual and other harassment would not be tolerated.

88.    In short, Defendants had actual notice that sexual harassment and violence against women was occurring even before the official Production began, and was likely to occur in the final production for which the test production was a rehearsal.

89.    Notwithstanding Defendants' actual notice of these problems, Defendants utterly failed to take any proper steps to prevent sexual harassment and violence from occurring, as set forth herein.

**G.**    <u>Production Staff Influenced the Outcome of the First Competition in Toronto,</u>
           <u>Resulting in Many of the Contestants Being Unfairly Eliminated.</u>

90.    In addition to all of the foregoing, hundreds of Contestants in Toronto were not allowed a fair chance at competing. Production Defendants did not fairly administer the competitions, and in at least one case, their Production Staff influenced the outcome.

91.    On information and belief, hundreds of Contestants were eliminated in the first of the competition challenges in Toronto, involving rows of platforms. On information and belief, some of the rows of contestants in this competition were given an unfair advantage by Production Staff who influenced the competition by allowing some of them to see the "Rules" of the competition on a screen, but not allowing others. Production Staff also allowed some of rows of Contestants to "huddle" after seeing the "Rules," while other rows were not allowed to do the same. This unfair treatment influenced the outcome of the competition with many of those given the unfair advantages being able to advance to the next competition, while many of those who were not given the same being eliminated.

FIRST AMENDED CLASS ACTION COMPLAINT

92.    There was widespread concern that Production Staff was attempting to influence the outcome of the competitions by informing some of the contestants what the next competition would be in advance.  Complaints by Contestants about this resulted in Production Staff apparently repeatedly "changing the competition" up last minute to try to show the Contestants that the competition was fair, when it already was not fair from the beginning.

**H.    Defendants Made Multiple False Statements to the Contestants In Connection with Beast Games Prior to the Start of the Competition.**

**1.    Defendants falsely advertised that the Competition would have 1,000 contestants, when it was actually 2,000, and this cut the odds of winning down by half of what was originally advertised.**

93.    On March 18, 2024, Amazon shared the news that "MrBeast and Amazon MGM Studios announce the new reality competition series 'Beast Games.'"[22]  In large print text just under a graphic showing Mr. Donaldson amidst a backdrop including the Amazon Prime Video® and MrBeast® logos, Amazon continued that, "The new show will premiere on Prime Video and is set to become the biggest reality competition series, where 1000 contestants will compete for a $5 million prize."[23]



The new show will premiere on Prime Video and is set to become the biggest reality competition series, where 1000 contestants will compete for a $5 million prize.

*Figure 9*

---

[22] Toby, *MrBeast and Amazon MGM Studios, supra* note 1, and Figure 9.
[23] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

94.    Mr. Donaldson himself also announced that same day on his MrBeast® Twitter account about the Beast Games competition that, "I'm going to be filming the **largest game show in history** and releasing it on Prime Video! Over 1,000 contestants, $5,000,000 prize, and many other world records."[24] (Emphasis added.)

95.    Accordingly, at all relevant times, Defendants Amazon, Off One's Base, and MrBeast held themselves out collectively as the creators, promoters, and producers of the Beast Games, and all did so in order to profit from the endeavor.

96.    Defendants widely promoted, right through the first day of the Beast Games competitions on July 18, 2024, that there would be 1,000 people competing.  MysticArt also promoted this falsehood. For instance, on June 17, 2024, MysticArt authored and published on its social media feed a descriptor of the Beast Games, inviting the public to "submit [their] applications" to serve as contestants where "1000 lucky souls will be handpicked to duke it out for that life-changing payday," as shown in the screenshots in Figure 10 below.



*Figure 10*

---

[24] MrBeast (@MrBeast), Twitter (Mar. 18, 2024 8:02 AM), https://x.com/mrbeast/status/1769741243339141413?s=46&t=5Ked1Q0pjP_C7Iej78Ug0Q, last accessed September 16, 2024.

FIRST AMENDED CLASS ACTION COMPLAINT

97.    However, the Contestants, who had traveled, and in many cases flown, to Las Vegas after having blocked off the 94-day period from June 29, 2024 through September 30, 2024 that was required by Defendants to compete in Beast Games, only first found out when the competition started that they would actually have to compete against double that amount, 2,000 contestants.

98.    This did not sit well with the Contestants, who made their feelings known to The New York Times reporter Kircher, who reported that, "Right from the start, things seemed off.  Some contestants said they had originally been told that the competition would have 1,000 participants.  (This was also the figure advertised by Prime Video earlier this year.). But upon arrival, contestants received a video message from Mr. Donaldson [in which they were informed that] 'Obviously, there's 2,000 contestants.'"[25]  Kircher went on to add that, "After learning [the Contestants] would be competing against twice as many people, some said they felt they had been misled about their odds of winning."[26]

### 2.    Defendants misrepresented that reasonable meal needs would be met.

99.    The Beast Games Production represented in the Beast Games Rules Packet that the "meals during production" would be provided by Defendants.

100.    Defendants failed to mention, however, that these "meals," if they could be called that, would be infrequently provided and insufficient in the number of calories in each meal, where Plaintiffs allege, by way of example, that they were fed unreasonably small portions of "cold porridge" for multiple meals in a row and dangerously-undercooked "pink" boiled chicken.  Indeed, according to local news reports, multiple ("countless")  Beast Games Contestants were taken to the hospital, including for dehydration.  Scott Roeben of Vital Vegas reported that local Desert Springs Hospital "ha[d] seen countless patients . . .  coming from 'Beast Games' due to lack of food and water'"; and that the Production had allegedly "denied food to diabetics, denied water to contestants, and at least two individuals had seizures as a result."[27]

---

[25] Kircher, *Willing to Die for MrBeast, supra* note 8.
[26] *Id*.
[27] Roeben, *MrBeast Shoots "Beast Games," supra* note 10.

FIRST AMENDED CLASS ACTION COMPLAINT

101.    In addition to promising Contestants that Defendants would handle all travel and accommodations, Defendants also promised in the Beast Games Rules Packet that Contestants would "head home right away" after they were eliminated.

102.    The reality, however, was that although Beast Games would theoretically handle travel arrangements for Contestants upon being eliminated or after the Games concluded, the Beast Games Production was so understaffed, and the production was so chaotic, that contestants were stranded without flights home for days after the Las Vegas Production concluded.

103.    For example, Contestant 4 concluded their assignment on July 21, 2024, but the Production did not arrange a departure flight for them until days after.

104.    Some Contestants opted to book and pay for their own flights home rather than wait for the Production to do it, but many are still awaiting their promised reimbursement.  For example, Contestant 2 and Contestant 3 have submitted documentation to be reimbursed for their out-of-pocket business travel expenses, including airfare and hotel, but Defendants have not yet reimbursed them.

## I.    **The Beast Games Production Was So Void of Standards of Reasonable Care that MrBeast® Allegedly Offered to Cover the Contestants' Therapy.**

105.    The foregoing acts by Defendants created an environment during Beast Games that was so void of humane standards that Defendants ended up volunteering to cover the cost of the Contestants' therapy, it was that bad.

106.    The combination of all of the foregoing created an environment in which the Contestants suffered severe emotional distress.

107.    Defendants, apparently aware of the severe distress they caused the Contestants by their lack of reasonable care in conducting the Production, allegedly offered to cover the Contestants' therapy.  Pansino has reported on alleged contestants informing her that, "[Defendants] knew it was bad because they also offered to provide therapy sessions using their own insurance."[28]

---

[28] Pansino, *The news about MrBeast 'Beast Games,' supra* note 18.  See also Figure 11.

FIRST AMENDED CLASS ACTION COMPLAINT



*Figure 11*

**J.    Plaintiffs' Individual Experiences.**

108.    Contestant 1 was employed by Defendants in July 2024 in Las Vegas, Nevada. Defendants arranged and paid for Contestant 1's lodging at a local hotel in Las Vegas during their services for Defendants.  Defendants also arranged for their travel to and from Las Vegas.  Contestant 1 turned in their cell phone, as well as all electronics, and Contestant 1's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants.  Contestant 1 did not have access to their bag of undergarments during the entire time working for Defendants.  During the time at Allegiant Stadium, Contestant 1 at times had to ask permission to go to the restroom.  Contestant 1 also observed that when some of the Contestants tried to move their sleeping bags to areas that were quieter to sleep, they were herded back to the group.  Contestant 1 was eliminated during the competitions in Las Vegas.  Contestant 1 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  After Contestant 1's elimination they were promised an additional $1,000 in compensation for competing in the Beast Games in Las Vegas.  Contestant 1 understood that

FIRST AMENDED CLASS ACTION COMPLAINT

they would be compensated by Defendants for their services.  Defendants took more than 30 days after Contestant 1's conclusion of services to pay Contestant 1 the promised payment.

109.    Contestant 2 was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada.  Defendants arranged and paid for Contestant 2's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during their services for Defendants. Defendants also arranged for their travel to Las Vegas, Nevada.  Contestant 2 turned in their cell phone and smart watch, as well as all electronics, and Contestant 2's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants.  Contestant 2 observed that other contestants who tried to sneak in electronic devices were immediately terminated.  Contestant 2 did not have access to their bag of undergarments until at least 1 ½ days into the filming of the competition. During the time at Allegiant Stadium, Contestant 2 had to ask permission each time to go to the restroom.  Contestant 2 made it through all of the challenges in Las Vegas.  Upon Contestant 2's successful completion of the last challenge in Las Vegas, they were handed $50 in $1 bills.  Contestant 2 subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for Contestant 2's lodging and travel to and from Toronto during the time they performed their services.  Contestant 2 again had to turn in their cell phone, as well as all electronics, prior to filming, until their services had concluded.  Contestant 2 was eliminated during the competition in Toronto.  Contestant 2 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  They were also promised an additional $1,000 in compensation for competing in the Beast Games in Toronto, Canada.   Contestant 2 understood that they would be compensated by Defendants for their services.  While Defendants promised the contestants that they would reimburse them for travel and lodging during the Beast Games competition, to date they have not reimbursed Contestant 2 for the flights and ground transportation back from Las Vegas, Nevada to California.  As of the date of the filing of this Complaint, Contestant 2 still has not received the compensation promised by Defendants for their services.

110.    Contestant 3 was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada.  Defendants arranged and paid for Contestant 3's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during their services for Defendants.

FIRST AMENDED CLASS ACTION COMPLAINT

Defendants also arranged for their travel to Las Vegas, Nevada.  Contestant 3 turned in their cell phone and smart watch, as well as all electronics, and Contestant 3's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants.  Contestant 3 observed that other contestants who tried to sneak in electronic devices past check in were immediately terminated from the competition.  Contestant 3 did not have access to their bag of undergarments until at least 1 and ½ days into the filming of the competition.  During the time at Allegiant Stadium, Contestant 3 at times had to ask permission to go to the restroom.  Contestant 3 made it through all of the challenges in Las Vegas.  Upon Contestant 3's successful completion of the last challenge in Las Vegas, they were handed $50 in $1 bills.  Contestant 3 subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for Contestant 3's lodging and travel to and from Toronto during the time they performed their services.  Contestant 3 again had to turn in their cell phone, as well as all electronics, prior to filming, until their services had concluded.  Contestant 3 was eliminated during the competition in Toronto.  Contestant 3 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  They were also promised an additional $1,000 in compensation for competing in the Beast Games in Toronto, Canada.  Contestant 3 understood that they would be compensated by Defendants for their services.  While Defendants promised the contestants that they would reimburse them for travel and lodging during the Beast Games competition, to date they have not reimbursed Contestant 3 for the flights and ground transportation back from Las Vegas, Nevada to California.

111.    Contestant 4, a female, was employed by Defendants in 2024 in Las Vegas.  Defendants arranged and paid for Contestant 4's lodging at a local hotel in Las Vegas, Nevada during their services for Defendants.  Defendants also arranged for their travel to and from Las Vegas, Nevada.  Contestant 4 turned in their cell phone and smart watch, as well as all electronics, and Contestant 4's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants.  Contestant 4 observed that other contestants who tried to sneak in electronic devices past check in were immediately terminated from the competition.  Contestant 4 did not have access to their bag of undergarments during the entire time working for Defendants.  During the time at Allegiant Stadium, Contestant 4 at times had to ask permission to go to the restroom.  Contestant 4 understood that they

would be compensated for their services. During their time in Las Vegas, Contestant 4 saw some male contestants hoarding team clothing and refusing to let women have access, which impacted the team compositions. Contestant 5 also witnessed male contestants physically assaulting other female contestants, and on one occasion, observed that after a male contestant had tackled a female contestant so violently that the female contestant passed out. Contestant 4 observed that Production Staff did nothing. Contestant 4 was eliminated during the competitions in Las Vegas. After they were eliminated from the competition, and despite Defendants representing that they would arrange for their travel home right away, Contestant 4 remained stuck in Las Vegas for multiple days after their elimination as Defendants were somehow unable to arrange for an earlier flight for Contestant 4 back to California. Contestant 4 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas. After they were eliminated, they were promised an additional $1,000 in compensation for competing in the Beast Games in Las Vegas. Contestant 4 understood that they would be compensated by Defendants for their services. As of the date of the filing of this Complaint, Contestant 4 still has not received the compensation promised by Defendants for their services.

112.    Contestant 5, a female, was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada. Defendants arranged and paid for Contestant 5's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during their services for Defendants. Contestant 5 turned in their cell phone, and Contestant 5's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants. During the competition, on or about July 19, 2024, Contestant 5's menstrual period started. Contestant 5 did not have access to the feminine products that they brought with them as part of their personal belongings when they checked in, and Defendants refused to allow the contestants, including Contestant 5, access to these belongings which included feminine products. At the same time, for the first two days of the competition, and despite repeated complaints from other female contestants requesting that feminine products be provided to the female contestants, Defendants did not make feminine products available to them, including to Contestant 5. Contestant 5 as a result started menstruating through their clothes and also had to sleep the morning of Friday, July 19, 2024, on the floor of Allegiant Stadium while bleeding through their clothes. Contestant 5 did not have access to their bag of undergarments until the morning on July 20,

FIRST AMENDED CLASS ACTION COMPLAINT

2024, and felt this put them at a disadvantage compared to other contestants who were not having to deal with menstruating through their clothes during the competition.  During their time in Las Vegas, Contestant 5 saw some male contestants hoarding team clothing and refusing to let women have access, while at the same time only allowing men access to the team clothing.  When the female contestants complained to the Beast Games staff members who were less than five feet away, they did nothing.  Contestant 5 also witnessed some of the male contestants physically assaulting other female contestants, and on one occasion, observed that after a male contestant had tackled a female contestant so violently that the female contestant passed out, that male contestant advanced while the passed out female contestant was eliminated, when the female contestant had obtained the item she was tackled for first.  Contestant 5 made it through all of the challenges in Las Vegas.  Upon Contestant 5's successful completion of the last challenge in Las Vegas, they were handed $50 in $1 bills.  Contestant 5 subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for Contestant 5's lodging and travel to and from Toronto.  Contestant 5 again had to turn in their cell phone and all electronics prior to filming, until their services had concluded.  Before the competition in Toronto, Contestant 5 observed that a female lawyer made an announcement to all contestants that included talking about how harassment of any kind would not be tolerated.  Contestant 5 was eliminated during the challenges in Toronto.  During their time at Allegiant Stadium, Contestant 5 at times had to ask permission to go to the restroom.  Contestant 5 expected that they would be compensated for their services.  Contestant 5 was eliminated during the competition in Toronto, Canada.  Contestant 5 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas.  They were also promised an additional $1,000 in compensation for competing in the Beast Games in Toronto, Canada.  Contestant 5 understood that they would be compensated by Defendants for their services.  As of the date of the filing of this Complaint, Contestant 5 still has not received the $1,000 in compensation promised by Defendants for their services in Toronto Canada, despite turning in the completed W-9 forms that were requested by Defendants.

113.    Contestant 6, a female, was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada.  Defendants arranged and paid for Contestant 6's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during their services for Defendants, as

well as their flights to and from the locations, with the exception of the hotel lodging, travel, and flight back from Las Vegas after the Las Vegas Production had concluded, which Contestant arranged and paid for herself, though she was later reimbursed by Defendants.  Contestant 6 turned in their cell phone, and Contestant 6's bag of undergarments that they brought with them upon their check-in to the hotel, as required by Defendants.  Contestant 6 did not have access to their bag of undergarments until the morning on July 20, 2024.  During their time in Las Vegas, Contestant 6 saw some male contestants hoarding team clothing and refusing to let women have access, while at the same time only allowing men access to the team clothing.  When the female contestants complained to the Beast Games staff members who were less than five feet away, they did nothing.  Contestant 6 also witnessed some of the male contestants physically assaulting other female contestants, and on one occasion, observed that after a male contestant had tackled a female contestant so violently that the female contestant passed out, that male contestant advanced while the passed out female contestant was eliminated, when the female contestant had obtained the item she was tackled for first.  Contestant 6 made it through all of the challenges in Las Vegas.  Upon Contestant 6's successful completion of the last challenge in Las Vegas, they were handed $50 in $1 bills.  Contestant 6 subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for Contestant 6's lodging and travel to and from Toronto.  Contestant 6 again had to turn in their cell phone and all electronics prior to filming, until their services had concluded.  Before the competition in Toronto, Contestant 5 observed that a female lawyer made an announcement to all contestants that included talking about how harassment of any kind would not be tolerated.  Despite all of this, Contestant 6 suffered harassment by a fellow male competitor in Toronto.  Contestant 6 had been fearful of one of the other verbally abusive male contestants who also aggressively started to confront her in a manner that was so threatening, right after the two had been eliminated from competition, but the staff did nothing, and another male contestant stepped in to stop the aggressive behavior.  Contestant 6 suffered from a panic attack as a result, while the aggressor male contestant was allowed to continue to remain on set, even despite Production Staff guaranteeing to her that he would not be allowed back on set, while the Production was filmed and they got all of the angles and re-shoots needed. Contestant 6 was eliminated during the challenges in Toronto and spoke about the harassment to on site psychiatrist Dr. Barry Goldstein, who

FIRST AMENDED CLASS ACTION COMPLAINT

informed her that due to her experience she should be seeking compensation for what had occurred, and that "what happened was not okay." They then sent Contestant 6 to another on site Production Staff attorney, "Mitch," as well as MrBeast CEO Mike Cruz. The attorney and Mr. Cruz apologized to Contestant 6 but offered no compensation. During their time at Allegiant Stadium, Contestant 6 at times had to ask permission to go to the restroom. During their time in Toronto, Contestant 6 had to ask permission go to the bathroom, and was told by her contestant wrangler that she could only go if it was so bad that she was going to pee in her pants. Contestant 6 expected that they would be compensated for their services. Contestant 6 was eliminated during the competition in Toronto, Canada. Contestant 6 was also promised $1,000 in compensation for competing in the Beast Games in Las Vegas. They were also promised an additional $1,000 in compensation for competing in the Beast Games in Toronto, Canada. Contestant 6 understood that they would be compensated by Defendants for their services. Contestant 6 was unfairly eliminated.

## V.    CLASS ACTION: GENERAL ALLEGATIONS

114.    Plaintiffs bring this action pursuant to Cal. Civ. Proc. Code § 382 on behalf of themselves and the following proposed class: "All individuals, nationwide and worldwide, who were engaged as purported contestants in the Beast Games content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024," ("**Proposed Class**" or "**Class**") for violations of the California Labor Code ("**Lab. Code**") and the Business and Professions Code ("**Bus. & Prof. Code**") §§ 17200, et seq., 17539.1, and 17500, and Wage Order 12-2001, or in the alternative, for violations of the state of Nevada's Nevada Revised Statutes ("**NRS**") §§ 608.250 et seq., 608.018 et seq., 608.019 et seq., 608.020, 608.110, et seq., for unpaid minimum wages, unpaid overtime wages, penalties failure to provide accurate wage statements or any statements, meal break penalties, rest break penalties, waiting time penalties, statutory penalties, liquidated damages, declaratory and injunctive relief, attorneys' fees and costs, interest including pre-judgment interest, and any other relief as the Court may deem fair.

115.    Contestants 4-6 also bring this action pursuant to Cal. Code Civ. Proc. § 382 on behalf of themselves and the following proposed subclass: "All women, nationwide and worldwide, who were engaged as purported contestants in the Beast Games video content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024," ("**Proposed Subclass**" or "**Subclass**")

FIRST AMENDED CLASS ACTION COMPLAINT

for violations of California Government Code ("**Gov't Code**") §§ 12940(a) et seq., and 12923, or in the alternative, for violations of NRS § 200.571, for statutory penalties, declaratory relief and injunctive relief in the form of ordering Defendants to institute workplace reforms and training programs for employees and supervisors to prevent further harassment, including sexual harassment, as well as for punitive damages, attorneys' fees and costs, interest including pre-judgment interest, and any other relief as the Court may deem fair.

116.    Contestant 6 also brings this action pursuant to Bus. & Prof. Code §§1700 et seq. and on behalf of the following proposed subclass: "All individuals, nationwide and worldwide, who were engaged as purported contestants in the Beast Games content production in Toronto, Canada between July 2024 and September 2024, who were eliminated in the first challenge in Toronto, Canada as a result of the unfair influence of the production staff," ("**Proposed Unfairly Eliminated Subclass**") for violations of Bus. & Prof. Code §§ 17200, et seq. and 17539.

117.    As discovery progresses in this matter, Plaintiffs may find it appropriate to amend the definition of the Proposed Class and Subclass and will do so as appropriate.  Plaintiffs will provide more formal definitions of the Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass when Plaintiffs seek to certify the Class and Subclass.  Excluded from the Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass are Defendants, any entities in which any of Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

A.    **Numerosity.**

118.    On information and belief, the Proposed Class consists of all contestants of Beast Games, nationwide and worldwide, including over two-thousand individuals, making joinder impracticable.

119.    On information and belief, the Proposed Subclass consists of over forty individuals, nationwide and worldwide, making joinder impracticable.

120.    On information and belief, the Proposed Unfairly Eliminated Subclass consists of over forty individuals, nationwide and worldwide, making joinder impracticable.

FIRST AMENDED CLASS ACTION COMPLAINT

**B.  Ascertainability.**

121.    The Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass, are ascertainable in that their members are composed of all contestants nationwide and worldwide who competed in the Beast Games competitions in Las Vegas, Nevada and Toronto, Canada, between July – September 2024.  The exact names of such members are identifiable using information contained in Defendants' personnel and cast records for the Production, including the Contestant Agreement application documents, which all participants in the Production were required to fill out and sign, as well as records kept by Defendants pertaining to which contestants actually did show up to participate in the Production.  This should provide the exact number of the Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass members.

**C.  Typicality.**

122.    The claims of Plaintiffs are typical of the Proposed Class, Proposed Subclass and Proposed Unfairly Eliminated Subclass.  The claims of the Plaintiffs and the Proposed Class, Proposed Subclass and Proposed Unfairly Eliminated Subclass are based on the same legal theories, and arise from the same unlawful pattern and practices and violations of law.  Plaintiffs each participated as contestants in the Beast Games competitions in Las Vegas, Nevada and Toronto, Canada, between July – September 2024.  Plaintiffs each sustained damages of all members of the Proposed Class, Contestants 4-6 each sustained damages of all members of the Proposed Subclass, and the Contestant 6 sustained damages of all members of the Proposed Unfairly Eliminated Subclass, that were caused by Defendants' conduct in violation of the law.

**D.  Superiority.**

123.    The nature of this action and the laws that apply make the class action format efficient and appropriate to provide relief to the Plaintiffs and the Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass, for the following reasons:

a.    This case involves big corporate Defendants as well as over 2,000 individual class members with claims that have common issues of law and fact pertaining to their engagement by Defendants;

FIRST AMENDED CLASS ACTION COMPLAINT

b.  If each individual member of the class was required by the Court to file an individual lawsuit, Defendants would be able to use their vastly larger financial resources against the limited resources of these individual Plaintiffs giving them a grossly unfair advantage.  Additionally, those who do not have the resources to even bring individual actions would be unfairly compromised.  Additionally, the cost to the court system to individually hear each of these matters would be substantial;

c.  The establishment of common business practices or factual occurrences would establish the rights for all of the Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass to recover on the claims asserted herein;

d.  Filing a claim with the California Labor Commission is a weaker method to address the wrongs in this action due to the limitations of such avenue, including the lack of discovery, as well as fewer remedies available.  Additionally, the losing party could still further continue with a trial de novo in the Superior Court.

E.    **Existence and Predominance of Common Law Questions of Fact and Law.**

124.    Common questions of fact and law that affect the members of the Proposed Class, include, but are not limited to, the following:

a.  Whether Defendants committed worker misclassification under California law with respect to the Proposed Class;

b.  Whether Defendants intentionally committed worker misclassification with respect to the Proposed Class;

c.  Whether Defendants failed to pay the Proposed Class minimum wage in violation of California wage and hour laws;

d.  Whether Defendants failed to pay the Proposed Class overtime wages in violation of California wage and hour laws;

e.  Whether Defendants failed to provide the Proposed Class with accurate itemized statements in violation of California wage and hour laws;

f.  Whether Defendants failed to provide the Proposed Class with meal breaks in violation of California wage and hour laws;

FIRST AMENDED CLASS ACTION COMPLAINT

g.   Whether Defendants failed to provide the Proposed Class with rest breaks in violation of California wage and hour laws;

h.   Whether Defendants failed to provide the Proposed Class with all wages that were due upon separation in violation of California wage and hour laws;

i.   Whether Defendants conduct constitutes false advertising under the California Bus. & Prof. Code 17500;

j.   Whether Defendants conduct constitutes unfair competition under the California Bus. & Prof. Code;

k.   Whether the Proposed Class is entitled to injunctive relief;

l.   Whether the Proposed Class is entitled to restitution; and

m.   Whether the Proposed Class is entitled to attorneys' fees and costs.

125.   Common questions of fact and law that affect the members of the Proposed Subclass, include, but are not limited to, the following:

a.   Whether Defendants' staff committed sexual harassment in violation California law with respect to the Proposed Subclass;

b.   Whether Defendants failed to prevent sexual harassment in violation California law with respect to the Proposed Subclass;

c.   Whether Defendants committed negligence in violation California law with respect to the Proposed Subclass;

d.   Whether the Proposed Subclass is entitled to injunctive relief;

e.   Whether the Proposed Subclass is entitled to punitive damages;  and

f.   Whether the Proposed Subclass is entitled to attorneys' fees and costs.

126.   Common questions of fact and law that affect the members of the Proposed Unfairly Eliminated Subclass, include, but are not limited to, the following: Whether Defendants conduct constitutes unfair competition under the California Bus. & Prof. Code.

127.   Absent a class action, most of the members of the Proposed Class, Proposed Subclass, and Proposed Unfairly Eliminated Subclass would find the cost of litigating their claims to be prohibitive, leaving them without an effective remedy.  The class treatment of common questions of law

38

FIRST AMENDED CLASS ACTION COMPLAINT

and fact is also superior to multiple individual actions or piecemeal litigation, particularly as to the Defendants' legal responsibility for its violations of the Labor Code, Government Code, and Business and Professions Code, in that it conserves the resources of the courts and the litigants and promotes consistency and efficacy of adjudication.

**F.    Adequacy.**

128.    Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Class and Subclass.  Plaintiffs have retained four law firms with experience in prosecuting complex litigation, California employment law, and class action cases.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Proposed Class and Subclass, and have the financial resources to adequately do so.  Neither the Plaintiffs, nor Plaintiff's counsel, has interests adverse to those of the other members of the Proposed Class or Subclass.

**VI.    CAUSES OF ACTION**

**A.    Count 1: Failure to Pay Minimum Wage (Lab. Code §§ 204, 1194, 1197, and 1197.1, and Wage Order No. 12-2001) (NRS 608.250 et seq.)**

**(Against Amazon and the Production Defendants)**

129.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

130.    While the Contestant Agreements stated that Plaintiffs and the Proposed Class were "Volunteers," they were not truly volunteers;  in reality they were employees.  The Division of Labor Standards Enforcement Opinion Letter 1988-10-27 states that: "If the person performing the service is an employee, that person must be paid pursuant to the [Industrial Welfare Commission "IWC"] Orders. If the person is truly a volunteer, with no expectation of any pay, and is not performing services of a commercial nature, the person is not covered by the IWC Orders."

131.    Plaintiffs and the Proposed Class all had an expectation of compensation.

132.    On information and belief, Defendants' classification of Plaintiffs and the Proposed Class as such was not proper, and in violation of the California Labor Code, because, on information and belief, none of the Defendants are either a religious, charitable, or nonprofit organization;  and the

39

FIRST AMENDED CLASS ACTION COMPLAINT

1 services that Plaintiffs and the Proposed Class were hired by Defendants' for were for Defendants' own

2 commercial endeavors and pursuant to Defendants' customary business.

3       133.    Under California law, which the parties agreed would be the controlling substantive law,

4 employers are required to pay all employees a minimum wage.  As of January 1, 2024, this wage was

5 $16 per hour for all industries.

6       134.    As a pattern and practice, Defendants knowingly failed and refused to pay Plaintiffs and

7 the Proposed Class minimum wages owed to them.  Instead, Defendants required Plaintiffs and the

8 Proposed Class to work 24-hour shifts for days, without any wages.  Defendants, after controversy arose

9 related to the show, claimed they would pay workers some money, but the purpose of those payments is

10 unclear and, even if they were considered wages, would not result in Plaintiffs and the Proposed Class

11 earning a minimum wage.

12       135.    Defendants therefore violated California's minimum wage laws, as set forth in Lab. Code

13 §§ 204, 1194, 1197, and 1197.1, and Industrial Welfare Commission Wage Order ("**Wage Order**") No.

14 12-2001.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein,

15 Defendants violated Nevada's minimum wage laws, as set forth in NRS 608.250 et seq.  Defendants

16 failed and refused to pay Plaintiffs and the Proposed Class wages for any of the hours worked, during

17 the 24-hours a day schedule that Defendants required Plaintiffs and the Proposed Class to abide by.

