# EXHIBIT A

## CONTESTANT AGREEMENT AND RELEASE

**DO NOT SIGN THIS UNTIL YOU HAVE READ THIS CAREFULLY AND COMPLETELY**

To: Off One's Base LLC and MrB2024, LLC
c/o Weinstein Senior, LLP
1901 Avenue of the Stars, 2nd Floor
Los Angeles, CA 90067

Gentlemen/Ladies:

I have volunteered to participate as a contestant in the YouTube show currently entitled "Untitled YouTube Competition" (*working title*) ("**YouTube Project**") produced by Off One's Base LLC ("**OOB**") and currently anticipated for initial exhibition on YouTube, and, if I qualify, the audiovisual program currently entitled "Beast Games" (*working title*) ("**Beast Games**" and together with YouTube Project, collectively, "**Program**") produced by MrB2024, LLC ("**MrB2024**", and together with OOB, collectively, "**Producer**") currently anticipated for initial exhibition by Amazon Alternative LLC or any station, platform, services or network owned, controlled and/or operated by Amazon Alternative LLC or any of its parent, subsidiary, or affiliated entities (collectively, "**Network**") and/or any other station, platform, service or network in connection with the Program. I acknowledge and agree that my sole compensation for my participation as a contestant on the Program, if any, will be my winnings (cash and/or other prizes) earned on the Program, if any. As an inducement to Producer considering me as a contestant on the Program, I am making material statements, representations and promises in this Contestant Agreement and Release, including any exhibits and schedules attached hereto (which are incorporated by reference), which constitute the entire agreement between the parties hereto ("**Agreement**"). I understand that Producer may require me to forfeit my appearance on and/or participation in the Program and any of my winnings (including any Prize(s), as defined herein below) if any of my statements or representations are false, or if I fail to abide by this Agreement, any other agreement or document that I may be required to sign in connection with my possible participation on the Program, including but not limited to the official rules for the Program ("**Official Rules**") in any way, which are attached hereto as Exhibit A and incorporated herein by this reference. Producer may make any announcement Producer chooses on-air or otherwise, in order to explain or disclose any false statement(s).

As an inducement to Producer considering me as a contestant on the YouTube Project and considering me as a potential contestant on Beast Games (if and as applicable), I represent, warrant and agree as follows:

1. I am eighteen (18) years of age or older.

2. I am a citizen or legal permanent resident of the U.S. or possess a current legal Employment Authorization Card, allowing me to seek employment freely (i.e., without restrictions as to employer) and legally travel to and re-enter the U.S. from any foreign country. I have a valid U.S. Social Security or Tax ID number, or have appropriate visa(s) or waiver(s) to legally compete for a spot in the Program in the United States. I am eligible to obtain all necessary visa(s) or waiver(s) to legally compete for a spot in the Program in Mexico, Puerto Rico, Canada, Germany and/or Italy.

3. Neither I nor any member of my immediate family or anyone living in my household is currently employed by or has been employed within the last two (2) years by, or is a close acquaintance of anyone employed by or employed within the last two (2) years by, any of the following, nor do I know anyone who is currently or has been in the last two (2) years an employee of any of the following:

    (a) Producer, or any other person or entity involved in the development, production, distribution or other exploitation of the YouTube Project and/or Beast Games or any variation thereof;

    (b) YouTube LLC;

    (c) Network;

    (d) Enteractive Solutions Group, Inc. dba Sullivan Compliance Company (collectively, "**SCC**");

    (e) Any sponsor of the Program or its advertising agency; or

    (f) Any person or entity supplying prizes or services to the Program.

If the above is not true please explain:

_____

4.  I agree that to the extent that the information provided in Paragraph 3 changes, or I discover additional information at any time after signing this Agreement, I shall immediately notify Producer, SCC and/or Network. In addition, I acknowledge and agree that Producer and/or Network has the sole discretion to render ineligible any person who, Producer and/or Network determines is sufficiently acquainted with any person or entity connected with the production, administration or judging of the Program that such person's participation in the Program could create the appearance of impropriety. Conversely, Producer and/or Network reserves the right to allow any person to remain part of the Program who may have a connection with anyone included in Paragraph 3(a)-(f) above, in Producer's and/or Network's sole discretion, if Producer and/or Network determines that such person's involvement in the Program does not and will not affect the integrity of the Program.

5.  I am not a candidate for public office and will not become a candidate until one (1) year after the initial exhibition of the YouTube Project and/or all the episodes of Beast Games in which I appear. As used herein, the terms "exhibit" and "exhibition" refer to a public viewing through a broadcast, cable, satellite, AVOD, internet/SVOD, or similar system.

6.  The following are all of the game, competition or reality shows for which I have applied to be a contestant or participant within the last two (2) years:

_____
_____
_____

Without limiting the exclusivity provisions set forth herein, I agree that I will not participate in, appear on or apply to be on any other game, competition or reality show while still being considered by Producer for the Program or after being selected to be a contestant on the YouTube Project and/or Beast Games (as applicable), until the conclusion of the Exclusive Period (as defined in Paragraph 13).

7.  The following are ALL of the television shows on which I have EVER appeared (even if I did not win anything):

| Name of Show | Network | Approx. Air Date | Role in Show | Prize(s) Won |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

8.  I understand that if I am selected by OOB to be a contestant on the YouTube Project and, subject to my qualifying to participate therein, Beast Games, and/or if I am selected by OOB to be brought to the production location to participate in the YouTube Project and/or if I am selected by OOB to be brought to the production location to participate in, I shall remain available from June 29, 2024 through September 30, 2024 to participate as a contestant in the YouTube Project and Beast Games (as applicable), with the understanding that dates may change. Further, I agree to be available following completion of the Program for any promotional obligations as required by Producer and/or Network.

9.  I acknowledge and agree that all phases of the Program, including, without limitation, the contestant selection process as well as the actual game play and the production of the Program itself may or will be recorded (videotaped and/or audiotaped), and I expressly consent to such videotaping and/or audiotaping of me. For the avoidance of doubt, all such materials shall constitute Material as set forth in Paragraph 11, below.

10. (a) I acknowledge that I may be chosen as an alternate (as opposed to a contestant) by Producer, in its sole discretion. If I am chosen as an alternate, I shall remain available from June 29, 2024, through August 1, 2024. If I am an alternate and selected by Producer to participate in Beast Games, I will remain available through September 30, 2024. I understand that if I am selected by Producer to be an alternate, but am not chosen to replace a contestant, I will not have any chance to win any Prize(s) (as defined herein), or prize money and no consideration shall be payable to me. I acknowledge and agree that Producer may, at any time and in their sole discretion, add, remove, or replace contestants. I agree that all of the terms and conditions of this Agreement (including, without limitation, the confidentiality provisions set forth in Paragraph 18 below) shall apply to me with full force and effect, whether or not I appear in the Program. I acknowledge and agree that Producer shall have the right at any and all times and in its discretion, to remove or replace me as a contestant, for any reason (or no reason at all), including, without limitation, after I have begun participating in the Program. I understand that Producer may add, remove, or replace contestants at any time and from time to time and agree that all of the terms and conditions of this Agreement shall apply to me with full force and effect, whether or not I participate in the Program at all. Further, if I am selected as an alternate to replace a contestant, I agree to be available following completion of the Program for any promotional obligations as required by Producer and/or Network.