18       136.    As a result of Defendants' failures to abide by the law, including California and Nevada

19 wage and hour laws, Plaintiffs and the Proposed Class are entitled to recover damages from Defendants

20 in an amount equal to the minimum wages unlawfully not paid, and the interest thereon, plus applicable

21 penalties and attorneys' fees and costs, in an amount to be proven at trial.

22       137.    Plaintiffs and the Proposed Class also request additional relief as further described below.

23 **B.**    **Count 2: Liquidated Damages for Failure to Pay Minimum Wages (Lab. Code §**

24 **1194.2)**

25     **(Against Amazon and the Production Defendants)**

26       138.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs

27 as though set out at length herein.

28

FIRST AMENDED CLASS ACTION COMPLAINT

139.     Pursuant to Lab. Code §1194.2, in any action under Section 1194 to recover wages as a result of payment less than minimum wage, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants are entitled to liquidated damages pursuant to Nevada law.

140.     Plaintiffs and the Proposed Class were not paid at least the minimum wage for all hours worked.

141.     Plaintiffs and the Proposed Class are entitled to recover liquidated damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon, plus attorneys' fees and costs, in an amount to be established according to proof at trial.

**C.**     **Count 3: Failure to Pay Overtime Wages (Lab. Code §§ 204, 510, and 1194, and Wage Order No. 12-2001, § 3) (NRS 608.018 et seq.)**

**(Against Amazon and the Production Defendants)**

142.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

143.     California Lab. Code §§ 204, 510, and 1194 and Wage Order No. 12-2001, § 3 provides that employees are entitled to overtime pay.  This includes pay equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of 8 hours in one workday and any work in excess of 40 hours in any one workweek, and the first 8 hours worked on the 7th day of work in any one workweek, and twice the regular rate of pay for any work in excess of 12 hours in one day.  "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered and permitted to work, whether or not required to do so, and whether or not actually performing services during the entire shift.

144.     Plaintiffs and the Proposed Class worked more than 8 hours per day and 40 hours per week, but were not paid overtime wages for that work.

145.     As a result, pursuant to Labor Code Section 1194, Plaintiffs and the Proposed Class are entitled to recover unpaid overtime wages and interest thereon, plus attorneys' fees and costs, in an amount to be established at trial.  Alternatively, Plaintiffs allege that in doing the actions and omissions

1    set forth herein, Defendants concurrently violated Nevada's overtime protection laws, as set forth in

2    NRS 608.018 et seq.

3        **D.    Count 4: Sexual Harassment (Gov't. Code §§ 12940(a) et seq., 12923 and 12965)**

4        **(NRS 200.571)**

5        **(By the Proposed Subclass Against All Defendants)**

6        146.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs

7    as though set out at length herein.

8        147.    At all relevant times hereto, the California Fair Employment and Housing Act

9    ("**FEHA**"), including in particular Gov't Code §§ 12940(a) *et seq*., and 12923 were in full force and

10   effect and were binding upon Defendants. This subsection imposes an ongoing duty on Defendants to

11   refrain from harassing an employee on the basis of gender or sex, from creating a hostile work

12   environment and to prevent discrimination and harassment on the basis of gender and sex.

13       148.    At all relevant times, the Proposed Subclass members were members of multiple

14   protected classes within the meaning of Government Code §12940 which refers to harassment on the

15   bases of one or more of the protected characteristics under FEHA, and here based upon Plaintiff's sex

16   and/or gender.

17       149.    FEHA requires Defendants to refrain from harassing, or creating, or maintaining a hostile

18   work environment against an employee based upon the employee's sex or gender as set forth

19   hereinabove.

20       150.    Defendants' harassing conduct was severe or pervasive, was unwelcome by the Proposed

21   Subclass members, and a reasonable person in their circumstances would have considered the work

22   environment to be hostile or abusive.

23       151.    The Proposed Subclass members in fact did find the unwelcome, sexually harassing

24   conduct by Defendants to be hostile or abusive to themselves.

25       152.    Defendants violated the FEHA and the public policy of the State of California, which is

26   embodied in the FEHA by creating a hostile work environment and harassing the Proposed Subclass

27   members because of their gender and/or sex as set forth hereinabove.  Alternatively, Plaintiffs allege that

28

42

in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's anti-harassment laws, as set forth in NRS 200.571.

153.    The above said acts were perpetrated collectively and systematically upon the Proposed Subclass members by the Defendants' staff members who supervised the Proposed Subclass members, and also the male co-workers of the Proposed Subclass members, and Defendants knew or should have known of the conduct but failed to take immediate and appropriate corrective action.  To that point, as described herein, Defendants' own lawyer appeared to understand the severity of the ongoing problem of harassment and violence because she felt compelled to issue purported (and ultimately failed) reassurance to the contestants that sexual or other harassment would not be tolerated.

154.    The above said acts of Defendants constitute violations of the FEHA and violations of the public policy of the State of California, as well as Nevada law. As a proximate result of the wrongful conduct of the Defendants, and each of them, the Proposed Subclass members suffered and continue to suffer from serious bodily injury, financial and pecuniary losses including pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

155.    The foregoing conduct of Defendants individually, and/or by and through their officers, directors, and/or managing agents, was intended by the Defendants to cause injury to the Proposed Subclass members or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of the Proposed Subclass members, or subjected the Proposed Subclass members to cruel and unjust hardship in conscious disregard of their rights such as to constitute malice, oppression, or fraud under Civil Code §3294(b), thereby entitling the Proposed Subclass to punitive damages in an amount appropriate to punish or make an example of Defendants.

156.    Plaintiffs additionally request a reasonable award of attorneys' fees and costs, including expert witness fees, under Gov't Code § 12965, and injunctive relief as set forth in the Prayer below.

E.    **Count 5: Failure to Prevent Harassment (Gov't. Code §§ 12940(a) et seq. and 12965)**
       **(By the Proposed Subclass Against Amazon and the Production Defendants)**

157.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

FIRST AMENDED CLASS ACTION COMPLAINT

158.    At all times hereto, the FEHA, including in particular Gov't Code § 12940(k) et seq., was in full force and effect and was binding upon Defendants. This subsection imposes a duty on Defendants to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring. As alleged above, Defendants violated this subsection and breached their duty by failing to take all reasonable steps (or any at all) necessary to prevent harassment from occurring, despite having actual knowledge that sexual harassment and violence was taking place.

159.    The above said acts of Defendants constitute violations of the FEHA. As a proximate result of the wrongful conduct of the Defendants, and each of them, the Proposed Subclass members suffered and continue to suffer from serious bodily injury, financial and pecuniary losses including pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.

160.    The foregoing conduct of Defendants individually, and/or by and through their officers, directors, and/or managing agents, was intended by the Defendants to cause injury to the Proposed Subclass members or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of the Proposed Subclass members or subjected them to cruel and unjust hardship in conscious disregard of the Proposed Subclass' rights such as to constitute malice, oppression, or fraud under Civil Code §3294(b), thereby entitling the Proposed Subclass to punitive damages in an amount appropriate to punish or make an example of Defendants.

161.    Plaintiffs request a reasonable award of attorneys' fees and costs, including expert witness fees under Gov't Code § 12965, and injunctive relief as set forth in the Prayer below.

**F.    Count 6: Negligent Infliction of Emotional Distress**

**(By the Proposed Subclass Against Amazon and the Production Defendants)**

162.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

163.    Defendants owed a duty of care to provide Plaintiffs with a safe and healthful place to work pursuant to California law, including, but not limited to, Labor Code Section 6300 *et. seq.,* including, but not limited to Sections 6400, 6401, 6401.7 , 6401.9, 6402 and 6403, as well as, alternatively, the NRS as described herein, Defendants breached that duty by negligently engaging in

FIRST AMENDED CLASS ACTION COMPLAINT

conduct that caused, and that conveyed an intent, or that reasonably was perceived to convey an intent, to cause physical harm or to place women in fear of physical harm, and that serves no legitimate purpose.  It was foreseeable that such conduct would result in, or had a high likelihood of resulting in, injury, psychological trauma, or stress, to female employees.  Such conduct includes, but is not limited, allowing male contestants to physically assault female contestants without any accountability (which essentially encouraged male contestants to hit and tackle women and sent a message to female contestants that such aggression against them was fair game), refusing to provide feminine products to female employees and then mocking them when suffering or experiencing related difficulties.

164.    Defendants' conduct as alleged herein caused Plaintiffs and the Proposed Subclass to suffer serious emotional distress, including suffering, anguish, fright, horror, nervousness, anxiety, worry, fright, horror, nervousness, anxiety, worry, shock, humiliation, and/or shame, such that an ordinary, reasonable person would be unable to cope with it.

165.    This is further demonstrated by Defendants allegedly offering to cover the Contestants' therapy sessions using their own insurance.

166.    Defendants' conduct was a substantial factor in causing the Plaintiffs and the Proposed Subclass's serious emotional distress.

167.    As a proximate result of the wrongful conduct of the Defendants, Plaintiffs and Subclass members suffered and continue to suffer from serious emotional distress, including suffering, anguish, fright, horror, nervousness, anxiety, worry, fright, horror, nervousness, anxiety, worry, shock, humiliation, and/or shame, such that an ordinary, reasonable person would be unable to cope with it, all of which injuries continue to persist and will persist into the future.

G.    **Count 7: Failure to Provide Uninterrupted Meal Breaks (Lab. Code §§ 512 and 226.7, and Wage Order No. 12-2001 § 11) (NRS 608.019 et seq.)**

**(Against Amazon and the Production Defendants)**

168.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

169.    Pursuant to Labor Code §512 and Wage Order No. 12-2001, no employer shall employ any person for a work period of more than 5 hours without a meal period of not less than 30 minutes.

FIRST AMENDED CLASS ACTION COMPLAINT

170.    Pursuant to Labor Code §226.7, an employer shall pay its employee an additional hour of pay at the regular rate of pay for each workday in which the meal period was not provided.

171.    Defendants did not provide Plaintiffs and the Proposed Class with a meal period on any workdays and failed to compensate Plaintiffs and the Proposed Class for one hour of pay for each time a meal was not provided during a workday.

172.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California law.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's meal period protection laws, as set forth in NRS 608.019 et seq.

H.    **Count 8: Failure to Provide Uninterrupted Rest Breaks (Lab. Code § 226.7, and Wage Order No. 12-2001) (NRS 608.019 et seq.)**

**(Against Amazon and the Production Defendants)**

173.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

174.    Pursuant to Labor Code §226.7 and the applicable wage order, an employer may not require an employee to work during any rest period mandated by law.  Pursuant to Wage Order 12-2001, employees are provided with 10-minute rest breaks per 4 hours of work, or major portion thereof.  If an employer fails to comply with this law, the employee is entitled to one hour of pay at the employee's regular rate of pay for each workday that the rest period was not provided.

175.    Defendants did not provide Plaintiffs and the Proposed Class with rest breaks on any workdays and failed to compensate Plaintiffs and the Proposed Class for one hour of pay for each time a rest break was not provided during a workday.

176.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California law.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's rest period laws, as set forth in NRS 608.019 et seq.

46

I.    **Count 9: Failure to Provide Wages Promptly Upon Termination (Lab. Code §§ 201, 202, and 203) (NRS 608.020)**

**(Against Amazon and the Production Defendants)**

177.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

178.    Pursuant to Labor Code §201, employees are entitled to all compensation due immediately upon discharge.  Pursuant to Labor Code §202, employees are entitled to all compensation due within 72 hours after the time of quitting.

179.    Pursuant to §203 and the applicable wage order, if an employer fails to timely pay an employee upon discharge or resignation, the employee is entitled to waiting time penalties, constituting their regular rate of pay for up to 30 days.

180.    Defendants did not provide Plaintiffs and the Proposed Class, any Defendants willfully failed to provide, compensation promptly upon discharge or resignation;  as such, the Defendants are liable for waiting time penalties, in the amount of compensation at the employee's regular rate of pay for each day the wages remain unpaid, up to 30 days.

181.    Defendants willfully failed and continued to fail to pay Plaintiffs and the Proposed Class wages pursuant to Labor Code §§201 and 202.  Accordingly, Plaintiffs and the Proposed Class are entitled to waiting time penalties, plus attorneys' fees and costs, in an amount to be proven at trial. Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's wage laws governing the payment of wages upon termination, as set forth in NRS 608.020.

182.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California and Nevada law.

J.    **Count 10: Failure to Provide Accurate and Itemized Wage Statements (Lab. Code §§ 226 and 226.3, and Wage Order No. 12-2001) (NRS 608.110 et seq.)**

**(Against Amazon and the Production Defendants)**

FIRST AMENDED CLASS ACTION COMPLAINT

183.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

184.    California Lab. Code §§ 226 and Wage Order 12-2001(2) provides that, "At the time of payment of wages or compensation, the employer shall furnish the employee with an itemized list showing the respective deductions made from the total amount of wages or compensation."

185.    Plaintiffs and the Proposed Class are employees of Defendants.

186.    Plaintiffs and the Proposed Class, as employees of the Defendants, were entitled to receive accurate itemized wage statements.

187.    Defendants failed and refused to provide Plaintiffs and the Proposed Class with the required itemized statements in writing showing the respective deductions made from the total amount of wages or compensation, or any statements at all, or keep proper records, as required by Lab. Code §§ 226, 226.3 and Wage Order 12-2001(2).  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's laws governing wage statement obligations, as set forth in NRS 608.110 et seq.

188.    Defendants have knowingly and intentionally failed and continue to fail to comply with Labor Code Section 226 as well as NRS 608.110 et seq.  As a result, Plaintiffs and the Proposed Class are entitled to penalties pursuant to Section 226 and 226.3, plus attorneys' fees and costs.

**K.    Count 11: Failure to Indemnify for Employee Expenses and Losses in Discharging Duties (Lab. Code § 2802)**

**(Against Amazon and the Production Defendants)**

189.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

190.    California Lab. Code § 2802 requires an employer to indemnify their employee for all necessary expenditures or losses that are incurred by the employee in direct consequence of the discharge of their duties. Defendants violated this provision by failing to reimburse Plaintiffs and the Class Members for their expenditures on business expenses incurred for the Defendants.

191.    As a direct result of Defendants' conduct, Plaintiffs and the Class have suffered monetary damages in amounts to be determined at trial.

FIRST AMENDED CLASS ACTION COMPLAINT

192.    California Labor Code provides for an award of reasonable attorney's fees and costs incurred by a prevailing plaintiff in an action brought under its provisions. Plaintiffs and the Proposed Class have incurred and will continue to incur attorneys' fees and costs herein.

L.    **Count 12: Unfair Business Practices (Bus. & Prof. Code § 17200) – Unfair Influence of Competition Outcome**

   **(By Proposed Unfairly Eliminated Subclass Against Amazon and Production Defendants)**

193.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

194.    Bus. & Prof. Code § 17200 prohibits unfair competition by way of any unlawful, unfair or fraudulent business act or practice.

195.    As set forth above, Defendants engaged in unlawful and unfair business practices, including, but not limited to violating the above referenced wage-and-hour laws, intentionally misclassifying employees, requiring Plaintiffs and the Proposed Class to enter into illegal contracts, and providing false information to the State of Nevada to obtain unearned tax credits.

196.    In addition, the Proposed Unfairly Eliminated Subclass also alleges an unfair competition claim derived from Defendants' violation of California Business & Professions Code § 17539, et seq., which mandates that entities are to "provide maximum disclosure to and **fair treatment** of persons who may and do enter such contests." (Emphasis added.)  Here, as described above, Defendants did not provide "maximum" "fair treatment" of the Contestants in Toronto when Production Staff allowed some contestants to see the "Rules" of the competition on a screen, but did not allow it for others.  Production Staff also allowed some of rows of Contestants to "huddle" after seeing the "Rules," while other rows were not allowed to do the same.  This unfair treatment influenced the outcome of the competition with many of those given the unfair advantages being able to advance to the next competition, while many of those who were not given the same being eliminated.  Additionally, there was widespread concern that Production Staff was attempting to influence the outcome of the competitions by informing some of the contestants what the next competition would be in advance.  Complaints by Contestants about this

FIRST AMENDED CLASS ACTION COMPLAINT

1  resulted in Production Staff apparently repeatedly "changing the competition" up last minute to try to

2  show the Contestants that the competition was fair, when it already was not fair from the beginning.

3      197.    Plaintiffs and the Proposed Unfairly Eliminated Class lost money and/or property as a

4  result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and

5  profits at the expense of Plaintiffs and the Proposed Unfairly Eliminated Class, each of whom incurred

6  costs to serve as Contestants in the Beast Games only to be unfairly eliminated.

7      **M.**    **Count 13: Unfair Business Practices (Bus. & Prof. Code § 17200) – False**

8           **Advertising**

9           **(Against Amazon, Production Defendants, and MysticArt)**

10     198.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs

11  as though set out at length herein.

12     199.    Bus. & Prof. Code § 17200 prohibits unfair competition by way of any unlawful, unfair

13  or fraudulent business act or practice.

14     200.    As set forth above, Defendants engaged in unlawful and unfair business practices,

15  including, but not limited to violating the above referenced wage-and-hour laws, intentionally

16  misclassifying employees, requiring Plaintiffs and the Proposed Class to enter into illegal contracts, and

17  providing false information to the State of Nevada to obtain unearned tax credits.

18     201.    In addition, Plaintiffs and the Proposed Class also allege an unfair competition claim

19  derived from Defendants' violation of California Business & Professions Code § 17539.1, which

20  prohibits "any person in the operation of any contest or sweepstakes" from (3) ("Misrepresenting in any

21  manner the odds of winning any prize") and (4) ("Misrepresenting in any manner, the rules, terms, or

22  conditions of participation in a contest.").   Here, as described above, Defendants misrepresented to

23  prospective contestants that if they were selected and agreed to serve as Contestants they would, among

24  other things, be competing against one thousand (1000) people for a five-million-dollar ($5,000,00)

25  prize. However, Plaintiffs and the Proposed Class discovered only after they arrived that the Contestant

26  pool was actually 2000 people, not 1000, which materially reduced Plaintiffs and Proposed Class's

27  chance of winning the competition.

28

FIRST AMENDED CLASS ACTION COMPLAINT

202.    Plaintiffs and the Proposed Class lost money and/or property as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of Plaintiffs and the Proposed Class, each of whom incurred costs to serve as Contestants in the Beast Games and did so under false pretenses.

203.    Public injunctive relief is necessary here to prohibit conduct that is injurious to the general public.  MrBeast® has over 300 million followers online and will likely garner more fans after the release of the Beast Games Production with Amazon.  Millions of people could apply to participate in the next Beast Games, and MrB2024 and Amazon should be required to represent truthfully the conditions of the Beast Games and to adhere to the employment protections required by California law. Accordingly, Plaintiffs and the Proposed Class are entitled to injunctive relief requiring Defendants to truthfully represent the conditions of the Beast Games , including the number of contestants, before potential contestants apply to participate; to equitably conduct the Beast Games so that women are not unfairly disadvantaged; and to accurately classify future contestants as employees, rather than "volunteers" or "independent contractors."

N.    **Count 14: False Advertising Unfair Business Practices (Bus. & Prof. Code § 17500) (Against Amazon,  MrB2024, and MysticArt)**

204.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

205.    California Business and Professions Code § 17500 prohibits any person, corporation, or employee thereof to induce the public to enter into any obligation relating thereto, to make or disseminate . . . in any [] manner or means whatever . . . any statement, concerning … those services . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

206.    Plaintiffs and the Proposed Class allege that Defendants made statements to induce potential contestants to enter into the Contestant Agreement that were untrue or misleading, including regarding the number of competitors and the odds of winning, and that Defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.

FIRST AMENDED CLASS ACTION COMPLAINT

207.    As described above, Defendants misrepresented to prospective contestants that if they were selected and agreed to serve as Contestants they would, among other things, be competing against one thousand (1000) people for a five-million-dollar ($5,000,00) prize.  However, after Plaintiffs and the Proposed Class put their lives on hold and arrived in Las Vegas, typically via air travel, to compete in the Beast Games, they discovered that the Contestant pool was actually two thousand (2000) people, not one thousand (1000), which materially reduced Plaintiffs and Proposed Class's chance of winning the competition, cutting them in half.

208.    Any reasonable consumer would be deceived by the blanket false material statement concerning the number of competitors in the Beast Games.

209.    Moreover, Defendants' false statement about the number of contestants is unlawful as a matter of law under California Business & Professions Code § 17539.1, which prohibits "any person in the operation of any contest or sweepstakes" from (3) ("Misrepresenting in any manner the odds of winning any prize") and (4) ("Misrepresenting in any manner, the rules, terms, or conditions of participation in a contest.").

210.    Accordingly, Plaintiffs and the Proposed Class are entitled to public injunctive relief requiring Defendants to truthfully represent the conditions of the Beast Games , including the number of contestants, before potential contestants apply to participate; along with any other penalties or remedies deemed appropriate as determined after trial.

O.    **Count 15: Declaratory Relief**

**(Against Amazon and the Production Defendants)**

211.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

212.    Plaintiffs and the Proposed Class assert claims for declaratory relief under California Code of Civil Procedure Section 1060.

213.    Plaintiffs and the Proposed Class have interests under the written Contestant Agreements as well as the statutes governing California employment law.

214.    An actual controversy exists relating to the legal rights and duties of the parties.

FIRST AMENDED CLASS ACTION COMPLAINT

215.    Plaintiffs and the Proposed Class and Subclass are seeking declaratory relief to define their rights to avoid prospective harm.  Namely, Plaintiffs and the Proposed Class are asking the Court to declare that the Contestant Agreement is not enforceable to the extent it designates the Contestants as volunteers and instead must be viewed as an employment agreement, subject to all restrictive laws governing employment agreements.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Proposed Classes, request that the Court:

1) Certify this case as a class action on behalf of the Class defined above;  or in the alternative, certify a class for liability only, or for other limited issues pursuant to Cal. Rule of Court 3.765(b);

2) Appoint Contestants 1-6 as Class representatives;

3) Certify the Proposed Subclass action on behalf of the Proposed Subclass defined above;  or in the alternative, certify a subclass for liability only, or for other limited issues pursuant to Cal. Rule of Court 3.765(b);

4) Appoint Contestants 4-6 as the subclass representatives for the Proposed Subclass defined above;

5) Certify the Proposed Unfairly Eliminated Subclass action on behalf of the Proposed Unfairly Eliminated Subclass defined above;  or in the alternative, certify a subclass for liability only, or for other limited issues pursuant to Cal. Rule of Court 3.765(b);

6) Appoint Contestant 6 as the subclass representative for the Proposed Unfairly Eliminated Subclass defined above;

7) Appoint the law firms of Pafundi Law Firm, APC, Singian Law, Stuart Alban Law, and Whang Law Firm, P.C., as Class Counsel;

8) Order Class Notice to all Class Members defined above;

9) Order Declaratory Relief as follows:

    a.    That the Court declare that Plaintiffs and the Proposed Class were willfully misclassified in violation of Lab. Code §§ 226.8 and 3351, and award any penalties for each violation

FIRST AMENDED CLASS ACTION COMPLAINT

as to each member of them (and alternatively and concurrently, Nevada law, including without limitation NRS 608 et seq.);

b.    That the Court declare that Defendants' failure to pay wages to Plaintiffs and the Proposed Class for all hours worked violates Lab. Code §§ 204, 510, 558, 1194, and 1197 (and alternatively and concurrently, Nevada law, including without limitation NRS 608.250 and NRS 608.018);

c.    That the Court declare that Defendants' failure to provide uninterrupted meal breaks to Plaintiffs and the Proposed Class violates Lab. Code §§ 226.7, 512, and Wage Order No. 12-2001, to the extent they failed to provide at least one-half hour of time in which Plaintiffs and the Proposed Class were relieved of all duties for every five hours of work (and alternatively and concurrently, NRS 608.019);

d.    That the Court declare that Defendants' failure to provide uninterrupted rest breaks to Plaintiffs and the Proposed Class violates Lab. Code §§ 226.7, 512, 558 and Wage Order No. 12-2001, to the extent they failed to provide at least 10 minutes of an uninterrupted rest period to Plaintiffs and the Proposed Class Members were relieved of all duties for every four hours of work (and alternatively and concurrently, NRS 608.019);

e.    That the Court declare that, as to Plaintiffs and the Proposed Class whose employment with Defendants have terminated, that Defendants have violated Lab. Code §§ 201-203 by willfully failing to pay such Class Members compensation due at the time of termination of employment or within 72 hours thereafter (and alternatively and concurrently, NRS 608.020);

f.    That the Court declare that Defendants' failure to furnish accurate and itemized wage statements, or any statements at all to Plaintiffs and the Proposed Class violates Lab. Code § 226 (and alternatively and concurrently, NRS 608.110);

g.    That the Court declare that Defendants' conduct violates Gov't Code §§ 12940(a) et seq. and 12923 (and alternatively and concurrently, NRS 200.571);

h.    That the Court declare that Defendants' violated Bus. & Prof. Code §§ 17200, et seq. as to Plaintiffs and the Proposed Class;

FIRST AMENDED CLASS ACTION COMPLAINT

      i.   That the Court declare that the Contestant Agreement is not enforceable to the extent it designates the Contestants as volunteers and instead must be viewed as an employment agreement, subject to all restrictive laws governing employment agreements.

10) Award injunctive relief in the form of ordering Defendants to institute workplace reforms and training programs for employees and supervisors to prevent further harassment;

11) Award all wages owed by Defendants to Plaintiffs and the Proposed Class, including unpaid minimum wages, overtime wages, and liquidated damages;

12) Order that Defendants reimburse Plaintiffs and the Proposed Class for all unreimbursed business expenses incurred in relation to their employment;

13) Award Plaintiffs and the Proposed Class one hour of additional pay for each required uninterrupted meal break that was not provided pursuant to pursuant to Lab. Code § 226.7 and Wage Order No. 12-2001 and NRS 608.019;

14) Award Plaintiffs and the Proposed Class one hour of additional pay for each required uninterrupted rest break that was not provided pursuant to pursuant to Lab. Code § 226.7 and Wage Order No. 12-2001 and NRS 608.019;

15) Award Plaintiffs and the Proposed Class penalties for Defendants' failure to provide accurate and itemized wage statements, pursuant to Lab. Code §§ 226 and 226.3 and NRS 608.110;

16) Award waiting time penalties due to Plaintiffs and the Proposed Class, pursuant to Lab. Code § 203;

17) Order restitution to Plaintiffs and the Proposed Class for Defendants' unlawful business practices, as described herein, pursuant to Bus. & Prof. Code §§ 17200, et seq.;

18) Award punitive damages to the Proposed Subclass, pursuant to Civ. Code § 3294 and applicable Nevada law;

19) Award attorneys' fees and costs pursuant to Code Civ. Proc. § 1021.5, Lab. Code §§ 218.5, 226, 1194, and 2698, et. seq., Gov't Code § 12965, and any other applicable California and Nevada law;

20) Award interest to the maximum extent allowed by law; and

FIRST AMENDED CLASS ACTION COMPLAINT

21) For such other and further relief as the Court deems just and proper.

Date: September 23, 2024                    PAFUNDI LAW FIRM, APC

By: _Robert Pafundi_____
    Robert N. Pafundi
Attorneys for Plaintiffs and all others similarly situated.

Date: September 23, 2024                    SINGIAN LAW

By: _Lizelle Brandt_____
    Lizelle S. Brandt
    Andrew J. Kubik
Attorneys for Plaintiffs and all others similarly situated

Date: September 23, 2024                    STUART ALBAN LAW, P.C.

By: _Courtney Stuart-Alban_____
    Courtney Stuart-Alban
Attorneys for Plaintiffs and all others similarly situated.

Date: September 23, 2024                    WHANG LAW FIRM, P.C.

By: _____
    Arthur Y. Whang
Attorneys for Plaintiffs and all others similarly situated.

## VIII.  **JURY DEMAND**

Plaintiffs hereby demands a trial by jury on all issues so triable.

Date: September 23, 2024                    PAFUNDI LAW FIRM, APC

By: _Robert Pafundi_____
    Robert N. Pafundi
Attorneys for Plaintiffs and all others similarly situated.

Date: September 23, 2024                    SINGIAN LAW

By: _Lizelle Brandt_____
    Lizelle S. Brandt
    Andrew J Kubik
Attorneys for Plaintiffs and all others similarly situated.

Date: September 23, 2024                          STUART ALBAN LAW

                                                 By: _____
                                                      Courtney Stuart-Alban
                                                 Attorneys for Plaintiffs and all others similarly situated.

Date: September 23, 2024                          WHANG LAW FIRM, P.C.

                                                 By: _____
                                                      Arthur Y. Whang
                                                 Attorneys for Plaintiffs and all others similarly situated.

FIRST AMENDED CLASS ACTION COMPLAINT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robert N. Pafundi (SBN 102847), PAFUNDI LAW FIRM, APC, 11693 San Vicente Blvd., Ste. 824, Los Angeles, CA 90049 | |

TELEPHONE NO.: (424) 832-3502          FAX NO.: (424) 389-3502
EMAIL ADDRESS: Robert@PafundiLawFirm.com
ATTORNEY FOR *(Name):* Plaintiffs, Contestant 1, Contestant 2, Contestant 3, Contestant 4, Contestant 5 et al.