(b) I may withdraw as a Program contestant at any time. If I voluntarily withdraw or take any action that would render me ineligible or otherwise unable to participate in the Program, the following will apply: (i) all of the rights assigned by me and all of the promises, agreements, waivers, and releases made by me in this Agreement and all other agreements related to the Program will continue in full force; (ii) I will forfeit any chance, as applicable, to qualify to compete in the Program and/or to win any Prize (as defined in Paragraph 21 below), will be required to return any Prize already received, and may be required to reimburse Producer for any travel and lodging expenses incurred on my behalf and any other goods, services, or money that I have received in connection with the Program; (iii) I will be required to comply with any limitations imposed by Producer on communications with others outside of the production of the Program during this period; and (iv) Producer may require any withdrawal to occur on camera, and any Material (defined below) obtained by Producer prior to or relating to any such withdrawal may be exploited by Producer as part of the Program or otherwise.

11. (a) I hereby irrevocably grant Producer, Network, any television station or channel, cable network, streaming platform, or satellite network that exhibits or otherwise exhibits the Program (in whole or in part), and each of their respective successors, licensees, and assigns, the irrevocable and perpetual right and license to photograph, film, tape, and make video and/or sound recordings of me and my appearance as a contestant on the Program and/or to use these photographs, film, tapes, and video and/or sound recordings, as well as my likeness, voice, image, name, social media handle(s), actions, biographical material, and any remarks that I may make, in and in connection with the Program and/or any related work, including, without limitation, the production, distribution, exhibition, advertising, publicizing, merchandising, promoting, or other exploitation of the Program and any element thereof and any related work, in whole or in part, and any and all allied and ancillary rights thereto, throughout the universe, in any manner, by any method, in any and all languages, and in any and all media, whether currently existing or hereafter developed (including, without limitation, the Internet and mobile devices), in perpetuity. Further, I consent to Producer recording my actions and statements via concealed or hidden cameras and audio devices throughout the filming locations, including in areas in which a person might have a reasonable expectation of privacy. I give my express, unconditional and irrevocable permission to Producer to fully exploit all materials made using any type of filming or recording equipment, including, without limitation, concealed cameras and other devices, irrespective of whether the making or exhibition of such materials might constitute a breach of any rights of privacy I otherwise might have in the absence of this express agreement, and irrespective of whether such materials violate any rights I otherwise would hold or might hold in the future.

(b) I shall cooperate by making available and furnishing any information or material that is requested of me. The photographs, film, tapes, video and/or sound recordings of everything I say or do on or in connection with the Program (whether via concealed or hidden cameras and audio devices) will be owned by Producer to do with as Producer wishes at any time in the future, as often as Producer wishes, without any payment to me or any other consideration of any kind whatsoever. The Program or any part thereof can be edited, rearranged and/or other material added in Producer's sole discretion without any payment to me. Any and all information I have supplied or may supply to Producer in interviews, in the applications for the Program or otherwise (including biographical information, social media handle(s), photographs or any recordings of me and/or others, and any other materials), any material or information given by me or anyone else in connection with my casting and auditioning for the Program, any and all other information Producer has received or will receive from other sources, my appearance, actions, voice and/or sound

3

effects in connection with the Program (including, without limitation, any act, poses, plays, vocal, instrumental, musical and other sound effects, and compositions of any kind or nature), and the results and proceeds of my participation in the Program, including without limitation, all literary, dramatic, factual, artistic, photographic, visual, sculptural, structural, musical and/or other material of whatever kind (including without limitation, me, my actions, voice and sound effects) or nature created (or to be created), written (or to be written), contributed (or to be contributed), as well as all inventions, processes and improvements, notes and ideas, and all versions and revisions thereof, and any reproductions or recordings of any nature of any of the foregoing, in whole or in part, shall be referred to herein as the "**Material**."

(c) The Material is specially ordered or commissioned by Producer for use as part of an audio-visual work as "work(s) made for hire" for Producer under U.S. copyright law. Accordingly, Producer is and shall be considered the author and, at all stages of completion, the sole and exclusive owner of the Material and all right, title and interest therein in perpetuity. The Material shall include, without limitation, all copyrights, neighboring rights, trademarks, patents and any and all other ownership and exploitation rights (and all extensions and renewals thereof), and any and all subsidiary, allied, and ancillary rights, in the Material now or hereafter recognized in any and all territories and jurisdictions, including, by way of illustration, production, reproduction, distribution, adaptation, performance, fixation, rental and lending rights, exhibition, broadcast and all other rights of communication to the public, and the right to exploit the Material throughout the universe in perpetuity in all media, markets and languages and in any manner now known or hereafter developed or devised. If under any applicable law the fact that the Material is a work-made-for-hire is not effective to place sole and complete authorship and ownership in Producer of the Program, the Material and/or all rights granted by me hereunder, and all rights therein, then to the fullest extent allowable and for the full term of protection otherwise accorded to me under applicable law, I hereby irrevocably and unconditionally assign and transfer to Producer connection with the Program all rights granted by me hereunder and, in connection therewith, any and all right, title and interest in and to the Program and any other works now existing or hereafter created containing the Material throughout the universe in perpetuity and in all languages, for and by all now known or hereafter devised uses, media, technologies and forms. The Material may be edited, altered, cut, rearranged, adapted, dubbed, or otherwise revised or modified for any such purposes by Producer in its sole discretion, without any payment to me or any other consideration of any kind whatsoever and without liability of any kind, and I waive the exercise of any "moral rights" and "droit moral" and any analogous rights however denominated in any jurisdiction of the world. Producer will own any so called "rental and lending rights" or similar rights. I hereby represent and warrant that I have the right (without permission from or payment to any third party) to grant each and all of the foregoing rights on my own and on behalf of all others who appear in the videotape(s) or photograph(s) that I have supplied and/or who have supplied information contained in the Material.

(d) I acknowledge that I may be required to submit personal pre-existing photographs and/or videotapes of myself, including, but not limited to, family photographs, photographs of me at various points in time in my life and/or other materials from my personal history that may be relevant to the Program, and/or any other pre-existing material I provide to Producer which is owned and/or created by me (including, but not limited to, videotapes, photographs, other artistic or other copyrightable materials, etc.) outside of my participation in the Program, for Producer's use in and in connection with the Program (collectively, "**Pre-existing Material**") including, but not limited to, access to my social media handle(s), posts, tweets, and or photographs/videotapes from which Producer obtain any such Pre-existing Material. I hereby grant Producer a perpetual, gratis, sub-licensable, non-exclusive license to use any such Pre-existing Material, in and in connection with the production, advertising, marketing, promotion, distribution and exploitation of the Program, and in the exercise of all subsidiary, allied and ancillary rights, in any and all media, worldwide, in perpetuity, provided, however, that the Pre-existing Materials are and shall remain my sole and exclusive property in perpetuity and Producer shall have no right, title, or interest therein except as specifically set forth in this Agreement. I represent and warrant that I am the sole owner or holder (or the authorized representative of the sole owner or holder) of the rights in the Pre-existing Material, including, but not limited to, any and all copyrights, trademarks, and rights in the likenesses of any people (if any) depicted in the Pre-existing Material, that the consent of no other person or entity is required to enable Producer to use the Pre-existing Material as described herein, and that such use will not violate the rights of any third parties. Notwithstanding the foregoing, Producer shall not be under any obligation to actually use the Pre-existing Material as part of the Program, or to actually telecast, exhibit, or otherwise exploit the Pre-existing Materials or the Program.