**Electronically FILED by
Superior Court of California,
County of Los Angeles
9/16/2024 9:59 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Jackson Aubry, Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse, Central District

CASE NAME:
CONTESTANT 1, et al. vs. MRB2024, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [×] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 24STCV24042 |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[×] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [×] is    [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [×] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [×] Substantial amount of documentary evidence
   d. [×] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [×] monetary  b. [×] nonmonetary; declaratory or injunctive relief  c. [×] punitive
4. Number of causes of action *(specify):* 14: Failure to pay min. wages, liquidated damages, failure to pay OT, sexual harass. etc.
5. This case [×] is    [ ] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date:    September 16, 2024

Robert N. Pafundi, Esq.
_____
(TYPE OR PRINT NAME)

▶    *Robert Pafundi*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courts.ca.gov |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
        Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic
        relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**    | Print this form | | Save this form | | Clear this form |

| SHORT TITLE | CASE NUMBER |
|---|---|
| CONTESTANT 1, et al. vs. MRB2024, LLC, et al. | 24STCV24042 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.  Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.  Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.  Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.  Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.  Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.  Location of property or permanently garaged vehicle. | |

| | A<br><br>Civil Case Cover Sheet Case Type | B<br><br>Type of Action<br>(check only one) | C<br><br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| CONTESTANT 1, et al. vs. MRB2024, LLC, et al. | |

| | | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | | ☐ 2307 Construction Accidents | 1, 4 |
| | | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | | Other Employment (15) | ☒ 1501 Other Employment Complaint Case | ①②③ |
| | | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| CONTESTANT 1, et al. vs. MRB2024, LLC, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract**<br>(Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| CONTESTANT 1, et al. vs. MRB2024, LLC, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☑ 4302 Workplace Harassment with Damages | (2), 3, (9) |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| CONTESTANT 1, et al. vs. MRB2024, LLC, et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: | ADDRESS: |
|---|---|
| ☑ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☑ 9. ☐ 10. ☐ 11 | Amazon Alternative LLC<br>9300 Culver Boulevard<br>Culver City, CA 90232 |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| Culver City | CA | 90232 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___CENTRAL___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: _9/16/2024_

_Robert Pafundi_

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>09/16/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ D. Jackson Aubry _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>24STCV24042 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Laura A. Seigle | 17 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 09/17/2024
　　(Date)

David W. Slayton, Executive Officer / Clerk of Court

By D. Jackson Aubry , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**



# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases. https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

1  Robert N. Pafundi (SBN 102847)
   PAFUNDI LAW FIRM, APC
2  11693 San Vicente Blvd., Ste. 824
   Los Angeles, CA 90049
3  Telephone: 424-832-3502
   Email: robert@pafundilawfirm.com
4

5  Lizelle S. Brandt (SBN 228250)
   Andrew J. Kubik (SBN 246902)
6  SINGIAN LAW
   1055 E. Colorado Blvd., Ste. 500
7  Pasadena, CA 91106
   Telephone: 626-844-5050
8  Email: lizelle@singianlaw.com
   Email: andrew@singianlaw.com
9  *(Plaintiffs' Counsel continued on next page)*

10

11 Attorneys for Plaintiffs CONTESTANT 1,
   CONTESTANT 2, CONTESTANT 3, CONTESTANT 4,
12 CONTESTANT 5, CONTESTANT 6, and the Proposed Class

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/02/2024 4:07 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

13            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14            **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

15 CONTESTANT 1, a California resident,        CASE NO. 24STCV24042
   CONTESTANT 2, a California resident,
16 CONTESTANT 3, a California resident,        Assigned to Honorable Laura A. Seigle
   CONTESTANT 4, a California resident,        Department 17
17 CONTESTANT 5, a United States resident,
   CONTESTANT 6, a United States resident,     **PLAINTIFFS' NOTICE OF POSTING JURY
18 each individually and on behalf of all others   FEES**
   similarly situated,
19                                             Complaint Filed: September 16, 2024
20            Plaintiffs,                      Trial Date: Not Set

21        v.

22 MRB2024, LLC, a North Carolina Limited
   Liability Company;  OFF ONE'S BASE, LLC, a
23 North Carolina Limited Liability Company;
   AMAZON ALTERNATIVE LLC, a California
24 Limited Liability Company; MYSTICART
   PICTURES, LLC and DOES 1-100, inclusive,
25
26            Defendants.

27

28

                                    i
NOTICE OF POSTING JURY FEES

*(Plaintiffs' Counsel continued from prior page)*

Courtney Stuart-Alban (SBN 225513)
STUART ALBAN LAW
87 N Raymond Ave, Ste 200
Pasadena, CA 91103
Telephone: 323-405-9898
Email: courtney@stuartalbanlaw.com

Arthur Y. Whang (SBN 203916)
WHANG LAW FIRM, P.C.
5850 Canoga Ave., Ste 400
Woodland Hills, CA 91367
Telephone: 310-479-7300
Email: arthur@whanglaw.com

ii

NOTICE OF POSTING JURY FEES

1    TO THE HONORABLE COURT AND ALL PARTIES[1]:

2    PLEASE TAKE NOTICE that Plaintiffs deposited with the Court $150 as a jury fees deposit in

3    this matter.

4    Date: October 2, 2024                    PAFUNDI LAW FIRM, APC
                                               SINGIAN LAW
5                                              STUART ALBAN LAW, PC
                                               WHANG LAW FIRM, PC
6

7

8    By: _____
                                               Robert N. Pafundi
9                                              Lizelle S. Brandt
                                               Courtney Stuart-Alban
10                                             Arthur Y. Whang
                                               Attorneys for Plaintiffs and Proposed Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

_____
28    [1] No defendants have been served as of this date.

1

NOTICE OF POSTING JURY FEES

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 17

**24STCV24042**                                                          October 25, 2024
**CONTESTANT 1, et al. vs MRB2024, LLC, et al.**                          8:44 AM

Judge: Honorable Laura A. Seigle               CSR: None
Judicial Assistant: Nancy Navarro              ERM: None
Courtroom Assistant: Valerie Gaytan            Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order re: Complex Determination

By this order, the Court determines this case to be Complex according to Rule 3.400 of the California Rules of Court. The Clerk's Office has assigned this case to this department for all purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The stay continues at least until the Initial Status Conference. Initial Status Conference is set for 11/13/2024 at 09:00 AM in this department. At least ten (10) days prior to the Initial Status Conference, counsel for all parties must discuss the issues set forth in the Initial Status Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the Court and the parties manage this complex case by developing an orderly schedule for briefing, discovery, and court hearings. The parties are informally encouraged to exchange documents and information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a waiver of any substantive or procedural challenge to the

---

Minute Order                                                             Page 1 of 3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

### Civil Division

Central District, Spring Street Courthouse, Department 17

**24STCV24042**
**CONTESTANT 1, et al. vs MRB2024, LLC, et al.**

October 25, 2024
8:44 AM

| | |
|---|---|
| Judge: Honorable Laura A. Seigle | CSR: None |
| Judicial Assistant: Nancy Navarro | ERM: None |
| Courtroom Assistant: Valerie Gaytan | Deputy Sheriff: None |

Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a Private Attorney General Act ("PAGA") claim.

For information on electronic filing in the Complex Courts, please refer to https://www.lacourt.org/division/efiling/efiling2.aspx#civil. See, in particular, the link therein for "Complex Civil efiling." Parties shall file all documents in conformity with the Presiding Judge's First Amended General Order of May 3, 2019, particularly including the provisions therein requiring Bookmarking with links to primary documents and citations; that Order is available on the Court's website at the link shown above.

For efficiency in communication with counsel, the complex program requires the parties in every new case to use an approved third-party cloud service that provides an electronic message board. In order to facilitate communication with counsel prior to the Initial Status Conference, the parties must sign-up with the e-service provider at least ten (10) court days in advance of the Initial Status Conference and advise the Court which provider was selected.

The court has implemented LACourtConnect to allow attorneys, self-represented litigants and parties to make audio or video appearances in Los Angeles County courtrooms. LACourtConnect technology provides a secure, safe and convenient way to attend hearings remotely. A key element of the Court's Access LACourt YOUR WAY program to provide services and access to justice, LACourtConnect is intended to enhance social distancing and change the traditional in-person courtroom appearance model. See https://my.lacourt.org/laccwelcome for more information.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS") portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1 is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information on how to make such a request in a timely manner. https://www.lacourt.org/irud/UI/index.aspx

Counsel are directed to access the following link for further information on procedures in the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 17

**24STCV24042**
**CONTESTANT 1, et al. vs MRB2024, LLC, et al.**

October 25, 2024
8:44 AM

Judge: Honorable Laura A. Seigle
Judicial Assistant: Nancy Navarro
Courtroom Assistant: Valerie Gaytan

CSR: None
ERM: None
Deputy Sheriff: None

Complex litigation Program courtrooms: https://www.lacourt.org/division/civil/CI0042.aspx.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within seven (7) days of service.

Certificate of Mailing is attached.

Minute Order                                                                 Page 3 of 3

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 25 2024

David W. Slayton, Executive Officer/Clerk of Court

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| CONTESTANT 1, a California resident,<br>CONTESTANT 2, a California resident,<br>CONTESTANT 3, a California resident,<br>CONTESTANT 4, a California resident,<br>CONTESTANT 5, a United States resident,<br>each individually and on behalf of all others<br>similarly situated<br><br>        Plaintiff,<br><br>  vs.<br><br><br>MRB2024, LLC, a North Carolina Limited<br>Liability Company; OFF ONE'S BASE, LLC, a<br>North Carolina Limited Liability Company;<br>AMAZON ALTERNATIVE LLC, a California<br>Limited Liability Company; and DOES 1-100,<br>inclusive,<br><br>        Defendant. | Case No. 24STCV24042<br><br><br>INITIAL STATUS CONFERENCE ORDER<br>(COMPLEX CASES/CLASS ACTIONS)<br><br><br>Dept. 17<br>Spring Street Courthouse<br>Hon. Laura A. Seigle |

This Initial Status Conference Order (Complex / Class Actions) supplements a Minute Order served concurrently herewith. That Minute Order sets a date and time for the Initial Status Conference and includes other provisions which are not repeated in this Order. Counsel should

1
ISC ORDER

1  review that Minute Order carefully to be fully informed of your obligations and the processes used in

2  the Los Angeles Superior Court Complex Courtrooms.

3  Pending further order, the following is ordered:

4  **I.**    **Initial Status Conference**

5  Counsel for all parties shall appear for an Initial Status Conference ("ISC") per the Minute

6  Order served concurrently herewith.

7  Counsel representing a party at the ISC or any other status conference should be fully familiar

8  with the facts as then understood and be able to make binding agreements respecting case

9  management.

10  Parties presently engaged in mediation or who have a secured a date with a mediator for

11  mediation may stipulate to one continuance of the ISC, provided they also agree upon an e-service

12  provider, as set forth in Item 8, below, and include the name of the provider and the date of the

13  mediation in their Stipulation for Continuance.  It is expected that parties using this procedure will

14  timely exchange such information as is necessary to have a productive mediation and that the

15  mediation will go forward as scheduled.

16  At the ISC, the Court will discuss case management, set dates for motions, and invite the

17  parties to propose procedures to enhance efficiency and avoid duplicative or unnecessary

18  expenditures of time. Counsel attending shall be prepared to address these issues.

19  At least ten (10) days prior to the ISC, all counsel shall meet, preferably by use of telephone

20  and/or video technology, to discuss case management.  Plaintiff's counsel shall take the lead in

21  preparing a joint ISC Statement and ensuring that it is filed at least five (5) court days prior to the

22  ISC.  To the extent the parties are unable to agree on a joint submission, each party may separately

23  present a brief statement of its position.  If any party who has been served with this Order declines to

24  participate, all other parties shall file an ISC statement.

25  The ISC Statement shall contain the following in the following order:

26  1.    A succinct description of the facts of the case as then known. In wage and hour cases

27  the nature of the employee's work, the employer's business, and the specific factual

28  bases for claims under the Labor Code shall be provided. Citations to relevant statutes

1    and pending appellate cases that may impact the case shall be provided.

2    2.    A discussion of any issues of jurisdiction, venue, contractual arbitration/judicial

3          reference that any party intends to raise and the meet and confer efforts to date on

4          these issues.  Prior to the ISC any party seeking arbitration shall have provided a copy

5          of the applicable agreement to arbitrate to the opposing party and a decision should

6          have been made as to whether a motion to compel arbitration will be filed.  Dates for

7          any motions involving challenges to jurisdiction, venue, the pleadings, or referrals to

8          arbitration will be set at the ISC.

9    3.    Counsel should address issues such as an agreement to share the cost of class

10         notice/opt out procedures, the adequacy of class representatives, and potential

11         conflicts of interest among class representatives.

12   4.    Whether the action incorrectly identifies the name of any party and whether any party

13         intends to add parties or causes of action by way of amendment, cross-complaint, or

14         the like.

15   5.    The names, addresses, telephone, email, and facsimile numbers of all counsel and the

16         parties they represent.

17   6.    Any basis for the Court's recusal or disqualification.

18   7.    A discussion of the identity of entities or persons other than those shown in the

19         pleadings that may have a significant financial or other interest in the proceedings.

20   8.    A joint recommendation for an e-service provider for inclusion in the Court's order for

21         initiation of e-service.  The parties must employ an agreed e-service provider.  The

22         parties shall identify the appointed e-service provider in the caption of each filing.

23   9.    A brief description of any related cases pending in other courts or anticipated for

24         future filing.

25   10.   Whether there is insurance coverage for the dispute.

26   11.   A plan to preserve evidence, to deploy a uniform system for identification of

27         documents, and to protect confidentiality by, for example, executing a protective

28         order.

12.   A preliminary discovery plan, with dates, reflecting the parties' consideration of phased discovery, e.g., limiting initial discovery to a significant or dispositive issue as a predicate to an important early ruling or meaningful participation in an early mediation.   In class actions, the parties should address whether discovery should initially be limited to class certification issues.

13.   Where appropriate, the parties should outline a process for managing discovery of electronically stored information (ESI) by, for example, scheduling a meeting among counsel and the parties' information technology consultants in order to address (1) the information management systems employed by the parties; (2) the location and custodian(s) of information likely to be subject to production (including the identification of network and email servers and hard drives maintained by target custodians); (3) the format in which electronically stored information will be produced; (4) the type of ESI that will be produced, i.e., data files, emails, etc.; and (5) appropriate search criteria for focused requests.

14.   Any proposed mechanism for and the timing of mediation and/or mandatory settlement conferences to assist in resolution of the case.

15.   Any issues regarding publicity which the Court should consider.

16.   Recommended dates and times for trial, filing of motions for class certification, alternative dispute resolution, and deadlines (and proposed briefing schedules) for filing other anticipated motions.

17.   A recommended date for the next Status Conference.

## II.   Reminders And Other Information

1.   It is the joint responsibility of counsel to file a joint status conference statement for all status conferences scheduled after the ISC, which statement shall be filed five (5) court days in advance of the status conference.

2.   Counsel may secure dates for motions by calling the Courtroom Assistant. Counsel should have jointly discussed any likely contested motion with each other and the

1   Court before it is filed so that, if possible, the matter may be resolved or narrowed by

2   agreement or, if filed, an appropriate briefing schedule is set.

3.   Unless otherwise ordered, counsel may appear remotely for all appearances.  Please be
    in a quiet place and note that a party speaking may not hear simultaneous speech in the
    courtroom.  Please speak slowly and pause frequently. Each counsel should advise the
    others at least 24 hours in advance as to whether an appearance will be remote or in
    person.

4.   Any message on the message board for the Court should be joint and neutral in tone.
    Absent good cause shown no unilateral postings are appropriate.

5.   In the ordinary course, discovery motions will not be heard without an Informal
    Discovery Conference (IDC) pursuant to Cal. Code of Civ. Pro. § 2016.080. Counsel
    may arrange for an IDC by jointly posting a request on the e-service provider's
    message board.  If all counsel are not in agreement, counsel may request an IDC by
    filing LACIV094.  Unilateral requests for IDC by message board are not appropriate.

6.   Specific direction as to the matters to be provided to the Court for the IDC and the
    timing of same will be given at the time the IDC is arranged and may vary depending
    on the nature of the dispute.  Unless otherwise ordered, IDC are held by
    LACourtConnect and off the record.

7.   It is the responsibility of all counsel to notify the Court promptly of any related case
    and to secure a ruling thereon. See Cal. Rules of Court, Rule 3.300 et. seq. This
    responsibility is on-going. A Notice of Related Case may be filed prior to the stay
    being lifted in this action.

8.   Posting documents to the e-service provider does not constitute filing a document.
    See the Minute Order for further terms re efiling.

9.   Counsel desiring a protective order should consult the model on the court's website
    and provide a redlined copy if deviations are made from same.  See "Helpful Guidance
    From the Complex Litigation Judges" on the Complex Litigation webpage link
    provided in the Minute Order.

1        10.    Any future stay ordered by the Court for purposes of case management is not a stay

2               under Code of Civil Procedure § 583.310 unless the Court so orders.

3        11.    The dismissal of a class action requires court approval. Cal. Rules of Court, Rule

4               3.770(a).  Counsel must submit a declaration setting forth, among other things, the

5               reasons why a party seeks a dismissal in a class action and any and all consideration

6               given in exchange for the dismissal.

7        12.    Settlement of claims filed under the Private Attorney General Act (PAGA) (whether

8               or not filed as part of a class action) require notice to the Labor and Workforce

9               Development Agency. Labor Code § 2699 (l)(2).  A noticed hearing, with proof of

10              service to LWDA and a proposed Order, is required to secure approval of the

11              settlement of a PAGA claim.  Settlements that include dismissal of a PAGA claim

12              require that the Court be advised of the specific terms of any release of the PAGA

13              claim and the consideration, if any, for same.

14        13.    To obtain approval of a class action settlement, the parties should consult the

15              Guidelines for Motions for Preliminary and Final Approval posted on the court's

16              website under Tools for Litigators, as well as the posted model settlement agreements.

17              See the link to same in the Minute Order served concurrently herewith.

18

19  **III.  Notice of the ISC Order**

20       Plaintiff's counsel shall serve this Initial Status Conference Order on all defense counsel, or if

21  counsel is not known, on each defendant and file a Proof of Service with the court within seven (7)

22  days of the date of this Order.  If the Complaint has not been served as of the date of this Order,

23  plaintiff(s) must serve the Complaint, along with a copy of this Order, within five (5) days of the date

24  of this Order.

25       Once served, each as yet non-appearing defendant shall file a Notice of Appearance

26  (identifying counsel by name, firm name, address, email address, telephone number and fax number).

27  The filing of a Notice of Appearance is without prejudice to (a) any jurisdictional, substantive or

28  procedural challenge to the Complaint, (b) any affirmative defense, and (c) the filing of any cross-

1    complaint in this action.

2

3    DATED:                          *Laura Seigle*
                                     _____
4                                    LAURA A. SEIGLE
                                     Judge of the Los Angeles Superior Court
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 102847 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Robert N. Pafundi, Esq. | | |

FIRM NAME: PAFUNDI LAW FIRM, APC
STREET ADDRESS: 11693 San Vicente Blvd., Suite 824
CITY: Los Angeles    STATE: CA    ZIP CODE: 90049
TELEPHONE NO.: (424) 832-3502    FAX NO.: (424) 389-3502
E-MAIL ADDRESS: Robert@PafundiLawFirm.com
ATTORNEY FOR (Name): Plaintiffs, Contestant 1, Contestant 2, Contestant 3, Contestant 4, Contestant 5, Contestant 6, and the Proposed Class

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 North Spring Street
MAILING ADDRESS: 312 North Spring Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Spring Street Courthouse, Central District

Plaintiff/Petitioner: CONTESTANT 1, et al.
Defendant/Respondent: MRB2024, LLC, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 24STCV24042 |
|---|---|

TO *(insert name of party being served):*  MRB2024, LLC, a North Carolina Limited Liability Company

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 14, 2025

Robert N. Pafundi, Esq.
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [✓] A copy of the summons and of the complaint. (First Amended Summons)

2. [✓] Other *(specify):* First Amended Complaint (Redacted), Civil Case Cover Sheet, Notice of Case Assignment, Alternative Dispute Resolution

(ADR) Packet, Plaintiffs' Notice of Posting Jury Fees, Notice of Motion to File Under Seal Unredacted Complaint and First Amended Complaint, Declaration of Pafundi in Support of Motion to Seal (Redacted), Court Minute Order Re: Complex Determination (10/25/24), Initial Status Conference Order (Complex Cases/Class Action) (10/25/24), and Case Anywhere Re: Joint Request to Continue ISC and Motion to Seal Hearings, and Deadline to Serve Defendants (11/12/24).

*(To be completed by recipient):*

Date this form is signed: March 6, 2025

Maria C. Rodriguez, Esq.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

# EXHIBIT D

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 102847 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Robert N. Pafundi, Esq. | | |
| FIRM NAME: PAFUNDI LAW FIRM, APC | | |
| STREET ADDRESS: 11693 San Vicente Blvd., Suite 824 | | |
| CITY: Los Angeles  STATE: CA  ZIP CODE: 90049 | | |
| TELEPHONE NO.: (424) 832-3502  FAX NO.: (424) 389-3502 | | |
| E-MAIL ADDRESS: Robert@PafundiLawFirm.com | | |
| ATTORNEY FOR (Name): Plaintiffs, Contestant 1, Contestant 2, Contestant 3, Contestant 4, Contestant 5, Contestant 6, and the Proposed Class | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 North Spring Street
MAILING ADDRESS: 312 North Spring Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Spring Street Courthouse, Central District

Plaintiff/Petitioner: CONTESTANT 1, et al.
Defendant/Respondent: MRB2024, LLC, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 24STCV24042 |
|---|---|

TO (insert name of party being served): OFF ONE'S BASE, LLC, a North Carolina Limited Liability Company

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: February 14, 2025

Robert N. Pafundi, Esq.
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

---

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. [✓] A copy of the summons and of the complaint. (First Amended Summons)

2. [✓] Other (specify): First Amended Complaint (Redacted), Civil Case Cover Sheet, Notice of Case Assignment, Alternative Dispute Resolution

(ADR) Packet, Plaintiffs' Notice of Posting Jury Fees, Notice of Motion to File Under Seal Unredacted Complaint and First Amended Complaint, Declaration of Pafundi in Support of Motion to Seal (Redacted), Court Minute Order Re: Complex Determination (10/25/24), Initial Status Conference Order (Complex Cases/Class Action) (10/25/24), and Case Anywhere Re: Joint Request to Continue ISC and Motion to Seal Hearings, and Deadline to Serve Defendants (11/12/24).

*(To be completed by recipient):*

Date this form is signed: March 6, 2025

Maria C. Rodriguez, Esq.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _(signature)_
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

# EXHIBIT E

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 102847 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Robert N. Pafundi, Esq. | | **Electronically FILED by** |
| FIRM NAME: PAFUNDI LAW FIRM, APC | | **Superior Court of California,** |
| STREET ADDRESS: 11693 San Vicente Blvd., Suite 824 | | **County of Los Angeles** |
| CITY: Los Angeles   STATE: CA   ZIP CODE: 90049 | | **3/07/2025 10:25 AM** |
| TELEPHONE NO.: (424) 832-3502   FAX NO.: (424) 389-3502 | | **David W. Slayton,** |
| E-MAIL ADDRESS: Robert@PafundiLawFirm.com | | **Executive Officer/Clerk of Court,** |
| ATTORNEY FOR (Name): Plaintiffs, Contestant 1, Contestant 2, Contestant 3, Contestant 4, Contestant 5, Contestant 6, and the Proposed Class | | **By G. Carini, Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 North Spring Street
MAILING ADDRESS: 312 North Spring Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Spring Street Courthouse, Central District

Plaintiff/Petitioner: CONTESTANT 1, et al.
Defendant/Respondent: MRB2024, LLC, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|
| | 24STCV24042 |

TO (insert name of party being served): AMAZON ALTERNATIVE LLC, a California Limited Liability Company

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 14, 2025

Robert N. Pafundi, Esq.
(TYPE OR PRINT NAME)                           (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. [✓] A copy of the summons and of the complaint. (First Amended Summons)
2. [✓] Other (specify): First Amended Complaint (Redacted), Civil Case Cover Sheet, Notice of Case Assignment, Alternative Dispute Resolution

(ADR) Packet, Plaintiffs' Notice of Posting Jury Fees, Notice of Motion to File Under Seal Unredacted Complaint and First Amended Complaint, Declaration of Pafundi in Support of Motion to Seal (Redacted), Court Minute Order Re: Complex Determination (10/25/24), Initial Status Conference Order (Complex Cases/Class Action) (10/25/24), and Case Anywhere Re: Joint Request to Continue ISC and Motion to Seal Hearings, and Deadline to Serve Defendants (11/12/24).

*(To be completed by recipient):*

Date this form is signed: March 6, 2025
Camilo Echavarria on behalf of Defendant
Amazon Alternative LLC
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure, |
|---|---|---|
| Judicial Council of California | | §§ 415.30, 417.10 |
| POS-015 [Rev. January 1, 2005] | | www.courtinfo.ca.gov |

# EXHIBIT F

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY:  STATE BAR NO: 102847 | FOR COURT USE ONLY |
|---|---|
| NAME:  Robert N. Pafundi, Esq.<br>FIRM NAME:  PAFUNDI LAW FIRM, APC<br>STREET ADDRESS: 11693 San Vicente Blvd., Suite 824<br>CITY: Los Angeles                STATE: CA      ZIP CODE: 90049<br>TELEPHONE NO.: (424) 832-3502        FAX NO.: (424) 389-3502<br>E-MAIL ADDRESS: Robert@PafundiLawFirm.com<br>ATTORNEY FOR (Name): Plaintiffs, Contestant 1, Contestant 2, Contestant 3, Contestant 4, Contestant 5, Contestant 6, and the Proposed Class | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 312 North Spring Street
MAILING ADDRESS: 312 North Spring Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Spring Street Courthouse, Central District

Plaintiff/Petitioner:  CONTESTANT 1, et al.

Defendant/Respondent:  MRB2024, LLC, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>24STCV24042 |
|---|---|

TO (insert name of party being served): MYSTICART PICTURES, LLC, a California Limited Liability Company

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 14, 2025

Robert N. Pafundi, Esq.
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. [✓] A copy of the summons and of the complaint. (First Amended Summons)

2. [✓] Other (specify): First Amended Complaint (Redacted), Civil Case Cover Sheet, Notice of Case Assignment, Alternative Dispute Resolution

(ADR) Packet, Plaintiffs' Notice of Posting Jury Fees, Notice of Motion to File Under Seal Unredacted Complaint and First Amended Complaint, Declaration of Pafundi in Support of Motion to Seal (Redacted), Court Minute Order Re: Complex Determination (10/25/24), Initial Status Conference Order (Complex Cases/Class Action) (10/25/24), and Case Anywhere Re: Joint Request to Continue ISC and Motion to Seal Hearings, and Deadline to Serve Defendants (11/12/24).