12. I understand that my appearance as a contestant on the Program is subject to Producer's sole discretion. If I am selected by Producer to be a contestant in the Program, I agree to participate as a contestant in connection with the production of the Program as and to the extent required by Producer and/or Network on such dates and at such locations as Producer and/or Network shall designate in their sole discretion, and which dates and locations Producer and/or

Network may change in their sole discretion. I understand and agree that Producer shall have the right to require me to appear in additional episodes of the Program (including, without limitation, in any broadcast season of the Program, regardless of the broadcast season for which I was originally considered and/or selected as a contestant) and the terms of this Agreement shall continue to apply. I agree to cooperate and to follow all directions of Producer. Producer's decisions on all matters relating to the Program (including, without limitation, contestant selection, the playing of any Challenge (as defined herein), the success or failure of completing any Challenge, the awarding of any prize, Official Rules, Challenge Rules (which are included as a part of the Official Rules by reference, and as defined below) and rules interpretations, eliminations, disqualifications, eligibility determinations, technical difficulties and all decisions related thereto) shall be final, binding and not subject to challenge or appeal. I acknowledge that Producer will provide me with Official Rules and Challenge Rules (which may be given verbally or in writing) for both the YouTube Project and Beast Games, and I hereby agree to follow and obey the Official Rules and Challenge Rules (as they may be changed, modified or amended by Producer in its sole discretion from time to time, at any time) and acknowledge that, if selected as a contestant, my participation on the Program will signify my clear understanding of the Official Rules and/or Challenge Rules. I understand that failure to comply with any Official Rules, Challenge Rules (as defined below), and/or any of the provisions of this Agreement may result in my immediate disqualification and/or elimination from the Program in Producer's sole discretion, and the forfeiture of any prize. I agree that any broadcast or other exploitation of the Material or any rights therein, whether as part of the Program or otherwise, will not entitle me to receive any prize or compensation other than any Prize (as defined in Paragraph 21 below), that I may be awarded as a contestant on the Program in accordance with this Agreement and/or the Official Rules.

13. (a) It is agreed that Producer shall have the exclusive and irrevocable option to engage me in connection with the filming or taping of additional episodes of the Program, including, without limitation, "all-star", championship, "best-of", reunion, and/or other episodes of the Program ("**All-Star Episodes**") in which I hereby agree to participate, within three (3) years from the initial exhibition of the first episode of the Program in which I appear. In the event that Producer elects to exercise its option, then Producer shall so notify me at least five (5) days prior to the commencement date of principal photography or taping of the All-Star Episodes (if any). I hereby agree to participate in the All-Star Episodes for a period to be determined by Producer ("**All-Star Program Period**") at a location to be determined at a later date by Producer in its sole discretion. I hereby irrevocably grant Producer all rights in the All-Star Episodes as granted with respect to Program herein and agree that all other provisions of this Agreement (including, without limitation, the provisions relating to publicity services and confidentiality as well as all other agreements I may execute in connection with the Program) shall apply to my participation in the All-Star Episodes. Producer shall have the right to interview and/or photograph me during the All-Star Production Period.

(b) I agree that, for the period commencing with the date of this Agreement and continuing through and including one (1) year after the initial commercial exhibition of the last episode of the Program in which I may appear ("**Exclusive Period**"), I shall not apply to or appear on any unscripted, competition, and/or game programs in any media without Producer's and Network's prior written consent (which consent may be given or withheld at Producers and Network's sole discretion) in each instance.

14. I shall not mention or "plug" any commercial product or service on the Program. I have not paid or accepted any money or other valuable consideration in connection with my appearance on the Program, or authorized anyone else to do so. I am aware that payment or acceptance of, or agreement to pay or accept, any money or valuable consideration for the appearance of any person or the mention of anything on the Program without disclosure to the broadcaster of the Program prior to exhibition is a federal offense punishable by fine and imprisonment. I agree to immediately notify Producer, Network and SCC if anyone tries to induce me to accept any such payment.

15. I will not appear or compete on the Program against any person who is an acquaintance, friend, or relative, including without limitation, the host of the Program, unless Producer has been notified in writing of such relationship prior to my appearance on the Program and a determination regarding my eligibility shall have been made by Producer in writing in advance of my appearance on the Program.

16. I freely and knowingly assume all risks of my participation in the Program. I understand that, in and in connection with the Program, I may reveal and/or relate, and other parties (including, without limitation, other contestants, judges, other participants, Network, Producer, and the host(s) of the Program) may reveal and/or relate information about me of a personal, surprising, defamatory, disparaging, embarrassing, or unfavorable nature, which may be factual or fictional. I further understand that my appearance, depiction, and/or portrayal in and in connection with the Program, and my actions and the actions of others displayed in and in connection with the Program, may be disparaging, defamatory, embarrassing, or of an otherwise unfavorable nature, may expose me to public ridicule,

humiliation, or condemnation, and may portray me in a false light. I further understand and agree that during my appearance in the Program, Producer, in its sole discretion, may require me to wear clothing, costumes, accessories, and/or makeup selected by Producer. I acknowledge and agree that Producer, Network, and any television station or channel, cable network, or satellite network that exhibits the Program (in whole or in part) shall have the right (a) to include any such information and any such appearance, depiction, portrayal, actions, and statements in auditions, rehearsals, and preparations for the Program, in recordings of the Program, in the Program as edited by Producer in its sole discretion, in related works, and in any and all forms of advertising, promotion, and publicity for the Program, related works, for Network, for Producer, and for any television station or channel, cable network, satellite network, or other distribution service that exhibits the Program (in whole or in part) (collectively, "**Advertisements**"), and (b) to exhibit and otherwise exploit the Program and the Advertisements containing any such information and any such appearance, depiction, portrayal, or actions in any manner, by any method, and in any and all media, whether currently existing or hereafter developed (including, without limitation, the Internet and mobile devices), in all languages, in perpetuity throughout the universe. The waivers, releases, and indemnities in this Agreement and any other agreement that I may execute in connection with the Program expressly apply to any such inclusion and exploitation. I consent to the use of the Material, my name, city and state of residence, voice, photograph, and/or likeness by Producer, Network, any television station or channel, cable network, or satellite network, or distribution service that exhibits the Program (in whole or in part), and each of their respective parent, affiliated, and subsidiary entities for advertising, publicity, marketing, and promotional purposes, without any compensation. I understand and agree that all publicity in connection with the Program is under the sole control of Producer, Network, and any television station or channel, cable network, or satellite network, or distribution service that exhibits the Program (in whole or in part), as applicable. Except as specifically provided herein or as otherwise authorized by Producer, I will not myself, or authorize others to, advertise, publicize, or promote my appearance on the Program or receive or generate any monetary advantage from my appearance on the Program. Therefore, I agree to consult with Producer and Network regarding any and all publicity (including, but not limited to, television, radio, print, and internet/social media interviews) in connection with my involvement and/or appearance on the Program and shall not consent to any publicity without the prior written approval of Producer and Network in each instance. I acknowledge and agree that my obligations with respect to advertising, promotion, and publicity as set forth in this paragraph shall continue in perpetuity or until terminated by Producer giving me written notice of termination (if any). In no event will I have the right to terminate my publicity obligations.

17.    I understand that any Challenge (as defined below) may involve contestants competing individually or with a third party or group, as Producer may designate in its sole discretion and as further detailed in the Official Rules. I agree that during the Challenges, any Prize(s) that may be awarded shall be subject to such procedures and rules as established by Producer and Network, including the Official Rules, and that the Challenges may have rules specifically applicable to any such Challenge in which I participate (collectively, "**Challenge Rules**"), as may be changed, modified, or amended at any time, with or without notice, and which shall be considered included within the Official Rules. The Challenge Rules, if any, may not be provided to me until I am at the location and may be provided to me solely in a verbal manner by Producer or by other Program participants. I understand that my success or failure in the Program may be affected by the actions of Producer and its employees, the host, the other contestants, the judges, and/or audience members (if any), and that the amount of any winnings I may receive is also affected by the actions of Producer and its employees, the host, the other contestants, the judges, and/or audience members (if any). Without limiting the generality of the foregoing, I understand and acknowledge that challenges that will be conducted as part of the Program (each, a "**Challenge**" and collectively, the "**Challenges**") may involve me receiving advice from Producer and/or its employees, the host(s), the other contestants, the judges, and/or audience members, but that I will be solely responsible for any and all decisions that I make during the play of the Challenges, even if such decisions are consistent with any advice I may receive, whether or not such decisions affect the outcome of the Challenges and/or the Prize(s) I receive, if any. The waivers, releases, and indemnities in this Agreement and any other agreement that I may execute in connection with the Program expressly apply to any such actions and/or advice. I understand that Producer and Network reserve the right to change, add to, delete from, modify, or amend the Official Rules, the Challenge Rules, and any other Program activities, the procedures, and rules regarding granting or withholding of advantages, and the granting or withholding of Prizes, at any time (including, without limitation, the right to cancel the Program, or any Challenge, without awarding any Prizes). I acknowledge and agree that all Official Rules and Challenge Rules, including, without limitation, the amount of any Prizes awarded, if any, are subject to change by Producer and Network, in their sole discretion, at any time, including, without limitation, while I am participating on the Program.