*(To be completed by recipient):*

Date this form is signed: March 6, 2025

Maria C. Rodriguez, Esq.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _(signature)_
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

# EXHIBIT G

1    ROBERT N. PAFUNDI, ESQ. (SBN 102847)
     **PAFUNDI LAW FIRM, APC**
2    11693 SAN VICENTE BLVD., SUITE 824
     LOS ANGELES, CALIFORNIA 90049
3    TEL:  (424) 832-3502
     EMAIL: ROBERT@PAFUNDILAWFIRM.COM
4
     LIZELLE S. BRANDT, ESQ. (SBN 228250)
5    **SINGIAN LAW**
     1055 E. COLORADO BLVD., SUITE 500
6    PASADENA, CA 91106
     TEL: (626) 844-5050
7    EMAIL: LIZELLE@SINGIANLAW.COM

8    COURTNEY STUART-ALBAN, ESQ. (SBN 225513)
     **STUART ALBAN LAW, PC**
9    87 N. RAYMOND AVENUE, SUITE 200
     PASADENA, CA 91103
10   TEL: (323) 405-9898
     EMAIL: COURTNEY@STUARTALBANLAW.COM

11   ARTHUR Y. WHANG, ESQ. (SBN 203916)
     **WHANG LAW FIRM, PC**
12   5850 CANOGA AVENUE, SUITE 400
     WOODLAND HILLS, CA 91367
13   TEL: (310) 479-7300
     EMAIL: ARTHUR@WHANGLAW.COM

14   Attorneys for Plaintiffs MATTHEW RIVERA, KESHWAN CLARK,
15   KORY INGRAM, JANE HURST, GABRIELLE MATHEWS,
     JORDAN SANTANA, APRIL HOLLOWAY, and the Proposed Class and Subclasses

16            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17            **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| 18  CONTESTANT 1, a California resident, CONTESTANT 2, a California resident, CONTESTANT 3, a California resident, CONTESTANT 4, a California resident, CONTESTANT 5, a United States resident, CONTESTANT 6, a United States resident, each individually and on behalf of all others similarly situated, | Case No.  24STCV24042 |

18   CONTESTANT 1, a California resident,
     CONTESTANT 2, a California resident,
19   CONTESTANT 3, a California resident,
     CONTESTANT 4, a California resident,
20   CONTESTANT 5, a United States resident,
     CONTESTANT 6, a United States resident,
21   each individually and on behalf of all others
     similarly situated,
22
23                    Plaintiffs,

            v.
24
     MRB2024, LLC, a North Carolina Limited
25   Liability Company;  OFF ONE'S BASE, LLC, a
     North Carolina Limited Liability Company;
26   AMAZON ALTERNATIVE LLC, a California
     Limited Liability Company; MYSTICART
27   PICTURES, LLC and DOES 1-100, inclusive,

28                    Defendants.

Case No.  24STCV24042

**Second Amended Class Action Complaint For:**
1. **Failure to Pay Minimum Wages;**
2. **Liquidated Damages for Failure to Pay Minimum Wages;**
3. **Failure to Pay Overtime;**
4. **Sexual Harassment;**
5. **Failure to Prevent Harassment;**
6. **Failure to Provide Uninterrupted Meal Breaks;**
7. **Failure to Provide Uninterrupted Rest Breaks;**
8. **Failure to Pay Wages Promptly Upon Termination;**
9. **Failure to Provide Accurate and Itemized Wage Statements;**
10. **Failure to Provide Reasonable Accommodations;**
11. **Unfair Business Practices: Unfair Influence of Outcome of Competition;**

---

i

SECOND AMENDED CLASS ACTION COMPLAINT

**12. Unfair Business Practices: Unconscionable Contract;**
**13. Unfair Business Practices: Falsely Claiming Application of California Law Protections, Violations of California Law;**
**14. Breach of Contract;**
**15. Breach of Implied Contract;**
**16. Breach of Implied Covenant of Good Faith and Fair Dealing; and**
**17. Declaratory Relief**

**Jury Trial Demanded**

SECOND AMENDED CLASS ACTION COMPLAINT

<u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................. 1

II.   PARTIES ........................................................................................................ 6

III.  JURISDICTION AND VENUE ...................................................................... 9

IV.   FACTS ........................................................................................................... 11

    A.    In March 2024, MrBeast and Amazon announced their partnership on Beast Games and invited contestant applicants to submit to what appeared to be a thorough application and vetting process. ...............................................11

    B.    The Beast Games Agreement ("BGA") gave Beast Defendants and Amazon broad authority over the contestant-workers, including control over who worked for them, the terms and conditions of their work, how they were compensated, and the ability to restrict their future employment opportunities, among other rights and benefits. ...............................................11

    C.    The BGA promised the contestant-workers that California substantive law would apply to the work they performed on Beast Games. ...............................................13

    D.    The contestant-workers were "employees" under California law (and alternatively Nevada law), but Defendants intentionally misclassified them, and made those decisions in California. ...............................................13

        1.    The contestant-workers were not volunteers.  They were promised and received compensation in exchange for their services. ...............................14

        2.    The contestant-workers had no autonomy.  The Production Staff exercised complete control for the duration of Beast Games. ...............................15

        3.    The contestant-workers performed work that was in the usual course and scope of Defendants' businesses. ...............................21

        4.    The contestant-workers are not customarily engaged in an independently established business of the same nature as the work performed for Defendants. ...............................21

    E.    Defendants purposely misclassified the contestant-workers as "volunteers" to avoid their employment obligations under California law (and alternatively Nevada law) and to wrongfully receive unearned tax credits from Nevada, and made those decisions in California. ...............................22

    F.    Defendants required the contestant-workers to sign an unconscionable agreement with illegal and unenforceable terms. ...............................23

    G.    Defendants failed to provide a safe and healthful place of employment, to the particular and collective detriment of the female contestant-workers, who suffered sexual harassment. ...............................26

        1.    The purported "How to Succeed in MrBeast Production" handbook encourages staff to "Really do everything you can to empower the boys when filming and help them make content.  Help them be idiots." Consistent with this approach, MrBeast Head of Creative and Beast Games Series Director Conklin stated that one of his goals for Beast Games was to "make villains," to which Mr. Donaldson confirms, "Which I like." ...............................27

        2.    The directive to help "the boys" "make content" and the goal to "make villains," unfortunately translated to Production Staff allowing men to physically tackle women, all while "MrBeast [stood] on his podium, looking down watching all of [the Class Members] fight for a chance at $5 million." ...............................28

SECOND AMENDED CLASS ACTION COMPLAINT

3.    Defendants created hostile conditions where women were forced to endure the severe embarrassment and unfair disadvantage of being denied access to menstruation products and clean underwear by Production Staff who reportedly laughed at their predicament. ................................................. 30

4.    Defendants failed to prevent sexual harassment and violence from occurring despite having actual notice that these problems had occurred at the Production's initial "testing" location in Las Vegas. ................................. 31

H.    Defendants failed to provide reasonable accommodations, to the particular and collective detriment of those who required such accommodations. ................ 32

I.    Despite the BGA stating that game-rigging would not be allowed, Defendants influenced the outcome of the competitions in Toronto, resulting in hundreds of the contestant-workers being unfairly eliminated. .......................................... 33

J.    Defendants made multiple false statements to the contestant-workers in connection with Beast Games prior to the start of the competition. ................... 35

1.    Defendants falsely advertised that the competition would have 1,000 contestant-workers, when it was actually 2,000, reducing the odds of winning by half of what was originally advertised. ................................. 35

2.    Defendants misrepresented that sufficient meals would be provided. ................... 36

K.    Even the way the Production handled contestant eliminations was questionable; the Production was so void of standards of reasonable care that MrBeast allegedly offered to pay for the contestant-workers' psychotherapy. ................................. 37

L.    Individual experiences of the Plaintiffs. ................................................. 38

V.    CLASS ACTION: GENERAL ALLEGATIONS ................................................. 44
A.    Numerosity. ................................................................................. 46
B.    Ascertainability. ............................................................................ 47
C.    Typicality. .................................................................................. 47
D.    Superiority. ................................................................................. 47
E.    Existence and Predominance of Common Law Questions of Fact and Law. ................... 48
F.    Adequacy. .................................................................................. 51

VI.   CAUSES OF ACTION ................................................................. 51
A.    Count 1: Failure to Pay Minimum Wage (Lab. Code §§ 204, 1194, 1197, and 1197.1, and Wage Order No. 12-2001) (NRS 608.250 et seq. and the Nevada Constitution) (Employment Standards Act, Part IX) ................................. 51
B.    Count 2: Liquidated Damages for Failure to Pay Minimum Wages (Lab. Code § 1194.2) ................................................................................. 52
C.    Count 3: Failure to Pay Overtime Wages (Lab. Code §§ 204, 510, and 1194, and Wage Order No. 12-2001, § 3) (NRS 608.018 et seq. and the Nevada Constitution) (Employment Standards Act, Part VIII) ................................. 53
D.    Count 4: Sexual Harassment (Gov't. Code §§ 12940(a) et seq., 12923 and 12965) (NRS 200.571) ............................................................................ 54
E.    Count 5: Failure to Prevent Harassment (Gov't. Code §§ 12940(a) et seq. and 12965) ................................................................................. 56
F.    Count 6: Failure to Provide Uninterrupted Meal Breaks (Lab. Code §§ 512 and 226.7, and Wage Order No. 12-2001 § 11) (NRS 608.019 et seq. and the Nevada Constitution) (Employment Standards Act, Part VII) ................................. 57
G.    Count 7: Failure to Provide Uninterrupted Rest Breaks (Lab. Code § 226.7, and Wage Order No. 12-2001) (NRS 608.019 et seq. and the Nevada Constitution) (Employment Standards Act, Part VII) ................................. 57

H.    Count 8: Failure to Provide Wages Promptly Upon Termination (Lab. Code §§ 201, 202, and 203) (NRS 608.020 – 608.040, 608.050 and the Nevada Constitution) (Employment Standards Act, Part V). ........................................58

I.    Count 9: Failure to Provide Accurate and Itemized Wage Statements (Lab. Code §§ 226 and 226.3, and Wage Order No. 12-2001) (NRS 608.110 et seq.  and the Nevada Constitution) (Employment Standards Act, Part V) ...........................59

J.    Count 10: Failure to Provide Reasonable Accommodations (Gov't. Code § 12940, (m), et seq.) (NRS §§ 284.317, 284.379, and 613.330, et seq.)........................................60

K.    Count 11: Unfair Business Practices (Bus. & Prof. Code § 17200) – Unfair Influence of Competition Outcome ....................................................................62

L.    Count 12: Unfair Business Practices (Bus. & Prof. Code § 17200) – Unconscionable Contract (Violation of Civil Code §§ 1670.5 Unconscionable; 1671 Unenforceable Liquidated Damages Clause)........................................................63

M.    Count 13: Unfair Business Practices (Bus. & Prof. Code § 17200) – Falsely Claiming Application of California Law Protections and related violations of California Labor Code and Fair Employment and Housing Act ......................................64

N.    Count 14: Breach of Contract ...................................................................................65

O.    Count 15: Breach of Implied Contract.....................................................................66

P.    Count 16: Breach of Implied Covenant of Good Faith and Fair Dealing.........................68

Q.    Count 17: Declaratory Relief ...................................................................................70

VII.    PRAYER FOR RELIEF ................................................................................................ 72

VIII.    JURY DEMAND .......................................................................................................... 75

SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs MATTHEW RIVERA, KESHWAN CLARK, KORY INGRAM, JANE HURST, GABRIELLE MATHEWS, JORDAN SANTANA, and APRIL HOLLOWAY (collectively "**Plaintiffs**"), individually, and on behalf of the Proposed Class and Proposed subclasses, allege:

I.    **INTRODUCTION**

1.    This case presents the Court with an important opportunity to secure employment law protections for a proposed class of contestants on Amazon's® Beast Games® reality show ("Class Members"), whose labor provided the core commercial value of this allegedly "unscripted" entertainment content, but who the network ("**Amazon**") and producer defendants (MrB2024 and Off One's Base) ("**Beast Defendants**") are categorically excluding from the minimum wage and hour protections afforded to all other employees under California law.  Here, Amazon and 26-year-old Jimmy Donaldson, the world's first YouTube® billionaire, better known by his trademark moniker, "MrBeast," joined forces to produce Beast Games Season 1 in 2024 ("**Beast Games**," "**the Games**," or "**Program**"), a social-experiment, wild spectacle of a reality show that draws people from all walks of life and of diverse backgrounds and professions, while at the same time also preys upon financially desperate individuals all of whom are pitted against one another to compete in high stakes games of chance, manipulation, and ethical dilemmas for the largest cash prize ever awarded on a reality show ($5M), which was later increased to $10M.  Beast Games kicked off with an initial round of competitions in Las Vegas, where the pool of contestant-workers was narrowed from 2,000 to 1,000. The next phases of the competition—beginning with the final 1,000—were held in Toronto and Panama, with the Las Vegas competitions streaming on YouTube and the subsequent competitions streaming on Amazon Prime beginning December 2024.  During the course of the ten-episode series airing on Amazon Prime, Beast Games Season 1 broke almost 50 Guinness World Records and became Amazon Prime's most-watched "unscripted" series ever, with 50 million views in the first 25 days.  Mr. Donaldson described Beast Games as "the most insane, psychological, emotional, and expensive games in the history of entertainment," and he is not wrong.

2.    On information and belief, MrBeast and Amazon entered into an agreement pursuant to which Amazon reportedly gave MrBeast an estimated $100-million-dollar budget to create and co-produce the Beast Games reality show, which, tellingly, was inspired by the fictional show Squid

SECOND AMENDED CLASS ACTION COMPLAINT

Games, a dystopian series that highlights the exploitation of vulnerable individuals who will do anything for money. For all of the money spent on the Beast Games, however, it would hold no value whatsoever without the intense labor of the contestant-worker Class Members, whose reasons for competing on the show were promoted by Defendants, presumably for media attention, to include such dire circumstances as lifting one contestant's family out of the "poverty pipeline," enabling another contestant to move out of his car, and another to pay off his family's medical debt after a sibling's cancer diagnosis. Unfortunately, MrBeast – whose public persona is characterized by performative generosity – was the opposite of generous when it came to paying the up-to-2000 Class Members hired to participate in this disturbing social experiment.

3.     Neither MrBeast nor Amazon allocated any of the jaw-dropping budget to pay the Class Members fair legal wages or ensure that health-and-safety standards were met on set. Instead, MrBeast, who on information and belief is the executive producer of Beast Games, capitalized on his superior bargaining power to induce thousands of workers to sign an unconscionable contract, the "Contestant Agreement and Release" (the "**Beast Games Agreement**" or "**BGA**"), which misrepresents the Class Members' labor as "volunteer" services, while giving MrBeast and Amazon unfathomable control over the contestants' 24-hour-a-day work schedules, their image and likeness, and their alleged "work-for-hire" work product – in exchange for menial, in-kind compensation, such as transportation to the work location, and a belated discretionary payment of $2,000 in "prize money" that was loosely verbally promised in staggered amounts from the beginning, as well as throughout the Class Members' services, to incentivize them to continue working for Defendants. The BGA selects Los Angeles as the forum for dispute resolution and provides that "all controversies and questions with respect to this Agreement and/or [the Class Members'] appearance on the Program shall be determined by the internal, substantive laws of the State of California." BGA at ¶48. The BGA, however, does not itself comply with the laws of California, particularly to the extent it purports to establish anything short of an employment relationship with Beast Defendants and Amazon.

4.     From the outset, the BGA required the Class Members to clear their calendars for a 94-day period to be available on any date at any location in the world that the Defendants "shall designate in their sole discretion and which dates and locations [MrBeast] and [Amazon] may change in their sole

discretion." *Id.* at ¶12.  Moreover, even after Beast Games Season 1 aired in its entirety, the BGA purports to give Beast Defendants the right to "require [the "volunteer" Class Members] to appear in additional episodes" of the Beast Games "in any broadcast season . . . regardless of the broadcast season for which [they] were originally considered and/or selected."  *Id.*  The BGA notes, moreover, that any such appearance "will not entitle [Class Members] to receive any … compensation" for their labor. *Id.*  This free-labor obligation extends for a period of at least "three years from the initial exhibition of the first episode," or December 2027, during which time Beast Defendants retain the "exclusive and irrevocable option to engage" the Class Members "in connection with the filming or taping of additional" episodes.  *Id.* at ¶ 13.  If the Beast Defendants elect to exercise this option, they need only "notify" the Class Members "five days prior to the commencement of principal photography," at which point the Class Members are contractually obligated to submit to work anywhere in the world for a time period to be determined by MrBeast in his sole discretion.  *Id.* at ¶ 13.

5.    The BGA also provides that during a so-called "Exclusive Period" from July 2024 (when the contract was signed) to February 2026, Class Members may "not apply to or appear on any unscripted, competition, and/or game programs in any media" without Beast Defendants' *and* Amazon's prior written consent.  Consent, moreover, need not be freely given.  It may be "given or withheld" at their "sole discretion." *Id.* at ¶ 13 (b).  This prior restraint on free employment mobility is unlawful in California even in the context of an uncontested employment agreement.  It is beyond the pale in an alleged "volunteer" agreement, or even an independent contractor agreement, if Defendants later argue that was their real intent.

6.    Finally, still today, months after the final episode of Beast Games Season 1 aired, the Class Members are required to get Amazon's approval for any social media post they wish to make about their experience on Beast Games, subject to a five-day turnaround.  And while these terms may appear overreaching, the Class Members are predictably reticent to do anything that risks violating any term in the BGA, because the BGA contains a $500,000 liquidated damages clause that requires equal payment to both Amazon and MrBeast for any violation.  While this too is likely unenforceable, it is an expensive gamble, so it serves MrBeast's and Amazon's intended deterrent chilling effect.

SECOND AMENDED CLASS ACTION COMPLAINT

7.    The classification of the Class Members as "volunteers" was an egregious departure from the remaining terms of the BGA, which gives complete control of the employment conditions to MrBeast and Amazon, two extreme for-profit entities.  But the misclassification served two important purposes.  It enabled the Beast Games production **("Production")** to skirt the costs of providing legal wages and safe working conditions to the Class Members, who worked around-the-clock under inherently unsafe conditions.  And it provided false cover for lucrative tax credits that on information and belief Amazon contracted with MrBeast to apply for, with any amounts received credited against the Amazon-financed budget, i.e., to Amazon's benefit.  Public records show that the Beast Defendants applied and were approved for a Nevada tax credit totaling $2,252,523 conditioned on the Production spending 60% of its below-the-line labor budget on local workers.  This local-labor ratio could not be achieved with proper disclosure of the true labor costs, including the services provided by the Class, the vast majority of whom were not Nevada residents (with most being, on information and belief, overwhelmingly California residents).  Representing the contestants as unpaid "volunteers" performing services for the Amazon and MrBeast corporate entities for free, solved this problem for Nevada, and possibly other locations Beast Games was filmed in, including Toronto, Canada and Panama.  The obvious false and misleading representations in the budget presented to the Nevada Film Commission, moreover, undermine any argument that the misclassification was not 'knowing and intentional.'

8.    Sufficed to say, while the unconscionable terms of the BGA look 'bad' on paper, the circumstances they produced on the ground were worse.  In July 2024, approximately 2000 hired contestants descended upon Las Vegas, arriving to a level of chaos that is difficult to imagine would exist if the contestants had been properly classified as employees, subject to the full panoply of employment law protections.  While issues with housing or transportation might be expected under the circumstances, this went well beyond that.  There was not enough food and water.  There was a shortage of sleeping accommodations.  The production was severely understaffed.  When the approximately 2000 laborers were eventually transported to Allegiant Stadium, they were given uniforms to wear and stripped of all of their personal belongings.  They were separated from their phones, watches, toiletries, underwear, even prescription medications for serious medical conditions.  There was supposed to be a system to retrieve undergarments, or insulin, say, but none was successfully implemented.  They slept, if

SECOND AMENDED CLASS ACTION COMPLAINT

at all, in thin sleeping bags under bright lights on the stadium floor.  They were awakened at all hours to compete in "challenges" throughout the night.  There was not enough medical staff.  Not enough meals.  Not enough feminine hygiene products.  Not enough water.  People were desperate.  People were hospitalized.  The Las Vegas media reported on the appalling conditions in real time, and national outlets published independent reports, including the New York Times.[1]

9.    The female contestants particularly suffered in these race-to-the-bottom employment conditions.  The Beast Games work environment encouraged a culture of aggressive misogyny and sexism where the Beast Games Production staff hired by Beast Defendants and Amazon ("**Production Staff**") looked the other way, including when some men violently tackled women during challenges, in at least one case, reportedly, to the point of unconsciousness, without disqualification or any other consequence.  Female contestants also were denied access to menstruation products and clean underwear, reporting that Production staff callously dismissed menstruation as "not a medical emergency," *Id.*, leaving women to bleed through their clothing in abject humiliation.

10.    It also soon became apparent that the Games would not be administered fairly.  The rules were not applied consistently.  Some contestants were given unearned advantages, such as early exposure to the rules of an upcoming challenge, or being allowed to strategize with others, while others were prevented from speaking at all.  Some players were unfairly eliminated.  Other players were eliminated but then allowed to return to compete, without explanation (though possibly with undisclosed restrictions that skewed their incentives, unbeknownst to the other players).  Upon a close reading, the BGA technically allows for MrBeast or Amazon to exercise certain game-influencing discretions, including the freedom to swap out players, but the all-caps admonishment in the BGA that "**IT IS A FEDERAL OFFENSE…FOR ANYONE TO RIG THE OUTCOME**" (BGA at ¶ 19) served as a distraction and gave the impression that Beast Games would be run fairly in conformity with California law, which governed the contract and all aspects of the Class Members' appearance on Beast Games.

11.    Under these conditions, it is reasonable to question why contestants did not just turn around and go home.  Contestants were led to believe throughout the Games that they would not receive

---

[1] Madison Malone Kircher, *Willing to Die for MrBeast (and $5 Million)*, The New York Times (Aug.  2, 2024), https://www.nytimes.com/2024/08/02/style/mrbeast-beast-games-competition-show.html.

SECOND AMENDED CLASS ACTION COMPLAINT

the $1,000 prize money promised if they withdrew from the Games.  Additionally, some contestants needed to be reimbursed for expenses incurred out-of-pocket to get to the Beast Games.  Additionally, there was a feared that if contestants withdrew from the Games voluntarily, they would have to pay back the Production for expenses incurred on their behalf, since the BGA specifically provides that "If I voluntarily withdraw. ... I may be required to reimburse Producer for any travel or lodging expenses incurred on my behalf, and any other goods, services, or money that I have received in connection with the Program." BGA at ¶ 10(b).  In short, the BGA served its intended purpose of deterring the Class Members from asserting any rights against MrBeast or Amazon that were inconsistent with the BGA's unconscionable terms.

12.    The BGA is unconscionable under California law, and it cannot be interpreted or enforced against the Class Members to require them to provide free or underpaid services within the usual course of MrBeast's and Amazon's unscripted television production business, stripped of the wage and hour protections guaranteed to employees under California law.  As the United States Supreme Court stated in *Alamo Found'n v. Secy. of Labor,* 471 U.S. 290 (1985), "Treating all workers whose services are provided within the usual course of the hiring entity's business as employees is important… If an exception... were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections."  This Court has an important opportunity to remove any doubt that the robust California wage-and-hour employment laws do not carve out a categorical exception for reality show contestants who provide services within the usual course of the hiring production company's business, including Amazon and MrBeast, who on information and belief have signed an agreement for Beast Games Season 2, and who regularly relegate contestant labor to the shadows of employment law.

## II.    PARTIES

13.    MATTHEW RIVERA ("**Rivera**";  formerly known as "Contestant 1") is an individual and a resident of the county of Los Angeles, California, who was employed by Defendants as a contestant in the Production.

SECOND AMENDED CLASS ACTION COMPLAINT

14.    KESHWAN CLARK ("**Clark**";  formerly known as "Contestant 2") is an individual and a resident of the state of California, who was employed by Defendants as a contestant in the Production.

15.    KORY INGRAM ("**Ingram**";  formerly known as "Contestant 3") is an individual and a resident of the state of California, who was employed by Defendants as a contestant in the Production.

16.    JANE HURST("**Hurst**");  formerly known as "Contestant 4") is an individual and a resident of the county of Los Angeles, California, who was employed by Defendants as a contestant in the Production.

17.    GABRIELLE MATHEWS ("**Mathews**";  formerly known as "Contestant 5") is an individual and a resident of the state of Kansas, who was employed by Defendants as a contestant in the Production.

18.    JORDAN SANTANA ("**Santana**";  formerly known as "Contestant 6") is an individual and a resident of the state of New Jersey, who was employed by Defendants as a contestant in the Production.

19.    APRIL HOLLOWAY ("**Holloway**") is an individual and a resident of the state of California, who was employed by Defendants as a contestant in the Production.

20.    Defendant MRB2024, LLC ("**MrB2024**") is an entertainment production limited liability company organized under the laws of North Carolina, which states in its corporate filings that it "does not have a principal office."  The only address that MrB2024 provided in the BGA that it and/or Off One's Base, LLC drafted and required Plaintiffs and contestants to sign is: 1901 Avenue of the Stars, 2nd Floor, Los Angeles, CA 90067, which on information and belief, is the "nerve center" where key operational decisions are made and contracts negotiated and entered into, making Los Angeles the *de facto* operational headquarters for MrB2024.  On information and belief, MrB2024's administrative legal decisions as to Beast Games 2024, including the filming of the competition in Las Vegas, Toronto, and Panama were made in Los Angeles, including contestant-worker classification decisions, hiring decisions, payment decisions, production decisions, and decisions on how to market Beast Games, including the Beast Games premiere party and Santa Monica Pier launch activation event which were held in Los Angeles, California (see ¶ 27 and Figure 1, *infra*).  MrB2024 is identified in the BGA,

SECOND AMENDED CLASS ACTION COMPLAINT

together with Off One's Base, LLC, as the "Producer" of Beast Games.  On information and belief, MrB2024 at all relevant times, was and is doing business in Los Angeles, California.

21.     Defendant OFF ONE'S BASE, LLC, ("**OOB**") is an entertainment production limited liability company organized under the laws of North Carolina, which states in its corporate filings that it "does not have a principal office."  The only address that OOB provided in the BGA that it and/or MrB2024 drafted and required Plaintiffs and contestants to sign is: 1901 Avenue of the Stars, 2nd Floor, Los Angeles, CA 90067, which on information and belief, is the "nerve center" where key operational decisions are made and contracts negotiated and entered into, making Los Angeles the *de facto* operational headquarters for OOB.  On information and belief, OOB's administrative legal decisions as to Beast Games were made in Los Angeles, including contestant-worker classification decisions, hiring decisions, payment decisions, production decisions, and decisions on how to market Beast Games, including the Beast Games premiere party and Santa Monica Pier launch activation event which were held in Los Angeles, California (see ¶ 27 and Figure 1, *infra*).  OOB is identified in the BGA, together with MrB2024, as the "Producer" of Beast Games.  On information and belief, defendant OOB was at all relevant times and is continuing to do business in Los Angeles, California.

22.     Defendant AMAZON ALTERNATIVE, LLC, ("**Amazon**") is a California Limited Liability Company with its principal place of business in Los Angeles County at 9300 Culver Boulevard, Culver City, California 90232.  Amazon Alternative is identified, together with its "parent, subsidiary, and affiliated entities" in the BGA as the "Network" for Beast Games.

23.     Plaintiffs are ignorant of the names and capacities of DOES 1 through 100 and sue them as DOES 1 through 100, inclusive.  Plaintiffs will amend this action to allege DOE defendants' true names and capacities when they are ascertained.

24.     At all times relevant to this Second Amended Complaint ("Complaint"), the defendants were the joint employers, agents, principals, representatives, employees, joint venturers, partners, predecessors and/or successors in interest, and/or alter egos of each other and were acting within and furtherance of the purposes and scope of such agency, representation, employment, joint venture, partnership, corporate structure, and/or association, either actually, apparently, or ostensibly.

8

SECOND AMENDED CLASS ACTION COMPLAINT

## III.    JURISDICTION AND VENUE

25.    Jurisdiction is proper in the Superior Court for the County of Los Angeles under Cal. Code Civ. Proc. § 410.10, because no constitutional or statutory exceptions to jurisdiction exist, and because Defendants identified California as the forum in the BGA they drafted and required the contestant-workers to sign.

26.    This Court has general personal jurisdiction over the Amazon because it has its principal place of business in Los Angeles County, California.

27.    This Court has specific personal jurisdiction over the Beast Defendants, because they selected Los Angeles County as the sole forum for dispute resolution in the BGA that they drafted, which also provides that "all controversies and questions with respect to [the contestants'] appearance on the Program [defined to include the Beast Games® YouTube® episode zero and the ten-episode Amazon® series] shall be determined by the internal, substantive laws of the State of California." BGA ¶ 48. The Beast Defendants additionally purposefully availed themselves to jurisdiction in Los Angeles in connection with the Beast Games by operating a *de facto* headquarters in Los Angeles, where Beast Games co-creator, Amazon, is headquartered, and where Beast Defendants drafted and entered into the BGA, which identified a Los Angeles address for all notices associated with the contract; cast Beast Games, using Los Angeles-based Mystic Arts and predominately hiring California contestants; conducted Beast Games with Burbank, California-based Sullivan Compliance, Company; edited and performed post production services with California post-production supervisors; made payroll decisions and payments using Burbank, California-based Revolution Entertainment Services; and where they most heavily marketed and promoted the Beast Games, including making Santa Monica "ground zero for the launch" by *inter alia* "activating" an enormous installation at the Santa Monica Pier of a large glass vault filled with $5 million in faux cash, guarded by masked figures, and a digital countdown timer ticking toward the world premiere, which took place on the Santa Monica Pier and was heavily promoted in Santa Monica including with a dramatic display of 1000 drones illuminating the sky above the Pier. In connection therewith, the Santa Monica Pier's famed Pacific Wheel was lit "in the colors of [the MrBeast® and Beast Games® trademark color scheme] teal and pink," in an apparent collaboration

SECOND AMENDED CLASS ACTION COMPLAINT

with the Santa Monica Pier's Pacific Park, which advertised the event on its website[2], promoting the Beast Games, as well as the City of Los Angeles.[3]  Amazon's @beastgamesonprime official Instagram account promoted Beast Games, broadcasting: "We brought some of the world's biggest creators to Los Angeles for Beast Games!" with a video reel featuring MrBeast and various social media influencers in Los Angeles, with vignettes displaying the MrBeast® logo superimposed on a Hollywood Walk of Fame Star, with the drone activation on the Santa Monica Pier and the premiere party featured[4] (See *Figure 1* below).  In addition, five of the seven named plaintiffs are California residents.



*Figure 1*

28.    Venue is proper in the County of Los Angeles and this Court, because the BGA was formed in Los Angeles; Los Angeles appears to be the de facto principal place of business for the Beast Defendants; the Beast Defendants selected Los Angeles County as the forum to resolve any disputes arising out of the contestant-workers' performance in the Beast Games Production; the Beast Defendants utilized a Los Angeles address in the BGA; the defense counsel retained by the Beast Defendants are in Los Angeles County; and Amazon has its principal place of business in Los Angeles County, California.

---

[2] Pacific Park Santa Monica Pier, *Beast Games Ferris Wheel Lighting At the Santa Monica Pier* (Dec. 18, 2024), https://pacpark.com/beast-games-ferris-wheel-lighting-at-the-santa-monica-pier/.
[3] Santa Monica Closeup, *MrBEAST TAKES OVER SANTA MONICA: Countdown begins for Record-Breaking 'Beast Games' Series*, YouTube (Dec. 18, 2024); https://www.youtube.com/watch?v=eqDABhO9piQ; Pixis Drones, *Drone Light Show in LA for the release of Beast Games on Prime Video!*, YouTube (Dec. 20, 2024), https://www.youtube.com/watch?v=tXzLbpwtHmY; Santa Monica Closeup, *1000 Drones Illuminate Sky in Santa Monica for Beast Games*, YouTube (Dec. 18, 2024), https://www.youtube.com/watch?v=p-Ps1PfXwYU.
[4] @beastgamesonprime, *Instagram* (Dec. 21, 2024), https://www.instagram.com/reel/DD2GCBMvFWV/?igsh=Mzc3ZTVlOWMwZA%3D%3D.

SECOND AMENDED CLASS ACTION COMPLAINT

1   In addition, two of the lead plaintiffs, and on information and belief a substantial number of the putative

2   class, as well as the Plaintiffs' Class Counsel, are located in Los Angeles County.

3   **IV.    FACTS**

4       **A.    In March 2024, MrBeast and Amazon announced their partnership on Beast Games**

5           **and invited contestant applicants to submit to what appeared to be a thorough**

6           **application and vetting process.**

7       29.    On March 18, 2024, Amazon announced, "MrBeast and Amazon MGM Studios

8   announce the new reality competition series 'Beast Games,'" with Jennifer Salke, head of Amazon

9   MGM Studios stating, "We are excited to work with Jimmy [Donaldson] and his talented team to bring

10  his brilliant, high production, and stakes-raising concepts to Beast Games for our global customers to

11  experience."[5]

12      30.    On information and belief, Amazon's and Beast Defendants' agent MysticArt Pictures,

13  LLC ("**Mysticart**") solicited, received, and reviewed the contestants' applications, assisting Defendants

14  with staffing the Beast Games with contestants.  The Class Members hired as contestants on Beast

15  Games submitted a thorough application and authorized and underwent what appeared to be a thorough

16  vetting process.

17      31.    The first step in the application process was to submit a written application that included

18  consent to a release of medical records and a background check as well as photographs and a video.  The

19  Class Members hired after an application and, on information and belief for most, an additional

20  interview process, were contractually required to be on-call for ninety-four (94) days to labor

21  exclusively for Defendants in exchange for in-kind and other compensation.  The contestant-workers

22  incurred reimbursable business-related travel expenses, including flights, car transportation, and hotel

23  accommodations.