18.    I will not use or disclose to any party any information or trade secrets obtained or learned as a result of my participation in the Program or otherwise, including without limitation any information concerning or relating to the Program, the contestants, the events contained in the Program, the outcome of the Program, or the contents of this Agreement or any other agreement or document that I sign, have signed, or receive from Producer or Network (as

6

applicable) at any time. I shall keep in strictest confidence and shall not disclose to any contestant or any other third party at any time (i.e., prior to, during, or after the recording and exhibition of any episode of the Program) any information or materials of any kind, including without limitation, any information or materials concerning or relating to Producer and/or Network, any information that I may learn about how the business of Producer and/or Network operate, any information concerning or relating to the Program, the Program contestants, the events contained in the Program or the outcome of any contest in or episode of the Program, that I read, hear, or otherwise acquire or learn in connection with or as a result of my participation in the Program or otherwise (collectively, "**Confidential Information and Materials**"). I will not myself, or authorize others to, prepare or assist in the preparation of any written work, any audio work, and/or any visual work, including, without limitation, any website or information on the Internet, that depicts, concerns or relates in any way to my participation in the Program or the Confidential Information and Materials. I acknowledge and agree that the Confidential Information and Materials are confidential and the exclusive property of Producer and/or Network (as applicable). During and after the time that I participate in any way in connection with the Program, I will not, directly or indirectly, divulge in any manner, or use or permit others to use, any of the Confidential Information or Materials. I acknowledge and agree that my obligations with respect to confidentiality as set forth in this paragraph of the Agreement shall continue in perpetuity or until terminated by Producer by giving me written notice of termination. In no event will I have the right to terminate my confidentiality obligations under this Agreement. I recognize that a breach by me of this paragraph would cause Producer and Network (as applicable) irreparable injury and damage that cannot be reasonably or adequately compensated by damages in an action at law, and, therefore, I hereby expressly agree that Producer and Network (as applicable) shall be entitled to injunctive and other equitable relief (without posting bond) to prevent and/or cure any breach or threatened breach of this paragraph by me. I also recognize that proof of damages suffered by Producer and Network (as applicable) in the event that I breach this paragraph will be costly, difficult, inconvenient, and impracticable. Accordingly, I agree to pay Producer and Network the sum of Five Hundred Thousand United States Dollars (US$500,000.00) per breach plus disgorgement of any income that I may receive in connection with my breach as liquidated damages in the event I breach this paragraph prior to the initial exhibition of the last episode of the Program. I agree that Five Hundred Thousand United States Dollars (US$500,000.00) plus disgorgement of any income that I may receive in connection with my breach is a reasonable estimate of the amount of damages Producer and Network each are likely to suffer in the event I breach this paragraph prior to the initial exhibition of last episode of the Program, considering all of the circumstances existing as of the date of this Agreement. In addition, I agree to pay Producer and Network the sum of One Hundred Thousand United States Dollars (US$100,000.00) per breach plus disgorgement of any income that I may receive in connection with my breach as liquidated damages in the event I breach this paragraph after the initial commercial exhibition of the last episode of the Program. I agree that One Hundred Thousand United States Dollars (US$100,000.00) plus disgorgement of any income that I may receive in connection with my breach is a reasonable estimate of the amount of damages Producer and Network each are likely to suffer in the event I breach this paragraph after the initial commercial exhibition of the last episode of the Program, considering all of the circumstances existing as of the date of this Agreement. Furthermore, I will defend, indemnify, and hold harmless Producer, Network, each of their respective parent, subsidiary and affiliated entities, and each of their respective officers, directors, agents, representatives, and employees, from any and all claims, actions, damages, liabilities, losses, costs, and expenses (including, without limitation, attorneys' fees and costs) that in any way arise out of or result from my breach of this paragraph.

19.     **I AM AWARE THAT IT IS A FEDERAL OFFENSE PUNISHABLE BY FINE AND/OR IMPRISONMENT FOR ANYONE TO RIG THE OUTCOME OF THE YOUTUBE PROJECT AND/OR PROGRAM WITH THE INTENT TO DECEIVE THE VIEWING PUBLIC, AND THAT IT IS A FEDERAL OFFENSE TO OFFER OR ACCEPT ANY SPECIAL ASSISTANCE IN CONNECTION WITH THE YOUTUBE PROJECT AND/OR PROGRAM. I AGREE THAT I WILL NOT PARTICIPATE IN ANY SUCH ACT OR IN ANY OTHER DECEPTIVE OR DISHONEST ACT WITH RESPECT TO THE YOUTUBE PROJECT AND/OR PROGRAM. IF ANYONE TRIES TO INDUCE ME TO DO ANY SUCH ACT, I SHALL IMMEDIATELY NOTIFY A REPRESENTATIVE OF PRODUCER, A REPRESENTATIVE OF NETWORK, AND A REPRESENTATIVE OF SCC.**

20.     I understand, acknowledge and agree that in no event shall I be permitted to attend a recording of any episode of the Program (except as expressly instructed by Producer) whether before, during or after my participation in the Program. Further, I understand, acknowledge and agree that I may not invite, nor cause any friends, family, relatives, significant others, acquaintances or anyone else associated with me to attend any recording of an episode of the Program in which I appear unless specifically authorized by Producer.

21.     If I am a contestant on the Program, and subject to the terms herein, I will be able to compete for and potentially win a prize specified by Producer (which may be in the form of cash [less all applicable withholdings, deductions and

taxes] and/or, among other things, goods and services, including but not limited to merchandise, travel, lodging, tickets and/or access to events or other consideration; each, a "**Prize**" and collectively, hereinafter, "**Prizes**") as the result of my playing of Challenges pursuant to the Official Rules. Any Prize I win shall be awarded within One Hundred Eighty (180) days following the initial exhibition of the last episode of the Program on which I competed (or as soon thereafter as possible if delivery within such time period is not possible). I agree to execute any additional documents which Producer may require to reaffirm my understanding of this paragraph above. The awarding of any and all Prizes remains at all times subject to Producer's verification of my eligibility, my compliance with all of the Official Rules and Producer's directions, and my not being in breach of this Agreement. I understand and acknowledge that Producer and Network shall have the right in their sole discretion to either award or not award any or all cash and/or other Prize(s) I may win on the Program if, for any reason whatsoever, the episode of the Program in which I appear does not air. If Producer and Network elect not to award any Prize if the episode is not broadcast, the paragraphs set forth herein and below regarding the handling of Prize will not apply.