24      **B.    The Beast Games Agreement ("BGA") gave Beast Defendants and Amazon broad**

25          **authority over the contestant-workers, including control over who worked for them,**

26  _____

27  [5] Mekeisha Madden Toby, *MrBeast and Amazon MGM Studios announce the new reality competition series 'Beast Games,'* Amazon (Mar. 18, 2024),

28  https://web.archive.org/web/20240327170035/https://www.aboutamazon.com/news/entertainment/beast-games-mrbeast-prime-video.

SECOND AMENDED CLASS ACTION COMPLAINT

1    **the terms and conditions of their work, how they were compensated, and the ability**

2    **to restrict their future employment opportunities, among other rights and benefits.**

3    32.    The BGA gave Beast Defendants and Amazon (collectively "**Defendants**") the right to

4    control who served as contestant-workers, including the right to, in their "sole discretion," render any

5    contestant-worker ineligible to work, or conversely, allow that contestant-worker to continue working,

6    on the Program, depending on that contestant-worker's responses to the BGA.  BGA at ¶ 4.

7    33.    The BGA gave Defendants the right to control the contestant-workers' duration and

8    location of their engagement as reality show contestant-workers, and even after.  *Id.* at ¶ 12.

9    34.    The BGA gave Defendants the right to control the "procedures and rules as established

10    by [Beast Defendants] and [Amazon]" including  how the workers worked (e.g. the "Challenges"), and

11    what the contestant-workers would be paid (e.g. the "Prize(s)")  *Id.* at  ¶ 12, 17.

12    35.    The contestant-workers each entered into the BGA with Beast Defendants, and Amazon

13    (implied by the terms of the BGA), agreeing that if they were selected and agreed to provide contestant

14    work in Defendants' "Untitled YouTube Competition" and "the audiovisual program currently entitled

15    "Beast Games," they would be compensated by Defendants, in addition to being allowed "to compete

16    for and potentially win a prize specified by Producer [defined in the BGA as MrB2024 and OOB]

17    (which may be in the form of cash…) and/or, among other things, goods and services, including but not

18    limited to merchandise, travel, lodging, tickets and/or access to events or other consideration."  The

19    BGA also states that, "any Prize(s) that may be awarded shall be subject to such procedures and rules as

20    established by Producer and Network [defined in the BGA as Amazon Alternative]."

21    36.    Even after the contestant-workers finished competing in Beast Games, the BGA gave

22    Defendants the right and "sole discretion" to prevent the Class Members from working for any

23    perceived competitor, including when the contract was entered through February 2026 (one year after

24    the final episode aired).  *Id.* at ¶ 13.

25    37.    Additionally, Defendants had and have the right to control the social media postings of

26    the contestant-workers, and they have exercised this right to control, with Defendants each sending

27    contestant-workers instructions that social media posts related to Beast Games are to be run by both

28    Defendants.

12

SECOND AMENDED CLASS ACTION COMPLAINT

38.     A detailed discussion of the control exercised by Defendants during production of Beast Games is provided in Section IV.D(2) *infra*.

**C.    The BGA promised the contestant-workers that California substantive law would apply to the work they performed on Beast Games.**

39.     The Class Members contracted that California substantive law would govern their appearance on the Beast Games.

40.     The BGA provides that it is "controlled by California Law, and all controversies and questions with respect to this Agreement and/or [the Contestant's] **appearance on the Program** shall be determined by the internal, substantive laws of the State of California." (emphasis added)

**D.    The contestant-workers were "employees" under California law (and alternatively Nevada law), but Defendants intentionally misclassified them, and made those decisions in California.**

41.     Defendants wrongfully and willfully misclassified, and on information and belief, continue to wrongfully and willfully misclassify the contestant-workers as either volunteers or independent contractors, although they should legally be classified as employees.

42.     The BGA misrepresents the contestant labor as volunteer services and falsely identifies the Class Members as "volunteers," but as a matter of law the arrangement constitutes an employment relationship, whereby Defendants Amazon, Off One's Base, and MrBeast were joint employers of the Class Members, either directly or impliedly by contract.

43.     On information and belief, the Beast Defendants' administrative legal decisions as to Beast Games were made in Los Angeles, California, which on information and belief is their de facto headquarters and nerve center, with their co-producer Amazon.  These decisions included material terms to include in the BGA, worker classification, including to label the workers a "volunteers," tax treatment, tax credit applications, on-set treatment, on-set production logistics and related administrative decisions, and payroll obligations to the Class Members, and other administrative and legal decisions, among other decisions.

13

SECOND AMENDED CLASS ACTION COMPLAINT

1.    **The contestant-workers were not volunteers.  They were promised and received compensation in exchange for their services.**

44.    On information and belief, each of the Defendants are for-profit companies in the business of making entertainment audiovisual programming, including for distribution on YouTube® and/or Amazon Prime Video®, among other video platforms.

45.    The Class Members were promised and received compensation in exchange for their around-the-clock services and on-demand labor on the Beast Games Production.

46.    Additionally, Mr. Donaldson made public statements online that he had unconstrained control over Beast Games, and Donaldson had established a pattern and practice of compensating everyone who competes in the MrBeast® competitions, win or lose, even if they competed for only five minutes, setting the expectation of additional compensation in exchange for services.[6]

47.    The Class Members did not provide free services to a civic, charitable, or humanitarian organization, or for any public service or charitable objective, as the Defendants are not public agencies or tax-exempt Internal Revenue Code Section 501(c)(3) organizations.[7]

48.    The Class Members provided services integral to the core business of the Production as part of the Defendants' usual course of business, i.e., producing unscripted entertainment content for profit.  The Class Members' work on the Production, which was filmed over approximately seven weeks, comprised the end entertainment product that Defendants marketed and sold for public consumption and enormous profit.

49.    Defendants compensated the Class Members for their work on the Production with "in-kind" compensation, fringe benefits, and $2,000 in "prize money" that was belatedly "gifted" to every contestant who competed, regardless of when they were eliminated (as long as they did not voluntarily withdraw).

---

[6] Jon Youshaei, *Why every MrBeast video gests 200M views (interview)*, YouTube (May 28, 2024), https://www.youtube.com/watch?v=IXEewFEDieU, at 1:17:00.  It is also worth noting that earlier in this same video, Mr. Donaldson discusses his plans for Beast Games and the Contestants, and added that, "money is not a constraint" (at 44:41).
[7] Labor Code Section 1720.4 defines "volunteers" as those who work for no compensation, and only for public agencies or Section 501(c)(3) tax-exempt organizations in furtherance of civic or charitable work.

14
SECOND AMENDED CLASS ACTION COMPLAINT

50.     Throughout the Beast Games engagement, the Class Members were pressured to remain because the BGA stated that if they withdrew they could be liable for compensation already received, including the costs of travel (which on information and belief was arranged by Amazon), lodging, and any other goods, services, or money received.  Additionally, they would have to finance their own trip home, which many were unable to do.

51.     After the Production, Defendants requested and Plaintiffs provided their W9 information to receive compensation for their labor and reimbursement for their out-of-pocket expenses.  *See* Figure 2 below.  On information and belief, Defendants' have since misclassified the Class Members as independent contractors.



*Figure 2*

52.     Under California substantive law, which governs the Class Members' appearance on the Production, including Labor Code Section 1720.4, the Class Members cannot legally be classified as "volunteers" or "independent contractors."  Rather, they were at all relevant times, legal employees.

**2.     The contestant-workers had no autonomy.  The Production Staff exercised complete control for the duration of Beast Games.**

53.     Defendants engage and/or suffered and permitted the Class Members to work, and they exercised total control over the manner, means, and timing of the work, including by controlling essentially every aspect of the Class Members' lives during the weeks-long production – and unlawfully exerting contractual control for years thereafter.  Production Staff's control included, but was not limited to: (1) requiring them to work 24-hour-and-beyond shifts, (2) controlling and restricting their sleep, (3) controlling and restricting their food and water intake, (4) controlling and restricting their access and

SECOND AMENDED CLASS ACTION COMPLAINT

intake of both prescription and non-prescription medication, (5) preventing them leaving the premises for days or weeks on end by threat leaving them without interstate transportation home and with debts owed to the Production for previously-incurred expenses, (6) controlling and restricting their ability to communicate with others, (7) directing every task to be performed as a member of the show, and (8) restricting their ability to engage in a multitude of activities even after their employment concluded.

54. **When and where.** Defendants required the contestant-workers to be physically present on specific dates and times, around-the-clock, at locations dictated, controlled, and supervised by them, which dates and locations they were entitled to change "in their sole discretion." Defendants required Plaintiffs to dedicate *all* of their time to the Production during the production period, including by setting aside a 94-day period from June 29, 2024, through September 30, 2024, requiring them to refuse other work during this time. Even after the conclusion of the Production, Beast Defendants purport to exercise unlawful contractual control over the Class Members. For a period of "three years from the initial exhibition of the first episode," the Beast Defendants exert a contractual right to have the "exclusive and irrevocable option to engage" the Class Members "in connection with the filming or taping of additional episodes," and if they "elect[] to exercise" this option, they need only "notify" the Class Members a mere "five (5) days prior to the commencement of principal photography," at which point the BGA states that the Class Members are contractually required to participate in the new episodes "for a period to be determined by the Producer … at a location to be determined … by the Producer in its sole discretion." The contract further violates California law by purporting to restrict the contestant-workers' ability to "appear on any unscripted, competition, and/or game programs in any media without Producer's [MrBeast's] and Network's [Amazon's] prior written consent, which "may be given or withheld at [their] sole discretion." See Figure 3 below.

SECOND AMENDED CLASS ACTION COMPLAINT

13.     (a) It is agreed that Producer shall have the exclusive and irrevocable option to engage me in connection with the filming or taping of additional episodes of the Program, including, without limitation, "all-star", championship, "best-of", reunion, and/or other episodes of the Program ("**All-Star Episodes**") in which I hereby agree to participate, within three (3) years from the initial exhibition of the first episode of the Program in which I appear.  In the event that Producer elects to exercise its option, then Producer shall so notify me at least five (5) days prior to the commencement date of principal photography or taping of the All-Star Episodes (if any).  I hereby agree to participate in the All-Star Episodes for a period to be determined by Producer ("**All-Star Program Period**") at a location to be determined at a later date by Producer in its sole discretion.  I hereby irrevocably grant Producer all rights in the All-Star Episodes as granted with respect to Program herein and agree that all other provisions of this Agreement (including, without limitation, the provisions relating to publicity services and confidentiality as well as all other agreements I may execute in connection with the Program) shall apply to my participation in the All-Star Episodes.  Producer shall have the right to interview and/or photograph me during the All-Star Production Period.

(b)  I agree that, for the period commencing with the date of this Agreement and continuing through and including one (1) year after the initial commercial exhibition of the last episode of the Program in which I may appear ("**Exclusive Period**"), I shall not apply to or appear on any unscripted, competition, and/or game programs in any media without Producer's and Network's prior written consent (which consent may be given or withheld at Producers and Network's sole discretion) in each instance.

*Figure 3*

55.     **Access to personal belongings.**  Upon the Class Members' arrival at the Beast Games in Las Vegas, Production Staff separated them from their personal belongings – including their telephones and all electronic devices of any kind, prescription and other medication, toiletries, including feminine hygiene products, and undergarments.

56.     **Restricted movement.**  Defendants corralled the contestant-workers into tightly controlled indoor spaces where they were actively supervised by Production Staff around-the-clock without any privacy.  They were required to consent to the recording of their actions and statements, including via concealed or hidden cameras and audio devices throughout the filming locations, including in areas where contestant-workers have a reasonable expectation of privacy (e.g., a bathroom).

57.     **No contact.**  Defendants exercised total control over the contestant-workers' access to the outside world, including their friends and family and even including their young children, for the duration of the production.  Contestant-workers were told to "expect to have no communication with loved ones" during their engagement.  Contestant-workers were separated from their telephones and prohibited from making any contact with the outside world, including online.

58.     **Control Over Meals**.  Production Staff controlled whether, when, where, and what the contestant-workers ate and drank, which on information and belief, amounted to approximately 250-400 calories per day, where "meals" sometimes consisted entirely of MrBeast-owned Feastables® chocolate bars, which the contestant-workers were instructed to "enjoy" while the cameras were filming, so that MrBeast could presumptively use the footage as commercial advertising, deriving further profit from the

17
SECOND AMENDED CLASS ACTION COMPLAINT

contestant-workers' unpaid-or-underpaid labor.  The limited sustenance that Defendants provided afforded an unreasonable and insufficient caloric intake that collectively and uniformly endangered the health and welfare of the contestant-workers.  While working in Las Vegas, the contestant-workers suffered through at least one time period (between 8-12 hours) when no food was provided with contestant-workers reporting feeling light-headed and ill.  When Production Staff allowed the contestant-workers to eat, it ranged from small portions of cold porridge, salad, cold boiled chicken (which some contestant-workers reported was pink and appeared dangerous to consume and so some did not), and oatmeal.  Multiple contestant-workers reported they at times had to share portions (for example, five contestant-workers would share three servings of food) due to food shortages.

59.    **Control Over Clothing**.  Defendants controlled the clothing that the contestant-workers wore, requiring them to wear a uniform at all times.  The contestant-workers in later dates of Beast Games were assigned uniform numbers and thereafter referred to by number only, not their names, for most of the remainder of the Production.  On the first day of the Games, Production Staff corralled the contestant-workers and made them wait for hours in a hotel lobby wearing garbage bags over their clothing in Las Vegas in July.  *See* Figure 4 below, altered only by the blurring of faces[8].



*Figure 4*

---

[8] Scott Roeben, *MrBeast Shoots "Beast Games" in Las Vegas, Controversy Abounds*, Vital Vegas (Jul. 18-22, 2024), https://www.casino.org/vitalvegas/mrbeast-shoots-beast-games-in-las-vegas/.

SECOND AMENDED CLASS ACTION COMPLAINT

60.     **Control Over Sleeping Arrangements**.  Production Staff controlled whether, where, how, and when the contestant-workers slept.  In Las Vegas, for example, the contestant-workers were made to sleep in sleeping bags on the concrete stadium floor that was covered with olive pits, or the plastic-astroturf field, with bright overhead lights kept on all night.  Plaintiff Hurst, however, had her sleeping bag and hygiene bag stolen, and never replaced.  The contestant-workers were not allowed to use their own toiletries but instead were required to use a production-provided toiletry bag with toothbrush, toothpaste, a mini comb, deodorant wipes, and eye covers.  The eye covers were necessary due to the relentless stadium lights but not sufficient because the contestant-workers were awakened frequently by Production Staff.  Plaintiff Rivera reported that when he and others tried to move their sleeping bags to areas that were quieter, they were herded back to the group, ensuring they were sleep deprived when they were called to compete in the competitions.  Additionally, the contestant-workers typically had to seek permission to use the bathroom.

61.     **Denied Access to Medication.**  Production Staff separated the Class Members from their prescription and other medication, including inhalers and insulin,  and there were long lines to attempt to retrieve medication due to an apparent shortage of medical and/or production staff.  Many Class Members tried to retain access to their medications, explaining that the medications were needed to treat medical disabilities.  Despite Production Staff being notified about the need for access to medicine to treat disabilities, Class Members were routinely denied access to their medications, which caused numerous Class Members to suffer physical and emotional damages, including without limitation Plaintiffs Hurst and Holloway, who were denied access to, among other things, prescription medication necessary to treat their respective conditions of asthma and diabetes.  The Class Members were also prohibited from smoking or vaping during their Beast Games engagement.

62.     **Exposed to Dangerous Conditions.**  The contestant-workers were exposed to dangerous circumstances as a condition of their employment.  Even beyond the dangerous conditions of the challenges themselves, local news reported, "many contestants … found it was the poor set conditions,

19

SECOND AMENDED CLASS ACTION COMPLAINT

rather than the challenges themselves, that proved to be the main difficulty."[9]  The contestant-workers were penned into enclosed spaces with thousands of strangers for days on end, under conditions where they were underfed, overtired, unclean, and medically untreated while competing in stressful and exhausting challenges for life-changing money.  The danger, moreover, was exacerbated by Defendants and their agent for casting Mysticart's seeming failure to conduct background checks, despite requiring applicants to consent to a background check as a condition of their employment[10].



*Figure 5*

63.    On information and belief, there was insufficient medical staff to attend to potential and actual injuries, and to also properly handle and distribute contestant-worker medication.  There were several reports of injuries.  For example, in an online article, Scott Roeben of Vital Vegas reported on July 19, 2024 that: "In a concerning twist to this story, a source claims Desert Springs Hospital 'has seen countless patients today coming from 'Beast Games' due to lack of food and water'"[11], reporting that diabetics were denied food, contestant-workers were denied water, and two people suffered seizures.

64.    In addition to control exercised by Defendants during the Production, the BGA was a procedurally and substantively unconscionable adhesion agreement that gave Defendants complete

---

[9] Chase Martin, *Accusations of unprofessional handling and mistreatment of contestant-workers on 'Beast Games' come to light*, DeseretNews, https://www.deseret.com/entertainment/2024/08/05/mr-beast-beast-games-accusations/ (Aug. 5, 2024).
[10] Rosanna Pansino (@RosannaPansino), Twitter (Aug.  17, 2024 6:35 PM), https://x.com/RosannaPansino/status/1824983360487440687, and Figure 5.
[11] Roeben, *MrBeast Shoots "Beast Games," supra* note 8.

SECOND AMENDED CLASS ACTION COMPLAINT

1    control over every aspect of the contestant-workers' lives, as more fully discussed in this Section

2    IV.D.2, as well as in Section IV.F, *infra*.

3          **3.**    <u>**The contestant-workers performed work that was in the usual course and**</u>

4          <u>**scope of Defendants' businesses.**</u>

5        65.    The work that the contestant-workers performed for Defendants is not work outside the

6    scope of their core live-entertainment-content business, as would be the case, for instance, for a service

7    provider providing ancillary production services, such as a food caterer, or the proverbial example of a

8    plumber providing services for a restaurant.

9        66.    Here, the usual course-and-scope of the Defendants' business is the production of

10   entertainment content for profit, including allegedly-unscripted entertainment content whose primary

11   value lies in the contestant-workers' emotional, physical, and psychological reactions to extreme stress

12   as they compete in intense and exhausting challenges to win money that could change their lives.

13       67.    The contestant-workers' reactions to extreme conditions are the *sin quo non* of the Beast

14   Games Production.  Their work is squarely within the usual course of Defendants' customary business.

15         **4.**    <u>**The contestant-workers are not customarily engaged in an independently**</u>

16         <u>**established business of the same nature as the work performed for**</u>

17         <u>**Defendants.**</u>

18       68.    The labor that the contestant-workers provided for Defendants is not labor they

19   customarily provide in an independent trade or business.  Unlike the catering example, the contestant-

20   workers do not make their living providing "contestant services" to various customers.

21       69.    The contestant-workers are, on information and belief, people from all over the world

22   who engage in various professions, are unemployed, or are students.  They are not engaged in an

23   independent business of the same nature as the work performed for Defendants.

24       70.    The contestant-work that the contestant-workers performed was for Defendants and

25   pursuant to their customary business model.

26       71.    The contestant-work that the contestant-workers performed was necessary to the Beast

27   Games Production, and the work the contestant-workers performed was for Defendants' benefit, as they

28   provided the core entertainment value of the Production.

SECOND AMENDED CLASS ACTION COMPLAINT

**E.**    **Defendants purposely misclassified the contestant-workers as "volunteers" to avoid their employment obligations under California law (and alternatively Nevada law) and to wrongfully receive unearned tax credits from Nevada, and made those decisions in California.**

72.    From on or about July 18, 2024 until the contestant-workers were eliminated, or they had completed all challenges on July 21, 2024, the contestant-workers worked a non-stop continuous stretch of employment for the Defendants during the Production in Nevada.

73.    From between July 18, 2024 to July 21, 2024, during the Production in Nevada, the contestant-workers were reduced from approximately 2,000-plus individuals to about 1,000 people, with individuals working non-stop periods of employment, around the clock, starting on July 18, 2024, until they were eliminated, including alternates.  Reasonably assuming a significant number of the Contestants were non-Nevada residents, Defendants would likely not meet the requirement that the percentage of Nevada to Total Qualified Expenditures exceed 60%.[12]



*Figure 6*

---

[12] Nevada Governor's Office of Economic Development and Nevada Film Office, July 22, 2024 Hearing Agenda at Page 18, https://goed.nv.gov/wp-content/uploads/2024/07/Hearing-Agenda-and-Materials-July-22-2024.pdf, and Figure 6.

SECOND AMENDED CLASS ACTION COMPLAINT

74.     On information and belief, Defendants knowingly and intentionally misclassified the Class Members as "volunteers" to support the falsified budget presented to the Nevada Film Commission, and possibly other government entities to obtain undeserved tax credits.

75.     The intentional willfulness of the Defendants' misclassification is further demonstrated by the fact that once the Production concluded, they, on information and belief, re-classified some or all of the Class Members as "independent contractors," retroactively deducting their "prize money" compensation as wages in an attempt to have their cake and eat it too.  *I.e.*, i) intentionally misrepresenting the contestant-workers as "volunteers" to obtain the Nevada tax credit using a falsified budget; ii) saving money in their $100M Production budget by not paying costs associated with, *inter alia*, wages, meal and rest breaks, enhanced safety regulations, taxes, and insurance, and then iii) deducting the Contestant "prize money" as wages after-the-fact to avoid taxes.

76.     Defendants perpetrated this scheme willfully, knowing that the contestant-workers did not meet the definition of "volunteer" provided by the contract-governing California substantive law, including California Labor Code Section 1720.4.

F.      **Defendants required the contestant-workers to sign an unconscionable agreement with illegal and unenforceable terms.**

77.     As a condition of their employment, Defendants required each Contestant to enter into a contract-of-adhesion that was drafted by them, which Plaintiffs and the Proposed Class were given to sign under expedient circumstances.  On or about June 6, 2024, on information and belief, the application period for Beast Games opened; by July 17, 2024, Defendants had entered into contracts with and transported 2,000 people to the Allegiant Stadium in Las Vegas to compete.  Defendants enjoyed superior bargaining power and used it to impose terms and conditions that are unlawful under California law, including Labor Code Section 432.5.  Defendants demanded, for instance, that contestant-workers assume the risk in connection with the Production, including serious physical injury and non-consensual physical contact, in violation of California Fair Employment and Housing Act ("**FEHA**"), in particular, Gov't Code § 12964.5(a)(1)(A)(i).  They also required them to release liability for their rights to workers' compensation, their rights under FEHA, and any rights to wages, in violation of Labor Code Section 206.5, and their right to bring representative actions under the Private Attorneys

General Act ("PAGA").  The BGA also purports to require the contestant-workers to waive their rights to certain remedies, including public and private injunctive relief, in violation of California law; while allowing Defendants to seek injunctive relief without posting a bond, showing a lack of material mutuality.  It also includes overbroad unenforceable confidentiality provisions.

78.    Defendants further used the BGA to mislead the Class Members into believing that the Games would be conducted fairly, and they would not "rig the outcome."

79.    Unfortunately, this did not turn out to be the case.  Plaintiffs allege that Defendants did not act in good faith when they brought in Class Members to compete in Toronto who were previously eliminated in Las Vegas, and on information and belief, required the previously-eliminated contestant-workers to sign documents agreeing they would not be eligible to win the $5 Million (which later turned out to be $10 Million) grand prize.  On information and belief, the Defendants further manipulated the Class Members in a manner designed to "rig the outcome" of the games in Toronto, including by allowing some contestants to see the rules in advance of the challenge and by allowing rows of contestants to confer about a strategy while others were prevented from communicating.  The actual game-rigging is further detailed in Section IV.I, *infra*.

80.    Defendants further unlawfully required the Class Members to affirm whether they had past convictions, including convictions protected from inquiry by employers, and to unlawfully submit to medical and psychological examinations and a background check as a condition for their employment.

81.    The BGA is a procedurally and substantively unconscionable adhesion agreement that was foisted on the Class Members as a condition of employment and purports to give Defendants complete control over every aspect of the contestant-workers' lives --  including their time, access to food and drinks, sleeping arrangements, and contact with family and friends outside of production – while any obligations imposed on Defendants appear to be illusory.

For instance, the BGA imposes the following unconscionable restrictions on the contestant-workers.

- Requires the Class Members to release all control over their name and likeness, which, also ostensibly could be used by Defendants to create AI-generated content.

SECOND AMENDED CLASS ACTION COMPLAINT

- Prohibits the Class Members from competing in similar employment until February 2026, a year after the last episode in Season 1 aired.
- Affords the Defendants control over the Class Members even after the completion of the Program, requiring them to "agree to be available following completion of the Program for any promotional obligations as required by Producer and/or Network."
- Prohibits the contestant-workers generally from obtaining other work on "any unscripted, competition, and/or game programs in any media without Producer's [MrBeast] and Network's [Amazon] prior written consent (which consent may be given or withheld at Producers and Network's sole discretion) in each instance."

By comparison, the BGA makes illusory any obligations seemingly imposed on Defendants. For instance, the Agreement does all of the following.

- Gives Defendants "sole discretion" to change the rules and terms-and-conditions and explains that "decision(s) on all matters related to the Program and [contestant-workers'] participation… shall be within [the Beast Defendants'] sole control and shall be final and binding on [contestant-workers] in all respects and shall not be subject to challenge or appeal."  (Exhibit "A" Para.  1 to BGA.)
- Gives Defendants the ability to make personnel decisions, including decisions "to allow any person to remain part of the Program who may have a connection with anyone included in Paragraph 3(a)-(f), [which is] in Producer' and/or Network's sole discretion…"
- Gives Defendants "the right to substitute the Prize (or any portion thereof) with another prize of comparable or equal value at Producer's and/or Network's sole discretion."
- Provides that "the amount of any Prizes awarded, if any, are subject to change by Producer [MrBeast] and Network [Amazon], in their sole discretion, at any time, including without limitation, while [Class Members were] participating on the Program."

82.    Other unlawful provisions required the Class Members to authorize Defendants to conduct background checks including checks of consumer credit reports.  The Agreement also contains an unlawful penalty clause with an unreasonably large estimate of so-called liquidated damages of

25

SECOND AMENDED CLASS ACTION COMPLAINT

$500,000.00, seemingly owed separately to the MrBeast and Amazon Defendants, which operates as an unlawful and unenforceable penalty under California law.

83.     All of the foregoing demonstrates how oppressively one-sided the "take-it-or-leave-it" BGA terms were, in favor of the more powerful Defendants, and how much control the they exercised over every aspect of the contestant-workers' labor on behalf of the Beast Games Production.

**G.      Defendants failed to provide a safe and healthful place of employment, to the particular and collective detriment of the female contestant-workers, who suffered sexual harassment.**

84.     Defendants also failed to provide a safe and healthful place to work in violation of Labor Code Section 6300 *et. seq.,* including, but not limited to Sections 6400, 6401, 6401.7, 6402 and 6403, as well as Government Code Sections 12940(a), 12923 and 12965.

85.     Defendants created working conditions that jeopardized the safety of workers, including by not providing sufficient food or drink, taking away their access to prescription and other medicine, not having adequate medical staff on site and not providing reasonable medical care, forcing them not to sleep, and forcing them to participate in games that unreasonably risked physical and mental injury.  In fact, on information and belief, a number of contestant-workers did suffer physical injuries during the course of the production.  On information and belief, the decisions by Defendants related to how the working conditions would be for the contestant-workers was made in California.

86.     Defendants additionally created a toxic and hostile work environment for, in particular, the female Class Members, who suffered male-on-female tackling, as well as sexual harassment throughout the Production, as more fully detailed below, which was not only noticed but allowed, and even encouraged, and laughed at by Production Staff.  And apparently, this was allowed because of marching orders from the top.

87.     By creating and fostering a sexually harassing hostile work environment as described herein, which directly led to the disproportionate, early, and wrongful termination of female contestant-workers, Defendants took adverse employment actions against female contestant-workers that were substantially motivated by their sex and gender.

SECOND AMENDED CLASS ACTION COMPLAINT

1.  **<u>The purported "How to Succeed in MrBeast Production" handbook encourages staff to "Really do everything you can to empower the boys when filming and help them make content.  Help them be idiots."  Consistent with this approach, MrBeast Head of Creative and Beast Games Series Director Conklin stated that one of his goals for Beast Games was to "make villains," to which Mr. Donaldson confirms, "Which I like."</u>**

88.    Upon information and belief, MrBeast drafted an employee handbook written in the first person from what appears to be Mr. Donaldson's perspective, titled "HOW TO SUCCEED IN MRBEAST PRODUCTION" (the "**MrBeast Handbook**"), which was published on the internet on August 13, 2024, by YouTube creator Rosanna Pansino, who alleges that she received it and confirmed its authenticity with two MrBeast employees[13].  The alleged MrBeast Handbook provides circumstantial evidence of the boys-will-be-boys working conditions that are seemingly not only accepted but encouraged by Mr. Donaldson, who advises his employees to: "Really do **everything you can to empower the boys** when filming and help them make content.  **Help them be idiots**."[14] (Emphasis added.)  And "**If talent wants to draw a dick on the white board in the video** or do something stupid, **let them**."[15]  (Emphasis added.)

89.    The MrBeast Handbook offers a peak behind the curtain of the MrBeast enterprise and reveals the sexist and juvenile ethos animating the creator's endeavors.  On information and belief, many of the production staff members who oversaw the Production were exposed to the MrBeast Handbook and, based on the environment of Beast Games, complied with Mr. Donaldson's directive, including in the production of Beast Games.

90.    Tyler Conklin, "MrBeast Head of Creative, Beast Games, Series Director," shared his approach to Beast Games, which appears consistent with the MrBeast Handbook: "**As long as we make villains** in this part, I am happy with it… I also want it to be something that literally **brings a person to**

---

[13] Authenticity of the MrBeast Handbook has not been confirmed by Mr. Donaldson himself as of the filing of this document.
[14] Rosanna Pansino, *The REAL MrBeast… (Leaked Document)*, YouTube (Aug.  13, 2024), https://www.youtube.com/watch?v=U2aYO4c3AKw, with the link to "HOW TO SUCCEED IN MREAST PRODUCTION" document in the video notes: https://drive.google.com/drive/folders/1UZX55bhi6TK6QOf0dT9bzeac5ATf9SaH, at p.  34.  See also Figure 7, emphasis added.
[15] *Id.*

**the front and they do something that is very villainesque**.  That's what I want."… to which Mr. Donaldson confirms, "**Which I like**." (emphasis added.)[16]  Conklin is identified as the "MrBeast Head of Creative," and so, if the alleged MrBeast Handbook is in fact authentic, on information and belief he might also have been provided with that guide.  His vision for Beast Games, as the series director, certainly seems to have been in line with the MrBeast Handbook directives.