22.     I shall be solely responsible for and shall pay all state, federal and other taxes and license fees on any Prize(s) (if any) that I am awarded. Producer may, at its sole option, or as required by law, withhold any or all applicable taxes prior to the delivery to and/or awarding of any Prize or portion thereof. Without limiting the generality of any other releases herein, I hereby release, discharge and hold harmless Producer, Network, any television station or channel, cable network, or satellite network that exhibits the Program (in whole or in part), and each of their respective parent, subsidiary or related persons or entities, affiliates or divisions, sponsors, licensees and assigns, and all persons and entities connected with the Program, from and against any and all costs, expenses and liabilities arising in connection with any such taxes and shall fully defend, indemnify and hold each of the foregoing parties harmless from and against any and all such costs, expenses and liabilities. Producer may deduct or require payment of any such tax before the delivery to and/or awarding of any Prize. If such payment is required and I do not pay within one hundred and twenty (120) days of the exhibition of my appearance (or sooner if required) in the Program, Producer may, in its sole discretion, elect to offset any payment by the amount of any required tax payment, or deem the Prize forfeited, provided Producer's election of either alternative shall not in any way preclude Producer from later lecting, in its sole discretion, the other alternative, or any other remedy permitted by law.

23.     My refusal to accept any Prize shall constitute a forfeiture of that Prize by me and shall release Producer, Network, any television station or channel, cable network, video on demand platform, or satellite network that exhibits the Program (in whole or in part), and each of their respective parents, subsidiaries, affiliates, or divisions, and all persons and entities connected with the Program, from any and all obligations in connection with such Prize.

24.     Any breach of this Agreement by me, including, but not limited to, if I am caught cheating in any form during my participation in the Program shall result in my immediate removal from the Program and shall constitute a forfeiture of any cash and/or Prizes I may have won up to the point of my removal and I hereby release Producer, Network, SCC, any television station or channel, cable network, streaming service, video on demand platform, or satellite or other network or distribution service that exhibits the Program (in whole or in part), and each of their respective parents, subsidiaries, affiliates, or divisions, and all persons and entities connected with the Program, from any and all obligations in connection with the foregoing.

25.     If for any reason any Prize I win cannot be supplied, I shall accept either a prize of comparable value or a cash amount equal to the fair market value of the Prize I won, as determined by Producer in its sole discretion.

26.     Unless approved in writing by Producer and allowed by the Official Rules, I shall not share, or make any agreement or promise to share, any Prize or any portion of any Prize with any other contestant or participant, and any such purported agreement or promise shall be unenforceable. Prior to delivery of the Prize to me, I may not assign any Prize or cash which I win to another person or organization.

27.     I shall not advertise my winning of any Prize nor sell any non-cash Prize without Producer's prior written approval in each instance.

28.     If a Challenge and/or the Program is halted for any reason, I shall abide by Producer's decision regarding resumption of the Challenge and/or the Program and the disposition of Prizes, and Producer, Network, any television station or channel, cable network, or satellite network that exhibits the Program (in whole or in part), and each of their respective parents, subsidiaries, affiliates or divisions, and all persons and entities connected with the Program will not be liable for any costs, losses or claims caused by any interruption or by Producer's not proceeding with the Challenge and/or Program.

29.     I acknowledge and agree that all of the information that I have provided to Producer is true, accurate, and complete. I agree that Producer may disclose any and all of the information provided by me to any person for any purpose, on or off-air. I acknowledge and agree that all materials submitted by me in the application process may be (a) included in in-context and out-of-context advertising, marketing and promotional materials in all media now known or hereafter devised; (b) used in all media now known or hereafter devised worldwide in perpetuity in connection with the production, distribution, exhibition, and exploitation of the Program or related work; and (c) used in all other ancillary and derivative uses (e.g., bonus materials, digital clips, etc.) and versions of the Program (in whole or in part). I understand and acknowledge that providing false or incomplete information to Producer may result in my disqualification and/or elimination from the Program in Producer's sole discretion, and the forfeiture of any cash and/or Prize(s) won by me.

30.     I authorize Producer to investigate, access and collect information about any of the statements made by me in the casting application, this Agreement, any supporting documents and any other document that I have signed or do sign in connection with my application to be selected as a contestant in the Program, or any other written or oral statements I make in connection therewith. I irrevocably authorize Producer to secure information about my experiences from my current and former employers, associates, family members, friends, co-workers, roommates, educational institutions, government agencies, credit reporting agencies, and any references I have provided, and I irrevocably authorize such parties to provide information concerning me. I hereby unconditionally and irrevocably release and forever discharge Producer, Network, and all such parties and persons from any and all liabilities arising out of or in connection with any such investigation. I specifically authorize investigation of my employment record, medical record, and government records, including but not limited to my motor vehicle record, criminal record and credit and/or consumer report(s). I acknowledge and agree that any such information obtained by Producer pursuant to this paragraph or otherwise may be used for purposes of selecting contestants in the Program.

31.     (a) I represent and warrant that I am in excellent physical, emotional, psychological, and mental health sufficient to allow me to participate in the Program, and that I am not subject to any impairment, illness (acute or chronic), or limitations that might inhibit my participation in the Program, and I do not have any food or other allergies except for those I have notified an authorized member of Producer of in writing prior to my participation hereunder, if any. I warrant that to the extent that my physical, emotional, psychological, and/or mental health changes or I discover additional information about my health at any time after signing this Agreement, I shall immediately notify Producer. The foregoing shall include in the event I exhibit any symptoms of COVID-19 and variants thereof (including, without limitation, fever, cough, and difficulty breathing), I have been diagnosed with COVID-19 or any variant thereof, or have been in close proximity with someone diagnosed with COVID-19 or any variant thereof. I understand that participation in the Program may involve strenuous physical and mental activities and exposure to high pressure situations. I hereby acknowledge and agree that my participation in such activities is voluntary and that Producer's involvement with such activities is limited to photographing, filming, recording and portraying such activities to the extent desired by Producer for inclusion in the Program and otherwise. I further warrant that I have not been advised or instructed by any doctor or other medical or health professional to limit, curtail or in any other way refrain from any activities similar or equal to those I may undertake in connection with the Program. Accordingly, I knowingly, voluntarily and freely assume any and all risks, both known and unknown, associated with my participation in the Program and I freely and knowingly accept and assume any and all risks of the foregoing activities as well as any risks not mentioned herein that are associated with my participation in the Program.

(b) I hereby acknowledge that I have voluntarily and knowingly decided to participate in the Program with full knowledge, appreciation and understanding of the personal risks involved. I hereby agree to accept any and all risks attributable to my participation in the Program. I acknowledge and agree that the Program may involve activities that are or may become hazardous and dangerous and that may expose me to risks of physical, emotional, and mental stress or injury whether or not I participate in the activities. Such activities may include, but are not limited to, physically and emotionally challenging activities, the performance of stunts and exercises and related activities, as well as training, learning, coordinating, competing in, and engaging in physical and strenuous activities and/or using equipment and facilities related to these activities, and such activities may include, but are not limited to, physical activities that may at times be strenuous, all of which will be performed in a competitive atmosphere which may be stressful, strenuous or dangerous psychological or physical activities such as being surprised or scared (including, without limitation, water based activities, strength activities, being suspended and/or height based activities, building activities, throwing activities, jumping, running, etc.), engaging in other physical and mental challenges and competitions, and other physical activities that may at times be strenuous or dangerous, and I understand that such activities may cause me death, illness, or serious bodily injury, including, but not limited to exhaustion, dehydration, overexertion, burns, and