## HOW TO SUCCEED IN MRBEAST PRODUCTION

### It's okay for the boys to be childish

If talent wants to draw a dick on the white board in the video or do something stupid, let them. (assuming they know all the risks and arn't missing context on why it's not safe) People like when we are in our natural element of stupidity. Really do everything you can to empower the boys when filming and help them make content. Help them be idiots.

*Figure 7*

2.  <u>**The directive to help "the boys" "make content" and the goal to "make villains," unfortunately translated to Production Staff allowing men to physically tackle women, all while "MrBeast [stood] on his podium, looking down watching all of [the Class Members] fight for a chance at $5 million."**</u>

91.    The apparent MrBeast ethos of helping "the boys" "be idiots," and the MrBeast Head of Creative and Beast Games Series Director Conklin's MrBeast-approved goal to bring individuals to the front to do something that is "very villainesque" seems to have paved the way for Production Staff to allow some of the male contestants to tackle female contestants and knock them unconscious during the competitions without disqualification or other consequences.  Class Members reportedly complained that "**men started realizing that they could take out the women without being eliminated.  Guys**

---

[16] Colin and Samir, *Inside MrBeasts $100 Million Dollar Show Beast Games*, YouTube (Dec.  19, 2024), https://www.youtube.com/watch?v=kArnh6zrfvI (at 4:05, 4:29 – 4:43).

SECOND AMENDED CLASS ACTION COMPLAINT

**started tackling and hitting women**.  Two girls were tackled and passed out on the field and dragged off to continue filming."[17]  (Emphasis added.)  Plaintiffs Hurst's and Mathews' experiences, as further detailed below, corroborate these reports.

92.    While the Production Staff initially stated, "there would be no tolerance of pushing, shoving, or tackling," Plaintiffs allege that "none of that was enforced."  The contestant-workers that committed said acts were not eliminated or disciplined," as reported by Scott Roeben of Vital Vegas.[18]  Plaintiffs Hurst's and Mathews' experiences, as further detailed below, corroborate these reports.

93.    Roeben also reported that, "Each challenge catered to young strong men, who bullied female and elderly contestants and ultimately took away any chance of a fair competition."[19]

94.    On information and belief, Defendants knew or should have known about this behavior, as it allegedly occurred, "**While MrBeast [was] standing on his podium, looking down watching all of us peasants** fight for a chance at $5 million."  See Figure 8 below (emphasis added, and redacted to preserve possible confidential aspects of the Production).

95.    It was not surprising that this behavior was tolerated given the MrBeast Handbook guidelines, and the MrBeast approved goals of MrBeast Head of Creative and Beast Games Series Director Conklin, which laid the groundwork for this collective sexual harassment and sexual harassment against female employees.

96.    Plaintiffs Hurst and Mathews witnessed some of the male contestant-workers hoarding team clothing to impact the composition of the teams, refusing to let women have certain clothing.  They also observed that when contestant-workers complained about the treatment to the Production Staff who were less than five feet away, the Production Staff did nothing.

---

[17] Rosanna Pansino, *The news about MrBeast 'Beast Games' is disturbing.*, YouTube (Jul.  26, 2024), https://www.youtube.com/watch?v=VApF6na4m-4.
[18] Scott Roeben, *MrBeast Shoots "Beast Games," supra* note 8.
[19] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT



*Figure 8*

97.     By refusing to intervene or implement any repercussions when some of the men physically tackled women to the point that they passed out or blocked them from obtaining certain team clothing, Defendants created, permitted to exist, and fostered a culture and pattern and practice of sexual harassment including in the form of a hostile work environment where, *inter alia*, men were encouraged to use their innate physical superiority to tackle and hit women– against whom they were competing for five million dollars – and block them from getting on to certain teams without fear of elimination or employee discipline.

        **3.**     **Defendants created hostile conditions where women were forced to endure the severe embarrassment and unfair disadvantage of being denied access to menstruation products and clean underwear by Production Staff who reportedly laughed at their predicament.**

98.     In addition to allowing male contestant-workers to assault female contestant-workers – e.g., tackling them until they were rendered unconscious – without fear of elimination, the Defendants also created and condoned a hostile work environment for women by failing to provide feminine hygiene products to women who were menstruating, after taking away women's personal belongings, including their underwear and personal toiletries.  Plaintiff Mathews' experiences, as further detailed below, corroborate these reports.

99.     When contestants who were menstruating attempted to retrieve their personal belongings more quickly, they were allegedly treated with derision and denied on the grounds that the request was

SECOND AMENDED CLASS ACTION COMPLAINT

"not a medical emergency." The New York Times reporter Madison Malone Kircher reported that: "One woman said that when she and a group of contestant-workers who were menstruating during the event had asked the production staff about getting their underwear more quickly… the production staff had laughed at the women's pleading."[20] See Figure 8 below (emphasis added). Plaintiff Mathews' experiences, as further detailed below, also corroborate these reports.



One woman said that when she and a group of contestants who were menstruating during the event had asked the production staff about getting their underwear more quickly, she had been told that it was "not a medical emergency," and she recalled that a nearby member of the production staff had laughed at the women's pleading.

*Figure 9*

100.    Defendants appeared to take no steps during the course of the Production to address the unequal, lopsided, and inequitable, treatment of the women, including the tackling by the some of the men against the female contestant-workers, as well as the harassment and bullying committed by some of the Production Staff against the female contestant-workers.

101.    At all relevant times, on information and belief, Defendants' management, up to and including senior management and ownership, had actual and/or constructive notice that the violence and sexual harassment detailed herein was occurring within the workplace.

102.    At all relevant times, on information and belief, Defendants' management, up to and including senior management and ownership, had actual and/or constructive notice that its Production Staff was aware of, but failed to remedy the violence and sexual harassment detailed herein.

**4.    Defendants failed to prevent sexual harassment and violence from occurring despite having actual notice that these problems had occurred at the Production's initial "testing" location in Las Vegas.**

103.    During the first part of the Production designed to serve as a dry run test rehearsal for the final product, some of the issues complained of herein surfaced for the first time. These included sexual harassment, assault, and the singling out and targeting of female contestant-workers on a female-wide basis. These problems carried into the actual Las Vegas Production competition as noted throughout this complaint. The problem was so pronounced that when Production subsequently moved to Toronto,

---

[20] Kircher, *Willing to Die for MrBeast*, *supra* note 1.

31

Defendants engaged a female staff attorney to attempt to reassure contestant-workers that sexual and other harassment would not be tolerated.

104.    In short, Defendants had actual and constructive notice that sexual harassment and violence against women were occurring during a test rehearsal even before the official Production began in Las Vegas, and would likely to occur in the final production that that test rehearsal was created, presumptively, to find and address issues that may arise.

105.    Notwithstanding Defendants' actual and constructive notice of these problems, Defendants utterly failed to take any proper steps to prevent sexual harassment and violence from occurring, as set forth herein.

H.    **Defendants failed to provide reasonable accommodations, to the particular and collective detriment of those who required such accommodations.**

106.    Defendants also failed to provide reasonable accommodations to contestant-workers who suffered from qualifying physical and/or mental disabilities.  On information and belief, the decisions by Defendants related to how the working conditions would be for the contestant-workers, including the handling of their medication, was made in California.

107.    Defendants hired numerous contestant-workers for work on the Production who suffered from medical conditions that qualify as physical and/or mental disabilities pursuant to applicable law. These disabilities included conditions like asthma and diabetes, among others, all of which substantially limited these contestant-workers' ability to engage in major life activities.

108.    Many of these contestant-workers were under the treatment of regular prescription medications to treat their disabilities.  Upon arrival at the production site, their medications, including prescription medicines, were confiscated by Production Staff.

109.    Defendants were informed and aware of these disabilities.  In fact, in many instances upon surrender of their medications at the demand of Production Staff, these contestant-workers wrote down for Production Staff what the medications were, what conditions they treated, and how often they needed to take them.

110.    When contestant-workers needed access to their medications, they requested of Production Staff access to their medicine so that their disabilities could be treated.  These contestant-

32
SECOND AMENDED CLASS ACTION COMPLAINT

workers were told by staff, however, that they could not have access to their medicine, and that in fact the medications were off site.

111.    The contestant-workers requests for their medications constituted a reasonable accommodation that would not have put an undue burden on any defendant.  Moreover, these contestant-workers would have been able to perform the essential functions of their positions with these reasonable accommodations.  Notwithstanding, by not allowing these contestant-workers access to their medicines, these reasonable accommodations were denied to contestant-workers with disabilities.  Plaintiffs Hurst and Holloway's experiences, as further detailed below, corroborate these reports.

112.    These contestant-workers suffered physical, economic, and emotional damages as a result of Defendants' refusal to reasonably accommodate their disabilities in the form of allowing access to medications.

I.    **Despite the BGA stating that game-rigging would not be allowed, Defendants influenced the outcome of the competitions in Toronto, resulting in hundreds of contestant-workers being unfairly eliminated.**

113.    In addition to all of the foregoing, hundreds of contestant-workers in Toronto were not allowed a fair chance at competing.  Defendants did not fairly administer the competitions, resulting in the unfair influence of the outcome of some of these competitions.

114.    Defendants did this despite misleading the contestant-workers into thinking that rigging would not be allowed from "**ANYONE**."  Specifically, ¶ 19 of the BGA states, in all-caps bolded text:

**I AM AWARE THAT IT IS A FEDERAL OFFENSE PUNISHABLE BY FINE AND/OR IMPRISONMENT FOR ANYONE TO RIG THE OUTCOME OF THE YOUTUBE PROJECT AND/OR PROGRAM WITH THE INTENT TO DECEIVE THE VIEWING PUBLIC, AND THAT IT IS A FEDERAL OFFENSE TO OFFER OR ACCEPT ANY SPECIAL ASSISTANCE IN CONNECTION WITH THE YOUTUBE PROJECT AND/OR PROGRAM.  I AGREE THAT I WILL NOT PARTCIPATE IN ANY SUCH ACT OR IN ANY OTHER DECEPTIVE OR DISHONEST ACT WITH RESPECT TO THE YOUTUBE PROJECT AND/OR PROGRAM.  IF ANYONE TRIES TO INDUCE ME TO DO ANY SUCH ACT, I SHALL I MMEDIATELY NOTIFY A REPESENTATIVE OF PRODUCER, A REPRESENTATIVE OF NETWORK, AND A REPRESENTATIVE OF SCC.**

115.    Despite the foregoing, Defendants brought back contestant-workers who were previously eliminated in Las Vegas, *but* on information and belief, they conditioned their return upon their ineligibility to win the Grand Prize ("**Las Vegas Eliminated Contestant-Workers**"), *and* Defendants

decided not to tell the remaining competitors about these conditioned returns.  This skewed the incentives for the Las Vegas Eliminated Contestant-Workers in the Games, unbeknownst to their competitors, and the asymmetric information operated to the unfair detriment of the other competitors throughout the competitions who were not informed about this material change in circumstances.

116.    Because certain Las Vegas Eliminated Contestant-Workers were brought back to compete in Toronto, albeit with the understanding, on information and belief, that they were not eligible to win the grand prize, they were unfairly (and unbeknownst to the others) incentivized to self-eliminate or take bribes and eliminate their fellow contestants.

117.    On information and belief, the Defendants intentionally concealed that the previously-eliminated contestants were not eligible to win the grand prize and were thus incentivized to act to the detriment of their competitors.  By concealing this material information, Defendants took actions to "rig the outcome. . .  with the intent to deceive the viewing public."

118.    Further, on information and belief, hundreds of contestant-workers were eliminated in a couple of the early challenges in Toronto, involving rows of platforms.  On information and belief, some of the rows of contestant-workers in this competition were given an unfair advantage by Production Staff who influenced the competition by allowing some of them to see the "Rules" of the competition on a screen, but not allowing others.  Production Staff also allowed some of rows of contestant-workers to "huddle" after seeing the "Rules," while other rows were not allowed to do the same.  The foregoing combined elements resulted in the rigging of the competitions with many of those given the unfair advantage of being able to advance to the next competition, while many of those who were not given the same being unfairly eliminated in this competition, as well as in others, including Plaintiffs Ingram, Mathews and Santana.  When the contestant-workers complained about the perceived lack of fairness in the Games, including in the above platforms games, Defendants' agent, Sullivan Compliance Company, a "third party" was brought in to review the competitions at issue, and on information and belief, did not take all material facts into account when, at least in the platforms challenge above, it determined that such competition was fairly administered.

SECOND AMENDED CLASS ACTION COMPLAINT

119.    Ultimately, the unfairly eliminated contestant-workers were sent home, leaving open the question of whether—and in what way—the outcome of Beast Games Season 1, including the distribution of prizes, might have differed had they been allowed to continue competing.

**J.    Defendants made multiple false statements to the contestant-workers in connection with Beast Games prior to the start of the competition.**

  **1.    Defendants falsely advertised that the competition would have 1,000 contestant-workers, when it was actually 2,000, reducing the odds of winning by half of what was originally advertised.**

120.    On March 18, 2024, Amazon shared the news that "MrBeast and Amazon MGM Studios announce the new reality competition series 'Beast Games.'"[21]  In large print text just under a graphic showing Mr. Donaldson amidst a backdrop including the Amazon Prime Video® and MrBeast® logos, Amazon continued that, "The new show will premiere on Prime Video and is set to become the biggest reality competition series, where 1000 contestant-workers will compete for a $5 million prize."[22]



The new show will premiere on Prime Video and is set to become the biggest reality competition series, where 1000 contestants will compete for a $5 million prize.

*Figure 10*

121.    Defendants widely promoted, through the first day of the Beast Games Production on July 18, 2024, that there would be 1,000 people competing.  Defendants' agent MysticArt also promoted this falsehood.  For instance, on June 17, 2024, MysticArt authored and published on its social media

---

[21] Toby, *MrBeast and Amazon MGM Studios, supra* note 5, and Figure 10.
[22] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT

feed a descriptor of the Beast Games, inviting the public to "submit [their] applications" to serve as contestants where "1000 lucky souls will be handpicked to duke it out for that life-changing payday," as shown in the screenshots in Figure 10 below.

122.    However, the Class Members, who had traveled, and in many cases flown, to Las Vegas after having blocked off the 94-day period from June 29, 2024 through September 30, 2024, which was required by the BGA, learned for the first time when the competition started that they would actually have to compete against double that amount, 2,000 contestant-workers.

123.    The New York Times reported that, "Right from the start, things seemed off.  Some contestants said they had originally been told that the competition would have 1,000 participants.  (This was also the figure advertised by Prime Video earlier this year.)  But upon arrival, contestants received a video message from Mr.  Donaldson [in which they were informed that] 'Obviously, there's 2,000 contestants.'"[23]  The NYT reported at the time that: "After learning [the contestant-workers] would be competing against twice as many people, some said they felt they had been misled about their odds of winning."[24]

### 2.    Defendants misrepresented that sufficient meals would be provided.

124.    The Defendants represented in the Beast Games Rules Packet that the "meals during production" would be provided by Defendants.

125.    Defendants failed to mention, however, that these "meals," if they could be called that, would be infrequent and insufficient in the number of calories in each meal, where Plaintiffs allege, by way of example, that they were fed unreasonably small portions of "cold porridge" for multiple meals in a row and dangerously-undercooked "pink" boiled chicken.  Indeed, Scott Roeben of Vital Vegas reported that local Desert Springs Hospital "ha[d] seen countless patients .  .  .  coming from 'Beast Games' due to lack of food and water'"; and that the Production had allegedly "denied food to diabetics, denied water to contestant-workers, and at least two individuals had seizures as a result."[25]

---

[23] Kircher, *Willing to Die for MrBeast, supra* note 1.
[24] *Id.*
[25] Roeben, *MrBeast Shoots "Beast Games," supra* note 8.

SECOND AMENDED CLASS ACTION COMPLAINT

126.    In addition to promising Class Members that Defendants would handle all travel, which on information and belief was handled by Amazon's travel services, and accommodations, Defendants also promised in the Beast Games Rules Packet that the Class Members would "head home right away" after they were eliminated.

127.    The reality, however, was that although Beast Games would theoretically handle travel arrangements for Class Members upon being eliminated, or after the Games concluded, the Beast Games Production was so understaffed and chaotic that some Class Members were stranded without flights home for days after the Las Vegas Production concluded.

128.    For example, Plaintiff Hurst concluded her assignment on July 21, 2024, but the Production did not arrange a departure flight for her until days later.

K.    **Even the way the Production handled contestant eliminations was questionable; the Production was so void of standards of reasonable care that MrBeast allegedly offered to pay for the contestant-workers' psychotherapy.**

129.    Even after the contestant-workers were eliminated, the psychological torment continued. For instance, in Las Vegas, after facing physical and emotional time-pressured games, after having been provided limited sustenance, limited sleep with stadium lights on the whole time, and for some, denied and/or untimely given access to their medication, eliminated contestant-workers had lights and cameras thrown in their faces as they were leaving the competition, with money dangled in front of their faces which they had thought they would be given immediately, only for that money to be immediately taken away, with Production Staff still demanding they provide content for the cameras, while the contestant-workers had just undergone physically and emotionally brutal situations.

130.    The foregoing acts by Defendants created an environment during Beast Games that was so void of humane standards that Defendants ended up volunteering to cover the cost of the contestant-workers' psychotherapy, it was that bad.

131.    The combination of all of the foregoing created an environment in which the contestant-workers suffered severe emotional distress.

132.    Defendants, apparently aware of the severe distress they caused the contestant-workers by their lack of reasonable care in conducting the Production, allegedly offered to cover the contestant-

workers' therapy. Pansino has reported on alleged contestant-workers informing her that, "[Defendants] knew it was bad because they also offered to provide therapy sessions using their own insurance."[26]

### L. **Individual experiences of the Plaintiffs.**

133. Plaintiff Matthew Rivera was employed by Defendants in July 2024 in Las Vegas, Nevada. Defendants arranged and paid for his lodging at a local hotel in Las Vegas during his services for Defendants. Defendants also arranged for his travel to and from Las Vegas. Rivera turned in his cell phone, as well as all electronics, and his bag of undergarments that he brought with him upon his check-in to the hotel, as required by Defendants. Rivera did not have access to his bag of undergarments during the entire time working for Defendants. During the time at Allegiant Stadium, Rivera at times had to ask permission to go to the restroom. Rivera also observed that when he and some of the other contestant-workers tried to move their sleeping bag to areas that were quieter to sleep, he was herded back to the group. Rivera was eliminated during the competitions in Las Vegas. Defendants promised Rivera a total amount of $2,000 in prize money for his contestant-services and he was ultimately was paid the amount, though not immediately upon the conclusion of his services, and such payment was provided more than 30 days after the conclusion of his contestant-services.

134. Plaintiff Keshwan Clark was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada. Defendants arranged and paid for Clark's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during Clark's services for Defendants. Defendants also arranged for Clark to travel to Las Vegas, Nevada. Clark turned in Clark's cell phone and smart watch, as well as all electronics, and Clark's bag of undergarments that Clark brought upon Clark's check-in to the hotel, as required by Defendants. Clark observed that other contestant-workers who tried to sneak in electronic devices were immediately terminated. Clark did not have access to Clark's bag of undergarments until at least 1 ½ days into the filming of the competition. During the time at Allegiant Stadium, Clark had to ask permission each time to go to the restroom. Clark made it through all of the challenges in Las Vegas. Upon Clark's successful completion of the last challenge in Las Vegas, Clark was handed prize money consisting of $50 in $1 bills. Clark subsequently competed

[26] Pansino, *The news about MrBeast 'Beast Games,' supra* note 17.

SECOND AMENDED CLASS ACTION COMPLAINT

in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for Clark's lodging and travel to and from Toronto during the time Clark performed services. Clark again had to turn in Clark's cell phone, as well as all electronics, prior to filming, until Clark's services had concluded.  Clark was eliminated during the competition in Toronto.  Defendants promised Clark a total amount of $2,000 in prize money for Clark's contestant-services and Clark was ultimately was paid the amount, though not immediately upon conclusion of Clark's services, and such payment was provided more than 30 days after the conclusion of Clark's contestant-services.

135.    Plaintiff Kory Ingram was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada.  Defendants arranged and paid for his lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during his services for Defendants.  Defendants also arranged for his travel to Las Vegas, Nevada.  Ingram turned in his cell phone and smart watch, as well as all electronics, and his bag of undergarments that he brought with him upon his check-in to the hotel, as required by Defendants.  Ingram observed that other contestant-workers who tried to sneak in electronic devices past check in were immediately terminated from the competition.  Ingram did not have access to his bag of undergarments until at least 1 and ½ days into the filming of the competition. During the time at Allegiant Stadium, Ingram at times had to ask permission to go to the restroom. Ingram made it through all of the challenges in Las Vegas.  Upon his successful completion of the last challenge in Las Vegas, he was handed prize money consisting of $50 in $1 bills.  Ingram subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024. Defendants arranged for his lodging and travel to and from Toronto during the time he performed his services.  Ingram again had to turn in his cell phone, as well as all electronics, prior to filming, until his services had concluded.  Ingram was unfairly eliminated during the competitions in Toronto as a result of Defendants' unfair influence of the competitions, as further detailed in Sections IV.I, *supra*. Defendants promised Ingram a total amount of $2,000 in prize money for his contestant-services and he was ultimately was paid the amount, though not immediately upon the conclusion of his services.

136.    Plaintiff Jane Hurst, a female, was employed by Defendants in 2024 in Las Vegas. Defendants arranged and paid for her lodging at a local hotel in Las Vegas, Nevada during her services for Defendants.  Defendants also arranged for her to travel to and from Las Vegas, Nevada.  Hurst

turned in her cell phone and smart watch, as well as all electronics, and her bag of undergarments that she brought with her upon check-in to the hotel, as required by Defendants. Hurst observed that other contestant-workers who tried to sneak in electronic devices past check in were immediately terminated from the competition. Hurst did not have access to her bag of undergarments during the entire time working for Defendants. During the time at Allegiant Stadium, she at times had to ask permission to go to the restroom. During her time in Las Vegas, Hurst saw some male contestant-workers hoarding team clothing and refusing to let women have access, which impacted the team compositions. She also witnessed a male contestant had tackled a female contestant so hard that the female contestant appeared to be passed out. Hurst observed that Production Staff did nothing when this occurred. Hurst is a diagnosed asthmatic who has had a continuous prescription for a medicated inhaler for the entire duration of her involvement with the Production. When she arrived in Las Vegas, Production staff confiscated all of her medications, despite her informing Production staff that she needed her inhaler to treat asthma. Hurst regularly uses and needs an inhaler to avoid the debilitating symptoms of chronic asthma, which symptoms limit her ability to walk, run, exercise, stand, and move, among other things. As a result of Defendants' refusal to allow Hurst access to her medication, she suffered physical and emotional damages. Had Hurst been given access to her medications, she could have performed her essential duties an employee and contestant-worker on the Production. Hurst was eliminated during the competitions in Las Vegas. After she was eliminated from the competition, and despite Defendants representing that they would arrange for her travel home right away, Hurst remained stuck in Las Vegas for multiple days after her elimination as Defendants were somehow unable to arrange for an earlier flight back to California. Defendants promised Hurst a total amount of $2,000 in prize money for her contestant-services and she was ultimately was paid the amount, though not immediately upon the conclusion of her services.

137.    Plaintiff Gabrielle Mathews, a female, was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada. Defendants arranged and paid for Mathews' lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during her services for Defendants. Mathews turned in her cell phone and bag of undergarments that she brought with her when checking into the hotel, as required by Defendants. During the competition, on or about July 18,

SECOND AMENDED CLASS ACTION COMPLAINT

2024, her menstrual period started.  Mathews did not have access to the feminine products that she brought with her when she checked in, and Defendants refused to allow her access to her belongings which included feminine products.  At the same time, for the first two days of the competition, and despite repeated complaints from other female Class Members requesting that feminine hygiene products be provided to them, Defendants did not make feminine hygiene products available, including to Mathews who bled through her clothes and had to sleep the morning of Friday, July 19, 2024, on the floor of Allegiant Stadium in bloodied garments.  Mathews did not have access to her bag of undergarments until the morning of July 20, 2024, and felt this put her at a disadvantage compared to other contestants who were not dealing with menstruating through their clothes during the competition. During her time in Las Vegas, Mathews saw some male contestants hoarding team clothing and refusing to let women have access, only allowing men access to the team clothing.  When the female contestants complained to the Beast Games staff members who were less than five feet away, they did nothing. Mathews also observed a male contestant tackle a female contestant so hard that the female contestant appeared to be passed out, and that male contestant advanced while the passed out female contestant was eliminated, when the female contestant had obtained the item she was tackled for first.  Mathews made it through all of the challenges in Las Vegas.  Upon Mathews's successful completion of the last challenge in Las Vegas, she was handed prize money consisting of $50 in $1 bills.  Mathews subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024. Defendants arranged for her lodging and travel to and from Toronto.  Mathews again had to turn in her cell phone and all electronics prior to filming, until her services had concluded.  Before the competition in Toronto, Mathews observed that a female lawyer made an announcement to all contestant-workers talking about how harassment of any kind would not be tolerated.  Mathews was eliminated during the challenges in Toronto.  During her time at Allegiant Stadium, Mathews at times had to ask permission to go to the restroom.  Mathews was unfairly eliminated during the competition in Toronto, Canada as a result of Defendants' unfair influence of the competitions, as further detailed in Sections IV.I, *supra*. Defendants promised Mathews a total amount of $2,000 in prize money for her contestant-services and she was ultimately was paid the amount, though not immediately upon the conclusion of her services.

SECOND AMENDED CLASS ACTION COMPLAINT

138.    Plaintiff Jordan Santana, a female, was employed by Defendants in July 2024 in Las Vegas, Nevada, and in August 2024 in Toronto, Canada.  Defendants arranged and paid for Santana's lodging at local hotels in both Las Vegas, Nevada, and Toronto Canada during her services for Defendants, as well as her flights to and from the locations, with the exception of the hotel lodging, travel, and flight back from Las Vegas after the Las Vegas Production had concluded, which she arranged and paid for herself, though she was later reimbursed by Defendants.  Santana turned in her cell phone, and her bag of undergarments that she brought with her upon her check-in to the hotel, as required by Defendants.  Jordan did not have access to her bag of undergarments until the morning on July 20, 2024.  During her time in Las Vegas, Santana saw some male contestant-workers hoarding team clothing and refusing to let women have access, while at the same time only allowing men access to the team clothing.  When the female contestant-workers complained to the Beast Games staff members who were less than five feet away, they did nothing.  During the challenge commonly referred to as the "Briefcase challenge" in Las Vegas, Santana saw a female contestant's face get slammed into a briefcase as a result of a male contestant running into her, in what effectively was a human stampede to grab briefcases, while aggressively rushing to find a briefcase, causing that female's injury.  In Las Vegas, Santana also witnessed a male contestant tackled a female contestant so hard that the female contestant appeared to be passed out, that male contestant advanced while the passed out female contestant was eliminated, when the female contestant had obtained the item she was tackled for first.  Santana made it through all of the challenges in Las Vegas.  Upon her successful completion of the last challenge in Las Vegas, she was handed prize money consisting of $50 in $1 bills.  Santana subsequently competed in the second part of the Beast Games challenges in Toronto, Canada, in August 2024.  Defendants arranged for her lodging and travel to and from Toronto.  Santana again had to turn in her cell phone and all electronics prior to filming, until her services had concluded.  Before the competition in Toronto, Santana observed that a female lawyer made an announcement to all contestant-workers talking about how harassment of any kind would not be tolerated.  Despite all of this, Santana suffered harassment by a fellow male competitor in Toronto.  Santana had been fearful of one of the other verbally abusive male contestant-workers who also aggressively started to confront her in a threatening manner, right after the two had been eliminated from competition, but the staff did nothing, and another male contestant

42

SECOND AMENDED CLASS ACTION COMPLAINT

1    stepped in to stop the aggressive behavior.  Santana suffered from a panic attack as a result, while the

2    aggressor male contestant was allowed to continue to remain on set, even despite Production Staff

3    guaranteeing to her that he would not be allowed back on set, while the Production was filmed and they

4    got all of the angles and re-shoots needed.  Santana was eliminated during the challenges in Toronto and

5    spoke about the harassment to on-site psychiatrist Dr. Barry Goldstein, who informed her that due to her

6    experience she should be seeking compensation for what had occurred, and that "what happened was not

7    okay."  Defendants then sent Jordan Santana to another on site Production Staff attorney, "Mitch," as

8    well as MrBeast CEO Mike Cruz.  The attorney and Cruz apologized to Santana but offered no

9    compensation.  During her time at Allegiant Stadium, Santana at times had to ask permission to go to the

10   restroom.  During her time in Toronto, Santana had to ask permission go to the bathroom, and was told

11   by her contestant wrangler that she could only go if it was so bad that she was going to pee in her pants.

12   Santana was unfairly eliminated during the competition in Toronto, Canada as a result of Defendants'

13   unfair influence of the competitions, as further detailed in Sections IV.I, *supra*.  Defendants promised

14   Santana a total amount of $2,000 in prize money for her contestant-services and she was ultimately was

15   paid the amount, though not immediately upon the conclusion of her services.

16        139.    Plaintiff April Holloway, a female, was employed by Defendants in July 2024 in Las

17   Vegas, Nevada.  Holloway turned in her electronics and her bag of undergarments that she brought with

18   her upon her check-in to the hotel, as required by Defendants.  Holloway is a diagnosed diabetic and has

19   been for the last nine years.  Since that time, she has been under continuous medical care and treatment.