heat stroke. I understand and acknowledge that while conduct giving rise to such situations and activities might otherwise constitute an actionable tort, I have freely and knowingly consented to such conduct and to participating in such situations and activities. I also understand that the Program may take place in dangerous areas anywhere in the universe that may expose me and other participants/contestants to a variety of hazards and conditions. I understand that my participation in any such activities, my presence when they are occurring (whether or not I am participating in them), and any of the production locations themselves, may carry with them the risk of death, serious physical injury, extreme emotional distress, severe physical, mental and emotional stress, mental and physical illness, non-consensual physical contact and loss of property. I understand the risks of participating in such activities, and I acknowledge that while conduct that gives rise to such situations might otherwise constitute an actionable tort or give rise to other claims or causes of action, I have freely consented to such conduct and has assumed the risks thereof. I ALSO UNDERSTAND THAT PRODUCER HAS NOT MADE ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND REGARDING MY QUALIFICATIONS, ABILITY OR FITNESS TO PARTICIPATE IN THE PROGRAM, AND THAT THE WAIVERS, RELEASES AND INDEMNITIES CONTAINED IN THIS AGREEMENT AND ANY OTHER AGREEMENT THAT I HAVE EXECUTED OR MAY EXECUTE IN THE FUTURE RELATED TO THE PROGRAM EXPRESSLY APPLY TO MY PARTICIPATION IN OR PRESENCE AROUND ANY SUCH ACTIVITIES AND IN ANY SUCH LOCATIONS. Producer, directly or through others, may provide various services, and equipment in connection with the Program. I acknowledge that no one has made any warranties whatsoever with respect to any such equipment and services, and there are no warranties of any kind from anyone regarding fitness or suitability for use of any such equipment and services for any purpose in connection with the Program. I waive any right I otherwise might have to warnings or instructions regarding any aspect of the Program, or any equipment or services utilized in connection with the Program. I acknowledge that the foregoing is not an exhaustive list of the risks, hazards and dangers to which I may be exposed as a result of my participation in the Program. I accept and assume any and all risks, hazards and dangers regardless of whether they are detailed in this Agreement, the Official Rules, the Challenge Rules or any other release that I have executed or may execute in connection with the Program and I acknowledge that the waivers, releases and indemnities in this Agreement and any other agreement that I have executed or may execute in connection with the Program, apply to all such risks, hazards and dangers.

(c) I understand that upon execution of this Agreement, or at any time during my participation in the Program, Producer and Network may conduct an investigation of my medical and/or psychological status, criminal history (if any) and/or my personal and/or professional background. Such medical and/or psychological investigation may include my submitting to routine physical and/or medical exams conducted by licensed professionals of Producer's choosing on a date to be determined in Producer's discretion taking into consideration my availability. The results of all evaluations will be kept confidential to the extent possible and/or practicable, and Producer shall not use the results in or as part of the Program. In this regard, I consent to and agree to complete Producer's Background Authorization & Disclosure Form and Authorization for Release of Medical Information Form if and as requested by Producer solely in connection with my participation in the Program. I hereby waive any physician-patient privilege (or any other privilege) I may have or that may arise with any physicians, psychologists, therapists, health care providers (including both physical and mental health care providers), social workers, health care institutions, insurers, and other individuals or entities as a result of my participation in the contestant selection process and/or the Program, and with whom I would otherwise have an expectation of privacy and/or a confidentiality privilege (but for the waivers and releases I have agreed to herein) during my participation in the Program (the "**Privileged Parties**"), and I agree to release and authorize the release to Producer of, all records and information, written, verbal, electronic or otherwise, from any of the above Privileged Parties. I further agree to sign any additional authorizations that Producer, a health care provider, or any such Privileged Party deems necessary to facilitate the release of such records and/or the filming, recording and/or portrayal of any of my conversations, sessions, communications, appointments and/or other interactions with any and all such Privileged Parties during my participation in the Program. Producer hereby acknowledges and agrees that any such medical records and/or information shall not be disclosed on the Program unless such information is relevant to a specific medical event that occurs in connection with my participation on the Program. In addition, Producer shall destroy or return any medical records of mine in Producer's possession after the completion of my participation on the Program.

(d) In case of an emergency, I authorize Producer to arrange for or provide such medical assistance to me as it determines is necessary. I also authorize any licensed physician, health care personnel and/or medical facility to provide any medical care and/or hospitalization of me, including anesthetics, which such licensed physician, health care personnel and/or medical facility determines necessary or advisable. I authorize any reasonably necessary care by paramedics. I acknowledge that I have disclosed to Producer all medical conditions that could in any way affect my participation in the Program. In connection with the foregoing, I also agree to execute a copy of the "Emergency Medical Release" attached hereto as Exhibit "B" and "Authorization For Release of Medical Information" attached

hereto as Exhibit "C", each incorporated by this reference. Nothing in this subsection in any way limits my right or the right of anyone holding a medical proxy for me to make medical decisions for on my behalf which decisions shall prevail over Producer's medical decisions.

(e) I acknowledge that I am personally responsible for, and that Producer is not responsible for, maintaining accident and health insurance to cover any bodily injury to me and/or personal property damage suffered by me. Similarly, I acknowledge that I am personally responsible for, and that Producer is not responsible for, any insurance to cover my short-term or long-term disability from any injury or any insurance to cover my death.

(f) I agree to immediately contact Producer if I feel sexually, racially, or otherwise harassed by, threatened by, or uncomfortable with the conduct of any other individual connected with the Program at any time, and I understand that Producer and Network will not penalize or retaliate against me in any way for doing so.

(g) Participating in the Program may involve activities that are not recommended during pregnancy. I represent and warrant that I am not currently pregnant and agree that if I become pregnant any time after signing this Agreement but before the production of the Program has concluded (including any All-Star Episodes), I will immediately notify Producer.

32. Producer may freely assign this Agreement and all rights of Producer under this Agreement, and delegate any of Producer's obligations to me with respect to my participation in the Program, and any assignee or delegate may further assign or delegate its obligations. Upon any such assignment or delegation, Producer shall have no further obligation to me under this Agreement or in connection with the obligation that is delegated. This Agreement is personal to me and is not assignable by me, and any purported assignment by me shall be null and void *ab initio*.

33. My selection as a contestant for the Program is within Producer's sole discretion, and Producer is not obliged to select me. I understand and acknowledge that as part of its contestant selection, Producer will rely on the information given by me. If I am selected, Producer is still not obligated to have me appear on the Program. If I appear on the Program, Producer is not obligated to exhibit my appearance. Producer's decision relating thereto shall be final in all respects.

34. I understand and acknowledge that Producer may cancel, suspend, or pause production of the Program at any time, for any reason, in its sole discretion, without any obligation to me whatsoever, other than to pay me my winnings (if any) in accordance with the terms of this Agreement.

35. I represent and warrant that I have had the opportunity to review this Agreement before signing it. Accordingly, no presumption for or against Producer or me arising out of the drafting of all or any part of this Agreement will apply or will be applied in any arbitration or other legal proceeding relating to or involving this Agreement or my appearance on the Program.

36. (a) If I am selected to participate in the Program, I will not infringe upon or violate the rights of any other person or entity, and will abide by all applicable laws, rules, and regulations. Any such violation may result in my elimination from the Program and may be reported to applicable law enforcement entities, and I will be solely responsible for any criminal and civil penalties resulting from any such violation. I agree to refrain at all times from all forms of violence, intimidation, or threats of harm, and understand that any such conduct may result in my immediate elimination. Producer has the right, but not the obligation, at all times to enter into any part of any location in order to monitor or preserve order or anyone's well-being. Further, Producer may, but is not obligated to, use force to restrain me if my behavior creates circumstances that, in the sole judgment of Producer, pose a threat of injury to myself or to others.

(b) I understand that if I commit or am accused of committing any act or being involved in any situation which (i) shocks, insults, embarrasses, or offends the community; (ii) is an offense involving moral turpitude or is a civil or criminal offense under federal, state, or local laws; (iii) brings myself into public disrepute, contempt, scandal, or ridicule, or which reflects unfavorably upon Producer and/or Network, or their respective affiliates, financiers, assigns, or licensees including, without limitation, the sponsors, if any, or their advertising agencies, if any, of the Program and/or an episode of the Program; and/or (iv) otherwise injures or might tend to injure the success of the Program, then Producer will have the right to take any action that it deems necessary or appropriate in its sole discretion including, without limitation, treating such act as a default of this Agreement.