20   During Holloway's entire tenure on the Production, she had two essential medications – a daily tablet

21   and a daily injection.  When Holloway arrived in Las Vegas, Production Staff confiscated all of her

22   medications.  At the time  her medications were taken by Production staff, April Holloway wrote down

23   for Defendants what the medications were.  Later that first night, Holloway requested her insulin from

24   Production Staff, and was told that she could not have access to the medication, in part because it was no

25   longer on site.  When Holloway urged Production staff to give her access to her medicine, the retort was

26   that she should, instead of using medicine, simply watch what she ate.  Accordingly, Production Staff

27   were notified and knew that Holloway needed regular, daily access to her medications to treat a

28   disability, which in April her case is diabetes.  Holloway regularly uses and needs medications to avoid

the debilitating symptoms of diabetes, which symptoms limits her ability to rest, sleep, exercise, stand, eat, among other things.  As a result of Defendants' refusal to allow Holloway access to her medications, despite multiple requests for such access, she suffered physical and emotional damages.  Had Holloway been given access to her medications, she could have performed her essential duties as an employee and contestant-worker on the Production, and also, she may have ultimately gone further in the Production than she went.  Hurst was eliminated during the competitions in Las Vegas as part of the red team in the rope-pulling boulder-lifting challenge.  Defendants promised Holloway a total amount of $2,000 in prize money for her contestant-services and she was ultimately was paid the amount, though not immediately upon the conclusion of her services.

## V.    CLASS ACTION: GENERAL ALLEGATIONS

140.    Plaintiffs, and each of them, bring this action pursuant to Cal. Civ. Proc. Code § 382 on behalf of themselves and the following proposed class: "All individuals, nationwide and worldwide, who were engaged as purported contestant-workers in the Beast Games content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024," ("**Proposed Class**" or "**Class**") for violations of the California Lab. Code and the Bus. & Prof. Code §§ 17200, et seq., Civil Civ. Code §§ 1670.5, 1671, and Wage Order 12-2001, or in the alternative, for violations of the state of Nevada's Nevada Revised Statutes ("**NRS**") §§ 608.250 et seq., 608.018 et seq., 608.019 et seq., 608.020, 608.030, 608.040, 608.050, NRS 608.110, et seq., for unpaid minimum wages, unpaid overtime wages, penalties for failure to provide accurate wage statements or any statements, meal break penalties, rest break penalties, waiting time penalties, statutory penalties, liquidated damages, declaratory and injunctive relief, attorneys' fees and costs, interest including pre-judgment interest, and any other relief as the Court may deem fair.

141.    Plaintiffs Clark, Hurst, Mathews, Santana and Holloway (collectively "**Proposed Female Subclass Representatives**") also bring this action pursuant to Cal. Code Civ. Proc. § 382 on behalf of themselves and the following proposed subclass: "All women, nationwide and worldwide, who were engaged as purported contestant-workers in the Beast Games video content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024," ("**Proposed Female Subclass**") for violations of California Gov't Code §§ 12940(a) et seq., and 12923, or in the alternative, for

SECOND AMENDED CLASS ACTION COMPLAINT

violations of NRS §§ 200.571 and 613.330 for statutory penalties, declaratory relief and injunctive relief in the form of ordering Defendants to institute workplace reforms and training programs for employees and supervisors to prevent further discrimination and harassment, including sexual harassment, as well as for punitive damages, attorneys' fees and costs, interest including pre-judgment interest, and any other relief as the Court may deem fair.

142.    Plaintiffs Ingram, Mathews and Santana (collectively "**Proposed Unfairly Eliminated Subclass Representatives**") also bring this action pursuant to Bus. & Prof. Code §§17200 et seq. and on behalf of the following proposed subclass: "All individuals, nationwide and worldwide, who were engaged as purported contestant-workers in the Beast Games content production between July 2024 and September 2024, who were eliminated as a result of the unfair influence of the production staff," ("**Proposed Unfairly Eliminated Subclass**"), for restitution and equitable relief, disgorgement of profits, and civil penalties, and for an injunction requiring Defendants to disclose to the public if and when elements of the Beast Games franchise are not "bona-fide" competitions because Producers have reserved and exercised discretion to influence various aspects of the Games, as well as any relief as the Court may deem fair.

143.    Plaintiffs Hurst and Holloway (collectively "**Proposed Unaccommodated Subclass Representatives**") also bring this action pursuant to Cal. Code Civ. Proc. § 382 on behalf of themselves and the following proposed subclass: "All individuals, nationwide and worldwide, who were engaged as purported contestant-workers in the Beast Games video content production in Las Vegas, Nevada and Toronto, Canada between July 2024 and September 2024, and who were denied reasonable accommodations with respect to their disabilities," ("**Proposed Unaccommodated Subclass**") for violations of Gov't Code §§ 12940(a)(m) et seq., or in the alternative, for violations of NRS §§ 284.317, 284.379, and 613.330, et seq.  for statutory penalties, declaratory relief and injunctive relief in the form of ordering Defendants to institute workplace reforms and training programs for employees and supervisors to prevent further discrimination, denials of reasonable accommodations, and violations of applicable law, as well as for punitive damages, attorneys' fees and costs, interest including pre-judgment interest, and any other relief as the Court may deem fair.

SECOND AMENDED CLASS ACTION COMPLAINT

144.    As discovery progresses in this matter, Plaintiffs may find it appropriate to amend the definitions of the Proposed Class and Proposed subclasses, and will do so as appropriate.  Plaintiffs will provide more formal definitions of the Proposed Class, Proposed Female Subclass, Proposed Unfairly Eliminated Subclass, and Proposed Unaccommodated Subclass (collectively, "Proposed Class and Subclasses") when Plaintiffs seek to certify the Proposed Class and proposed subclasses.  Excluded from the Proposed Class and Subclasses are any entities in which any of Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Proposed Class and Subclasses are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

145.    Plaintiffs' Class Representatives, on their own behalf as well as on behalf of their prospective class and/or subclasses, filed their complaints against Defendant based on the aforementioned facts with the California Civil Rights Department ("CRD ") on or about March 27, 2025.  On March 27, 2025, the CRD issued Plaintiffs their Right to Sue Letters against Defendants.

146.    Plaintiffs' Class Representatives, on their own behalf as well as on behalf of their prospective class and/or subclasses, filed their complaints against Defendant based on the aforementioned facts with the Nevada Equal Rights Commission ("NERC ") on March 27, 2025.

**A.    <u>Numerosity.</u>**

147.    On information and belief, the Proposed Class consists of all contestant-workers of Beast Games, nationwide and worldwide, including over two-thousand individuals, making joinder impracticable.

148.    On information and belief, the Proposed Female Subclass consists of over forty individuals, nationwide and worldwide, making joinder impracticable.

149.    On information and belief, the Proposed Unfairly Eliminated Subclass consists of over forty individuals, nationwide and worldwide, making joinder impracticable.

150.    On information and belief, the Proposed Unaccommodated Subclass consists of over forty individuals, nationwide and worldwide, making joinder impracticable.

SECOND AMENDED CLASS ACTION COMPLAINT

**B.    Ascertainability.**

151.    The Proposed Class and Subclasses are each ascertainable in that their members are composed of all contestant-workers nationwide and worldwide who competed in the Beast Games competitions in Las Vegas, Nevada and Toronto, Canada, between July – September 2024.  The exact names of such members are identifiable using information contained in, among other things, Defendants' personnel and cast records for the Production, including the BGA application documents, which all participants in the Production were required to fill out and sign, as well as records kept by Defendants pertaining to which contestant-workers actually did show up to participate in the Production, and which contestant-workers, were paid monies and/or issued reimbursements.  This, collectively, should provide the exact number of each of the Proposed Class's and Subclasses' members.

**C.    Typicality.**

152.    The claims of Plaintiffs and proposed subclass members are each typical of their respective Proposed Class and Subclasses.  The claims of the Plaintiffs and the Proposed Class and Subclasses are each based on the same legal theories, and arise from the same unlawful pattern and practices and violations of law.  Plaintiffs each participated as contestant-workers in the Beast Games competitions in Las Vegas, Nevada and Toronto, Canada, and Panama, between July - September 2024.  The Proposed Female Subclass Representatives each sustained damages of all members of the Proposed Female Subclass;  the Proposed Unfairly Eliminated Subclass Representatives sustained damages of all members of the Proposed Unfairly Eliminated Subclass, and the Proposed Unaccommodated Subclass Representatives each sustained damages of all members of the Proposed Unaccommodated Subclass, that were caused by Defendants' conduct in violation of the law.

**D.    Superiority.**

153.    The nature of this action and the laws that apply make the class action format efficient and appropriate to provide relief to the Plaintiffs and the Proposed Class, Proposed Female Subclass, Proposed Unfairly Eliminated Subclass, and Proposed Unaccommodated Subclass, for the following reasons:

SECOND AMENDED CLASS ACTION COMPLAINT

    a.   This case involves major corporate Defendants as well as over 2,000 individual class members with claims that have common issues of law and fact pertaining to their engagement by Defendants;

    b.   If each individual member of the class was required by the Court to file an individual lawsuit, Defendants would be able to use their vastly larger financial resources and influence against the limited resources of these individual Plaintiffs giving them a grossly unfair advantage.  Additionally, those who do not have the resources to even bring individual actions would be unfairly compromised.  Additionally, the cost to the court system to individually hear each of these matters would be substantial;

    c.   The establishment of common business practices or factual occurrences would establish the rights for all of the Proposed Class, Proposed Female Subclass, Proposed Unfairly Eliminated Subclass, and Proposed Unaccommodated Subclass to recover on the claims asserted herein;

    d.   Merely filing a claim with administrative and governmental agencies who investigate employment law violations, such as the California Labor Commissioner, is a weaker method to address the many wrongs in this action due to the limitations of such avenue, including the lack of discovery, as well as fewer remedies available.  Additionally, in the case of the California Labor Commissioner, the losing party could still further continue with a trial de novo in the Superior Court.

**E.**    **<u>Existence and Predominance of Common Law Questions of Fact and Law.</u>**

154.    Common questions of fact and law that affect the members of the Proposed Class include, but are not limited to, the following:

    a.   Whether Defendants committed worker misclassification under California and/or Nevada law;

    b.   Whether Defendants intentionally committed worker misclassification;

    c.   Whether Defendants failed to pay the Proposed Class minimum wage in violation of California and/or Nevada wage and hour laws;

SECOND AMENDED CLASS ACTION COMPLAINT

d.  Whether Defendants failed to pay overtime wages in violation of California and/or Nevada wage and hour laws;

e.  Whether Defendants failed to provide accurate itemized statements in violation of California and/or Nevada wage and hour laws;

f.  Whether Defendants failed to provide meal breaks in violation of California and/or Nevada wage and hour laws;

g.  Whether Defendants failed to provide rest breaks in violation of California and/or Nevada wage and hour laws;

h.  Whether Defendants failed to pay Class Members all wages due upon separation in violation of California and/or Nevada wage and hour laws;

i.  Whether Defendants conduct constitutes unfair competition under the California Bus. & Prof. Code;

j.  Whether the Proposed Class is entitled to injunctive relief;

k.  Whether the Proposed Class is entitled to restitution; and

l.  Whether the Proposed Class is entitled to attorneys' fees and costs;

m.  Whether Amazon, MrB2024 and OOB were joint employers;  and

n.  Whether Defendants breached a contract, expressly or impliedly, by failing to apply California Law.

155.  Common questions of fact and law that affect the members of the Proposed Female Subclass, include, but are not limited to, the following:

a.  Whether Defendants' staff committed sexual harassment in violation California and/or  Nevada law with respect to the Proposed Female Subclass;

b.  Whether Defendants failed to prevent sex harassment in violation of California and/or Nevada law with respect to the Proposed Female Subclass;

c.  Whether the Proposed Female Subclass is entitled to injunctive relief;

d.  Whether the Proposed Female Subclass is entitled to punitive damages;

e.  Whether the Proposed Female Subclass is entitled to attorneys' fees and costs;

f.  Whether Amazon, MrB2024 and OOB were joint employers;  and

49

SECOND AMENDED CLASS ACTION COMPLAINT

g.   Whether Defendants breached a contract, expressly or impliedly, by failing to apply California Law.

156.   Common questions of fact and law that affect the members of the Proposed Unfairly Eliminated Subclass, include, but are not limited to, the following:

a.   Whether Defendants conduct constitutes unfair competition under the California Bus. & Prof. Code;  and

b.   Whether Defendants breached a contract, expressly or impliedly, by failing to apply California Law.

157.   Common questions of fact and law that affect the members of the Proposed Unaccommodated Subclass, include, but are not limited to, the following:

a.   Whether Defendants failed to provide reasonable accommodations for the qualifying disabilities of the Proposed Unaccommodated Subclass in violation of California and/or  Nevada law;

b.   Whether the Proposed Unaccommodated Subclass is entitled to injunctive relief;

c.   Whether the Proposed Unaccommodated Subclass is entitled to punitive damages;

d.   Whether the Proposed Unaccommodated Subclass is entitled to attorneys' fees and costs;

e.   Whether Amazon, MrB2024 and OOB were joint employers; and

f.   Whether Defendants breached a contract, expressly or impliedly, by failing to apply California Law.

158.   Absent a class action, most of the members of the Proposed Class and Subclasses would find the cost of litigating their claims to be prohibitive, leaving them without an effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation, particularly as to the Defendants' legal responsibility for its violations of the Labor Code, Government Code, and Business and Professions Code, in that it conserves the resources of the courts and the litigants and promotes consistency and efficacy of adjudication.

SECOND AMENDED CLASS ACTION COMPLAINT

F.    **Adequacy.**

159.    Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Class and Subclasses.  Plaintiffs have retained four law firms with experience in prosecuting complex litigation, California employment law, and class action cases.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Proposed Class and Subclasses, and have the financial resources to adequately do so.  Neither the Plaintiffs, nor Plaintiff's counsel, has interests adverse to those of the other members of the Proposed Class or Subclass.

VI.    **CAUSES OF ACTION**

A.    **Count 1: Failure to Pay Minimum Wage (Lab. Code §§ 204, 1194, 1197, and 1197.1, and Wage Order No. 12-2001) (NRS 608.250 et seq.  and the Nevada Constitution) (Employment Standards Act, Part IX)**

**(By Proposed Class Against Defendants)**

160.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

161.    While the BGAs stated that Plaintiffs and the Proposed Class were "Volunteers," they were not truly volunteers;  in reality they were employees.  The Division of Labor Standards Enforcement Opinion Letter 1988-10-27 states that: "If the person performing the service is an employee, that person must be paid pursuant to the [Industrial Welfare Commission "IWC"] Orders.  If the person is truly a volunteer, with no expectation of any pay, and is not performing services of a commercial nature, the person is not covered by the IWC Orders."

162.    Plaintiffs and the Proposed Class all had an expectation of compensation.

163.    On information and belief, Defendants' misclassification of Plaintiffs and the Proposed Class as volunteers was knowing and intentional and in violation of the California Labor Code, because, on information and belief, none of the Defendants is a religious, charitable, or nonprofit organization; and the services that Plaintiffs and the Proposed Class were hired to perform were for-profit commercial endeavors pursuant to Defendants' customary businesses producing entertainment content.

SECOND AMENDED CLASS ACTION COMPLAINT

164.    Under California law, which the Defendants selected as the controlling substantive law, employers are required to pay all employees a minimum wage.  During the relevant time period in 2024, this wage was $16 per hour for all industries.

165.    As a pattern and practice, Defendants knowingly failed and refused to pay Plaintiffs and the Proposed Class minimum wages owed to them.  Instead, Defendants required Plaintiffs and the Proposed Class to work 24-hour shifts for days, for well below minimum wage.

166.    Defendants therefore violated California's minimum wage laws, as set forth in Lab. Code §§ 204, 1194, 1197, and 1197.1, and Industrial Welfare Commission Wage Order ("**Wage Order**") No. 12-2001.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants violated Nevada's and Ontario, Canada's minimum wage laws, as set forth in NRS 608.250 et seq.  and the Employment Standards Act ("ESA"), Part IX, et seq., respectively.  As a pattern and practice, Defendants failed and refused to pay Plaintiffs and the Proposed Class wages for any of the hours worked, during the 24-hour a day schedule that Defendants required Plaintiffs and the Proposed Class to abide by.

167.    As a result of Defendants' failures to abide by the law, including California, Nevada, and Ontario, Canada wage and hour laws, Plaintiffs and the Proposed Class are entitled to recover damages from Defendants in an amount equal to the minimum wages including appropriate overtime for the services they performed, plus applicable penalties, continuation wages, interest, and attorneys' fees and costs, in an amount to be proven at trial.

168.    Plaintiffs and the Proposed Class also request additional relief as further described below.

**B.    <u>Count 2: Liquidated Damages for Failure to Pay Minimum Wages (Lab. Code § 1194.2)</u>**

**(By Proposed Class Against Defendants)**

169.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

170.    Pursuant to Lab. Code §1194.2, in any action under Section 1194 to recover wages as a result of payment less than minimum wage, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.  Alternatively, Plaintiffs allege

SECOND AMENDED CLASS ACTION COMPLAINT

that in doing the actions and omissions set forth herein, Defendants are entitled to liquidated damages pursuant to Nevada law.

171.    As a pattern and practice, Plaintiffs and the Proposed Class were not paid at least the minimum wage for all hours worked.

172.    Plaintiffs and the Proposed Class are entitled to recover liquidated damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon, plus attorneys' fees and costs, in an amount to be established according to proof at trial.

C.    **Count 3: Failure to Pay Overtime Wages (Lab. Code §§ 204, 510, and 1194, and Wage Order No. 12-2001, § 3) (NRS 608.018 et seq.  and the Nevada Constitution) (Employment Standards Act, Part VIII)**

    **(By Proposed Class Against Defendants)**

173.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

174.    California Lab. Code §§ 204, 510, and 1194 and Wage Order No. 12-2001, § 3 provides that employees are entitled to overtime pay.  This includes pay equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of 8 hours in one workday and any work in excess of 40 hours in any one workweek, and the first 8 hours worked on the 7th day of work in any one workweek, and twice the regular rate of pay for any work in excess of 12 hours in one day.  "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered and permitted to work, whether or not required to do so, and whether or not actually performing services during the entire shift.

175.    As a pattern and practice, Plaintiffs and the Proposed Class worked more than 8 hours per day and 40 hours per week, but were not paid overtime wages for that work.

176.    As a result, pursuant to Labor Code Section 1194, Plaintiffs and the Proposed Class are entitled to recover unpaid overtime wages and interest thereon, plus attorneys' fees and costs, in an amount to be established at trial.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's and Ontario, Canada's overtime protection laws, as set forth in NRS 608.018 et seq.  and the ESA, Part VIII, et seq., respectively.

SECOND AMENDED CLASS ACTION COMPLAINT

**D.** **Count 4: Sexual Harassment (Gov't. Code §§ 12940(a) et seq., 12923 and 12965) (NRS 200.571)**

**(By the Proposed Female Subclass Against Defendants)**

177.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

178.    At all relevant times hereto, the FEHA, including in particular Gov't Code §§ 12940(a) *et seq*., and 12923, as well as NRS 200.571 et seq., were in full force and effect and were binding upon Defendants.  This subsection imposes an ongoing duty on Defendants to refrain from harassing an employee on the basis of gender or sex, from creating a hostile work environment and to prevent discrimination and harassment on the basis of gender and sex.

179.    At all relevant times, the Proposed Female Subclass were members of multiple protected classes within the meaning of Government Code §12940 which refers to harassment on the bases of one or more of the protected characteristics under FEHA, and here based upon the Proposed Female Subclass' sex and/or gender.

180.    FEHA requires Defendants to refrain from harassing, or creating, or maintaining a hostile work environment against an employee based upon the employee's sex or gender as set forth hereinabove.

181.    Defendants' harassing conduct was severe or pervasive, was unwelcome by the Proposed Female Subclass members, sexual in nature, and a reasonable person in their circumstances would have considered the work environment and employment conditions to be altered so as to make it hostile or abusive.

182.    The Proposed Female Subclass members in fact did find the unwelcome, sexually harassing conduct by Defendants to alter their work environment and employment conditions so as to be hostile or abusive to themselves.

183.    Defendants violated the FEHA and the public policy of the State of California, which is embodied in the FEHA by creating a hostile work environment and harassing the Proposed Female Subclass members because of their gender and/or sex as set forth hereinabove.  Alternatively, Plaintiffs

SECOND AMENDED CLASS ACTION COMPLAINT

1    allege that in doing the actions and omissions set forth herein, Defendants concurrently violated

2    Nevada's anti-harassment laws, as set forth in NRS 200.571.

3         184.    The above said acts were perpetrated collectively and systematically upon the Proposed

4    Female Subclass members by the Defendants' staff members who supervised the Proposed Female

5    Subclass members, and also the male co-workers of the Proposed Female Subclass members, and

6    Defendants knew or should have known of the conduct but failed to take immediate and appropriate

7    corrective action.  To that point, as described herein, Defendants' own lawyer appeared to understand

8    the severity of the ongoing problem of harassment and violence because she felt compelled to issue

9    purported (and ultimately failed) reassurance to the contestant-workers that sexual or other harassment

10   would not be tolerated.

11        185.    The above said acts of Defendants constitute violations of the FEHA and violations of the

12   public policy of the State of California, as well as Nevada law.  As a proximate result of the wrongful

13   conduct of the Defendants, and each of them, the Proposed Female Subclass members suffered and

14   continue to suffer from serious bodily injury, financial and pecuniary losses including pain and

15   suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation,

16   and inconvenience, all of which injuries continue to persist and will persist into the future.

17        186.    The foregoing conduct of Defendants individually, and/or by and through their officers,

18   directors, and/or managing agents, was intended by the Defendants to cause injury to the Proposed

19   Female Subclass members or was despicable conduct carried on by the Defendants with a willful and

20   conscious disregard of the rights of the Proposed Female Subclass members, or subjected the Proposed

21   Female Subclass members to cruel and unjust hardship in conscious disregard of their rights such as to

22   constitute malice, oppression, or fraud under Civil Code §3294(b), thereby entitling the Proposed

23   Female Subclass to punitive damages in an amount appropriate to punish or make an example of

24   Defendants.

25        187.    Plaintiffs Proposed Female Subclass Representatives additionally request a reasonable

26   award of attorneys' fees and costs, including expert witness fees, under Gov't Code § 12965, and

27   injunctive relief as set forth in the Prayer below.

28

SECOND AMENDED CLASS ACTION COMPLAINT

E.     **Count 5: Failure to Prevent Harassment (Gov't. Code §§ 12940(a) et seq. and 12965)**
**(By the Proposed Female Subclass Against Defendants)**

188.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

189.     At all times hereto, the FEHA, including in particular Gov't Code § 12940(k) et seq., was in full force and effect and was binding upon Defendants.  This subsection imposes a duty on Defendants to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring.  As alleged above, Defendants violated this subsection and breached their duty by failing to take all reasonable steps (or any at all) necessary to prevent discrimination and harassment from occurring, despite having actual knowledge that sexual harassment and violence were taking place.

190.     The above said acts of Defendants constitute violations of the FEHA.  As a proximate result of the wrongful conduct of the Defendants, and each of them, the Proposed Female Subclass members suffered and continue to suffer from serious bodily injury, financial and pecuniary losses including pain and suffering, lost income, mental and emotional distress, loss of enjoyment of life, damage to reputation, and inconvenience, all of which injuries continue to persist and will persist into the future.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's laws requiring employers to prevent discrimination and harassment in the workplace.

191.     The foregoing conduct of Defendants individually, and/or by and through their officers, directors, and/or managing agents, was intended by the Defendants to cause injury to the Proposed Female Subclass members or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of the Proposed Female Subclass members or subjected them to cruel and unjust hardship in conscious disregard of the Proposed Female Subclass' rights such as to constitute malice, oppression, or fraud under Civil Code §3294(b), thereby entitling the Proposed Female Subclass to punitive damages in an amount appropriate to punish or make an example of Defendants.

192.     Plaintiffs Proposed Female Subclass Representatives request a reasonable award of attorneys' fees and costs, including expert witness fees under Gov't Code § 12965, and injunctive relief as set forth in the Prayer below.

SECOND AMENDED CLASS ACTION COMPLAINT

F.    **Count 6: Failure to Provide Uninterrupted Meal Breaks (Lab. Code §§ 512 and
226.7, and Wage Order No. 12-2001 § 11) (NRS 608.019 et seq.  and the Nevada
Constitution) (Employment Standards Act, Part VII)**

**(By Proposed Class Against Defendants)**

193.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

194.    Pursuant to Labor Code §512 and Wage Order No. 12-2001, no employer shall employ any person for a work period of more than 5 hours without a meal period of not less than 30 minutes.

195.    Pursuant to Labor Code §226.7, an employer shall pay its employee an additional hour of pay at the regular rate of pay for each workday in which the meal period was not provided.

196.    As a pattern and practice, Defendants did not provide Plaintiffs and the Proposed Class with a meal period and failed to compensate Plaintiffs and the Proposed Class for one hour of pay for each time a meal was not provided during a workday.

197.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California law.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's and Ontario, Canada's meal period protection laws, as set forth in NRS 608.019 et seq.  and the ESA, Part VII, et seq., respectively.

G.    **Count 7: Failure to Provide Uninterrupted Rest Breaks (Lab. Code § 226.7, and
Wage Order No. 12-2001) (NRS 608.019 et seq.  and the Nevada Constitution)
(Employment Standards Act, Part VII)**

**(By Proposed Class Against Defendants)**

198.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

199.    Pursuant to Labor Code §226.7 and the applicable wage order, an employer may not require an employee to work during any rest period mandated by law.  Pursuant to Wage Order 12-2001, employees are provided with 10-minute rest breaks per 4 hours of work, or major portion thereof.  If an

SECOND AMENDED CLASS ACTION COMPLAINT

1  employer fails to comply with this law, the employee is entitled to one hour of pay at the employee's

2  regular rate of pay for each workday that the rest period was not provided.

3       200.    As a pattern and practice, Defendants did not provide Plaintiffs and the Proposed Class

4  with rest breaks on workdays and failed to compensate Plaintiffs and the Proposed Class for one hour of

5  pay for each time a rest break was not provided during a workday.

6       201.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid

7  wages and lost interest, in an amount to be determined at trial, along with any applicable damages and

8  penalties pursuant to California law.  Alternatively, Plaintiffs allege that in doing the actions and

9  omissions set forth herein, Defendants concurrently violated Nevada's and Ontario, Canada's rest period

10  laws, as set forth in NRS 608.019 et seq. and the ESA, Part VII, et seq., respectively.

11  **H.    <u>Count 8: Failure to Provide Wages Promptly Upon Termination (Lab. Code §§ 201,</u>**

12  **<u>202, and 203) (NRS 608.020 – 608.040, 608.050 and the Nevada Constitution)</u>**

13  **<u>(Employment Standards Act, Part V).</u>**

14  **(By Proposed Class Against Defendants)**

15       202.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs

16  as though set out at length herein.

17       203.    Pursuant to Labor Code §201, employees are entitled to all compensation due

18  immediately upon discharge.  Pursuant to Labor Code §202, employees are entitled to all compensation

19  due within 72 hours after the time of quitting.

20       204.    Pursuant to §203 and the applicable wage order, if an employer fails to timely pay an

21  employee upon discharge or resignation, the employee is entitled to waiting time penalties, constituting

22  their regular rate of pay for up to 30 days.

23       205.    As a pattern and practice, Defendants did not provide Plaintiffs and the Proposed Class,

24  any Defendants willfully failed to provide, compensation promptly upon discharge or resignation;  as

25  such, the Defendants are liable for waiting time penalties, in the amount of compensation at the

26  employee's regular rate of pay for each day the wages remain unpaid, up to 30 days.

27       206.    As a pattern and practice, Defendants willfully failed and continued to fail to pay

28  Plaintiffs and the Proposed Class wages pursuant to Labor Code §§201 and 202.  Accordingly, Plaintiffs

SECOND AMENDED CLASS ACTION COMPLAINT

and the Proposed Class are entitled to waiting time penalties and/or continuation wages, plus attorneys' fees and costs, in an amount to be proven at trial.  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's and Ontario, Canada's wage laws governing the payment of wages upon termination, as set forth in NRS 608.020, 608.040, 608.050 and the Nevada Constitution, and the ESA, Part V, et seq., respectively.

207.    As a result, Plaintiffs and the Proposed Class are entitled to damages, including unpaid wages and lost interest, in an amount to be determined at trial, along with any applicable damages and penalties pursuant to California, Nevada, and Ontario, Canada law.

I.    **Count 9: Failure to Provide Accurate and Itemized Wage Statements (Lab. Code §§ 226 and 226.3, and Wage Order No. 12-2001) (NRS 608.110 et seq.  and the Nevada Constitution) (Employment Standards Act, Part V)**

**(By Proposed Class Against Defendants)**

208.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

209.    California Lab. Code §§ 226 and Wage Order 12-2001(2) provides that, "At the time of payment of wages or compensation, the employer shall furnish the employee with an itemized list showing the respective deductions made from the total amount of wages or compensation."

210.    Plaintiffs and the Proposed Class are employees of Defendants.

211.    Plaintiffs and the Proposed Class, as employees of the Defendants, were entitled to receive accurate itemized wage statements.

212.    As a pattern and practice, Defendants failed and refused to provide Plaintiffs and the Proposed Class with the required itemized statements in writing showing the respective deductions made from the total amount of wages or compensation, or any statements at all, or keep proper records, as required by Lab. Code §§ 226, 226.3 and Wage Order 12-2001(2).  Alternatively, Plaintiffs allege that in doing the actions and omissions set forth herein, Defendants concurrently violated Nevada's and Ontario, Canada's laws governing wage statement obligations, as set forth in NRS 608.110 et seq.  and the ESA, Part V, et seq., respectively.

213.    As a pattern and practice, Defendants have knowingly and intentionally failed and continue to fail to comply with Labor Code Section 226 as well as NRS 608.110 et seq. and the ESA, Part V, et seq. As a result, Plaintiffs and the Proposed Class are entitled to penalties pursuant to Section 226 and 226.3, plus attorneys' fees and costs.