37.  I agree that my appearance as a contestant on the Program is not a performance and does not entitle me to wages, salary, or other compensation. It is expressly understood and agreed that this Agreement shall not be subject to, governed by or affected by any collective bargaining agreement.

38.  Any waiver of any term of this Agreement in a particular instance shall not be a waiver of such term for the future. I agree that the invalidity or unenforceability of any part of this Agreement shall in no way affect the validity or enforceability of any other part thereof. All remedies, rights, undertakings, obligations, and agreements contained in the Agreement shall be in addition to and shall not limit any other remedy, right, undertaking, obligation, or agreement of either party.

39.  I declare under penalty of perjury that all statements made by me in this Agreement are true. The name given below is my legal name. Any other name(s) or alias(es) used by me within the past five (5) years are also noted below. The Social Security number furnished by me below is my true Social Security number. I have been given ample opportunity to read, and have carefully read, this entire Agreement. I understand I am bound by each and every term of it. I acknowledge that I have received a copy of this Agreement.

40.  I hereby unconditionally and irrevocably release and forever discharge, Producer, SCC, Network, any television station or channel, cable network, satellite network, video on demand platform or distribution platform that exhibits the Program (in whole or in part), the advertisers connected with the Program, each of their respective parent, subsidiary and affiliated entities, all other persons and entities connected with the Program, and each of their respective officers, directors, agents, representatives, employees, successors, assignees, and licensees (collectively, "**Released Parties**") from any and all claims, actions, damages, losses, costs, and expenses of any kind (including, without limitation, attorneys' fees), judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not based on concealed, hidden or unperceived facts, arising out of, resulting from, or by reason of, my participation on or in connection with the Program, including, without limitation, my participation in the Challenge(s), any travel I undertake in connection with my participation on the Program, any exploitation of the Program or my appearance on the Program, the failure of Producer to select me as a contestant, the cancellation of the Program, any use of any Prize or gift awarded to me on the Program, my decision to follow or disregard any advice, suggestions, opinion, or any other statements made to me by Producer, its employees and others providing services on the Program, other contestants, or the use, misuse or possession of any Prize or gift awarded to me on the Program, if any, and/or any taxes or other obligations I may incur as a result of my participation in the Program. This release specifically includes, without limitation, any and all claims, actions, damages, liabilities, losses, costs, and expenses of any kind resulting from the actions of another contestant or participant, or any other third party at any time. I agree that I will not bring or be a party to any legal action or claim against the Released Parties, or any of them, or file any claim or complaint with the FCC or initiate any FCC proceedings based upon or arising out of my participation on the Program or in any way related to the Program, or any exploitation of the Program, or any use of any Prize or gift awarded to me on the Program, on any legal theory whatsoever (including, but not limited to, negligence, personal injury, rights of privacy and publicity, and defamation). I acknowledge that there is a possibility that subsequent to the execution of this Agreement, I may discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by me at that time may have materially affected my decision to execute this Agreement. I acknowledge and agree that by reason of this Agreement, and the releases contained in the preceding paragraphs, I am assuming any risk of such unknown facts and such unknown and unsuspected claims. Furthermore, to the maximum extent permitted by law, I expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> *"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."*

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, I HEREBY WAIVE ALL CLAIMS AGAINST THE RELEASED PARTIES FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL AND CONSEQUENTIAL DAMAGES.

I represent and warrant that I understand and acknowledge the significance and consequence of the releases I have made herein, and of my waiver of any rights I may have under Section 1542 of the California Civil Code and any other similar statutes, laws and rules.

41.  I acknowledge that there is a possibility that subsequent to the execution of this Agreement, I will discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by me at that time may have materially affected my decision to execute this agreement.  I acknowledge and agree that by reason of this agreement, and the release contained in the preceding paragraph, I am assuming any risk of such unknown facts and such unknown and unsuspected claims.  NOTWITHSTANDING ANY APPLICABLE LAW OF ANY JURISDICTION LIMITING OR PREVENTING ME FROM RELEASING UNKNOWN OR UNSUSPECTED CLAIMS, THE RELEASES CONTAINED HEREIN SHALL CONSTITUTE A FULL, FINAL, AND COMPLETE RELEASE AND DISCHARGE OF THE CLAIMS THAT I HAVE OR MAY HAVE, AT ANY TIME, AGAINST ANY OF THE RELEASED PARTIES, IRRESPECTIVE OF WHETHER THEY ARE KNOWN TO OR SUSPECTED BY ME. TO THE MAXIMUM EXTENT PERMITTED BY LAW, I WAIVE THE BENEFIT OF ALL SUCH APPLICABLE LAWS. I UNDERSTAND THE FOREGOING WAIVER AND ITS SIGNIFICANCE AND CONSEQUENCES, INCLUDING, WITHOUT LIMITATION, ITS SIGNIFICANCE AND CONSEQUENCES FOR THE RELEASES I HAVE MADE HEREIN.

42.  I agree to defend, indemnify and hold harmless the Released Parties from any and all liabilities, claims, actions, damages, expenses, losses, and costs of any kind (including, without limitation, attorneys' fees) caused by or arising out of my participation as a contestant on the Program, including, without limitation, any of the following:

(a)  any statement or action made or taken by me or anyone else during or in connection with my participation on the Program;

(b)  my failure to follow the advice or instructions of Producer, Network, any of their officers, agents, representatives or employees, or anyone connected with the Program;

(c)  my breach of any of my representations, warranties, undertakings, promises or obligations pursuant to this Agreement or the Official Rules;

(d)  my possession or use of any Prize; or

(e)  the use by any Released Party of the Materials and/or Pre-Existing Material or of any of the rights I have granted herein.

43.  I agree that this Agreement contains the entire understanding between Producer and me relating to the Program and my participation as a contestant on the Program, and this Agreement cannot be changed, amended, modified or terminated except in writing signed by Producer and me.

44.  **IF ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE BREACH OF ANY TERM HEREOF, OR MY PARTICIPATION IN OR IN CONNECTION WITH THE YOUTUBE PROJECT AND/OR PROGRAM CANNOT BE SETTLED THROUGH DIRECT DISCUSSIONS, THE PARTIES AGREE TO ENDEAVOR FIRST TO SETTLE THE CONTROVERSY OR CLAIM BY MEDIATION CONDUCTED IN THE COUNTY OF LOS ANGELES AND ADMINISTERED BY JAMS OR ITS SUCCESSOR ("JAMS") UNDER ITS APPLICABLE RULES, BEFORE COMMENCING ANY PROCEEDINGS UNDER THE PROCEDURES SET FORTH IN PARAGRAPH 45 BELOW. NOTWITHSTANDING THE FOREGOING, IF ANY PARTY FILES SUIT IN COURT, THE OTHER PARTY OR PARTIES NEED NOT DEMAND MEDIATION TO ENFORCE THE RIGHT TO COMPEL ARBITRATION.**