**J.**    **Count 10: Failure to Provide Reasonable Accommodations (Gov't. Code § 12940, (m), et seq.) (NRS §§ 284.317, 284.379, and 613.330, et seq.)**

**(By the Proposed Unaccommodated Subclass Against Defendants)**

214.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

215.    Defendants regularly employ five or more persons and otherwise are subject to suit under the California Fair Employment and Housing Act, Government Code Sections 12900, et seq., 12930(m). As further alleged herein, the Parties to this action have contracted and consented to the application of California substantive employment law to this and all disputes arising in any way out of Plaintiffs' appearance on Defendants' productions. The Proposed Unaccommodated Subclass members were employed by Defendants on the Production.

216.    As set forth fully herein, the Proposed Unaccommodated Subclass members suffered qualifying disabilities pursuant to applicable law, including the California Fair Employment and Housing Act, as well as Nevada and federal law.

217.    Plaintiffs Proposed Unaccommodated Subclass members, including as alleged herein, were substantially limited in their ability to engage in major life activities such as walking, resting, standing, eating, running, exercising, breathing, socializing, working, and others.

218.    As a result of their qualifying disabilities, as described herein, they required certain reasonable accommodations, and with which reasonable accommodations they would have remained able to perform the essential functions of their positions at all relevant times.

219.    As fully alleged above, the Proposed Unaccommodated Subclass members requested of Defendants reasonable accommodations, including access to their medications and reasonable periods of time to take those medications. Defendants were aware of their disabilities and that these disabilities substantially limited one or more major life activities of Plaintiffs, as alleged herein.

SECOND AMENDED CLASS ACTION COMPLAINT

220.    As fully alleged above, Defendants failed to engage in good faith with the Proposed Unaccommodated Subclass members to provide effective accommodations, and also failed reasonably to accommodate their needs, including by failing to sufficiently or fully provide their reasonable accommodations to them.  Defendants' failure to reasonably accommodate, and their failure to engage in good faith with the Proposed Unaccommodated Subclass members to provide effective accommodations, included denying them access to their prescription and other medications that were needed to treat the subject disabilities of the Proposed Unaccommodated Subclass members.

221.    At all times mentioned herein the Proposed Unaccommodated Subclass members were willing and able to perform the duties and essential functions of their positions if such reasonable accommodations had been made by Defendants.  At no time would the performance of the essential functions of the employment positions with reasonable accommodations for their disabilities have been a danger to them or any other person's health or safety, nor would it have created an undue hardship to the operation of Defendants' business.

222.    As a direct result of Defendants' acts and omissions alleged above the Proposed Unaccommodated Subclass members suffered injuries and damages in an amount according to proof. Defendants' acts and omissions substantially caused them injuries and damages as alleged herein and according to proof at trial.

223.    As a proximate result of Defendants' wrongful conduct, the Proposed Unaccommodated Subclass members were caused to suffer, and continue to suffer, damages in an amount subject to proof, but which are in excess of the jurisdictional minimum of this Court, and which include, but are not limited to, humiliation, anxiety, severe emotional distress, worry, fear, and the like.

224.    By failing to provide them with reasonable accommodations in violation of Government Code Section 12940(m), as well as Nevada law, Defendants, and each of them, acted willfully, oppressively, maliciously and with conscious disregard for their rights, and with the intent to annoy, harass or injure them, in violation of California Civil Code Section 3294, such that they are entitled to recovery of punitive damages in an amount according to proof at time of trial.

SECOND AMENDED CLASS ACTION COMPLAINT

225.    Plaintiffs Proposed Unaccommodated Subclass Representatives additionally request a reasonable award of attorneys' fees and costs, including expert witness fees, under Gov't Code § 12965, and injunctive relief as set forth in the Prayer below.

**K.    Count 11: Unfair Business Practices (Bus. & Prof. Code § 17200) – Unfair Influence of Competition Outcome**

**(By Proposed Unfairly Eliminated Subclass Against Defendants)**

226.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

227.    Bus. & Prof. Code § 17200 prohibits unfair competition by way of any unlawful, unfair or fraudulent business act or practice.

228.    The Proposed Unfairly Eliminated Subclass Representatives and the Proposed Unfairly Eliminated Subclass also alleges an unfair competition claim derived from Defendants' violation of California Business & Professions Code § 17539, et seq., which mandates that entities are to "provide maximum disclosure to and **fair treatment** of persons who may and do enter such contests."  (Emphasis added.)  Here, as described above, Defendants did not provide "maximum" "fair treatment" of the contestant-workers in Toronto when Production Staff allowed some contestant-workers to see the "Rules" of the competition on a screen, but did not allow it for others.  Production Staff also allowed some of rows of contestant-workers to "huddle" after seeing the "Rules," while other rows were not allowed to do the same.  Additionally, Defendants did not act in good faith when they brought in Class Members to compete in Toronto who were previously eliminated in Las Vegas, and on information and belief, required the previously-eliminated contestant-workers to sign documents agreeing they would not be eligible to win the $5 Million (which later turned out to be $10 Million) grand prize, and they were unfairly (and unbeknownst to the others) incentivized to self-eliminate or take bribes and eliminate their fellow contestants.

229.    This unfair treatment influenced the outcome of the competition with many of those given the unfair advantages being able to advance to the next competition, while many of those who were not given the same being eliminated.  Additionally, there was widespread concern that Production Staff was attempting to influence the outcome of the competitions by informing some of the contestant-

SECOND AMENDED CLASS ACTION COMPLAINT

workers what the next competition would be in advance.  Complaints by contestant-workers about this resulted in Production Staff apparently repeatedly "changing the competition" up last minute to try to show the contestant-workers that the competition was fair, when it already was not fair from the beginning.  What makes matters worse is that the BGA deceptively seemed to assure the contestant-workers that game rigging would not be tolerated from "**ANYONE**," per the BGA ¶ 19.

230.    The Proposed Unfairly Eliminated Subclass Representatives and the Proposed Unfairly Eliminated Subclass lost money and/or property as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of The Proposed Unfairly Eliminated Subclass Representatives and the Proposed Unfairly Eliminated Subclass, each of whom incurred costs to serve as contestant-workers in the Beast Games only to be unfairly eliminated.

L.    **Count 12: Unfair Business Practices (Bus. & Prof. Code § 17200) – Unconscionable Contract (Violation of Civil Code §§ 1670.5 Unconscionable; 1671 Unenforceable Liquidated Damages Clause)**

**(By Proposed Class Against Defendants)**

231.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

232.    Bus. & Prof. Code § 17200 prohibits unfair competition by way of any unlawful, unfair or fraudulent business act or practice.

233.    As set forth above, Defendants engaged in unlawful and unfair business practices, including, but not limited to violating Civil Code § 1670.5 in that a panoply of clauses in the BGA are unconscionable.

234.    Defendants also engaged in unlawful and unfair business practices, including but not limited to violating Civil Code § 1671, by inserting an unlawful liquidated damages clause in the BGA that is knowingly grossly unreasonable.

235.    Plaintiffs and the Proposed Class lost money and/or property as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of Plaintiffs and the Proposed Class.

SECOND AMENDED CLASS ACTION COMPLAINT

**M.**      **Count 13: Unfair Business Practices (Bus. & Prof. Code § 17200) – Falsely Claiming Application of California Law Protections and related violations of California Labor Code and Fair Employment and Housing Act**

**(By Proposed Class, Proposed Female Subclass and Proposed Unaccommodated Subclass Against Defendants)**

236.      Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

237.      The BGA mandated that California substantive law would apply to the Class Members' appearance on the Program.  The BGA states that it is, "controlled by California Law, and all controversies and questions with respect to this Agreement and/or [the Contestant's] appearance on the Program shall be determined by the internal, substantive laws of the State of California." (BGA ¶ 48.)

238.      Notwithstanding the plain language of the BGA and Defendants' promise to apply California substantive law to the contestant-workers' appearance on and involvement with the production, these Defendants now assert that California law does not apply to their appearance on the Beast Games and have refused to apply California law thereto.

239.      By making false claims that California law would be applied, Defendants engaged in unfair business practices and unfair competition by deceiving the public, competitors, and the Class Members about essential benefits and protections attaching to their involvement with the Production.

240.      Plaintiffs and the Proposed Class are informed and believe that California law is among the most protective of workers in the country, and that they would benefit from the application of California law to their involvement in the Production.

241.      Plaintiffs and the Proposed Class lost money and/or property and incurred unexpected legal risk as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of Plaintiffs and the Proposed Class, each of whom incurred costs to serve as contestant-workers in the Beast Games, but without essential legal protections they thought they were receiving as part of their involvement.

242.      Accordingly, Plaintiffs and the Proposed Class are entitled to injunctive relief requiring Defendants to use California substantive law to govern all issues surrounding the contestant-workers'

involvement with and appearance on the Production, including in the instant litigation, along with any other penalties or remedies deemed appropriate as determined after trial.

243.    Additionally, and as set forth above, by failing to apply California substantive law, Defendants engaged in unlawful and unfair business practices, including, but not limited to a pattern and practice of willfully misclassifying employees as volunteers and/or as independent contractors, by failing to pay wages for all hours worked, which includes minimum wages and overtime wages, by failing to provide meal and rest breaks in compliance with the law, or pay meal and rest break premiums owed, by making wage statement violations, and by failing to pay wages due at the time of separation.

244.    Plaintiffs and the Proposed Class lost money and/or property as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of Plaintiffs and the Proposed Class.

245.    Additionally, and as set forth above, Defendants engaged in unlawful and unfair business practices, including, but not limited to by not complying with California's FEHA, allowing for the creation and allowing a work environment that amounted to sexual harassment in the form of hostile work environment, to the detriment of the Proposed Female Subclass.

246.    Proposed Female Subclass Representatives and the Proposed Female Subclass suffered damages as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of Plaintiffs and the Proposed Female Subclass.

247.    Additionally, and as set forth above, Defendants engaged in unlawful and unfair business practices, including, but not limited by not complying with California's FEHA by failing to provide reasonable accommodations, to the detriment of the Proposed Unaccommodated Subclass.

248.    Proposed Unaccommodated Subclass Representatives and the Proposed Unaccommodated Subclass suffered damages as a result of Defendants' unfair business practices, through which Defendants obtained unfair benefits and profits at the expense of Plaintiffs and the Proposed Unaccommodated Subclass.

N.    **Count 14: Breach of Contract**

    **(By Proposed Class, Proposed Female Subclass and Proposed Unaccommodated Subclass Against Beast Defendants)**

SECOND AMENDED CLASS ACTION COMPLAINT

249.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

250.    In between March and July 2024, Class Members entered into the BGA with MrB2024 and OOB.  The BGA provided that the Class Members would provide contestant-worker services in exchange for compensation by MrB2024, OOB and Amazon, and the promise that California Law would apply to the Class Members' services appearing on Beast Games.

251.    The Class Members provided the contestant-worker services required of them under the BGA.

252.    The BGA that Beast Defendants prepared and required contestant-workers to enter into mandated that California substantive law would apply to their appearance on the Program.

253.    The BGA states that it is, "controlled by California Law, and all controversies and questions with respect to this Agreement and/or [the contestant-workers'] appearance on [Beast Games] shall be determined by the internal, substantive laws of the State of California."

254.    Notwithstanding the plain language of the BGA and the Beast Defendants' promise to apply California substantive law to the contestant-workers' appearance on and involvement with the production, these same Beast Defendants now assert that California law does not apply to their appearance on the Beast Games, and have refused to assert California law thereto.

255.    By refusing to agree to the application of California substantive law to the contestant-workers' appearance on and involvement with the production, Beast Defendants have materially breached the BGA.

256.    Plaintiffs have been damaged by Beast Defendants' breach in an amount to be proven at trial.  Plaintiffs and the Proposed Class are entitled to damages with respect to Beast Defendants' breach of the BGA, including as set forth herein.

O.    **Count 15: Breach of Implied Contract**

       **(By Proposed Class, Proposed Female Subclass and Proposed Unaccommodated Subclass Against Amazon)**

257.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

SECOND AMENDED CLASS ACTION COMPLAINT

258.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

259.     In between March and July 2024, Class Members entered into the BGA with MrB2024 and OOB expressly, and impliedly with Amazon.  The BGA provided that the Class Members would provide contestant-worker services in exchange for compensation by MrB2024, OOB and Amazon, and the promise that California Law would apply to the Class Members' services appearing on Beast Games.

260.     While Amazon was not a listed signatory to the BGA, the circumstances surrounding the contestant-workers' engagement under the BGA, including the behavior of the parties gives rise to an implied-in-fact contract between the contestant-workers and Amazon that makes the BGA binding on Amazon as a joint employer as well. The BGA expressly provided "Amazon Alternative LLC," which it also identified as the "Network" in the BGA, had the right to control the workers, including the right to control whether contestant-workers were hired under certain circumstances, in Amazon's "sole discretion" (BGA ¶ 4), the right to control the "dates and... locations as… shall designate in their sole discretion," (BGA ¶ 12), and the right to control both the nature of the work, including how it would be performed, and the payment that would be provided to contestant workers.  BGA ¶ 17 specifies:

> I agree that during the Challenges, any Prize(s) that may be awarded shall be subject to such procedures and rules as established by Producer and Network [Amazon], including the Official Rules, and that the Challenges may have rules specifically applicable to any such Challenge in which I participate (collectively, "Challenge Rules"), as may be changed, modified, or amended at any time, with or without notice, and which shall be considered included within the Official Rules…

In addition to the foregoing, the BGA provided that the non-disclosure agreement clause, the releases, and rights to the contestant-workers' name, image and likeness would all inure to the benefit of Amazon. Amazon also enjoys the right under the BGA to prohibit potential competitive future employment prospects of contestant workers until at least February 2026, and gives Amazon the right to exercise control over social media postings of the contestant-workers, which it did exercise, including emailing contestant-workers November 19, 2024 from the "beastgamespr@amazon.com" email address with social media guidelines that included rules on exactly what they could post as well as a requirement that they submit "any and all content you're interested in posting to your personal and professional social media channels… for review/approval head of sharing," and that, "You can do so by emailing your

SECOND AMENDED CLASS ACTION COMPLAINT

requests to BeastGamesSocial@amazon.com."  Amazon and MrBeast promoted the Beast Games competitions that the contestant-workers provided the work for as them working together jointly to bring the Games to Amazon.  Due to the foregoing reasons, an implied-in-fact contract for the terms of the BGA was created between the Class Members and Amazon directly and as a joint employer with the MrB2024 and OOB.

261.    The Class Members provided the contestant-worker services required of them under the BGA.

262.    The BGA that Defendants prepared and required contestant-workers to enter into mandated that California substantive law would apply to their appearance on the Program.

263.    The BGA states that it is, "controlled by California Law, and all controversies and questions with respect to this Agreement and/or [the contestant-workers'] appearance on [Beast Games] shall be determined by the internal, substantive laws of the State of California."

264.    Notwithstanding the plain language of the BGA and Amazon's promise to apply California substantive law to the contestant-workers' appearance on and involvement with the production, and by enjoying the rights of the BGA, and exercising such rights to control contestant-workers, Amazon now asserts that California law, and its employee wage and hour and labor law protections do not apply to the contestant-workers' appearance on the Beast Games, and have refused to apply California law thereto.

265.    By refusing to agree to the application of California substantive law to the contestant-workers' appearance on and involvement with the production, Amazon has materially breached the BGA.

266.    Plaintiffs have been damaged by Defendants' breach in an amount to be proven at trial. Plaintiffs and the Proposed Class are entitled to damages with respect to Amazon's breach of the BGA, including as set forth herein.

P.    **Count 16: Breach of Implied Covenant of Good Faith and Fair Dealing**
        **(By Proposed Unfairly Eliminated Subclass Against Defendants)**

267.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

268.    Plaintiffs and the Proposed Class entered into the BGA with the Defendants to the benefit of the Defendants.

269.    Plaintiffs and the Proposed Class did everything the contract demanded; *i.e.*, they provided contestant-worker services for the period proscribed by the BGA.

270.    The BGA informed Plaintiffs and the Class that game rigging would not be tolerated from "**ANYONE.**" Specifically, ¶ 19 of the BGA states, in all-caps bolded text:

**I AM AWARE THAT IT IS A FEDERAL OFFENSE PUNISHABLE BY FINE AND/OR IMPRISONMENT FOR ANYONE TO RIG THE OUTCOME OF THE YOUTUBE PROJECT AND/OR PROGRAM WITH THE INTENT TO DECEIVE THE VIEWING PUBLIC, AND THAT IT IS A FEDERAL OFFENSE TO OFFER OR ACCEPT ANY SPECIAL ASSISTANCE IN CONNECTION WITH THE YOUTUBE PROJECT AND/OR PROGRAM.  I AGREE THAT I WILL NOT PARTCIPATE IN ANY SUCH ACT OR IN ANY OTHER DECEPTIVE OR DISHONEST ACT WITH RESPECT TO THE YOUTUBE PROJECT AND/OR PROGRAM.  IF ANYONE TRIES TO INDUCE ME TO DO ANY SUCH ACT, I SHALL I MMEDIATELY NOTIFY A REPESENTATIVE OF PRODUCER, A REPRESENTATIVE OF NETWORK, AND A REPRESENTATIVE OF SCC.**

271.    The Defendants included this conspicuous admonition to communicate that the Beast Games would be administered fairly, yet the Defendants acted in bad faith when they unduly influenced the outcome of the Games.

272.    Upon information and belief, the Defendants unfairly manipulated and/or interfered with the Games in a manner that amounted to "rigging" by taking affirmative, discretionary actions including without limitation bringing in the Las Vegas Eliminated contestant-workers to compete in Toronto, and reportedly further requiring them to sign waivers agreeing they would not be eligible to win the ultimate $5 Million grand prize.  The Defendants further manipulated the outcome of the Games in Toronto, including by allowing some contestants to see the rules for upcoming challenges before other contestants were able to see them, and by allowing some rows of contestants to confer and strategize while others were not allowed to communicate at all.  On top of this, the MrBeast and/or Amazon Defendants chose NOT to tell the other contestant-workers that the previously-eliminated contestant-workers had returned to compete but were not eligible to win the ultimate grand prize (which skewed their incentives and presumably influenced their decisions on whether to self-sacrifice or to take bribes).  MrBeast led the

69

SECOND AMENDED CLASS ACTION COMPLAINT

Class Members to believe game rigging, and special assistance, would not be tolerated, but then exercised their discretion and control in bad faith to manipulate and rig the outcome of the Games without disclosing their active involvement to the Class Members during the course of the Production, or afterwards to the viewing public.

273.    Indeed, Defendants continued to act in bad faith when they aired the complete edited Beast Games series without revealing to the viewing public that the Las Vegas Eliminated contestant-workers had been brought back to compete in Toronto under certain asymmetric constraints that incentivized some of the Las Vegas Eliminated contestant-workers to self-sacrifice in the Self-Sacrifice Platform Challenge and others in the Bribe Platform Challenge, unfairly influencing who would advance in the Games, and ultimately, its outcome.

274.    Defendants acted in bad faith when they failed to disclose and actively concealed from Plaintiffs Ingram, Mathews, and Santana, and the Proposed Unfairly Eliminated Subclass their above manipulative interference with the Games.

275.    Plaintiffs Ingram, Mathews, and Santana and the Proposed Unfairly Eliminated Subclass were harmed by the foregoing acts of Defendants, including by being unfairly eliminated from Beast Games and the opportunity to win the $5 Million Grand Prize.

### Q.    **Count 17: Declaratory Relief**

**(By Proposed Class Against Defendants)**

276.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though set out at length herein.

277.    Plaintiffs and the Proposed Class assert claims for declaratory relief under California Code of Civil Procedure Section 1060.

278.    Plaintiffs and the Proposed Class have interests under the written BGAs as well as the statutes governing California employment law.

279.    An actual controversy exists relating to the legal rights and duties of the parties.

SECOND AMENDED CLASS ACTION COMPLAINT

280.    Plaintiffs and the Proposed Class and Subclasses are seeking declaratory relief to define their rights to avoid prospective harm.  Namely, Plaintiffs and the Proposed Class are asking the Court to declare that:

1.  Plaintiffs were jointly employed by MrB2024, OOB and Amazon Alternative;

2.  That the Court declare that Plaintiffs and the Proposed California Class were willfully misclassified in violation of Lab. Code §§ 226.8 and 3351, and award any penalties for each violation as to each member of them (and alternatively and concurrently, Nevada and Ontario, Canada law, including without limitation NRS 608 et seq.  and the Nevada Constitution);

3.  The BGA terms on their face do not support a "volunteer" classification under California law, or in the alternative Nevada law;

4.  The BGA terms on their face support an "employment" classification under California law, or in the alternative Nevada law;

5.  The Class Members' appearance on the Beast Games qualified as employment under California law, or in the alternative Nevada, or Ontario, Canada law;

6.  The liquidated damages clause in the BGA is an unenforceable penalty;

7.  The BGA's one-year noncompete provision is not enforceable;

8.  The BGA is not enforceable to the extent it requires contestants to appear anywhere or perform any labor in the future whether with or without compensation;

9.  The BGA's nondisclosure agreement clause is overbroad and unenforceable;

10. The BGA's name, image and likeness release clause is overbroad and unenforceable;

11. The BGA's Release is unenforceable against the contestant-worker Class Members;

12. Any future appearance by Class Members as it relates to Beast Games must be voluntary and fairly compensated under the applicable governing laws[27];

---

[27] Plaintiffs are presently unaware of the specific MrBeast- and Amazon-related entities involved in the prospective production of Beast Games for Amazon, to which this and other requests for relief may apply. Plaintiffs expressly reserve the right to amend the pleadings to identify such entities as appropriate, including through Doe Defendant substitutions or other means permitted by law.

SECOND AMENDED CLASS ACTION COMPLAINT

13. Reality show contestants are not categorically excluded as a class of workers from the protections afforded by California, Nevada, and/or Ontario employment law;

14. Defendants failed to meet their legal duty to provide and secure workers compensation insurance coverage for their employees in violation of Labor Code Section 3700, and/or NRS 616A - 616D, and 617 et seq.;

15. That as a result of Defendants' failure to provide and secure workers compensation insurance coverage for their employees, Defendants are subject to penalties and remedies prescribed by law, including in Labor Code Section 3700.5 and NRS 616A - 616D, and 617 et seq.; and

16. That the Court declare that Defendants violated Bus. & Prof. Code §§ 17200, et seq. as to Plaintiffs and the Proposed Class, including as set forth herein.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Proposed Classes, request that the Court:

1) Certify this case as a class action on behalf of the Class defined above;  or in the alternative, certify a class for liability only, or for other limited issues pursuant to Cal. Rule of Court 3.765(b);

2) Appoint Plaintiffs Matthew Rivera, Keshwan Clark, Kory Ingram, Jane Hurst, Gabrielle Mathews, Jordan Santana, and April Holloway as Class representatives;

3) Certify the Proposed Female Subclass action on behalf of the Proposed Female Subclass defined above; or in the alternative, certify a subclass for liability only, or for other limited issues pursuant to Cal.  Rule of Court 3.765(b);

4) Appoint Keshwan Clark, Jane Hurst, Gabrielle Mathews, Jordan Santana and April Holloway as the subclass representatives for the Proposed Female Subclass defined above;

5) Certify the Proposed Unfairly Eliminated Subclass action on behalf of the Proposed Unfairly Eliminated Subclass defined above;  or in the alternative, certify a subclass for liability only, or for other limited issues pursuant to Cal.  Rule of Court 3.765(b);

SECOND AMENDED CLASS ACTION COMPLAINT

6)    Appoint Kory Ingram, Gabrielle Mathews and Jordan Santana as the subclass representatives for the Proposed Unfairly Eliminated Subclass defined above;

7)    Certify the Proposed Unaccommodated Subclass action on behalf of the Proposed Unaccommodated Subclass defined above;  or in the alternative, certify a subclass for liability only, or for other limited issues pursuant to Cal.  Rule of Court 3.765(b);

8)    Appoint Jane Hurst and April Holloway as the subclass representatives for the Proposed Unaccommodated Subclass defined above;

9)    Appoint the law firms of Pafundi Law Firm, APC, Singian Law, Stuart Alban Law, P.C., and Whang Law Firm, P.C., as Class Counsel;

10)    Order Class Notice to all Class Members defined above;

11)    Order Declaratory Relief as requested herein;

12)    Award injunctive relief in the form of ordering Defendants to institute workplace reforms and training programs for employees and supervisors to prevent further harassment and denials of reasonable accommodations;

13)    Enjoin Defendants from classifying contestant wages as "prize money" for tax purposes.

14)    Issue an injunction requiring Defendants to disclose to the public if and when elements of the Beast Games franchise are not "bona-fide" competitions because Producers have reserved and exercised discretion to influence various aspects of the Games.

15)    Enjoin Defendants from misclassifying contestants as volunteers in future MrBeast and/or Amazon productions.

16)    Enjoin Defendants from misclassifying workers who perform contestant services for compensation as "independent contractors" in future MrBeast and/or Amazon productions, if and when the contestants work under the strict control of Defendants in the Defendants' usual course of business.

17)    Enjoin Defendants from excluding contestant labor from the overall labor budget submitted in connection with any application for a tax credit;

SECOND AMENDED CLASS ACTION COMPLAINT

18) Award all wages owed by Defendants to Plaintiffs and the Proposed Class, including unpaid minimum wages, overtime wages, wages due upon termination, continuation wages, and liquidated damages;

19) Order that Defendants pay economic and non-economic compensatory damages for unlawful harassment, failure to provide reasonable accommodations, and failure to prevent harassment, as alleged herein;

20) Order that Defendants pay compensatory damages for Defendants' breaches of contract, breaches of implied contract, and breaches of the implied covenant of good faith and fair dealing, all as alleged herein;

21) Award Plaintiffs and the Proposed Class one hour of additional pay for each required uninterrupted meal break that was not provided pursuant to pursuant to Lab. Code § 226.7 and Wage Order No. 12-2001 and unpaid wages due for missed meal breaks of Plaintiffs and the Proposed Class pursuant to NRS 608.019;

22) Award Plaintiffs and the Proposed Class one hour of additional pay for each required uninterrupted rest break that was not provided pursuant to pursuant to Lab. Code § 226.7 and Wage Order No. 12-2001 and unpaid wages due for missed rest breaks of Plaintiffs and the Proposed Class pursuant to NRS 608.019;

23) Award Plaintiffs and the Proposed Class penalties for Defendants' failure to provide accurate and itemized wage statements, pursuant to Lab. Code §§ 226 and 226.3 and NRS 608.110;

24) Award waiting time penalties due to Plaintiffs and the Proposed Class, pursuant to Lab. Code § 203 as well as continuation wages pursuant to NRS 608.040;

25) Order restitution and equitable relief, disgorgement of profits, and civil penalties, in favor of Plaintiffs and the Proposed Class for Defendants' unlawful business practices, as described herein, pursuant to Bus. & Prof. Code §§ 17200, et seq.;

26) Award punitive and exemplary damages to the Proposed Female Subclass and the Proposed Unaccommodated Subclass, pursuant to Civ. Code § 3294 and applicable Nevada and Ontario, Canada law;

SECOND AMENDED CLASS ACTION COMPLAINT

27) Award attorneys' fees and costs pursuant to Code Civ. Proc. § 1021.5, Lab. Code §§ 218.5, 226, 1194, and 2698, et. seq., Gov't Code § 12965, and any other applicable California and Nevada and Ontario, Canada law;

28) Award interest to the maximum extent allowed by law; and

29) For such other and further relief as the Court deems just and proper.

Date: April 4, 2025                          PAFUNDI LAW FIRM, APC
                                             SINGIAN LAW
                                             STUART ALBAN LAW, PC
                                             WHANG LAW FIRM, PC


                                             By: _____
                                                   Robert N.  Pafundi
                                                   Lizelle S.  Brandt
                                                   Courtney Stuart-Alban
                                                   Arthur Y.  Whang
                                             Attorneys for Plaintiffs and all others similarly situated.

## VIII.  <u>JURY DEMAND</u>

Plaintiffs hereby demands a trial by jury on all issues so triable.

Date: April 4, 2025                          PAFUNDI LAW FIRM, APC
                                             SINGIAN LAW
                                             STUART ALBAN LAW, PC
                                             WHANG LAW FIRM, PC


                                             By: _____
                                                   Robert N.  Pafundi
                                                   Lizelle S.  Brandt
                                                   Courtney Stuart-Alban
                                                   Arthur Y.  Whang
                                             Attorneys for Plaintiffs and all others similarly situated.

SECOND AMENDED CLASS ACTION COMPLAINT

# EXHIBIT H

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 17

**24STCV24042**                                                                November 12, 2024
**CONTESTANT 1, et al. vs MRB2024, LLC, et al.**                                              2:23 PM


Judge: Honorable Laura A. Seigle                    CSR: None
Judicial Assistant: Nancy Navarro                   ERM: None
Courtroom Assistant: Valerie Gaytan                 Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances


**NATURE OF PROCEEDINGS:** Court Order re: Request to Continue 11/13/2024 Hearings

Pursuant to written stipulation, the Hearing on Motion to Seal Complaint and First Amended Complaint scheduled for 11/13/2024, and Initial Status Conference scheduled for 11/13/2024 are advanced to this date and continued to 03/11/2025 at 09:00 AM in Department 17 at Spring Street Courthouse.

E-Served: Mar 5 2025  1:24PM PST  Via Case Anywhere

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 17

**24STCV24042**                                                        March 5, 2025
**CONTESTANT 1, et al. vs MRB2024, LLC, et al.**                        3:01 PM

Judge: Honorable Laura A. Seigle              CSR: None
Judicial Assistant: Nancy Navarro             ERM: None
Courtroom Assistant: Sergio Soto              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order re: 3/11/2025 Hearings

The Court has read and considered the parties' joint message posted on the Case Anywhere Bulletin Board on 3/04/2025.

Pursuant to written stipulation, the Hearing on Motion to Seal Complaint and First Amended Complaint scheduled for 03/11/2025, and Initial Status Conference scheduled for 03/11/2025 are advanced to this date and continued to 04/14/2025 at 09:00 AM in Department 17 at Spring Street Courthouse.

Judicial Assistant gives notice.

Clerk's Certificate of Service By Electronic Service is attached.