45.  **IF ANY CONTROVERSY OR CLAIM IS NOT OTHERWISE RESOLVED THROUGH DIRECT DISCUSSIONS OR MEDIATION, AS SET FORTH ABOVE, THEN THE PARTIES AGREE THAT IT SHALL BE RESOLVED BY BINDING ARBITRATION CONDUCTED IN THE COUNTY OF LOS ANGELES AND ADMINISTERED BY JAMS IN ACCORDANCE WITH ITS STREAMLINED ARBITRATION RULES AND PROCEDURES OR SUBSEQUENT VERSIONS THEREOF, INCLUDING THE OPTIONAL APPEAL PROCEDURE (COLLECTIVELY, "JAMS RULES").  THE JAMS RULES FOR SELECTION OF AN ARBITRATOR SHALL BE FOLLOWED, EXCEPT THAT THE ARBITRATOR SHALL BE AN ARBITRATOR EXPERIENCED IN THE ENTERTAINMENT INDUSTRY AND LICENSED TO PRACTICE LAW IN CALIFORNIA OR A RETIRED JUDGE.  ANY APPELLATE PANEL SHALL CONSIST OF THREE NEUTRAL MEMBERS, SUBJECT TO THE FOREGOING REQUIREMENTS. UPON CONCLUSION OF ANY ARBITRATION PROCEEDINGS HEREUNDER, THE ARBITRATOR SHALL RENDER FINDINGS OF FACT AND CONCLUSIONS OF LAW AND A WRITTEN OPINION SETTING FORTH THE BASIS AND REASONS FOR ANY DECISION HE OR SHE HAS REACHED AND SHALL DELIVER SUCH DOCUMENTS TO EACH PARTY TO THE AGREEMENT ALONG WITH A SIGNED**

COPY OF THE AWARD IN ACCORDANCE WITH THE APPLICABLE CODE OF CIVIL PROCEDURE. ANY JUDGMENT UPON AN AWARD RENDERED BY AN ARBITRATOR MAY BE ENTERED IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF LOS ANGELES, CALIFORNIA HAVING JURISDICTION OF THE SUBJECT MATTER HEREOF.

**46.    THE PARTIES AGREE THAT ANY MEDIATION OR ARBITRATION PROCEEDINGS, TESTIMONY, OR DISCOVERY, ALONG WITH ANY DOCUMENTS FILED OR OTHERWISE SUBMITTED IN THE COURSE OF ANY SUCH PROCEEDINGS (AND INCLUDING THE FACT THAT THE MEDIATION OR ARBITRATION IS EVEN BEING CONDUCTED) SHALL BE CONFIDENTIAL AND SHALL NOT BE DISCLOSED TO ANY THIRD PARTY EXCEPT TO THE MEDIATORS OR ARBITRATORS AND THEIR STAFF, THE PARTIES' ATTORNEYS AND THEIR STAFF AND ANY EXPERTS RETAINED BY THE PARTIES, OR AS REQUIRED BY LAW. NOTWITHSTANDING THE FOREGOING, A PARTY MAY DISCLOSE LIMITED INFORMATION IF REQUIRED IN ANY JUDICIAL PROCEEDING BROUGHT TO ENFORCE THESE ARBITRATION PROVISIONS OR ANY AWARD RENDERED HEREUNDER.**

47.    **CLASS ACTION WAIVER**.  **I UNDERSTAND AND AGREE THAT, BY SIGNING THIS AGREEMENT, THE PARTIES ARE AGREEING TO RESOLVE ANY AND ALL CONTROVERSIES OR CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE BREACH OF ANY TERM HEREOF, OR MY PARTICIPATION IN OR IN CONNECTION WITH THE YOUTUBE PROJECT AND/OR PROGRAM ON AN INDIVIDUAL BASIS ONLY, AND NOT AS A CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS TO THE EXTENT PERMITTED BY APPLICABLE LAW. ACCORDINGLY, UNLESS PROHIBITED BY APPLICABLE LAW, THE PARTIES AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO BRING, MAINTAIN, AND PARTICIPATE IN ANY CLASS, COLLECTIVE, AND/OR REPRESENTATIVE OR COLLECTIVE ACTION OR PROCEEDING. INDIVIDUAL CLAIMS UNDER THE PRIVATE ATTORNEYS GENERAL ACT BASED ON ALLEGED INDIVIDUAL LABOR CODE VIOLATIONS SHALL BE RESOLVED ON AN INDIVIDUAL BASIS ONLY, AND UNLESS PROHIBITED BY APPLICABLE LAW, THERE WILL BE NO RIGHT OR AUTHORITY TO PURSUE NON-INDIVIDUAL CLAIMS AS A PRIVATE ATTORNEY REPRESENTATIVE INVOLVING LABOR CODE VIOLATIONS AFFECTING OTHER INDIVIDUALS. FURTHERMORE, LESS THE PARTIES AGREE IN WRITING OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CLASS, REPRESENTATIVE, OR COLLECTIVE ACTION OR PROCEEDING.**

48.    This Agreement is controlled by California law, and all controversies and questions with respect to this Agreement and/or my appearance on the Program shall be determined by the internal, substantive laws of the State of California.  My remedies for any actual or alleged breach of this Agreement by Producer or others will be limited to a binding arbitration seeking recovery of actual monetary damages, if any, and in no event will I be entitled, and I hereby waive any right, to rescind or terminate this Agreement or any of the rights granted herein, or to seek or obtain (including, without limitation, through any arbitration proceeding) injunctive or any other equitable relief or any award of punitive damages.  I hereby acknowledge and agree that my sole remedy for claimed injuries arising out of this Agreement shall be to seek monetary damages, if any, and that such remedy is adequate and sufficient.

49.    Notwithstanding paragraph 48 and notwithstanding the requirements set forth in Paragraphs 44, 45 and 46 above, I recognize and acknowledge that given the unique nature of the Program and the commercial realities of the entertainment industry, which rely upon confidentiality and intellectual property rights, any actual or anticipated breach of my publicity or confidentiality obligations pursuant to this Agreement, or any infringement by me of Producer's or Network's intellectual property rights would cause Producer and Network (as applicable) irreparable injury and damage that cannot be reasonably or adequately compensated by money and, therefore, I hereby agree that Producer and Network shall also be entitled to seek and obtain injunctive and other equitable relief from any court of competent jurisdiction for any such breach or infringement.

50.    If any portion of the dispute resolution mechanism set forth in paragraphs 44 through 49 hereof is found to be invalid, illegal or unenforceable for any reason, that portion shall be severed from the rest and shall not affect the parties' agreement to resolve all controversies and claims through mediation and arbitration.

**I HAVE HAD AMPLE OPPORTUNITY TO READ, AND HAVE IN FACT READ, THIS ENTIRE AGREEMENT.  I UNDERSTAND THAT I AM ADVISED TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OF MY CHOICE, AND I HAVE BEEN GIVEN THE OPPORTUNITY TO REVIEW IT WITH SUCH AN ATTORNEY, SHOULD I ELECT TO DO SO.   I FULLY UNDERSTAND ALL OF MY RIGHTS, OBLIGATIONS, PROMISES AND AGREEMENTS, INCLUDING, WITHOUT LIMITATION, THE RIGHTS THAT I HAVE GRANTED AND THE RELEASES I HAVE MADE.  MOREOVER, I UNDERSTAND THAT I AM GIVING UP CERTAIN LEGAL RIGHTS UNDER THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, MY RIGHT TO FILE A LAWSUIT IN COURT WITH RESPECT TO ANY CLAIM ARISING IN CONNECTION WITH THIS AGREEMENT.**

Rachel Skidmore

_____                    Date: _____
Name (Please Print)

_____
(Signature)

_____
Address (Street)                                             (City)              (State)              (Zip)

Alias/Stage Names: _____

Daytime Phone: (_____)_____

Evening Phone: (_____)_____

ACKNOWLEDGED AND AGREED:

**Off One's Base LLC**                                       **MrB2024, LLC**

By: _____              By: _____

Its: _____              Its: _____

Date: _____              Date: _____

Note:  PLEASE KEEP PRODUCER ADVISED <u>IN WRITING</u> OF YOUR CURRENT ADDRESS.

15